COMMONWEALTH OF MASSACHUSETTS

ESSEX, ss.                                    SUPERIOR COURT DEPARTMENT

PETER R. RUMBIN,

       Plaintiff,

      v.                                     CIVIL ACTION NO.  2577CV00816

OFFICE OF THE GENERAL COUNSEL,
U.S. DEPARTMENT OF EDUCATION,
MS. SHERI CANN, CEO, PRESIDENT,
F.H. CANN & ASSOCIATES, SCOTT
BESSENT, DEPARTMENT OF THE U.S.
TREASURY, ELLEN R. PATTERSON,
SENIOR EX. V.P., GENERAL COUNSEL,
WELLS FARGO & CO., ELIZABETH
SHANIN, V.P. & GENERAL COUNSEL,
UNIVERSITY OF CHICAGO,

       Defendants.

**DEFENDANT ELLEN R. PATTERSON'S MEMORANDUM OF LAW
IN SUPPORT OF HER MOTION TO DISMISS THE COMPLAINT**

      Defendant Ellen R. Patterson ("Ms. Patterson") named in her capacity as Executive Vice

President and General Counsel of Wells Fargo & Co., by counsel, hereby moves to dismiss all

claims asserted against her for failure of the Complaint to demonstrate that the pleader is entitled

to relief, and failure to state a claim upon which relief may be granted pursuant to Massachusetts

Rules of Civil Procedure 8, 12(b)(2), and 12(b)(6), for lack of personal jurisdiction, and

insufficiency of service and service of process.  In support thereof, Ms. Patterson states as follows:

**I.      INTRODUCTION**

      This case appears to be an attempt to negate student loan debt of Plaintiff Peter Rumbin

("Plaintiff") following decades of prior unsuccessful litigation seeking the same relief.  As to Ms.

Patterson, however, this case is simple.  Plaintiff's Complaint identifies Ms. Patterson solely by

her corporate title and contains no factual allegations of personal conduct that could potentially give rise to liability under any legal theory. As a result, the Complaint is subject to dismissal in its entirety, with prejudice, as to Ms. Patterson.

Additionally, This Court does not have personal jurisdiction over Ms. Patterson. Ms. Patterson is not a resident of Massachusetts and does not maintain an office in Massachusetts. It also appears that Ms. Patterson was not properly served. For these reasons, this Court should also dismiss Plaintiff's Complaint.

## II.    FACTUAL ALLEGATIONS

There are no allegations in the Complaint pertaining to any personal conduct of Ms. Patterson. The sole factual allegation on the face of the complaint as to any Wells Fargo-related entity is as follows: "Wells Fargo Bank has paid billions of dollars in fines for its unjust and unfair credit behavior but has made billions of dollars in the conduct of this student loan business." *Id.* On this single allegation, Plaintiff appears to contend that Ms. Patterson may be held personally liable in her capacity as Executive Vice President and General Counsel of Wells Fargo Bank, N.A.'s parent holding company, Wells Fargo & Co., for unspecified predatory lending practices that ostensibly have nothing to do with Ms. Patterson in her personal capacity.

## III.    ARGUMENT

Plaintiff's Complaint fails as a matter of law and must be dismissed in its entirety for at least the following five reasons, any of which is independently sufficient to warrant dismissal with prejudice. First, the Complaint fails to contain a short and plain statement demonstrating that Plaintiff is entitled to any relief under any legal theory from Ms. Patterson. Second, relatedly, the Complaint fails to state a claim upon which relief may be granted as to Ms. Patterson. Third, Plaintiff's claims are barred by the doctrine of *res judicata*, as Plaintiff previously litigated the

same claims. Fourth, any claim pertaining to predatory lending is time-barred, and has been time-barred for at least a decade. And, fifth, Ms. Patterson is not able to provide Plaintiff with the relief he is seeking. As a result, the Court should dismiss the Complaint as to Ms. Patterson. Alternatively, this Court should dismiss this matter without prejudice because this Court does not have personal jurisdiction over Ms. Patterson and because service and service of process was insufficient.

### A. Plaintiff's Complaint against Ms. Patterson Must Be Dismissed Pursuant to Mass R. Civ. P. 8 and 12(b)(6) for Failure to State a Claim.

Plaintiff has failed to allege facts to support a claim against Ms. Patterson. A motion to dismiss pursuant to Rule 12(b)(6) of the Massachusetts Rules of Civil Procedure appraises the legal sufficiency of a complaint. To survive a motion to dismiss, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Iannacchino v. Ford Motor Co.*, 451 Mass. 623, 636 (2008). Although the Court must accept as true all well-pleaded the factual allegations in the complaint, labels and conclusions warrant no such consideration. *Id.*; *see also Cai v. Zhang*, No. 1982CV01116, 2020 Mass. Super. LEXIS 2237, at *6 (Sep. 24, 2020). Nor should a court accept as true allegations that are contradicted by the terms of a document attached to the complaint or matters of public record. *Galiastro v. Mortgage Elec. Registration Sys.*, 467 Mass. 160, 173 (2014); *Schaer v. Brandeis Univ.*, 432 Mass. 474, 477 (2000). Where it is clear from the face of the complaint that it fails to state a claim upon which relief may be granted or it will not survive an affirmative defense, the complaint should be dismissed. *Cavanagh v. Cavanaugh*, 396 Mass. 836, 838 (1986).

At a minimum, the Complaint as pled fails as a matter of law and is subject to dismissal because it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief" as to Ms. Patterson. *See* Mass. R. Civ. P. 8(a). Indeed, it is unclear what claims

Plaintiff intends to assert against Ms. Patterson. The Complaint only contains conclusory allegations that Wells Fargo & Co. engaged in predatory lending practices. There is not a single allegation as to Ms. Patterson's alleged involvement in the events on which Plaintiff bases his claim. As pled, Ms. Patterson lacks notice of the grounds for relief for any claim against her in her personal capacity. The appropriate remedy for such failure is dismissal. *Padmanabhan v. City of Cambridge*, 99 Mass App. Ct. 332, 342 (2021) ("A number of the defendants sued by [Plaintiff *pro se*] are mentioned only in the 'Parties' section of the amended complaint; [Plaintiff *pro se*] makes no allegations at all as to their tortious conduct. . . . Even giving [Plaintiff *pro se*] the benefit of all reasonable inferences, his failure to allege tortious (or any) conduct by these defendants means he cannot plausibly recover from them . . . .").

Moreover, it appears Plaintiff names Ms. Patterson in her capacity as Executive Vice President and General Counsel of Wells Fargo & Co. Wells Fargo & Co. is a corporation organized under the laws of Delaware and a financial holding company and a bank holding company registered under the Bank Holding Company Act of 1956, as amended. *See* Wells Fargo & Co. 2024 Form 10-K, at https://www.wellsfargo.com/assets/pdf/about/investor-relations/sec-filings/2024/10k.pdf. Ms. Patterson, named in her capacity as a corporate officer, is entitled to the presumption of limited liability for any acts taken in her capacity as an executive on behalf of Wells Fargo & Co. under Massachusetts law. *See, e.g.*, *Connolly Accuchem Corp. v. Eclectic Foods, Inc.*, 2001 Mass. App. Div. 205, at *3 (2001) ("[Defendant], as a corporate officer, had no legal liability for the corporate contractual debts which form the basis of [Plaintiff's] action herein."); *see also Williams v. Vanaria*, 2000 Mass. App. Div. 162 at *2 (2000) (collecting cases).

What is more, corporate officers and directors may be held individually liable in connection with corporate business only by statute or for tortious activity in which they personally participate.

*Lyon v. Morphew*, 424 Mass. 828, 831 (1997).  As stated above, the Complaint is devoid of even <u>*one single factual allegation as to Ms. Patterson's personal involvement in the facts giving rise to the claim.*</u>  As a result, there is no legal basis to hold Ms. Patterson personally liable, and the Court must dismiss the Complaint in its entirety, and with prejudice, as to her.

 **B. Plaintiff's Claims are Barred by *res judicata*.**

 Plaintiff has previously litigated the debt at issue in this case since at least 1990.  This Court should dismiss the Complaint on grounds of *res judicata* and find that Plaintiff is estopped from arguing that his student loans are invalid or discharged due to a prior settlement with the federal government.  As pled, Plaintiff obtained student loans in the late-1970s.  *See generally*, Compl. Those loans consisted of a National Direct Student Loan ("NDSL")[1], a Federally Insured Student Loan ("FISL") and two Guaranteed Student Loans ("GSLs").[2]  *Id.*; *see also* Pet. for Cert., at 2.  In 1987, the NDSL was declared to be in default and assigned to the U.S. Department of Education (the "Department of Education") for collection.  *See* Pet. for Cert., at 10.  Two years later, the United States commenced a lawsuit against Plaintiff in the District of Connecticut for repayment of the NDSL, *id.*, which Plaintiff claims resulted in a stipulated dismissal with prejudice in 1990 (the "1990 Dismissal").  *Id.*

 Later, beginning in 2011, the Department of Education allegedly began garnishing Plaintiff's social security benefits to repay the GSLs that were assigned to it (separately from the NDSL) in 1998.  At the time, Plaintiff claimed that the NDSL, the FISL, and the GSLs were subject

---

[1] "NDSLs are loans funded directly by the Department of Education."  *Rumbin v. Duncan*, No. 3:11-cv-904, 2014 WL 2881397, at *2 (D. Conn. 2014).

[2] GSLs in the amounts of $2,500 each were loaned by the Connecticut Savings Bank to Plaintiff in 1977 and 1978.  *Id.*

to the 1990 Dismissal and therefore should have been terminated.  *Rumbin v. Duncan*, 3:11-CV-00904, 2016 WL 632440, at *2 (D. Conn. 2016).  In response to the garnishment, Plaintiff instituted litigation against the University of Chicago, an administrator that worked for the University of Chicago (together, the "Chicago-related Defendants"), then-Secretary of Education Arne Duncan, and then-Secretary of the Treasury Timothy Geithner (together, the "Government Parties") under a theory of *res judicata* pertaining to the 1990 Dismissal.  *See Rumbin v. Duncan*, No. 3:11-CV-00904, 2014 WL 2881397 (D. Conn. 2014).

The United States District Court for the District of Connecticut granted summary judgment to the Chicago-related Defendants on June 25, 2014, finding that "the University did not originate those loans, and played no part in declaring them in default. In any event, the University cannot be called upon to answer for the actions of the Government in exercising administrative enforcement."  *See Rumbin v. Duncan*, No. 3:11-CV-00904, 2014 WL 2881397, at *6 (D. Conn. 2014).  Plaintiff's remaining claims against the Government Parties were dismissed on the Government Parties' motion in 2016 for, among other reasons, that claim and issue preclusion as to the 1990 Dismissal did not bar the Government from attempting to collect on the debt at issue in that case.  *Rumbin v. Duncan*, No. 3:11-CV-00904, 2016 WL 632440 (D. Conn. 2016).

Thereafter, Plaintiff appealed to the Second Circuit, which dismissed the appeal as "lack[ing] an arguable basis either in law or fact."  *Rumbin v. Duncan*, No. 18-3488, 2019 WL 11689797 (2d Cir. 2019).  Plaintiff attempted to appeal to the United States Supreme Court, which denied his petition for certiorari.  *Rumbin v. Devos*, 140 S. Ct. 2673 (2020).

Neither Ms. Patterson nor Wells Fargo was a party to the prior litigation.[3]  However, Massachusetts law "does not require mutuality of parties, so long as there is an identity of issues, a finding adverse to the party against home it is being asserted, and a judgment by a court or tribunal of competent jurisdiction," so long as "the determination of the issues for which preclusion is sought must have been essential to the underlying judgment."  *Bellerman v. Fitchburg Gas and Elec. Light Co.*, 470 Mass. 43, 60 (2014).

Here, it is apparent that Plaintiff seeks to re-litigate a decades-old issue, which is that the GSL loans were part of his negotiated resolution with the federal government in 1990.  The Court should determine that Plaintiff cannot now seek to re-litigate the findings of the Connecticut District Court, which found that that the government was not barred from attempting to collect on the debt at issue in that case, the same debt that Ms. Patterson understands from the Complaint to be at issue in this case.  Accordingly, this Court should dismiss Plaintiff's claims with prejudice.

### C.    Plaintiff's Claims are Barred by the Statute of Limitations.

The Complaint appears to suggest that this Court has power to grant relief under a provision of the Dodd-Frank Wall Street Reform and Consumer Protection Act 12 U.S.C. §§ 5565 *et seq.* To the extent Plaintiff seeks to bring claims under this statute, the potentially relevant Federal consumer financial laws implicated by that statute include the Truth in Lending Act ("TILA") and the Fair Debt Collection Practices Act (FDCPA").  Each of these claims are barred by the statute of limitations.

---

[3] The Petition for a Writ of Certiorari attached to the Complaint names Wells Fargo as a respondent. However, the as-filed Petition for a Writ of Certiorari does not. *See generally* Pet. for Cert., *Rumbin v. Duncan*, No. 19-1113, 2019 WL 8301060 (2019).

Under TILA, the statute of limitations applicable to a claim for money damages, which Plaintiff appears to seek in this case, is one year from the date of the violation. 15 U.S.C. § 1640(e). As any violation under TILA relating to Plaintiff's student loan debt taken out in 1978 or 1979 would necessarily have accrued by approximately 1980, Plaintiff's claims have been time-barred for at least forty-four years. The statute of limitations for violation of the FDCPA is also one year. 15 U.S.C. § 1692k(d). In the light most favorable to Plaintiff, a cause of action pertaining to any entity or person's attempt to collect on Plaintiff's student loan debt accrued at latest, by 2011. Thus, any claim arising under that statute is likewise time barred and has been for at least fourteen years. As a result, Plaintiff cannot state a claim as to Ms. Patterson, and Plaintiff's claims should be dismissed with prejudice.

### D.     Ms. Patterson Cannot Give Plaintiff His Requested Relief.

The Complaint should additionally be dismissed because Ms. Patterson cannot give any of the relief that Plaintiff seeks—to the extent that he has not already received it.

Although it is difficult to discern exactly what Plaintiff is alleging and what relief he seeks, it appears that he asks the Court to discharge his student loans, and end to garnishment of his social security payments.

Notably, the Complaint does not allege that Ms. Patterson or Wells Fargo currently holds or ever did hold any of Plaintiff's debt.[4] Accordingly, Ms. Patterson and Wells Fargo are not in a position to discharge Plaintiff's debt. Likewise, the Complaint does not allege that Ms. Patterson and Wells Fargo caused or have anything to do with the garnishment of Plaintiff's social security

---

[4] Although this fact falls outside of the pleadings, it is worth noting that Wells Fargo undertook a good faith search of its records to determine whether Mr. Rumbin ever had a loan or other account with Wells Fargo, and, after conducting this search, is unable to locate any records of a banking relationship with Mr. Rumbin based on the information that appears on the face of the Complaint.

payments.  As such, no allegations support an inference that either Ms. Patterson or Wells Fargo are able to cease the garnishment of Plaintiff's social security payments.

Because Ms. Patterson cannot provide Plaintiff with the relief he seeks, this Court should dismiss with prejudice Plaintiff's claims against them.

**E.      Plaintiff's Complaint against Ms. Patterson Must Be Dismissed Pursuant to Mass R. Civ. P. 12(b)(2) For Lack of Personal Jurisdiction and Pursuant to Mass R. Civ. P. 12(b)(4) and (5) for Insufficiency of Process and Service of Process.**

Even if this Court does not dismiss Plaintiff's claims with prejudice—which it should do—this Court should still dismiss them without prejudice for lack personal jurisdiction and for insufficiency of process and service of process.

   *i.      Plaintiff's Complaint Must Be Dismissed Because This Cour Lacks Personal Jurisdiction Over Ms. Patterson.*

In deciding a motion to dismiss pursuant to Mass R. Civ. P. 12(b)(2) for lack of personal jurisdiction, the "[p]laintiff has the burden of establishing facts to show that the ground relied on under Massachusetts' long arm statute is present" and that "[t]he exercise of jurisdiction under State law [is] consistent with basic due process requirements mandated by the United States Constitution."  *Roberts v. Legendary Marine Sales*, 447 Mass. 860, 863 (2006); *see also Droukas v. Divers Training Academy, Inc.*, 375 Mass. 149, 151 (1978) (internal citations and quotations omitted) ("Confronted with a motion under Mass R. Civ. P. 12(b)(2) . . . a plaintiff has the burden of establishing facts upon which the question of personal jurisdiction over a defendant is to be determined.").

The Complaint does not allege *even one single fact* pertaining to Ms. Patterson, much less any facts sufficient to support the exercise of personal jurisdiction over Ms. Patterson pursuant to the Massachusetts long arm statute.  *See* Gen. L. 223A.  The Complaint does not include any facts

from which this Court may infer that Ms. Patterson transacted business with Plaintiff in Massachusetts, caused tortious injury to Plaintiff in Massachusetts, or is otherwise subject to general personal jurisdiction in Massachusetts. Accordingly, Plaintiff's Complaint must be dismissed on this basis alone. *See* Mass. R. Civ. P. 12(b)(2); *see also Droukas*, 375 Mass. at 149.

### ii. *Plaintiff's Complaint Must Be Dismissed for Insufficient Process and Service of Process*

"Under Mass.R.Civ.P. 12(b)(4), a party may move for dismissal of a lawsuit for insufficiency of service of process before filing an answer." *Espinal v. Hampton Shuttle, Inc.*, 2005 WL 2525412, at *1 (Mass. Super. Aug. 31, 2005). Meanwhile, "[i]n a motion to dismiss for insufficient service under Mass.R.Civ.P. 12(b)(5), the plaintiff bears the burden to establish valid service." *Weber v. Zurich Fin. Servs. Grp.*, 2004 WL 3091635, at *1 (Mass. Super. Nov. 30, 2004).

As an initial matter, it does not appear that Plaintiff served the correct copy of the Complaint on Ms. Patterson. The docket in this matter reflects that, on July 29, 2025, Plaintiff initially filed a 94-page document that purported to be the Complaint. *See* Paper No. 1. Then, on July 30 and July 31, 2025, there are Docket Notes indicating that the original complaint was not valid because it was signed by a deceased attorney. Then, on August 5, 2025, the Court received an 11-page document that appears to be the proper Complaint, no longer signed by a deceased attorney. This second version of the Complaint was not assigned a docket number, but is attached hereto as **EXHIBIT A**.

The document that was sent to Ms. Patterson is a 120-page document, attached hereto as **EXHIBIT B**, that does not match either the original Complaint filed on July 29, 2025, or the second version of the Complaint filed on August 5, 2025. Clearly, Ms. Patterson has not received a copy of the operative complaint, and as such, has not been served.

Additionally, it remains unclear whether the service that was made was done in accordance with c. 223A §§ 7, 8 and Mass. R. Civ. P. 4.  Further investigation is required.  However, given the requirement to raise this defense in a party's initial responsive pleading, Ms. Patterson expressly reserves her right to contest that service was properly effectuated.

Because Plaintiff failed to serve a true and accurate copy of the Complaint in Ms. Patterson, service was improper, and the Complaint should be dismissed.

IV.    **CONCLUSION**

Based on the foregoing, this Court should grant Patterson's Motion and dismiss the Complaint with prejudice.

Dated:  November 24, 2025                    Respectfully submitted:

                                            */s/ Judah H. Rome*
                                            Judah H. Rome
                                            BBO# 695997
                                            TROUTMAN PEPPER LOCKE LLP
                                            One Financial Plaza
                                            Suite 2800
                                            Westminster Street
                                            Providence, RI 02903
                                            Phone: 401-276-6433
                                            Email: judah.rome@troutman.com

                                            *Attorneys for Defendant*
                                            *Ellen R. Patterson*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 24, 2025, I caused a true and accurate copy of the

foregoing to be sent via U.S. mail to the following:

Peter R. Rumbin                              Katia Baltimore
87 Second Street                             188 Crocket Court
Hamden, CT 06514                             Orange, CT  06472

The foregoing was additionally served by email on all counsel of record.

*/s/ Judah H. Rome*
Judah H. Rome

# EXHIBIT A

Superior Court

State of Massachusetts

FILED
IN THE ESSEX SUPEIOR COURT

AUG 0 5 2025

THOMAS. H. DRISCOLL
CLERK OF COURTS

Peter R. Rumbin, Plaintiff

Doc. No.:

VS

July 31, 2025

Office of the General Counsel, US Dept of Education, Ms. Sheri Cann, CEO, President, F. H. Cann & Associates (North Andover, Mass), Scott Bassent, Department of The US Treasury, Ellen R. Patterson, Senior Ex. VP, General Counsel, Wells Fargo & Co., Elizabeth Shanin, VP & General Counsel, University of Chicago, Defendants

## Complaint for the University of Chicago Student Loan case-US Borrower Defense Application Predatory Lending Program Settlement

### A BRIEF BACKGROUND

Attorney Ira B. Grudberg has been counsel of record since the plaintiff was sued in Federal Court in 1989-1990 for student loans borrowed for one year while Mr. Rumbin, defendant at that time, was an University of Chicago student. The University of Chicago engaged in what is now termed: "predatory lending" and treated "students of need as students of means." The U. of Chicago received PELL/BEOG grant funds to pay for his education but instead of crediting these funds towards his education bill, the U. of Chicago pocketed the funds and then proceeded to borrow—which was unnecessary if the grant monies had been credited towards his education bill. Thus the U. of Chicago unjustly enriched itself and others. The U. of Chicago was caught embezzling and committing fraud when Harvard College financial aid office requested a financial aid transcript from the U. of Chicago. Harvard discovered these financial aid "irregularities" and then Harvard directed the plaintiff to inform the US Dept of Ed in Chicago, Illinois of the problem. US Dept of Ed in Chicago investigated the U. Of Chicago for "predatory lending" and embezzlement-fraud of plaintiff's BEOG/PELL grant funds. As a consequence of the investigation, the U. of Chicago returned the BEOG/PELL grant funds that it had embezzled and committed fraud for but not the loans. Plaintiff withdrew from the U. of Chicago and never borrowed again. He attended Harvard on a full scholarship.

The Connecticut Savings Bank refused to lend any more money to the U. of Chicago because (1) it did not like how U. of Chicago was conducing itself and (2) plaintiff's mother was dying from cancer and the bank refused to extend any more loans under the circumstances as it thought it would be imprudent. Furthermore, the U. of Chicago had requested that the plaintiff's parents take out a "second mortgage" in order to obtain more money. The bank also denied this requested and directed the plaintiff's parents to "have

your son withdraw from the U. of Chicago" and so he withdrew from U. of Chicago and never returned.

Since 1979, Ira Grudberg has been counsel of record when he first struggled to obtain a transfer credit transcript for over three years from the former dean of students, Professor Lorna Strauss of the University of Chicago.

Then, in 1989-1990, Grudberg represented Mr. Rumbin (then defendants) when he was sued for the student loans by the US Depts of Treasury and Education in Chicago and then Connecticut, US District Courts. Grudberg, won the student loan case in Federal Court in 1990 by stipulated agreement of the parties dismissed with prejudice against them (US Dept of Ed and Treasury et al). Plaintiff only borrowed student loans for this one year while a student attending U. of Chicago, withdrew and never borrowed again. All the loans were included in the stipulated agreement dismissed with prejudice against the US Depts of Ed and Treasury (see attached court order UD District Judge Warren Eginton and discovery-interrogatories etc.).

In 2011 due process was revoked by an act of US Congress and offsets commenced thereupon against the plaintiff, Mr. Rumbin, until 2024. This act of Congress permitted the US Depts of Treasury and Education to seize money and assets without suing in court and obtaining a favorable judgement from the court. Hence revoking due process, the US Depts of Ed and Treasury "could do an end run around the stipulated agreement of the parties, dismissal with prejudice against them" and thus it resorted to "self-help" by removing due process in the student loan case to avoid the previous court order signed by a Federal judge, Warren Eginton. Now the US Depts of Ed and Treasury did not have to sue in court and win a judgement before a judge to seize a student's monies and assets. The "claw back program" of 2024 imposed offsets of 100 percent by the US Dept of Treasury against plaintiff's income and total loss of health insurance except if you could pay for it and/or find a medical insurance company. This draconian policy caused significant hardships.

In 2011 a civil suit was filed against the defendants in US District Court, followed by a brief to the US Second Circuit Court of Appeals. Then Grudberg filed two writs of certiorari to SCOTUS (one with President Joe Biden) on behalf of the plaintiff, joined the class action suit Sweet vs DeVos (Sweet vs Cordola): borrower defense-predatory lending program of the US Dept of ED and three borrower defense program applications for predatory lending against the defendants with the US Dept. of ED. Recently, Grudberg won the borrower defense- predatory lending case before the General Counsel of the US Dept of Education (Washington, DC).  This is the second time Grudberg and the plaintiff have won his student loan case in court. In this student loan case against the U. of Chicago, litigation by the

plaintiff commenced in 2011 and has continued until the present. But this case has been ongoing since 1979.

Compensation appropriate for this huge consumption of time and resources is justifiable and necessary to prevent its reoccurrence. Ira Grudberg, is counsel of record for the two writs of certiorari to SCOTUS, class action suit: Sweet vs Cordola (Sweet vs DeVos) with Harvard Law School et al as part of the borrower defense program-predatory lending (submitted three applications). Ira B. Grudberg, instructed the plaintiff to keep his name upon all pleadings since he is counsel of record for them.

The plaintiff hereby notices the court of the affirmative judgement discharging all debts in favor of the plaintiff by the class action suit Sweet vs Cordola-borrower defense application program for predatory lending issued by the General Counsel, US Dept. of Education. The defendants must be compelled to comply with this ruling. This "foreign judgement" according to rule M. G. L. 218, sec 4A is attached herein. Plaintiff requests the assistance of the court in enforcing judgement upon the defendants. (see attached affidavit and documents)

Plaintiff enlists the assistance of the court for execution of judgment upon the defendants for all outstanding debts claimed by them.  F.H. Cann & Associates claims $10,000 owed. Other defendants have ignored solicitations for monies that they claim are owed to them and to pay for damages and legal costs etc. Plaintiff requests that all debts be settled immediately by the defendants and that the court absolve the plaintiff of any financial liability whatsoever now and in the future. (Please read writ of certiorari, addendum and for a comprehensive history and legal case law).

**RELIEF SOUGHT**

1.To cease and desist the unlawful seizure of property and monies; ignoring a prior judge's ruling of dismissal with prejudice against the defendants by stipulated agreement of the parties; Plaut v. Spendthrift Farms, res judicata, United Student Aid Funds, Inc. v. Espinosa, No appeal or modification of 1990 ruling was ever sought by defendants for over 30 years.

2. Return of what monies have been seized; total sum, with interest, of all payments, tax returns, fees, penalties, interest etc.

3. A Court order stopping any further taking of any funds or property from the plaintiff, Peter R. Rumbin

4. Reimbursement of all legal counsel fees and expenses as a result of the defendants' actions.

**5.** Counter suit on predatory lending, Dodd-Frank Consumer Protection Act or other applicable laws or relief as the court or legal counsel deem appropriate.

## THE COURT'S POWER TO GRANT RELIEF

The FCPA empowers this court to grant any appropriate legal or equitable relief with respect to violations of federal consumer financial law, the refund of monies, paid restitution, disengagement, or compensation for unjust enrichment, and civil money penalties. 12 U.S.C. 455565(A)(1). (p.31 Writ of certiorari to SCOTUS, Ira B. Grudberg, ESQ, counsel of record for plaintiff) The foregoing discussion is derived from Ira B. Grudberg's pleadings and instructions to the plaintiff.  Attorney Ira B. Grudberg represented the plaintiff from 1979 until the recent present.

Respectfully submitted to the court:

Peter R. Rumbin, plaintiff (pro se)    ( Ms. Katia Baltimore, Sec't/Assist., 188 Crocker Court,

87 Second ST. Hamden, CT 06514       Orange, CT 06477, TEL 203-494-5229, messages)


Certification_____

It is hereby asserted that a copy of the above was sent to the defendants of record found on the cover sheet to the complaint and herein follows below this day July 31, 2025 by plaintiff, Peter R. Rumbin, 87 Second Street, Hamden, CT 06514:

US Dept of ED, Office of General Counsel, 400 Maryland Ave. SW, Washington, DC 20202

Sheri Cann, CEO, President, F. H. Cann & Associates, 1600 Osgood St., Suite 3058, North Andover, Mass. TEL 877-750-9804;

Department of the Treasury, Scott Bassent, secretary, 1500 Pennsylvania Ave. NW., Washington, DC 20220, TEL. (202)-622-2000

Ellen R. Patterson, Senior EX VP, General Counsel, Wells Fargo & Co., Corporate Offices, 420 Montgomery St., San Francisco, CAL 94104

Elizabeth Shanin, Interim VP and General Counsel, U. of Chicago, (Professor Lorna Strauss, former dean of students), Edward H. Levi Hall, Suite 619, 5801 S. Ellis Ave., Chicago, Illinois 60637; Tel 773-702-8873

Affidavit For Foreign Judgement (M.G, L. 218, Sec.4A)    State of Massachusetts

Doc. No.:                              Superior Court---Civil

Case: Rumbin, Peter R.

VS

Office of the General Counsel, US Dept. of Ed, F.H. Cann & Associates, Department of the
Treasury, Scott Bassent, Ellen R. Pattersson, VP, Wells Fargo & Co., Elizabeth Shanin, Gen
Counsel, U. of Chicago

## AFFIDAVIT

I certify that the following is true that the attached favorable judgement by the General
Counsel of the US Dept. of Education is a true copy of the ruling.  Furthermore, to
corroborate the court order stipulated agreement dismissal with prejudice against the
defendants issued by Warren Eginton also discharges all loans and interrogatories, and
discovery inventory all loans that were discharged in 1990 ruling that disclosed all loans
and are therefore discharged today.  The court may corroborate these documents itself if it
wishes. Documents are attached hereafter.

Peter R. Rumbin, plaintiff, pro se, 87 Second Street, Hamden, Conn. 06514

Sworn to before me    _Frank Domcico_    this 31st day of July  2025
                        Notary
                        commission expires 10·31·2029

Date signed
       7·31·2025



Peter R Rumbin
87 2Nd St
Hamden, CT 06514-4711

March 24, 2025

Borrower Defense Application #: 02094713
Borrower Defense Application School: University of Chicago (The)

Dear Peter R Rumbin:

You are receiving this letter because you are a member of the class of Federal student loan borrowers covered by the recent settlement of the *Sweet v. Cardona* ("*Sweet*") lawsuit. You submitted a Borrower Defense to Repayment discharge application relating to your Federal student loan(s) on or before June 22, 2022. **The Department of Education, applying a special review process agreed to in the Sweet settlement agreement, has approved your claim for settlement relief.** For more information on the terms of the settlement agreement please see the Department's website at https://Studentaid.gov/announcements-events/sweet-settlement.

The Department has determined that you are entitled to settlement relief for the loans taken out on or after 4/15/1977 associated with your enrollment at University of Chicago (The) ("Relevant Federal Student Loan(s)") based on your allegations regarding the school's misconduct. Pursuant to the *Sweet* settlement, the Department of Education will do the following:

- discharge your Relevant Federal Student Loan(s);
- provide a refund for any payments made to the Department of Education on your Relevant Federal Student Loans, including Relevant Federal Student Loan debt that you previously paid off; and
- delete the credit report tradeline associated with the discharged loan(s).

The benefits described in this communication apply to your Relevant *Federal* Student Loan(s). The benefits do not apply to private loans. Discharging your Relevant Federal Student Loan(s) means that you will no longer owe the debt. You also may receive a refund for prior payments made to the Department on your discharged Relevant Federal Student Loan(s) related to University of Chicago (The). Your loan servicer will let you know if you are eligible for a payment refund, which would be mailed to you. Please check your online account with your loan servicer to ensure your address is correct so you can receive any refund.

**Other than confirming your address, you do not have to take any further action to receive your discharge.** Your servicer will send you more details about the discharge, including which loans have been forgiven. Your Relevant Federal Student Loan debt will remain in forbearance and collections will be stopped until you receive relief. Your credit report will also be updated to reflect this discharge when it is complete.

If you have questions about this notice, please call our borrower defense hotline at 1-855-279-6207. You may visit https://studentaid.gov/Contact for our hours of operation.

Sincerely,
U.S. Department of Education
Federal Student Aid



Superior Court                          State of Massachusetts

Peter R. Rumbin, Plaintiff              Doc. No:

VS                                      July 31,2025

Office of the General Counsel, US Dept of Education, Ms. Sheri Cann, CEO, President, F. H. Cann & Associates (North Andover, Mass), Scott Bassent, Department of The US Treasury, Ellen R. Patterson, Senior Ex. VP, General Counsel, Wells Fargo & Co., Elizabeth Shanin, VP & General Counsel, University of Chicago, Defendants

**Counter Suit on Predatory Lending, Dodd-Frank Consumer Protection Act and other applicable laws or relief as the court or legal counsel deem appropriate.**

The plaintiff hereby files a counter suit on Predatory lending against the defendants for their malfeasances and malevolent behavior against the plaintiff that spans from 1979 to the present. The predatory lending has cause disruption of the plaintiff's education, career development, destroyed his credit worthiness and lifetime income. The defendants unjustly enriched themselves at the expense of the students of need by treating them as students of means. U. of Chicago has increased its endowment tremendously; Wells Fargo Bank has paid billions of dollars in fines for its unjust and unfair credit behavior but has made billions of dollars in the conduct of this student loan business, and likewise, for F.H. Cann & Associates, US Depts of Ed and Treasury. The colleges pursued a prescription of ever-increasing fees, tuition and room and board costs by simply saddling students with ever increasing debts while the college administrators paid themselves multi-million-dollar salaries, expensive housing and pensions.

Meanwhile poor students, like me, were burdened with unmanageable debts. In the plaintiff's case, the U. of Chicago committed fraud and embezzlement to keep the PELL/BEOG grant funds for itself. Most students would have been unaware of this occurrence unless another college had requested a financial aid transcript as the plaintiff had when he attended Harvard. During this time, the college's financial aid office of the U. of Chicago did not have to provide any accounting of the fund's whereabouts to the student. Hence abuse was easily committed to enrich the college, while harming the student, me. For these reasons and others (see writ of certiorari etc.) the defendants should be required to pay the plaintiff compensation for this counter suit on their predatory lending and draconian conduct for 48 years!

Respectfully submitted:

Respectfully submitted to the court:

Peter R. Rumbin, plaintiff (pro se)

87 Second Street, Hamden, Conn. 06514

Certification_____

It is hereby asserted that a copy of the above was sent to the defendants of record found on the cover sheet to the complaint and herein follows below this day July 31, 2025 by plaintiff, Peter R. Rumbin, 87 Second Street, Hamden, CT 06514:

US Dept of ED, Office of General Counsel, 400 Maryland Ave. SW, Washington, DC 20202

Sheri Cann, CEO, President, F. H. Cann & Associates, 1600 Osgood St., Suite 3058, North Andover, Mass. TEL 877-750-9804;

Department of the Treasury, Scott Bassent, secretary, 1500 Pennsylvania Ave. NW., Washington, DC 20220, TEL. (202)-622-2000

Ellen R. Patterson, Senior EX VP, General Counsel, Wells Fargo & Co., Corporate Offices, 420 Montgomery St., San Francisco, CAL 94104

Elizabeth Shanin, Interim VP and General Counsel, U. of Chicago, (Professor Lorna Strauss, former dean of students), Edward H. Levi Hall, Suite 619, 5801 S. Ellis Ave., Chicago, Illinois 60637; Tel 773-702-8873

# CIVIL ACTION COVER SHEET

DOCKET NUMBER
2577CV00814

**Massachusetts Trial Court**
**Superior Court**
COUNTY

Help-Party Information

| Plaintiff: Peter R. Rumbin | Defendant: US Dept of Ed |
|---|---|
| ADDRESS: 87 Second St. | ADDRESS: Office of the General Counsel |
| Hamden,Conn. 06514 | 400 Maryland Ave.SW |
| | Washington,DC 20202 see attached |
| Plaintiff Attorney: | Defendant Attorney additional Defendants |
| ADDRESS: | ADDRESS: |
| | |
| | |
| BBO: | BBO: |

Add Parties    Remove Parties

### TYPE OF ACTION AND TRACK DESIGNATION (see instructions section on next page)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| BG1 | Fin. Institutions | A | YES    X  NO |

*If "Other" please describe:  Student loan predatory lending

Is there a claim under G.L. c. 93A?  Yes          Is there a class action under Mass. R. Civ. P. 23?  Yes

Won case by stipulated      NO    Sweet vs Cordona,2024    YES    NO  US Dist.No.Cal
ageement of def.dismiss **STATEMENT OF DAMAGES REQUIRED BY G.L. c. 212, § 3A**  Harvard L.Sch et al
with prejudice against them(1990,I.B.Grudber,esq)

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money damages
(Note to plaintiff: for this form, do not state double or treble damages; indicate single damages only.)

**TORT CLAIMS**

A. March 2025 Gen Counsel US Dept of ED discharged debt

Documented medical expenses to date

1. Total hospital expenses

FILED
IN THE ESSEX SUPERIOR COURT

AUG 0 5 2025

THOMAS H. DRISCOLL
CLERK OF COURTS

2. Total doctor expenses
3. Total chiropractic expenses
4. Total physical therapy expenses
5. Total other expenses (describe below)

Subtotal (1-5):  $0.00

B. Documented lost wages and compensation to date
C. Documented property damages to date
D Reasonably anticipated future medical and hospital expenses
E. Reasonably anticipated lost wages
F. Other documented items of damages (describe below)

Offsets,debts, legal costs, punitive,&Tort

SEE Complaint                              TOTAL (A-F).   $0.00

G. Briefly describe plaintiff's injury, including the nature and extent of the injury:

### CONTRACT CLAIMS

This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. R. Civ P. 8 1(a).

| Item # | Detailed Description of Each Claim | Amount |
|---|---|---|
| 1. | $5,000 student loan c.$890 (Wells Fargo Bank)? | C.$6,000 |
| | $16,000 F.H.Cann & Associates, No. Andover, Mass. | Total  C.$16,000 |

Offsets C. $12,000-14,000+ (US Treasury & ED.)

Add Claim    Delete Claim

Signature of Attorney/Self-Represented Plaintiff. X /s/ Peter R R Rumbin    Date July 31, 2025

RELATED ACTIONS: Please provide the case number, case name, and county of any related actions pending in the Superior Court.

CERTIFICATION UNDER S.J.C. RULE 1-18(5)

Date Filed 12/16/2025 6:05 PM
Superior Court... connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution...
Docket Number...

Signature of Attorney: X

Case 1:26-cv-10247-ADB    Document 7-1    Filed 01/24/26    Page 23 of 148

SC0001: 02/24          www.mass.gov/courts          Date/Time Printed:08-22-2024 13:36:5

Date: July 31 , 2025

SHERI CANN, CEO, president

Defendants: F.H.Cann & Associates, 1600 Osgood Street,Suite 3058,
North Andover, Mass.TEL 877-750-9804

Department of The Treasury, Scott BASSENT
1500 Pennsylvania Ave.NW
Washington,DC 20220,Tel (202)-622-2000

Ellen R. Patterson, Senior Executive Vice President,General
Counsel
Wells Fargo & Company, Corporate Offices
420 Montgomery Street, San Francisco, CAL.94104

Elizabeth Shanin, Interim Vice President and General
Counsel
The University of Chicago
Edward H,Levi Hall, Suite 619
5801 S. Ellis Ave.
Chicago,Illinois 60637
Tel 773-7028873

----------------------------------------------------

COMPLAINT:   Please see attached writ of certiorari and
addendum and documents.
COMPLAINT

Date Filed 12/16/2025 6:05 PM
Superior Court
Docket Number 2577CV00816

Date Filed 12/16/2025 6:05 PM
Superior Court
Docket Number 2577CV00816 ADB    Document 71-16   Filed 01/24/26    Page 24 of 148

# STATEMENT OF DAMAGES
## G.L. c. 218, § 19A(a)

**Trial Court of Massachusetts**

| | |
|---|---|
| DOCKET NO. | |

| PLAINTIFF(s) | DEFENDANT(s) | DATE FILED |
|---|---|---|
| Peter R. Rumbin | US Dept of ED,U of Chicago,F.H.Cann,Wells Fargo Bank,US Treasury | July 31,2025 |

INSTRUCTIONS: THIS FORM MUST BE COMPLETED AND FILED WITH THE COMPLAINT OR OTHER INITIAL PLEADING IN ALL DISTRICT AND BOSTON MUNICIPAL COURT CIVIL ACTIONS SEEKING MONEY DAMAGES

COURT DIVISION
Superior Court-Mass-Civil

| TORT CLAIMS | AMOUNT |
|---|---|
| A.  Documented medical expenses to date: | |
| 1. Total hospital expenses: . . . . . . . . . . . . . . . . . . . . . . . | $ _____ |
| 2. Total doctor expenses: . . . . . . . . . . . . . . . . . . . . . . . | $ _____ |
| 3. Total chiropractic expenses: . . . . . . . . . . . . . . . . . . . | $ _____ |
| 4. Total physical therapy expenses: . . . . . . . . . . . FILED IN THE ESSEX SUPERIOR COURT | $ _____ |
| 5. Total other expenses (describe) AUG 05 2025 | $ _____ |
| THOMAS H. SUBTOTAL: CLERK OF COURTS | $ _____ |
| B.  Documented lost wages and compensation to date: . . . . . . . . . . . . | $ _____ |
| C.  Documented property damages to date: . . . . . . . . . . . . . . . . . . | $ _____ |
| D.  Reasonably anticipated future medical and hospital expenses: . . . . . . . . | $ _____ |
| E.  Reasonable anticipated lost wages: . . . . . . . . . . . . . . . . . | $ _____ |
| F.  Other documented items of damage (describe): Offsets,legal fees, Debts, Class Action:Sweet v.Cordona,writs(2),Briefs etc. | c$40723 |
| G.  Brief description of Plaintiff's injury, including nature and extent of injury: Predatory lending etc. Loss of credit, loss of educational and career opportunities etc. | |
| For this form, disregard double or treble damage claims; indicate single damages only.    **TOTAL:** | $ 50,000-74,000+ |

| CONTRACT CLAIMS | AMOUNT |
|---|---|

☑ **This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. R. Civ. P. 8.1(a)**

| Provide a detailed description of the claim(s)The Court hAS POWER TO GRANT ANY APPROPRIATE LEGAL OR EQUITABLE RELIEF FOR violations of federal (&state)consumer financial law,refund of monies, paid restitution,disengagement, or compensation for unjust enrichment,& civil money penalties. | $ _____ |
| | $ _____ |
| | $ _____ |
| For this form, disregard double or treble damage claims; indicate single damages only.    **TOTAL:** | $ 100+ millions |

| ATTORNEY FOR PLAINTIFF (OR UNREPRESENTED PLAINTIFF) | DEFENDANT'S NAME AND ADDRESS: (see attached) |
|---|---|
| Peter R.Rumbin | Office of the General Counsel |
| SIGNATURE                                    DATE Peter R. Rumbin | US Dept of ED, 400 Maryland Ave.SW |
| PRINT OR TYPE NAME                    B.B.O.# 87 Second St. | Washington,DC 20202 |
| ADDRESS Hamden,CT 06514 | |

CERTIFICATION PURSUANT TO SJC RULE 1:18: I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

Signature of Attorney on Record: _Peter R. Rumbin_                    Date: JULY 31, 2025

12.18

# EXHIBIT B

# WELLS FARGO
# CLIENT DIRECT

**WELLS FARGO BANK**
**420 MONTGOMERY ST**
**SAN FRANCISCO, CA**
**MAC: A0101-020**

### BATCH COVER SHEET

DATE SERVED:  11 / 3 / 2025

TO:   Service of Process / Corporation Service Company

OVERNIGHT:   Corporation Service Company
Attn: SOP / Wells Fargo
1201 Hays Street
Tallahassee, FL 32301-2699
800-927-9801

FROM:   Eric Roddie
333 Market St
San Francisco, CA 94105

COMMENTS/NOTES:   First-class: 27    TOTAL: 41
Certified: 12
Priority: 2

**Please read this section: The date on this cover sheet is the date that the sending Wells Fargo Mail Services team received this service. CSC has a mandatory date served field and this date will be entered as we may not have the actual date served.**

This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential, and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please advise the sender immediately and delete this message. Thank you.

© 2024 Wells Fargo and Company

| **SUMMONS** | DOCKET NO.<br><br>2577 CV 00816 | **Massachusetts Trial Court**<br>**Superior Court** |
|---|---|---|

| Peter R. Rumbin | |
|---|---|
| PLAINTIFF(S) | Thomas H. Driscoll | CLERK OF COURTS |
| v. | | |
| Wells Fargo Bank(& Company) | Essex | COUNTY |
| DEFENDANT(S) | | |

EllenR.Patterson,Senior EX. VP & Gen Counsel

**THIS SUMMONS IS DIRECTED TO** Wells Fargo & Co. _____ (Defendant's name).

**You are being sued.** The Plaintiff(s) named above started a lawsuit against you. A copy of the Plaintiff(s)'

Complaint filed against you is attached to the Summons, and the original Complaint has been filed in

EBSEX _____ Superior Court.

### YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.

1. **You must respond to this lawsuit in writing within 20 days.**

   If you do not respond, the Court may decide the case against you and award the Plaintiff(s) everything

   requested in the Complaint. You will also lose the opportunity to tell your side of the story. You must respond

   to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff(s). **If you need more time**

   **to respond, you may request an extension of time in writing from the Court.**

2. **How to Respond.**

   To respond to this lawsuit, you must file a written response with the Court **and** mail a copy to the Plaintiff(s)'

   attorney, or the Plaintiff(s) if they are not represented by a lawyer. You can do this by:

   a) Filing your **signed original** response with the Clerk's Office for Civil Business in Essex _____

      Superior Court, by mail, in-person, or electronically through the web portal **www.eFileMA.com** if the

      Complaint was e-filed through that portal; or

   b) Delivering or mailing a copy of your response to the Plaintiff(s)' attorney, or the Plaintiff(s) if they are

      not represented by a lawyer, at the following address: Peter R. Rumbin,plaintiff,

   pro se, 87 Second ST.Hamden,CT 06514;

   Ms. Katia Baltimore,sec't, 188 Crocker Court,Orange, CT 06472

   TEL: (203)-494-5229

   email: KATIB5261@gmail.com.

TRUE ATTEST COPY

DEPUTY SHERIFF

10/27/25

3. **What to Include in Your Response.**

An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the facts alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in Court. If you have any claims against the Plaintiff(s), called counterclaims, that are based on the same facts or events described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff(s) about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your Court no more than 10 days after sending your Answer.

Another way to respond to a Complaint is by filing a "Motion to Dismiss" if you believe that the Complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Massachusetts Rules of Civil Procedure, Rule 12.** If you are filing a Motion to Dismiss, you must follow the filing rules for "Civil Motions in Superior Court," available at:

**www.mass.gov/law-library/massachusetts-superior-court-rules**

4. **Legal Assistance.**

You may wish to get legal help from a lawyer. If you cannot find or afford legal help, some basic information for self-represented litigants is available at: **www.mass.gov/courts/selfhelp**.

5. **Required Information on All Filings.**

The "DOCKET NO." appearing at the top of this Summons is the unique case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness: <u>Hon. Michael D. Ricciuti, Chief Justice</u>, on this date, _____<u>7/30/25</u>_____. (Seal)

Clerk: <u>Thomas H. Driscoll, Jr.</u> _____.

**Note:** The docket number assigned to the original Complaint by the Clerk should be stated on this Summons before it is served on the Defendant(s).

### PROOF OF SERVICE OF PROCESS

I certify that on this date, _____, I served a copy of this Summons, together with a copy of the Complaint, on the Defendant named in this Summons, in the following manner (See Rule 4(d)(1-5) of the Massachusetts Rules of Civil Procedure):

_____

_____

_____

DATE: _____    Signature: _____

**TO PROCESS SERVER:**

**PLEASE ENTER THE DATE THAT YOU MADE SERVICE ON THE DEFENDANT IN THIS BOX – BOTH ON THE ORIGINAL SUMMONS AND ON THE COPY OF THE SUMMONS SERVED ON DEFENDANTS.**

DATE: _____

Date Filed 12/16/2025 6:05 PM
Superior Court - Essex
Docket Number 2577CV00816   Case 1:26-cv-10247-ADB   Document 7-1   Filed 01/24/26   Page 30 of 148

1

Superior Court                                    State of Massachusetts

Peter R. Rumbin, Plaintiff                       Doc. No.: 2577CV00816

VS                                               July 31,2025

Office of the General Counsel, US Dept of Education, Ms. Sheri Cann, CEO, President, F. H. Cann & Associates (North Andover, Mass), Scott Bassent, Department of The US Treasury, Ellen R. Patterson, Senior Ex. VP, General Counsel, Wells Fargo & Co., Elizabeth Shanin, VP & General Counsel, University of Chicago, Defendants

**Complaint for the University of Chicago Student Loan case-US Borrower Defense Application Predatory Lending Program Settlement**

## A BRIEF BACKGROUND

Attorney Ira B. Grudberg has been counsel of record since the plaintiff was sued in Federal Court in 1989-1990 for student loans borrowed for one year while Mr. Rumbin, defendant at that time, was an University of Chicago student. The University of Chicago engaged in what is now termed: "predatory lending" and treated "students of need as students of means." The U. of Chicago received PELL/BEOG grant funds to pay for his education but instead of crediting these funds towards his education bill, the U. of Chicago pocketed the funds and then proceeded to borrow—which was unnecessary if the grant monies had been credited towards his education bill. Thus the U. of Chicago unjustly enriched itself and others. The U. of Chicago was caught embezzling and committing fraud when Harvard College financial aid office requested a financial aid transcript from the U. of Chicago. Harvard discovered these financial aid "irregularities" and then Harvard directed the plaintiff to inform the US Dept of Ed in Chicago, Illinois of the problem. US Dept of Ed in Chicago investigated the U. Of Chicago for "predatory lending" and embezzlement-fraud of plaintiff's BEOG/PELL grant funds. As a consequence of the investigation, the U. of Chicago returned the BEOG/PELL grant funds that it had embezzled and committed fraud for but not the loans. Plaintiff withdrew from the U. of Chicago and never borrowed again. He attended Harvard on a full scholarship.

The Connecticut Savings Bank refused to lend any more money to the U. of Chicago because (1) it did not like how U. of Chicago was conducing itself and (2) plaintiff's mother was dying from cancer and the bank refused to extend any more loans under the circumstances as it thought it would be imprudent. Furthermore, the U. of Chicago had requested that the plaintiff's parents take out a "second mortgage" in order to obtain more money. The bank also denied this requested and directed the plaintiff's parents to "have

Date Filed 12/16/2025 6:05 PM
Superior Court - Essex
Docket Number 2577CV00812    Case 1:26-cv-10247-ADB    Document 7-1    Filed 01/24/26    Page 31 of 148

2

your son withdraw from the U. of Chicago" and so he withdrew from U. of Chicago and never returned.

Since 1979, Ira Grudberg has been counsel of record when he first struggled to obtain a transfer credit transcript for over three years from the former dean of students, Professor Lorna Strauss of the University of Chicago.

Then, in 1989-1990, Grudberg represented Mr. Rumbin (then defendants) when he was sued for the student loans by the US Depts of Treasury and Education in Chicago and then Connecticut, US District Courts. Grudberg, won the student loan case in Federal Court in 1990 by stipulated agreement of the parties dismissed with prejudice against them (US Dept of Ed and Treasury et al). Plaintiff only borrowed student loans for this one year while a student attending U. of Chicago, withdrew and never borrowed again. All the loans were included in the stipulated agreement dismissed with prejudice against the US Depts of Ed and Treasury (see attached court order UD District Judge Warren Eginton and discovery-interrogatories etc.).

In 2011 due process was revoked by an act of US Congress and offsets commenced thereupon against the plaintiff, Mr. Rumbin, until 2024. This act of Congress permitted the US Depts of Treasury and Education to seize money and assets without suing in court and obtaining a favorable judgement from the court. Hence revoking due process, the US Depts of Ed and Treasury "could do an end run around the stipulated agreement of the parties, dismissal with prejudice against them" and thus it resorted to "self-help" by removing due process in the student loan case to avoid the previous court order signed by a Federal judge, Warren Eginton. Now the US Depts of Ed and Treasury did not have to sue in court and win a judgement before a judge to seize a student's monies and assets. The "claw back program" of 2024 imposed offsets of 100 percent by the US Dept of Treasury against plaintiff's income and total loss of health insurance except if you could pay for it and/or find a medical insurance company. This draconian policy caused significant hardships.

In 2011 a civil suit was filed against the defendants in US District Court, followed by a brief to the US Second Circuit Court of Appeals. Then Grudberg filed two writs of certiorari to SCOTUS (one with President Joe Biden) on behalf of the plaintiff, joined the class action suit Sweet vs DeVos (Sweet vs Cordola): borrower defense-predatory lending program of the US Dept of ED and three borrower defense program applications for predatory lending against the defendants with the US Dept. of ED. Recently, Grudberg won the borrower defense- predatory lending case before the General Counsel of the US Dept of Education (Washington, DC). This is the second time Grudberg and the plaintiff have won his student loan case in court. In this student loan case against the U. of Chicago, litigation by the

plaintiff commenced in 2011 and has continued until the present. But this case has been ongoing since 1979.

Compensation appropriate for this huge consumption of time and resources is justifiable and necessary to prevent its reoccurrence. Ira Grudberg, is counsel of record for the two writs of certiorari to SCOTUS, class action suit: Sweet vs Cordola (Sweet vs DeVos) with Harvard Law School et al as part of the borrower defense program-predatory lending (submitted three applications). Ira B. Grudberg, instructed the plaintiff to keep his name upon all pleadings since he is counsel of record for them.

The plaintiff hereby notices the court of the affirmative judgement discharging all debts in favor of the plaintiff by the class action suit Sweet vs Cordola-borrower defense application program for predatory lending issued by the General Counsel, US Dept. of Education. The defendants must be compelled to comply with this ruling. This "foreign judgement" according to rule M. G. L. 218, sec 4A is attached herein. Plaintiff requests the assistance of the court in enforcing judgement upon the defendants. (see attached affidavit and documents)

Plaintiff enlists the assistance of the court for execution of judgment upon the defendants for all outstanding debts claimed by them.  F.H. Cann & Associates claims $10,000 owed. Other defendants have ignored solicitations for monies that they claim are owed to them and to pay for damages and legal costs etc. Plaintiff requests that all debts be settled immediately by the defendants and that the court absolve the plaintiff of any financial liability whatsoever now and in the future. (Please read writ of certiorari, addendum and for a comprehensive history and legal case law).

## RELIEF SOUGHT

1.To cease and desist the unlawful seizure of property and monies; ignoring a prior judge's ruling of dismissal with prejudice against the defendants by stipulated agreement of the parties; Plaut v. Spendthrift Farms, res judicata, United Student Aid Funds, Inc. v. Espinosa, No appeal or modification of 1990 ruling was ever sought by defendants for over 30 years.

2. Return of what monies have been seized; total sum, with interest, of all payments, tax returns, fees, penalties, interest etc.

3. A Court order stopping any further taking of any funds or property from the plaintiff, Peter R. Rumbin

4. Reimbursement of all legal counsel fees and expenses as a result of the defendants' actions.

**5.** Counter suit on predatory lending, Dodd-Frank Consumer Protection Act or other applicable laws or relief as the court or legal counsel deem appropriate.

## THE COURT'S POWER TO GRANT RELIEF

The FCPA empowers this court to grant any appropriate legal or equitable relief with respect to violations of federal consumer financial law, the refund of monies, paid restitution, disengagement, or compensation for unjust enrichment, and civil money penalties. 12U.S.C.455565(A)(1). (p.31 Writ of certiorari to SCOTUS, Ira B. Grudberg, ESQ, counsel of record for plaintiff) The foregoing discussion is derived from Ira B. Grudberg's pleadings and instructions to the plaintiff. Attorney Ira B. Grudberg represented the plaintiff from 1979 until the recent present.

Respectfully submitted to the court:

Peter R. Rumbin, plaintiff (pro se)    ( Ms. Katia Baltimore, Sec't/Assist.,188 Crocker Court,

87 Second ST. Hamden, CT 06514      Orange, CT 06477, TEL 203-494-5229, messages)

Certification_____

It is hereby asserted that a copy of the above was sent to the defendants of record found on the cover sheet to the complaint and herein follows below this day July 31, 2025 by plaintiff, Peter R. Rumbin, 87 Second Street, Hamden, CT 06514:

US Dept of ED, Office of General Counsel, 400 Maryland Ave. SW, Washington, DC 20202

Sheri Cann, CEO, President, F. H. Cann & Associates, 1600 Osgood St., Suite 3058, North Andover, Mass. TEL 877-750-9804;

Department of the Treasury, Scott Bassent, secretary, 1500 Pennsylvania Ave. NW., Washington, DC 20220, TEL. (202)-622-2000

Ellen R. Patterson, Senior EX VP, General Counsel, Wells Fargo & Co., Corporate Offices, 420 Montgomery St., San Francisco, CAL 94104

Elizabeth Shanin, Interim VP and General Counsel, U. of Chicago, (Professor Lorna Strauss, former dean of students), Edward H. Levi Hall, Suite 619, 5801 S. Ellis Ave., Chicago, Illinois 60637; Tel 773-702-8873

Affidavit For Foreign Judgement (M.G, L. 218, Sec.4A)    State of Massachusetts

Doc. No.:    Superior Court---Civil

Case: Rumbin, Peter R.

VS

Office of the General Counsel, US Dept. of Ed, F.H. Cann & Associates, Department of the Treasury, Scott Bassent, Ellen R. Pattersson, VP, Wells Fargo & Co., Elizabeth Shanin, Gen Counsel, U. of Chicago

## AFFIDAVIT

I certify that the following is true that the attached favorable judgement by the General Counsel of the US Dept. of Education is a true copy of the ruling. Furthermore, to corroborate the court order stipulated agreement dismissal with prejudice against the defendants issued by Warren Eginton also discharges all loans and interrogatories, and discovery inventory all loans that were discharged in 1990 ruling that disclosed all loans and are therefore discharged today. The court may corroborate these documents itself if it wishes. Documents are attached hereafter.

Peter R. Rumbin, plaintiff, pro se, 87 Second Street, Hamden, Conn. 06514

Sworn to before me    *this 31st Day 1 July 2025*

*Frak Genico
Notary
Commission expires
10·31·2029*

Date signed

*7·31·2025*

Superior Court                          State of Massachusetts

Peter R. Rumbin, Plaintiff              Doc. No:

VS                                      July 31,2025

Office of the General Counsel, US Dept of Education, Ms. Sheri Cann, CEO, President, F. H. Cann & Associates (North Andover, Mass), Scott Bassent, Department of The US Treasury, Ellen R. Patterson, Senior Ex. VP, General Counsel, Wells Fargo & Co., Elizabeth Shanin, VP & General Counsel, University of Chicago, Defendants

**Counter Suit on Predatory Lending, Dodd-Frank Consumer Protection Act and other applicable laws or relief as the court or legal counsel deem appropriate.**

The plaintiff hereby files a counter suit on Predatory lending against the defendants for their malfeasances and malevolent behavior against the plaintiff that spans from 1979 to the present. The predatory lending has cause disruption of the plaintiff's education, career development, destroyed his credit worthiness and lifetime income. The defendants unjustly enriched themselves at the expense of the students of need by treating them as students of means. U. of Chicago has increased its endowment tremendously; Wells Fargo Bank has paid billions of dollars in fines for its unjust and unfair credit behavior but has made billions of dollars in the conduct of this student loan business, and likewise, for F.H. Cann & Associates, US Depts of Ed and Treasury. The colleges pursued a prescription of ever-increasing fees, tuition and room and board costs by simply saddling students with ever increasing debts while the college administrators paid themselves multi-million-dollar salaries, expensive housing and pensions.

Meanwhile poor students, like me, were burdened with unmanageable debts. In the plaintiff's case, the U. of Chicago committed fraud and embezzlement to keep the PELL/BEOG grant funds for itself. Most students would have been unaware of this occurrence unless another college had requested a financial aid transcript as the plaintiff had when he attended Harvard. During this time, the college's financial aid office of the U. of Chicago did not have to provide any accounting of the fund's whereabouts to the student. Hence abuse was easily committed to enrich the college, while harming the student, me. For these reasons and others (see writ of certiorari etc.) the defendants should be required to pay the plaintiff compensation for this counter suit on their predatory lending and draconian conduct for 48 years!

Date Filed 12/16/2025 6:05 PM
Superior Court - Essex
Docket Number 2577CV00818
Case 1:26-cv-10247-ADB    Document 7-1    Filed 01/24/26    Page 36 of 148

7

Respectfully submitted:

Respectfully submitted to the court:

Peter R. Rumbin, plaintiff (pro se)

87 Second Street, Hamden, Conn. 06514

Certification_____

It is hereby asserted that a copy of the above was sent to the defendants of record found on the cover sheet to the complaint and herein follows below this day July 31, 2025 by plaintiff, Peter R. Rumbin, 87 Second Street, Hamden, CT 06514:

US Dept of ED, Office of General Counsel, 400 Maryland Ave. SW, Washington, DC 20202

Sheri Cann, CEO, President, F. H. Cann & Associates, 1600 Osgood St., Suite 3058, North Andover, Mass. TEL 877-750-9804;

Department of the Treasury, Scott Bassent, secretary, 1500 Pennsylvania Ave. NW., Washington, DC 20220, TEL. (202)-622-2000

Ellen R. Patterson, Senior EX VP, General Counsel, Wells Fargo & Co., Corporate Offices, 420 Montgomery St., San Francisco, CAL 94104

Elizabeth Shanin, Interim VP and General Counsel, U. of Chicago, (Professor Lorna Strauss, former dean of students), Edward H. Levi Hall, Suite 619, 5801 S. Ellis Ave., Chicago, Illinois 60637; Tel 773-702-8873

| CIVIL TRACKING ORDER (STANDING ORDER 1- 88) | DOCKET NUMBER 2577CV00816 | Trial Court of Massachusetts The Superior Court |
|---|---|---|

| CASE NAME: Rumbin, Peter R. vs. Scott Bassent In his/her capacity as Department of The US Treasury et al | Thomas H. Driscoll, Jr., Clerk of Courts Essex County |
|---|---|
| TO: Peter R Rumbin 87 Second Street Hamden, CT 06514 | COURT NAME & ADDRESS Essex County Superior Court - Lawrence 43 Appleton Way Lawrence, MA 01841 |

### TRACKING ORDER - A - Average

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

**STAGES OF LITIGATION**                        **DEADLINE**

| | SERVED BY | FILED BY | HEARD BY |
|---|---|---|---|
| Service of process made and return filed with the Court | | 10/27/2025 | |
| Response to the complaint filed (also see MRCP 12) | | 11/26/2025 | |
| All motions under MRCP 12, 19, and 20 | 11/26/2025 | 12/26/2025 | 01/26/2026 |
| All motions under MRCP 15 | 09/22/2026 | 10/22/2026 | 10/22/2026 |
| All discovery requests **and depositions** served and non-expert depositions completed | 07/19/2027 | | |
| All motions under MRCP 56 | 08/18/2027 | 09/17/2027 | |
| Final pre-trial conference held and/or firm trial date set | | | 01/17/2028 |
| Case shall be resolved and judgment shall issue by | | | 07/28/2028 |

**The final pre-trial deadline is not the scheduled date of the conference.** You will be notified of that date at a later time.

**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**

This case is assigned to

| DATE ISSUED 07/30/2025 | ASSISTANT CLERK Debra Vernava | PHONE (978)242-1900 |
|---|---|---|

Date Filed 12/16/2025 6:05 PM
Superior Court - Essex
Docket Number 2577CV00816
Case 1:26-cv-10247-ADB   Document 7-1   Filed 01/24/26   Page 38 of 148

Reset Form

**'CIVIL ACTION COVER SHEET**

**DOCKET NUMBER** 2577CV00816

**Massachusetts Trial Court**
**Superior Court** T.H.Driscoll,Jr
clerk

Help-Party Information

**COUNTY** ESSEX

| | |
|---|---|
| Plaintiff Peter R. Rumbin | Defendant: US Dept of Ed |
| ADDRESS: 87 Second St. | ADDRESS: Office of the General Counsel |
| Hamden,Conn. 06514 | 400 Maryland Ave.SW |
| | Washington,DC 20202 see attached |
| Plaintiff Attorney: | Defendant Attorney additional Defendants |
| ADDRESS: | ADDRESS: |
| | |
| | |
| BBO: | BBO: |

Add Parties     Remove Parties

**TYPE OF ACTION AND TRACK DESIGNATION (see instructions section on next page)**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| BG1 | Fin. Institutions | A | YES  X NO |

*If "Other" please describe:  Student loan predatory lending

Is there a claim under G.L. c. 93A? Yes          Is there a class action under Mass. R. Civ. P. 23? Yes

Won case by stipulated   NO   Sweet vs Cordona,2024   YES   NO US Dist.No.Cal
ageement of def.dismissed   Harvard L.Sch et al
with prejudice against them(1990,I.B.Grudberg esq)

STATEMENT OF DAMAGES REQUIRED BY G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money damages.
(Note to plaintiff: for this form, do not state double or treble damages; indicate single damages only.)

**TORT CLAIMS**

A. Documented medical expenses to date   March 2025 Gen.Counsel US Dept of ED discharged debt

1. Total hospital expenses      _____
2. Total doctor expenses      _____
3. Total chiropractic expenses      _____
4. Total physical therapy expenses      _____
5. Total other expenses (describe below)      _____

| | |
|---|---|
| | Subtotal (1-5):  _____  $0.00 |

B. Documented lost wages and compensation to date      _____
C. Documented property damages to date      _____
D. Reasonably anticipated future medical and hospital expenses      _____
E. Reasonably anticipated lost wages      _____
F. Other documented items of damages (describe below)      _____

Offsets,debts, legal costs, punitive,&Tort

| | |
|---|---|
| SEE Complaint | TOTAL (A-F):  _____  $0.00 |

G. Briefly describe plaintiff's injury, including the nature and extent of the injury:

| |
|---|
| |

**CONTRACT CLAIMS**

This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. R. Civ. P. 8.1(a).

| Item # | Detailed Description of Each Claim | Amount |
|---|---|---|
| 1. | $5,000 student loan c.$890 (Wells Fargo Bank)? | C.$6,000 |
| | $16,000 F.H.Cann & Associates, No. Andover, Mass. | Total C.$16,000 |
| | Offsets C. $12,000-14,000+ (US Treasury & ED.) | Add Claim   Delete Claim |

Signature of Attorney/Self-Represented Plaintiff: X /s/ Peter R.Rumbin      Date July 31, 2025

RELATED ACTIONS: Please provide the case number, case name, and county of any related actions pending in the Superior Court.

| |
|---|
| |

CERTIFICATION UNDER S.J.C. RULE 1:18(5)

I hereby certify that I have complied with requirements of Superior Court Rule 1:18 Uniform Rules on Dispute Resolution requiring that I inform my clients about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

| Signature of Attorney: X /S/ | Date: July 31 , 2025 |
|---|---|
| SC0001: 02/24 | www.mass.gov/courts | Date/Time Printed:08-22-2024 13:36:5 |

SHERI CANN, CEO, president

Defendants: F.H.Cann & Associates, 1600 Osgood Street,Suite 3058,
North Andover, Mass.TEL 877-750-9804

Department of The Treasury, scott BASSENT
1500 Pennsylvania Ave.NW
Washington,DC 20220,Tel (202)-622-2000

Ellen R. Patterson, Senior Executive Vice President,General
Counsel
Wells Fargo & Company, Corporate Offices
420 Montgomery Street, San Francisco, CAL.94104

Elizabeth Shanin, Interim Vice President and General
Counsel
The University of Chicago
Edward H,Levi Hall, Suite 619
5801 S. Ellis Ave.
Chicago,Illinois 60637
Tel 773-7028873
-----------------------------------------------------

COMPLAINT: Please see attached writ of certiorari and
addendum and documents.
COMPLAINT

## STATEMENT OF DAMAGES
### G.L. c. 218, § 19A(a)

DOCKET NO. 2S77CV00816

**Trial Court of Massachusetts**

| PLAINTIFF(s) | DEFENDANT(s) | DATE FILED |
|---|---|---|
| Peter R. Rumbin | US Dept of ED,U of Chicago,F.H. Cann,Wells Fargo Bank,US Treasury | July 31,2025 |

INSTRUCTIONS: THIS FORM MUST BE COMPLETED AND FILED WITH THE COMPLAINT OR OTHER INITIAL PLEADING IN ALL DISTRICT AND BOSTON MUNICIPAL COURT CIVIL ACTIONS SEEKING MONEY DAMAGES.

COURT DIVISION
Superior Court-Mass-Civil

| TORT CLAIMS | AMOUNT |
|---|---|
| A.  Documented medical expenses to date: | |
|   1. Total hospital expenses: . . . . . . . . . . . . . . . . . . . | $ _____ |
|   2. Total doctor expenses: . . . . . . . . . . . . . . . . . . . . | $ _____ |
|   3. Total chiropractic expenses: . . . . . . . . . . . . . . . . . | $ _____ |
|   4. Total physical therapy expenses: . . . . . . . . . . . . . . . | $ _____ |
|   5. Total other expenses (describe) _____ | $ _____ |
|   SUBTOTAL: | $ _____ |
| B.  Documented lost wages and compensation to date: . . . . . . . . . . . . . . . | $ _____ |
| C.  Documented property damages to date: . . . . . . . . . . . . . . . | $ _____ |
| D.  Reasonably anticipated future medical and hospital expenses: . . . . . . . . . | $ _____ |
| E.  Reasonable anticipated lost wages: . . . . . . . . . . . . . . . | $ _____ |
| F.  Other documented items of damage (describe): Offsets,legal fees, Debts, Class Action:Sweet v.Cordona,writs(2),Briefs etc. | $ _____  c$40723 |
| G.  Brief description of Plaintiff's injury, including nature and extent of injury: Predatory lending etc. Loss of credit, loss of educational and career opportunities etc. | |
| For this form, disregard double or treble damage claims; indicate single damages only.    **TOTAL:** | $ 50,000-74,000+ |

| CONTRACT CLAIMS | AMOUNT |
|---|---|
| ☒ This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. R. Civ. P. 8.1(a) | |
| Provide a detailed description of the claim(s) The Court hAS POWER TO GRANT ANY APPROPRIATE LEGAL OR EQUITABLE RELIEF FOR violations of federal (&state)consumer financial law,refund of monies, paid restitution,disengagement, or compensation for unjust enrichment,& civil money penalties. | $ _____ <br> $ _____ <br> $ _____ |
| For this form, disregard double or treble damage claims; indicate single damages only.    **TOTAL:** | $ 100+ millions |

| ATTORNEY FOR PLAINTIFF (OR UNREPRESENTED PLAINTIFF) | DEFENDANT'S NAME AND ADDRESS: (see attached) |
|---|---|
| Peter R.Rumbin | Office of the General Counsel |
| SIGNATURE  Peter R. Rumbin    DATE | US Dept of ED, 400 Maryland Ave.SW |
| PRINT OR TYPE NAME    B.B.O. # | Washington,DC 20202 |
| 87 Second St. | |
| ADDRESS  Hamden,CT 06514 | |

CERTIFICATION PURSUANT TO SJC RULE 1:18: I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

Signature of Attorney on Record: Peter P. R. Rumbin     Date: JULY 31,2025

12.18

# NOTICE OF APPEARANCE

**DOCKET NUMBER**
2577CV00816

**Massachusetts Trial Court**

## CASE NAME

Peter R. Rumbin

v.

U. of Chicago,F.H.Cann & Assoc.Office of the general Counsel,US Dept of Ed;Dept of Treasury,Wells fargo  & Associates

## COURT DEPARTMENT (Select only one court.)

☐ Boston Municipal Court   ☐ District Court   ☐ Housing Court
☐ Juvenile Court   ☐ Land Court
☐ Probate & Family Court   ☒ Superior Court

## COURT DIVISION OR COUNTY

Mass.ESSEX   Superior Court

---

### Notice of Appearance

Please enter my appearance in this case:

☒☒ for myself.

☒ as attorney for: Peter R. Rumbin , plaintiff

---

**Please print or type all of the information requested below.**

| | |
|---|---|
| **NAME (FIRST, MIDDLE, LAST)**<br>Ira B. Grudberg,Esq,        Peter R.Rumbin<br>(recently deceased) | **B.B.O. OR STATE BAR NUMBER (IF APPLICABLE)**<br>(Pro se) |
| **FIRM OR AGENCY NAME (IF APPLICABLE)**<br>Ms. Katia Baltimore,Sect/Assistant to PRR<br>188 Crocker Court<br>Orange, Conn 06472 | **OFFICE OR HOME PHONE NUMBER**<br>Katia Baltimore,sec't<br>203-494-5229 |

| **STREET ADDRESS**<br>114 Laurel Crest Rd.        87 Second ST<br>Hamden,CT 06514 | **APT/UNIT #** | **MOBILE PHONE NUMBER** |
|---|---|---|

| **CITY/TOWN**<br>Madison, | **STATE**<br>CT | **ZIP CODE**<br>06443 | **E-MAIL ADDRESS**<br>KATIB52612@GMAIL.COM |
|---|---|---|---|

| **DATED**<br>FEB.5,2025 | **SIGNATURE** |
|---|---|

EOS CCA
PO BOX 5369
NORWELL MA 02061-5369
FORWARD SERVICE REQUESTED

| Account # | Client Reference # | Total Due : |
|---|---|---|
| 21-2547049 | N198905001250601 | **$ 16953.43** |

| Do not send cash | NOTE NAME / ADDRESS / PHONE NO. CHANGES ON BACK OF COUPON |
|---|---|
| Make checks payable to: U.S. Department of Education | |
| Show your social security number on your check | |

Return this portion with your payment

**SEND PAYMENT TO:**
00-28A

S-ONCCOA21 L-28A (ED001) A-21-2547049-12
P1GKF700204104 I05037
PETER RUMBIN
87 2ND ST
HAMDEN CT 06514-4711

NATIONAL PAYMENT CENTER
PO BOX 105028
ATLANTA GA 30348-5028

4 320443873290 0000004950 00000538    4 320443873290 0003302011 16953430

✂ Detach Upper Portion And Return With Payment ✂                March 30, 2011

EOS CCA
700 LONGWATER DRIVE
PO BOX 5369
NORWELL MA 02061-5369
Toll Free : 1-877-863-9438



**Office Hours :**
Monday - Thursday 7:00AM - 8:00 PM  PT
Friday              7:00AM - 5:00 PM  PT
Saturday            7:00AM - 12:00 PM PT

## *** FIRST DEMAND NOTICE ***

RE : Your Account with our client : U.S. DEPARTMENT OF EDUCATION
Client Reference # : N198905001250601
EOS CCA Account # : 21-2547049                          Total Due:  $16953.43

Your account(s) has been placed with us for collection. Please see below for details of your outstanding obligation. This is a demand for payment of your debt.

We urge you to remit payment to the National Payment Center, using the top portion of this coupon.  If you dispute this debt please see the reverse side of this notice for important rights.

| DEBT ID # | PRINCIPAL | INTEREST | CHARGES | BALANCE |
|---|---|---|---|---|
| N198905001250601 | $0.00 | $0.00 | $0.00 | $0.00 |
| F198105000054801 | $0.00 | $0.00 | $0.00 | $0.00 |
| G199909004165601 | $2586.30 | $4230.98 | $1659.38 | $8476.66 |
| G199909004165702 | $2586.30 | $4231.07 | $1659.40 | $8476.77 |
| | | | Total Due: | $16953.43 |

NOTE: Your account is accruing interest on a daily basis; please contact our office for an exact payoff amount.

All payments should be mailed to: National Payment Center P.O. Box 105028 Atlanta, GA  30348-5028.

Please direct disputes or other correspondence regarding your account to:
**EOS CCA ED Administrative Unit, PO Box 5369, Norwell, MA 02061-5369**

This communication is from a debt collector. This is an attempt to collect a debt. Any information obtained will be used for that purpose.

IED001                                                                          28A

## PLEASE SEE REVERSE SIDE FOR IMPORTANT RIGHTS

| | ACCOUNT NO. | PRINCIPAL BAL. | INTEREST |
|---|---|---|---|
| DO NOT SEND CASH MAKE CHECKS PAYABLE TO: U.S. DEPARTMENT OF EDUCATION SHOW YOUR SOCIAL SECURITY NUMBER ON YOUR CHECK | SXXX-XX-7329 | $5,172.60 | $8,470.81 |
| | PENALTY CHARGES | FEES & COSTS | TOTAL BALANCE |
| | $0.00 | $0.00 | $13,643.41 |

## RETURN THIS PORTION WITH YOUR PAYMENT
NOTE NAME/ADDRESS/PHONE NO. CHANGES ON BACK

| AMOUNT PAID: | | |

D019086896

017931  1482  047519
PETER R RUMBIN
87 2ND ST
HAMDEN CT  06514-4711

SEND PAYMENT TO:

ᵗₗᵢₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗ

NATIONAL PAYMENT CENTER
US DEPARTMENT OF EDUCATION
PO BOX 105028
ATLANTA GA 30348-5028

5 340190868964 0000001158 00000709    5 340190868964 0004092011 13643412

--------------------------------------------------------------------------------

KEEP THIS PORTION FOR YOUR RECORDS

# U.S. DEPARTMENT OF EDUCATION

DATE: APRIL 9, 2011

### NOTICE OF UNPAID BALANCE

OUR RECORDS INDICATE THAT THE DEPARTMENT OF EDUCATION RECENTLY CREDITED
TO YOUR ACCOUNT FUNDS TAKEN BY OFFSET OF FEDERAL PAYMENTS OWED TO YOU,
AND THAT, AS OF THE DATE OF THIS NOTICE, YOU STILL OWE THE DEPARTMENT
THE BALANCE SHOWN ABOVE.

PLEASE SEND THAT AMOUNT, ALONG WITH THE DETACHABLE COUPON AT THE TOP OF
THIS NOTICE, TO THE ADDRESS SHOWN ON THAT COUPON.  PLEASE BE SURE TO
WRITE YOUR NAME, ADDRESS AND SOCIAL SECURITY NUMBER ON YOUR CHECK OR
MONEY ORDER.  PLEASE DO NOT SEND CASH.

#### AVOID OFFSET NEXT YEAR!

YOU MAY BE ABLE TO AVOID OFFSET NEXT YEAR WITHOUT PAYING THE FULL AMOUNT
OF YOUR DEBT.  BY MAKING MONTHLY PAYMENTS YOU MIGHT BECOME ELIGIBLE FOR
THE CONSOLIDATION OR REHABILITATION PROGRAMS, OR YOU MAY BE ABLE TO
NEGOTIATE A LOWER PAYOFF BALANCE.

IF YOU WISH TO MAKE PAYMENT BY CREDIT CARD, IF YOU HAVE ANY QUESTIONS,
OR IF YOU WISH TO ESTABLISH A MONTHLY PAYMENT PLAN, PLEASE CONTACT THE
DEPARTMENT'S CUSTOMER SERVICE CENTER AT 1-800-621-3115.

THIS NOTICE PERTAINS ONLY TO DEBTS OWED TO THE U.S. DEPARTMENT OF EDUCA-
TION FOR WHICH WE HAVE PREVIOUSLY WRITTEN TO YOU AND THAT ARE PAYABLE TO
THE NATIONAL PAYMENT CENTER.  THIS PAYOFF AMOUNT DOES NOT INCLUDE ANY
LOAN OBLIGATION FOR WHICH YOU ARE NOW RECEIVING PAYMENT NOTICES FROM ANY
OTHER PARTY, INCLUDING A SCHOOL, A GUARANTY AGENCY, A COMMERCIAL LENDING
INSTITUTION, OR THE DEPARTMENT'S DIRECT LOAN PROGRAM OFFICES.

A58      0004466      019086896                      1104080412



Peter R Rumbin
87 2Nd St
Hamden, CT 06514-4711

March 24, 2025

Borrower Defense Application #: 02094713
Borrower Defense Application School: University of Chicago (The)

Dear Peter R Rumbin:

You are receiving this letter because you are a member of the class of Federal student loan borrowers covered by the recent settlement of the *Sweet v. Cardona* ("*Sweet*") lawsuit. You submitted a Borrower Defense to Repayment discharge application relating to your Federal student loan(s) on or before June 22, 2022. **The Department of Education, applying a special review process agreed to in the Sweet settlement agreement, has approved your claim for settlement relief.** For more information on the terms of the settlement agreement please see the Department's website at https://Studentaid.gov/announcements-events/sweet-settlement.

The Department has determined that you are entitled to settlement relief for the loans taken out on or after 4/15/1977 associated with your enrollment at University of Chicago (The) ("Relevant Federal Student Loan(s)") based on your allegations regarding the school's misconduct. Pursuant to the *Sweet* settlement, the Department of Education will do the following:

- discharge your Relevant Federal Student Loan(s);
- provide a refund for any payments made to the Department of Education on your Relevant Federal Student Loans, including Relevant Federal Student Loan debt that you previously paid off; and
- delete the credit report tradeline associated with the discharged loan(s).

The benefits described in this communication apply to your Relevant *Federal* Student Loan(s). The benefits do not apply to private loans. Discharging your Relevant Federal Student Loan(s) means that you will no longer owe the debt. You also may receive a refund for prior payments made to the Department on your discharged Relevant Federal Student Loan(s) related to University of Chicago (The). Your loan servicer will let you know if you are eligible for a payment refund, which would be mailed to you. Please check your online account with your loan servicer to ensure your address is correct so you can receive any refund.

**Other than confirming your address, you do not have to take any further action to receive your discharge.** Your servicer will send you more details about the discharge, including which loans have been forgiven. Your Relevant Federal Student Loan debt will remain in forbearance and collections will be stopped until you receive relief. Your credit report will also be updated to reflect this discharge when it is complete.

If you have questions about this notice, please call our borrower defense hotline at 1-855-279-6207. You may visit https://studentaid.gov/Contact for our hours of operation.

Sincerely,
U.S. Department of Education
Federal Student Aid



Federal Student Aid

830 First Street NE, Washington, D.C. 20202
StudentAid.gov/borrower-defense

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA,           :

          Plaintiff,                :       Civil No. N 89-522 (WWE)

VS.                                 :

PETER R. RUMBIN,                    :

          Defendant.                :       September 24, 1990

STIPULATION FOR DISMISSAL

     It is hereby stipulated by and between the federal

plaintiff, United States of America, on the one hand, and the

defendant, Peter R. Rumbin, on the other hand, by and through

their respective attorneys as follows:

     1.    That the parties do hereby agree to the dismissal of

the above captioned action with prejudice, each party to bear his

own costs and attorney's fees.

     2.    That the defendant, Peter R. Rumbin agrees to discharge

and hold and save harmless the United States of America and the

Secretary of the United States Department of Education and their

agents, officers and employees from any claims, including costs

or expenses for or on account of any and all lawsuits or claims

of any character whatsoever, in connection with the subject

matter or institution of this action.

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA,          :

          Plaintiff,               :     Civil No. N 89-52...

VS.                                :

PETER R. RUMBIN,                   :

          Defendant.               :     September 26, 1990

### MOTION TO DISMISS

Pursuant to Rule 41 of the Federal Rules of Civil Procedure, the federal plaintiff hereby moves the Court to dismiss this action with prejudice, in accordance with the attached Stipulation.

RESPECTFULLY SUBMITTED,

THE PLAINTIFF

BY: STANLEY A. TWARDY, JR.
UNITED STATES ATTORNEY

CHRISTINE SCIARRINO
SPECIAL ASST. U.S. ATTORNEY
915 LAFAYETTE BLVD.
BRIDGEPORT, CT 06604
(203) 579-5596

*September 27, 1990: motion GRANTED. The clerk is directed to dismiss this action with prejudice and to close this case in accordance with Local Rule 16.*

*Warren W. Eginton, U.S.D.J.*

MICROFILM

SEP 27 1990

PLAINTIFF,

UNITED STATES OF AMERICA

STANLEY A. TWARDY, JR.
UNITED STATES ATTORNEY

DATED SEPTEMBER 24, 1990

CHRISTINE SCIARRINO
SPECIAL ASST. U.S. ATTORNEY
915 LAFAYETTE BLVD.
BRIDGEPORT, CT  06604
(203) 579-5596

DEFENDANT,

PETER R. RUMBIN

DATED SEPTEMBER 25, 1990

BY:
DAVID A. LEFF, ESQ.
JACOBS, GRUDBERG, BELT & DOW
350 ORANGE STREET
NEW HAVEN, CT  06503
HIS ATTORNEY

DEFENDANT,

PETER R. RUMBIN

DATED SEPTEMBER 25, 1990

BY:
PETER R. RUMBIN
87 SECOND STREET
HAMDEN, CT  06514

2

2413 RAYBURN HOUSE OFFICE BUILDING
WASHINGTON, DC 20515-0703
(202) 225-3661

59 ELM STREET
SECOND FLOOR
NEW HAVEN, CT 06510
(203) 562-3718

DURHAM, MIDDLEFIELD/MIDDLETOWN
(860) 344-1159

WEBSITE HTTP://DELAURO.HOUSE.GOV

CHAIR, COMMITTEE ON APPROPRIATIONS

SUBCOMMITTEES
CHAIR

LABOR, HEALTH AND HUMAN SERVICES,
EDUCATION, AND RELATED AGENCIES

# UNITED STATES
# HOUSE OF REPRESENTATIVES

ROSA L. DeLAURO
3RD DISTRICT, CONNECTICUT

July 6, 2022

Mr. Peter R. Rumbin
87 2nd Street
Hamden, Connecticut 06514-4711

Dear Mr. Rumbin:

Thank you for contacting me regarding your continued difficulties with your student loans.

Unfortunately, there is no Administrative remedy and as a Member of the United States Congress, the legal part of this matter is not within my jurisdiction. I would recommend that you continue working with your attorney.

With respect to your $600 EIP from the IRS, it must be claimed on your 2020 Tax Return or an amended 2020 Tax Return if it was already filed.

I am sorry that I am not able to be of direct assistance with this matter though I hope the information I provided is useful. Please feel free to contact me if I can be of assistance in the future.

Sincerely,

ROSA L. DeLAURO
Member of Congress

RLD/lm

I encourage you to visit my website (www.house.gov/delauro).

LAW OFFICES OF

# Jacobs,
# Grudberg,
# Belt &
# Dow, P.C.

350 ORANGE STREET
POST OFFICE BOX 606
NEW HAVEN, CONNECTICUT 06503-0606

TELEPHONE (203) 772-3100
FAX (203) 772-1691

OUR FILE NUMBER        B04-1282

HOWARD A. JACOBS
IRA B. GRUDBERG
DAVID L. BELT
WILLIAM F. DOW, III
JONATHAN KATZ
DAVID T. GRUDBERG
BERNARD CHRISTIANSON
ROSEMARIE PAINE
JOSEPH J. PACKTOR
ALINOR C. STERLING
ANDREW I. SCHAFFER
TRISHA MORRIS PORTO
EDWARD J. McMANUS
JOSHUA D. LANNING

ISRAEL J. JACOBS (1918-1963)

August 2, 2004

Ms. Diane Spadoni
Federal Student Aid
8 31st Street, NE
Washington, D.C. 20202-5464

RE:  Debt No. G199909004165601
     G199909004165702
     Account No. 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

Dear Ms. Spadoni:

I am writing on behalf of Peter Rumbin. Your July 20th letter says it is his position that he "believes" he should not be he held responsible for repaying the student loan. The fact is he was sued on the loan in the United States District in Connecticut at least a decade ago and our position was upheld in that motion. The case was dismissed. It is not a question of what anybody "believes", but what the court held some time ago. I am following up on his letter of July 30th in which he sets that forth. Our office represented him in the suit, and I can inform you that what he tells you is true concerning the suit and the court.

Very truly yours,

JACOBS, GRUDBERG, BELT & DOW, P.C.

By_____
   Ira B. Grudberg

IBG/ad

cc:    Peter Rumbin

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| | X | |
| UNITED STATES OF AMERICA | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | CIVIL NO. N-89-522 (WWE) |
| PETER R. RUMBIN | : | |
| Defendant. | : | |
| | : | JULY 20, 1990 |
| | X | |

MOTION FOR LEAVE TO FILE AMENDED ANSWER

Defendant Peter R. Rumbin moves the Court for leave to file
an amended answer, a copy of which is attached hereto as Exhibit
A, on the ground that the defendant's original answer, filed on
November 3, 1989, was completed by the defendant before he was
represented by counsel. As the defendant has no legal training,
he was unaware of the defenses available to him, and his answer
fails to fully address the legal issues between the parties.
For the foregoing reasons, justice requires that the
defendant be given an opportunity to file an amended answer.


ORAL ARGUMENT NOT REQUESTED

Counsel for plaintiff has been contacted and states that she
has no objection to the granting of this motion.

                    THE DEFENDANT,
                    PETER R. RUMBIN

By _____
                    David A. Leff
                    JACOBS, GRUDBERG, BELT & DOW, P.C.
                    350 Orange Street
                    New Haven, Connecticut  06503
                    (203) 772-3100
                    His Attorneys

FILED
AUG 3   2 31 PM '90

CLERK
U.S. DISTRICT COURT
BRIDGEPORT, CONN.

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

```
_____ X
                                :
UNITED STATES OF AMERICA,       :
              Plaintiff          :
         v.                     :
                                :        CIVIL NO. N-89-522  (WWE)
PETER R. RUMBIN,                :
              Defendant.         :
                                :        JULY 20, 1990
_____ X
```

## AMENDED ANSWER

Now comes the defendant Peter R. Rumbin, for Amended Answer
to the Complaint as follows:

### FIRST DEFENSE

The Complaint fails to state a claim against the defendant
upon which relief can be granted.

### SECOND DEFENSE

The right of action set forth in the Complaint did not
accrue within six years next before the commencement of this
action.

### THIRD DEFENSE

1. The defendant admits the allegations contained in
Paragraph 1 of the Complaint.

2. The defendant admits the allegations contained in
Paragraph 2 of the Complaint.

3. The defendant is without sufficient information to

either admit or deny the allegations contained in Paragraph 3 of the Complaint and leaves the plaintiff to her proof.

4.   The defendant admits that demand has been made upon him for the sum of $2,107.58, by letter of the plaintiff, dated October 5, 1989 (a copy of which is attached hereto as Exhibit A).  The defendant is without information to either admit or deny all other allegations contained in Paragraph 4 of the Complaint and leaves the plaintiff to her proof.

## FOURTH DEFENSE

1.   If any money was loaned to the defendant, such money was loaned to the defendant as part of an underlying agreement to provide financial assistance to the defendant.

2.   The University of Chicago required the defendant to apply for loans as a condition precedent to an award of financial assistance.

3.   The University of Chicago, through its agents, servants, and employees, represented to the defendant that federal grant monies then available to the University of Chicago would be allocated first to meet the defendant's financial assistance requirements before the University of Chicago would require the defendant to take a student loan as part of his award of financial assistance.

4.   Acting in reliance upon the above-recited representation, the defendant was induced to apply for financial assistance from the University of Chicago.

2

5.   Following its review of the defendant's application for financial assistance, the University of Chicago directed the defendant to take a student loan as part of an award of financial assistance.

6.·  The University of Chicago intentionally and deliberately failed to utilize the federal grant monies then available, and despite its failure to exhaust these funds, it required the defendant to take a student loan.

7.   Acting in reliance upon the representation of the University of Chicago that it would exhaust the available federal grant monies first before requiring the defendant to take a student loan, the defendant was caused to incur the onerous and unnecessary burden of a student loan.

WHEREFORE, any obligations arising as a result of any sums loaned by or through the University of Chicago, evidenced by any note or otherwise, are unenforceable against the defendant for the following reasons:

    a.   The defendant was fraudulently induced to incur such obligation by the University of Chicago;

    b.   There was a want or failure of consideration to the underlying agreement to provide financial aid; and

c.  There was a failure to perform a condition precedent
    to the underlying agreement to provide financial
    aid.

                         THE DEFENDANT,
                         PETER R. RUMBIN

                    By _David Leff_____
                         David A. Leff
                         JACOBS, GRUDBERG, BELT & DOW, P.C.
                         350 Orange Street
                         New Haven, Connecticut  06503
                         (203) 772-3100
                         His Attorneys

4

<u>CERTIFICATION</u>

This is to certify that a copy of the foregoing has been

mailed, United States mail, first class postage prepaid, on this

20th day of July, 1990 to:

Carmen Espinoza Van Kirk
Assistant United States Attorney
450 Main Street, Room 328
Hartford, Connecticut  06103

_____
David A. Leff

5

Date Filed 12/16/2025 6:05 PM
Superior Court - Essex
Docket Number 2577CV008?? Case 1:26-cv-10247-ADB    Document 7-1    Filed 01/24/26    Page 57 of 148

4

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA,       :
                Plaintiff,      :

        v.                      : CIVIL NO. N-89-522 WWE

PETER R. RUMBIN,                : ~~DECEMBER 4, 1989~~
                Defendant.      : JANUARY 19, 1990

DEFENDANT'S RESPONSE TO
PLAINTIFF'S FIRST SET OF INTERROGATORIES, FIRST
REQUEST FOR PRODUCTION OF DOCUMENTS AND FIRST
REQUESTS FOR ADMISSIONS

Pursuant to Federal Rules of Civil Procedure 33, 34, and 36, plaintiff, United States of America, requests that defendant, Peter R. Rumbin respond to the interrogatories in Part II, and produce the documents in Part III, and respond to the requests for admission in Part IV, in accordance with the instructions and definitions set forth in Part I, within thirty (30) days at the Office of the United States Attorney, 915 Lafayette Blvd., Room 309, Bridgeport, Connecticut 06604, and permit the plaintiff, its attorneys and agents, to inspect and copy any documents produced.

I.  Instructions and Definitions

The following instructions and definitions apply to each discovery request contained herein:

1.  The term "document" includes, but is not limited to, originals and copies of all correspondence, literature, papers, memoranda, reports, notes, rough drafts, notebooks, work pads, messages, telegrams, mailgrams, tape recordings, transcripts,

records, pamphlets, manuals, books, letters, releases, contracts,
agreements, receipts, checks, and other recorded data.

2.  This request is intended to cover all documents in the
possession, custody or control of Peter R. Rumbin, including:

(a)  documents in the physical custody of Peter R.
Rumbin, his agents, employees, representatives, investigators,
affiliates or its attorneys' agents, employees,
representatives or investigators; and

(b)  documents which are in the physical custody of any
person or entity other than Peter R. Rumbin and which Peter R.
Rumbin (I) owns such documents in whole or in part, (II) has
a right by contract or otherwise to retrieve, use, inspect,
examine or copy such documents, (III) has an understanding,
express or implied, that Peter R. Rumbin may retrieve, use,
inspect examine or copy such documents on any terms or (IV)
has, as a practical matter, been able to use, inspect, examine
or copy such documents when Peter R. Rumbin has sought to do
so.

3.  If any document or category of documents can not be
produced in full, Peter R. Rumbin shall produce to the extent
possible and shall specify the reason for its inability to produce
that portion of the document or category of documents not
produced.

4. "Identify" shall mean the following:

(a)  when used in reference to a natural person, it means to state the person's:

(1)  full name;

(2)  present home address, or, it unavailable, last known home address;

(3)  present business address, or, if unavailable, last known business address; and

(4)  business affiliation and job title, or, if unavailable, last known business affiliation job title;

(b)  when used in reference to a document, it means to state the type of document (e.g., letter, memorandum, telegram, chart) or other means of identifying it, its author and originator, its date or dates, all addresses or recipients and its present location or custodian.

5.  The applicable time period for responses to these requests, unless otherwise stated in a particular request, is January 1, 1977, to date, and is ongoing.

## II.  Interrogatories

1.  Identify all loans or grants received by Peter R. Rumbin or the University of Chicago for the education of Peter R. Rumbin including:

(A)  The source of each loan or grant;

Response:  1) University of Chicago, National Direct Student Loan.

2) Connecticut Savings Bank, Connectcut Student Loan Foundation

Date Filed 12/16/2025 6:05 PM
Superior Court - Essex
Docket Number 2577CV00818
Case 1:26-cv-10247-ADB    Document 7-1    Filed 01/24/26    Page 60 of 148

7

(B)  The amount of each loan or grant;

<u>Response:</u> 1) $890.00 plus interest.
2) $5,000.00


(C)  The terms of repayment of each loan or grant;

<u>Response:</u> 1) The payment of principal and interest to be made commencing 9 months after I ceased 1/2 normal full-time academic workload at an institution of higher education and ending ten years and 9 months thereafter at 3% per year from the beginning of repayment period; see loan note in plaintiff's possession.  2) Unknown; low interest with payment deferred until education ended.

(D)  Present balance due and owing by Peter R. Rumbin on each loan or grant;

<u>Response:</u> 1) Undetermined.
2) $5,739.89 as of 3-28-89.


(E)  The source and date of each payment made as repayment of the loan or grant;

<u>Response:</u> 1) None.
2) Paid off by National Account Service on or about 3-28-89.


2.    Identify the agents, servants, or employees of the University of Chicago who communicated with Peter R. Rumbin regarding repayment of the National Direct Student Loan Note executed on or about March 29, 1977.

Response:
a) Tim Curtis, P.O. Box 92250, Los Angles, CA 90009, Account Rep. Academic Financial Services Assoc.
b) Department of Health Education and Welfare , Office of Education, Bureau of Student Financial Assistance, P.O. Box 8422 Chicago, Ill. 60680
c) Mrs. Lorna P. Straus, The University of Chicago; 1116 E. 59th St.,Chicago, Ill. 60637; Dean of Students in the College.
d) E.W. Osborn, Jr.; University of Chicago, 5801 Ellis Ave., Chicago, Ill. 60637; Director of Student Loan Center.
e) Fred R. Brook, Jr., The University of Chicago, Office of Colleg Aid, Chicago, Ill. 60637, Director.

3.  Describe the substance of these communications and any
internal decisions, agreements, or documents, which were the result
of communications between Peter R.  Rumbin and agents, servants, or
employees of the University of Chicago regarding repayment of the
National Direct Student Loan Note executed on or about March 29,
1977. Response: a) Statement of principal due of $890 and discussion of rights of
            deferment due to full-time student status.
        Response: b)Notice of delinquency amounts $942.73 or 942.67.
        c) Application for additional loans;tuition for '78, college aid office.
        d) Obligations under NDSL and FISL; sale of loan to student loan marketing
            assoc.; loan balance stated as $1,650 and $180 past due.
        e) College aid granted of $2010 gift and loan of $1,650.
    4.  Identify the date, location, and substance of any
communication between Peter R. Rumbin and agents, servants or
employees of the University of Chicago, regarding repayment of the
National Direct Student Loan Note executed on or about March 29,

1977.  a) Sept. 7, Aug. 31, July 31, Aug. 22, 1978 and Sept. 30, 1979.
        b) Jan. 31 and Mar. 1, 1981.
        Response: c) Jan. 10, 1978.
        d) Oct. 17, 1950.
        e) Apr. 11, 1977.
All by mail to Hamden, Conn. address. (See Ans. to interrogatory No. 3 above
                                        for substance )
    5.  Describe and identify the terms of repayment of the
National Directed Student Loan Note, executed on or about March 29,
1977 by Peter R.  Rumbin, including:

        (A)  The document or oral statement specifying
             repayment;

        Response:  See Answer to interrogatory No. 1(B) (1) above, and
                   loan note dated March 29, 1977 in plaintiff's possession.

(B)  The date of the oral statement.

Response: None.

(C)  All persons who have knowledge of the terms

of repayment.

Response:  Peter R. Rumbin; Tim Curtis; Lorna P. Straus;
E.W. Osborn Jr.; Fred R. Brooks Jr.

(See Ans. to interrogatory No. 2 above for addresses
and titles)

6.  Describe the manner in which the University of

Chicago failed and neglected to utilize federal BEOG (Now PELL)

funds.

Response: BEOG funds were available for educational expenses of the
defendant at the time of the loans involved but were not utilized first
~~Response:~~
resulting in the unnecessary utilization of loan monies and additional
monies paid by the defendant's parents.  On information and belief,
the University of Chicago was made to return unused BEOG funds to the
U.S. Dept. HEW after investigation on or about Oct., 1980.

7.  Describe the fraudulent misrepresentations made to

Peter R. Rubmin by servants, agents or employees of the University

of Chicago, including:

(A)  The substance of the fraudulent misrepresenta-
tions;

Response: The defendant had to apply for student loans and grants
as a condition to receipt of financial aid and that the university would
utilize all available grant monies first in payment for defendant's educational
expenses before resorting to use of loan money.
That the defendant could obtain sufficient financial aid to complete
his education at that university.

(B)  The date of each fraudulent misrepresentation;

Response:  On divers times prior to and on or about March 29
and April 15, 1977.

(C)  The name of the individual knowledgeable of the
fraudulent misrepresentation;

Response: Fred R. Brooks, Jr.; William Borchert, Asst. Dir. of College
Aid; Lorna P. Straus, Dean of Students; all of University of Chicago, 1116
E. 59th St., Chicago, Ill. 60637; Nancy Eakin, Dir. of Claims, U.S. Dept. of
Education, Division of Institutional Review,    401 So. State St., Chicago, Ill.
60605; and *

(D)  The name of the individual who made each
fraudulent misrepresentation;

Response: Fred R. Brooks,Jr.; Lorna P. Straus, Enid Rieser, Asst.
Dean of Students/Advisor and others,(See Ans. to
Interrogatory No. 2 for addresses and titles)

## III.  Request To Produce

Pursuant to Federal Rule of Civil Procedure 34, the United

States requests that Peter R. Rumbin produce the following

documents:

1.  All documents constituting the contents of any file

pertaining to Peter R. Rumbin and the National Direct Student Loan

Note executed on or about March 29, 1977. Response: Produced.

2.  All notes, memorandum or other documents of conversations

held between Peter R. Rumbin and agents, servants or employees of

the University of Chicago, pertaining to the National Direct

Student Loan, executed on or about March 29, 1977.

Response: Produced.

* Inter. No. 7(C) Cont.  Virginia Safran, Student Loan Officer, Univ. of Chicago,
1116 E. 59th St., Chicago, Ill. , Last Known Residence
New Haven, Conn. as of 1980.

3.  All written correspondence or documents received from or sent to Peter R. Rumbin by the University of Chicago or the United States of America, pertaining to the National Direct Student Loan executed by Peter R. Rumbin on or about March 29, 1977.  Response: Produced.

4.  All documents pertaining to the decisions set forth in Interrogatory No.1  Response: None.

5.  All documents pertaining to the decisions set forth in Interrogatory No.3  Response: None.

6.  All documents pertaining to the decisions set forth in Interrogatory No.4  Response: Produced.

7.  All documents pertaining to the decisions set forth in Interrogatory No.5  Response: Loan Document in plaintiff's possesion speaks for itself.

8.  All documents pertaining to the decisions set forth in Interrogatory No.7. Response: Produced Notes of Telephone conversation with U.S. Dept. of Ed., Region 5 Director of Claims, Nancy Eakin, dated Oct. 23-24, 198

### IV.  Requests For Admission

Pursuant to Federal Rule of Civil Procedure 36, Peter R. Rumbin is instructed to admit the truth of the following within thirty (30) days of service.

1.  On or about March 29, 1977, Peter R. Rumbin signed a National Direct Student Loan Note.

Answer:  Admitted.

2.   Attached hereto, as Exhibit "A" is a true and correct copy of a National Direct Student Loan Note, executed by Peter R. Rumbin.

Answer:  Admitted.

3.   Pursuant to a National Direct Student Loan, Peter R. Rumbin was loaned $1,650.00, for attendance at the University of Chicago.

Answer:   Upon reasonable inquiry and investigation, there are conflicting figures in communications, such that I do not have sufficient information or knowledge to admit or deny the statement.  It is admitted that I signed a note to that effect, it is not known whether that amount was actually applied or spent on my education.

4.   Peter R. Rumbin has made no payments toward the National Direct Student Loan Note, executed on or about March 29, 1977.

Answer:  Admitted.

5.   The defendant has no information to refute the mathematical calculation of the National Direct Student Loan, as referenced in the Complaint.

Answer: Denied. See conflicting figures in correspondence re: loans produced herewith.

339 01070

**STUDENT LOAN**
**INTERIM NOTE**

Amount of Loan: $2500.00                    Date of Disbursement: _____

FOR VALUE RECEIVED, the undersigned Borrower promises to pay to the order of

**CONNECTICUT SAVINGS BANK**
(Name of Lender)

47 Church Street, New Haven, Connecticut
(Address of Lender)

Connecticut the sum of **TWENTY FIVE HUNDRED DOLLARS AND NO CENTS**

Dollars ($ 2500.00 ) together with interest at the rate of seven (7) percent per annum on the outstanding principal balance, which interest shall be charged and shall accrue from the date of the loan hereof, or, if the loan proceeds are disbursed at a later date, from the date of actual disbursement by the lender of the loan proceeds. If there is such a delay in the disbursement of loan proceeds, the obligation of the Borrower is conditioned upon the disbursement of loan proceeds. In the amount stated above. This Note becomes payable and shall mature upon the earlier of the following dates: (1) the first day of the thirteenth calendar month after the month in which the Borrower completes the academic program for which the loan was made, or (2) the first day of the tenth calendar month after the month in which the Borrower otherwise ceases to carry at an eligible institution at least one-half the normal academic workload (as determined by the institution).

This loan may be eligible for interest subsidy payments of seven (7) percent per annum by the U. S. Government. If eligible, these subsidized interest payments shall be paid on behalf of the Borrower by the U. S. Government and shall reduce Borrower's interest obligation as provided above. The Lender or holder hereof will not collect or attempt to collect interest from the Borrower eligible for and receiving a federal interest subsidy. The federal interest subsidy shall terminate upon the Maturity Date of this Note or upon the date of default as described in Paragraph 3 below. Default caused by making a false loan application or financial statement may result in retroactive termination of the interest subsidy. Upon the termination of subsidized interest payments, the Borrower shall thereafter be liable for payment of interest on the unpaid principal balance at the annual interest rate of seven (7) percent, which shall accrue from the date the subsidized payments terminate.

The Borrower further understands and agrees:

1. **Governing Law; Connecticut Student Loan Foundation.** This Note is subject to the provisions of Subchapter IV, Part B, of the Higher Education Act of 1965, as amended, and any regulations issued thereunder, and Connecticut General Statutes Chapter 180, §10-358 et seq., as amended. This Note shall otherwise be governed and construed in accordance with the laws of the State of Connecticut.

2. **Installment Note.** In lieu of paying this Interim Note in cash (or the equivalent acceptable to the holder) upon the Maturity Date, the Borrower may execute and deliver to the holder an Installment Note, on a form containing such terms and conditions as may then be prescribed by the holder and the Connecticut Student Loan Foundation, for the payment of the principal balance owing plus all accrued and unpaid interest. The Installment Note will require completion of repayment within fifteen (15) years from the date of execution of the Borrower's initial guaranteed student loan except in the event of an extension pursuant to Paragraph 4 below. The Installment Note will require the Borrower to pay a minimum of $360 per year, including interest or the balance of all such loans (whichever is less), except that in the case of a husband and wife, both of whom have guaranteed student loans outstanding, the total of the combined payments for such a couple during any year shall not be less than $360 or the balance of all such loans, whichever is less.

3. **Default.** The Borrower shall be considered in default if any of the following conditions should exist:
   (a) If there has been a failure to pay principal and unpaid interest hereunder when due or, in the alternative, to execute and deliver an Installment Note in lieu of such payment on or before the Maturity date. The Borrower will be given 120 days from the Maturity Date to cure the failure to pay this Note or to execute and deliver an Installment Note; or
   (b) If bankruptcy proceedings are commenced by or against the Borrower; or
   (c) If the Borrower has submitted to the Lender, holder hereof, or Connecticut Student Loan Foundation, or shall hereafter submit, for student loan purposes, a loan application or financial statement that is false, fraudulent, or contains a material misrepresentation.

In the event of default by reason of bankruptcy or the submission of a false statement, the Lender or holder hereof may, at its option, declare the entire balance of principal and unpaid interest immediately due and payable. In the event of default for any reason, interest shall be charged to the Borrower and shall accrue on the unpaid balance (consisting of principal and accrued and unpaid interest as of the date of default) at the annual rate of seven (7) percent from the date of default.

4. **Extension.** In the event that the Borrower has ceased to carry at an eligible institution in which the Borrower has been accepted for enrollment or was enrolled at least one-half the normal full-time academic workload, or in the event the Borrower has completed the academic program for which the loan was made, the Maturity Date hereunder may be extended during the period that the Borrower is pursuing a full-time course of study at an eligible institution, or is pursuing a course of study pursuant to a graduate fellowship program approved by the U. S. Commissioner of Education and the Connecticut Student Loan Foundation, or during a period not in excess of three (3) years during which the Borrower is a member of the Armed Forces of the United States, serves as a volunteer under the Peace Corps Act, serves as a full-time volunteer under the Domestic Volunteer Service Act of 1973, or during a single period, not in excess of twelve (12) months, at the request of the Borrower, during which the Borrower is seeking and unable to find full-time employment. During any such extension period, the Borrower, if otherwise eligible, may receive federal interest subsidy. In order to obtain an extension pursuant to this paragraph, the Borrower agrees to notify, and to provide satisfactory proof, to the holder hereof of such affiliation or status, and to execute an Extension Note on a form containing such terms and conditions as may then be prescribed by the holder and the Connecticut Student Loan Foundation. Any period of extension pursuant to this paragraph shall not be counted in determining the fifteen (15) year maximum period required by Paragraph 2 hereof.

5. **Prepayment.** This Note may be prepaid at any time, either in whole or in part, at the option of the Borrower, without penalty and without liability for unaccrued interest. Such prepayment shall be first applied to interest accrued and unpaid (and not paid by the Federal interest subsidy) to the date of prepayment; the balance of the prepayment shall be applied to principal.

6. **No Waiver.** No extension of time for payment of all or part of the amount owing hereunder shall affect the Borrower's liability hereunder, nor shall acceptance by the holder hereof of any late payment constitute a waiver of any other rights of the holder.

7. **Demand.** Demand, presentment for payment, and notice of dishonor are expressly waived by the Borrower.

8. **Collection Costs.** In the event of default, the Borrower shall pay all costs of collection, including court costs and reasonable attorneys' fees incurred in the collection of this Note.

9. **Notification of Change of Address.** The Borrower hereby agrees to notify the holder hereof of any change of address promptly after the change.

The Borrower acknowledges that prior to signing below, he or she has received and read a legible and completely filled-in copy of this Note and the accompanying Truth-in-Lending Disclosure for this Note.

Date of Execution: Oct 28, 77

Signature of Borrower: _____

Typed or Printed Name of Borrower: Peter R. Rumble

Address – Number and Street: 85 Secord St.

Hamden, Conn.

Lender — White
Student — Pink

CF 105 Rev. 7/77

BEST COPY AVAILABLE
AT TIME OF IMAGING

... TO THE ORDER OF THE
CONNECTICUT STUDENT LOAN FOUNDATION
WITHOUT RECOURSE OR WARRANTY.
CONNECTICUT SAVINGS BANK
NEW HAVEN, CONNECTICUT

Signature:

Typed Name/Title: Delores A. DeLucia

Title: Consumer Loan Collection Officer

Date: September 9, 1987

BEST COPY AVAILABLE
AT TIME OF IMAGING

**SUBSIDIZED LOAN**

STUDENT LOAN
INTERIM NOTE

*339-01071*

$ 2,500.00
Amount of Loan

December 21, 1978
Date of Disbursement

FOR VALUE RECEIVED, the undersigned Borrower promises to pay to the order of

**Connecticut Savings Bank**
(Name of Lender)

at **47 Church Street  New Haven, Connecticut**
(Address of Lender)

Connecticut the sum of **Two thousand five hundred dollars and no cents**

Dollars ($ 2,500.00 ) together with interest at the rate of seven (7) percent per annum on the outstanding principal balance, which interest shall be charged and shall accrue from the date hereof, or, if the loan proceeds are disbursed at a later date, from the date of actual disbursement by the Lender of the loan proceeds. If there is such a delay in the disbursement of loan proceeds, the obligation of the Borrower is conditioned upon the disbursement of loan proceeds in the amount stated above. This Note becomes payable and shall mature upon the earlier of the following dates: (1) the first day of the thirteenth calendar month after the month in which the Borrower completes the academic program for which the loan was made, or (2) the first day of the tenth calendar month after the month in which the borrower otherwise ceases to carry at an eligible institution at least one-half the normal academic workload (as determined by the Institution).

This loan may be eligible for interest subsidy payments of seven (7) percent per annum by the U. S. Government. If eligible, these subsidized interest payments shall be paid on behalf of the Borrower by the U. S. Government and shall reduce Borrower's interest obligation as provided above. The Lender or holder hereof will not collect or attempt to collect interest from the Borrower eligible for and receiving a federal interest subsidy. The federal interest subsidy shall terminate upon the Maturity Date of this Note or upon the date of default as described in Paragraph 3 below. Default caused by making a false loan application or financial statement may result in retroactive termination of the interest subsidy. Upon the termination of subsidized interest payments, the Borrower shall thereafter be liable for payment of interest on the unpaid principal balance at the annual interest rate of seven (7) percent, which shall accrue from the date the subsidized payments terminate.

The Borrower further understands and agrees:

1. *Governing Law;* Connecticut Student Loan Foundation. This Note is subject to the provisions of Subchapter IV, Part 8, of the Higher Education Act of 1965, as amended, and any regulations issued thereunder, and Connecticut General Statutes Chapter 180, §10-358 et seq., as amended. This Note shall otherwise be governed and construed in accordance with the laws of the State of Connecticut.

2. *Installment Note.* In lieu of paying this Interim Note in cash (or the equivalent acceptable to the holder) upon the Maturity Date, the Borrower may execute and deliver to the holder an Installment Note, on a form containing such terms and conditions as may then be prescribed by the holder and the Connecticut Student Loan Foundation, for the payment of the principal balance owing plus all accrued and unpaid interest. The Installment Note will require completion of repayment within fifteen (15) years from the date of execution of the Borrower's' initial guaranteed student loan except in the event of an extension pursuant to Paragraph 4 below. The Installment Note will require the Borrower to pay a minimum of $360 per year, including interest or the balance of all such loans (whichever is less), except that in the case of a husband and wife, both of whom have guaranteed student loans outstanding, the total of the combined payments for such a couple during any year shall not be less than $360 or the balance of all such loans, whichever is less.

3. *Default.* The Borrower shall be considered in default if any of the following conditions should exist:
   (a) If there has been a failure to pay principal and unpaid interest hereunder when due or, in the alternative, to execute and deliver an Installment Note in lieu of such payment on or before the Maturity date. The Borrower will be given 120 days from the Maturity Date to cure the failure to pay this Note or to execute and deliver an Installment Note; or
   (b) If bankruptcy proceedings are commenced by or against the Borrower; or
   (c) If the Borrower has submitted to the Lender, holder hereof, or Connecticut Student Loan Foundation, or shall hereafter submit, for student loan purposes, a loan application or financial statement that is false, fraudulent, or contains a material misrepresentation.

In the event of default by reason of bankruptcy or the submission of a false statement, the Lender or holder hereof may, at its option, declare the entire balance of principal and unpaid interest immediately due and payable. In the event of default for any reason, interest shall be charged to the Borrower and shall accrue on the unpaid balance (consisting of principal and accrued and unpaid interest as of the date of default) at the annual rate of seven (7) percent from the date of default.

4. *Extension.* In the event that the Borrower has ceased to carry at an eligible institution in which the Borrower has been accepted for enrollment or was enrolled at least one-half the normal full-time academic workload, or in the event the Borrower has completed the academic program for which the loan was made, the Maturity Date hereunder may be extended during the period that the Borrower is pursuing a full-time course of study at an eligible institution, or is pursuing a course of study pursuant to a graduate fellowship program approved by the U. S. Commissioner of Education and the Connecticut Student Loan Foundation, or during a period not in excess of three (3) years during which the Borrower is a member of the Armed Forces of the United States, serves as a volunteer under the Peace Corps Act, serves as a full-time volunteer under the Domestic Volunteer Service Act of 1973, or during a single period, not in excess of twelve (12) months, at the request of the Borrower, during which the Borrower is seeking and unable to find fulltime employment. During any such extension period, the Borrower, if otherwise eligible, may receive federal interest subsidy. In order to obtain an extension pursuant to this paragraph, the Borrower agrees to notify, and to provide satisfactory proof, to the holder hereof of such affiliation or status, and to execute an Extension Note on a form containing such terms and conditions as may then be prescribed by the holder and the Connecticut Student Loan Foundation. Any period of extension pursuant to this paragraph shall not be counted in determining the fifteen (15) year maximum period required by Paragraph 2 hereof.

5. *Prepayment.* This Note may be prepaid at any time, either in whole or in part, at the option of the Borrower, without penalty and without liability for unaccrued interest. Such prepayment shall be first applied to interest accrued and unpaid (and not paid by the Federal interest subsidy) to the date of prepayment; the balance of the prepayment shall be applied to principal.

6. *No Waiver.* No extension of time for payment of all or part of the amount owing hereunder shall affect the Borrower's liability hereunder, nor shall acceptance by the holder hereof of any late payment constitute a waiver of any other rights of the holder.

7. *Demand.* Demand, presentment for payment, and notice of dishonor are expressly waived by the Borrower.

8. *Collection Costs.* In the event of default, the Borrower shall pay all costs of collection, including court costs and reasonable attorneys' fees incurred in the collection of this Note.

9. *Notification of Change of Address.* The Borrower hereby agrees to notify the holder hereof of any change of address promptly after the change.

Borrower acknowledges that prior to signing below, he or she has received and read a legible and completely filled-in copy of this Note and the accompanying Truth-in-Lending Disclosure for this Note.

21 Dec '78
Date of Execution

*[signature]*
Signature of Borrower

**Peter R. Rumbin**
Typed or Printed Name of Borrower

**87 Second Street**
Address — Number and Street

**Hamden, Connecticut 06514**
City, State and Zip Code

Lender — White
Borrower — Pink

CF 105 Rev. 7/77

BEST COPY AVAILABLE
AT TIME OF IMAGING

CONNECTICUT BANK . . . . . . . . TION
WITHOUT RECOURSE . . . . .
CONNECTICUT S . . . .

Signature _____

Typed Name/Officer  Delores A. DeLucia

Title  Consumer Loan Collection Officer

Date  September 9, 1987

BEST COPY AVAILABLE
AT TIME OF IMAGING

PETER RUMBIN,

        Plaintiff                      Docket No. 3:11 CV904 (CSH)

V.

ARNE DUNCAN, ET AL                July 24, 2012

### AFFIDAVIT OF PETER RUMBN

I, Peter Rumbin, am over eighteen years of age and believe in the obligations or an oath and make these statements on the bases of my own observations and experience;

1. In l977 and l978 I applied for Federal PELL Grant money to attend the University of Chicago.

2. I also dealt with the University of Chicago Financial Aid office who advised me apply for federal guaranteed college loans, which I did.

3. The next summer I went to take courses a Harvard University and the financial aid advisor there check my loan status and advised me that I did indeed have PELL grant money available while at the Univ. of Chicago, but that it had not been used.

4. Over ten years later in l989 I was sued by the USA for unpaid an unpaid college loan with an initial principle of $1,650.

5. During the course of that litigation, I sought to have the University of Chicago account for how the grant money and loan money was applied and if in fact they had credited my account with any Pell grant monies.

6. At that time I also learned the U.S. Department of Education had investigated the University of Chicago and found irregularities with the way the handled the grant and loan money for students.

7.. Also during the prior l989 Conn. District Court Proceedings I answered disclosure requests and revealed information on what I thought was three loans for $1,650, $890 and $5,000 respectively, and later learned that the later was really two loans of $2,500 principle.

8. In the 1989 case proceeding there were pre-trial conferences and at one point before the Hon. Judge Eginton a full candid conference with the U.S. Attorney,  Attorney Leff and myself where each of the four loans and all of the defenses of limitations periods, fraudulent

inducement, lack of consideration, the irregularities with the student loan and grant on the part of the University of Chicago and the U.S. Department of Education investigation of them,. and their being made to return grant money, and specifically all four of the loans disclosed.

9. It was after all of the facts and issues, arguments and defenses and issue were laid out and discussed as all four of the loans, the stipulation for judgment of dismissal with prejudice was entered by agreement of both parties on September 24, 1990.

10. When I was applying for the financial aid and loans I was told by the University of Chicago financial aid advisers that they would first allocate all available grant moneys toward my tuition costs and then utilize loan money, which they did not do and refuse to account as to what and how the allocation was.

11. I was induced to borrow moneys in reliance upon that representation, which the University did not keep and breached.

12 . The defendant USA waited some 21 years until March 2011 with the interest piling up to institute the enforcement by Treasury offset.

Peter Rumbin, Affiant

Subscribed and sworn to before me on

7/24/2012  at Hamden CT

Robert C, Ruggiero, Jr.
 Comm. of the Superior Ct of Conn.

2

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

PETER RUMBIN,

    Plaintiff

V.

ARNE DUNCAN, ET AL

    Defendants

Docket No. 3:11 CV904 (CSH)

2012 JUL 23  FILED
U.S. DISTRICT COURT
NEW HAVEN, CT.
AM 11 21

JULY 23, 2012

### PLAINTIFF'S MEMORANDUM IN OPPOSITION TO USA MEMORANDUM TO DISMISS

The plaintiff in the above entitle action hereby submits the following argument and authority in opposition the defendant United States of America's (USA) Memorandum to Dismiss, dated August 4, 2011, Doc. 12.

On page 4 of the USA's memorandum it understates the plaintiff's position on his first claim as simply that the U.S. is enforcing a claim that was dismissed. More accurately the plaintiff's claim is the U.S. present enforcement and collection is improper as barred by the doctrines of *Res Judicata,,* claim and issue preclusion, and collateral estopple. That is, that the precise same issues, claims, defenses , transactions, arguments, among the same parties pertained to all four loans.

The classic formulation of the res judicata and claim preclusion doctrine is as follows:

> [T]he judgment, if rendered on the merits, constitutes an absolute bar to a subsequent action. Its is finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose. Cromwell v. County of Sac, 94 U.S. 351-2, 24 L. Ed. 195 (1876).

More recently, the bar aspect has been articulated as: If the plaintiff loses the litigation, the resultant judgment acts a bar to any further by the plaintiff on the "same claim" Kaspar Wire

Works v. Leco Eng'g & Mach. Inc. 575 F.2nd 530, 535(5th Cir. 1978); Restatement 2nd of Judgments, § 19(1982). Claim preclusion prevents a party from suing on the same claim which was previously litigated to final judgment by that party and precludes the assertion by such party of any legal theory, cause of action, or defense that could have been asserted in that action. While issue preclusion prevents relitigation of issues actually litigated and necessary for the outcome of the prior suit, even it if the current action involves different claims. Parklane Hoisery Co. v. Shore, 439 U.S. 332, 326 n. 5, 99 S. Ct. 645; Lawlor v. Nat. Screen Serv. Corp. 349 U.S. 332, 326, 75 S. Ct. 865(1955); Restatement 2nd of Judgments, §17 cmt. a-c.

A claim in regard to the doctrines includes not only those matters actually addressed by the prior judgment but also those matters which could have been raised in the action. "Res judicata prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." Brown v. Felsen, 442 U.S. 127, 131, 99 S. Ct. 2205(1979). Thus, matters that arise from the same facts, occurrences or transaction that were the basis of a prior action may be within the scope of claim preclusion.

In this case, the defendant during the prior 1989 action specifically sought disclosure of all of the defendant there and plaintiff's herein existing college loans. See Document 1 attached to plaintiff's complaint. In plaintiff's responses of January 19, 1990 to the Interrogatories 1-3 the amounts and existence of all 4 loans was provided $890, $1650 and the two $2,500 subject loans in total form of $5,000, numbers G601 and F801 as referred to in defendant's memorandum at p. 3.(Complt. pp. 16-18). Thus, all four loans where involved in that prior litigation. Further- more the chronology is undisputed. The plaintiff took out these loans while attending the University of Chicago during 1977 and 1978. Both loans were declared in default on September 1, 1987, two full years prior to the United State's commencing the prior action on October 17,

2

1989. (Defd's Memorandum p. 3, Doc.12). Thus, the existence and fact of default on the two $2,500 loans were made known to the defendant during the course of the prior litigation. . On page 5 of defendant's memorandum it criticizes the plaintiff's mere conclusions that the debts being enforced are the same debt. However, as the above cited authority makes clear and as plaintiff's res judicata argument is that subject latter two loans are the same claim and same issue that was litigated in the prior action and that they are barred by the doctrine because the loans and default on them were extant and known and raised and discussed during the prior litigation and part of the deliberation and settlement reached.

Most significant, there was a full judicial pre-trial with counsel in chambers with Judge Eginton including candid discussion of all of the facts and issues, arguments and defenses were laid out and discussed as to all four of the loans, that generated the stipulation for judgment of dismissal with prejudice and entered by agreement of both parties on September 24, 1990. Afdvt. of Rumbin, para. 8 & 9, Attached. The defendant USA waited some 21 years since that stipulation to commence the enforcement through Treasury offset with interest that increased the debt more than three fold. Afdvt Rumbin, para. 10.

The doctrine of res judicata serves a vital public interest of fundamental substantive justice and private peace and finality that there be an end to litigation. Federated Dept. Stores, Inc. v. Moitie, 452 U.S. 394, 401(1981); Hart Steele Co. v. RR Supply Co., 244 U.S. 294, 299 (1917) Reed v. Allen, 286 U.S 191, 198-9(1932).

Given the circumstances in this case where the two latter loans were know, disclosed and already in default and discussed in the pre-trial proceedings leading up to the stipulated dismissal with prejudice, it cannot be fairly said that those two loans are entirely unrelated to the loans involved in the prior 1989 action. Rather they were involved as they presented the same claim and issues and were subject, then, to the same defenses and arguments, and they could have

3

been raised in that action, just as the $890 loan was.   Thus, further assertion of the loan debt as to those two loan debts is barred by the claim and issue preclusion doctrines.

The defendant in their memorandum (p. 5) argue that the plaintiff's claim that the present enforcement is improper because it is barred by the statute of limitation must fail because of the enactment of 20 USC § 1091(a)(a)(1).  However, that section was enacted in 1991 as Pub. L No. 102-26. Thus, at the time of the stipulated dismissal, when the defendants were engaged in litigation with the plaintiff over student loan debt and could have raised the latter two debts, those two debts were as a matter of law time barred by the 6 year period under the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA), Pub.L. No. 99-272 (1986).  It does not comport with the spirit and policy of the doctrine of res judicata, to allow the defendants a second bite of the apple by not asserting their claims as to the latter two loans when they had the opportunity in then present pending litigation and then asserting it now when the law changed.  To allow such a result appears to offend Constitutional principals of fundamental fairness.

As to the defendants claims that their was a failure of proper service upon the U.S. Attorney's Office, Attorney General and the agencies being sue, it asserted that the plaintiff has filed on or about May 18 and 19, 2012 returns of service which show that both the U.S. Attorney's and Attorney General and the U.S. Departments of Education and  Treasury were in fact served.

For all of the above reasons, the defendant USA motion to dismiss should be denied.

Respectfully Submitted,

*Peter Rumbin*

Peter Rumbin, Pro Se
87 Second St.
Hamden, CT 06514

Certification:  A copy of the foregoing was mailed postage paid to all counsel of record on July 24, 2012, the same being:
 Christine Sciarrio, Esq., U.S. Attorney's Office, 157 Church St.,23rd FL, New Haven, CT 06510
Patrick M.Noonan, Esq., Donahue,Durham & Noonan, Concept Parkn Ste, 306, 741 Boston Post Rd., Guildford, CT 06437

*Peter Rumbin*

Peter Rumbin

4

Home > Announcements & Events > Sweet v. Cardona Settlement

# *Sweet v. Cardona* Settlement

Under the settlement in *Sweet v. Cardona*, class members are not required to make payments on their student loans while they have a pending borrower defense application or while their loans are in the process of being discharged.

**Sweet class members who have pending borrower defense applications or have applications that have been approved but have loans that have not been fully discharged are not obligated to repay their loans.**

If you have been notified by the U.S. Department of Education (ED) that you are a member of the *Sweet* class and you receive a payment notice from your servicer, you are not obligated to make payments while your application or loan discharge is pending. The Department is working with servicers to ensure class members with pending applications do not receive payment notices in error.

On June 22, 2022, ED and the plaintiffs reached a settlement in the case titled *Sweet v. Cardona* (formerly *Sweet v DeVos*). The court granted final approval to the settlement as fair, adequate, and reasonable on Nov. 16, 2022. The agreement affects the processing of borrower defense applications filed on or before Nov. 15, 2022. Borrowers whose applications for borrower defense discharges were pending as of June 22, 2022, are "Class Members," while those whose applications were submitted in the period from June 23 to Nov. 15, 2022, are "Post-Class Applicants."

The settlement became effective on Jan. 28, 2023, and ED is starting to implement it, as described below. The settlement is final, though the court granted a temporary stay (delay) of discharges related to three schools until the court of appeals rules on their motion to stay.

## What is this case about?

A lawsuit was filed in a federal district court in California by seven borrower defense applicants who represent, with certain exceptions, all borrowers with pending borrower defense applications filed on or before June 22, 2022. The lawsuit challenges the way ED has dealt with borrower defense applications in the past, including ED's delays in issuing final decisions and ED's denial of certain applications starting in December 2019. The case is now called *Sweet v. Cardona*, No. 3:19-cv-3674 (N.D. Cal.).

On Nov. 16, 2022, after a hearing, the court granted final approval of the settlement reached by ED and the plaintiffs. On Jan. 13, 2023, three schools appealed the district court's approval of the settlement and asked the district court to stay (delay) the settlement while an appeals court considers the appeal. On Feb. 15, 2023, the court held a hearing on the three schools' motion to stay the settlement, and on Feb. 24, the district court denied the schools' request to stay the settlement overall but granted a temporary stay of discharges and discharge requests related to the three schools that filed the motion (Lincoln Technical Institute; American National University; and Everglades College, Inc.) to allow these schools to present a stay motion to the court of appeals. The schools then filed a motion for a stay with the court of appeals on Feb. 27 and, consequently, the temporary stay for the three schools will remain in effect until the court of appeals rules on the motion before it.

## What are the terms of the settlement for borrowers who applied for borrower defense relief on or before June 22, 2022?

In the settlement, ED agrees to resolve the borrower defense applications that wer~ following terms:

- If the borrower defense application related to federal student loans taken ou list of schools attached to the settlement agreement as Exhibit C, the borrowe Settlement Relief means that the federal student loan(s) associated with the k discharged, ED will refund any amounts paid to ED on those loans, and the c deleted from the borrower's credit report.

- Within 90 days of the court's final approval of the settlement agreement, ED will receive Full Settlement Relief as stated above and that relief will be prov date of the settlement agreement. Until this relief is provided, ED won't take

- If the borrower's loans aren't associated with a school on the list, the borrowe application according to the following schedule:

Hi there! I'm Aidan®, the financial aid virtual assistant. How can I help you today?

Help with the FAFSA® form

Login (FSA ID) issues

I want my loan and grant info

I have a different question

*Sweet v. Cardona* Loan Discharge Application Decision Schedule

| Application Submitted | ED Decision |
|---|---|
| Between Jan. 1, 2015, and Dec. 31, 2017 | No later than July 28, 2023 |
| Between Jan. 1, 2018, and Dec. 31, 2018 | No later than Jan. 28, 2024 |
| Between Jan. 1, 2019, and Dec. 31, 2019 | No later than July 28, 2024 |
| Between Jan. 1, 2020, and Dec. 31, 2020 | No later than Jan. 28, 2025 |
| Between Jan. 1, 2021, and June 22, 2022 | No later than July 28, 2025 |

- If ED doesn't make a decision on an application within the timelines outlined above, the borrower will receive Full Settlement Relief. If a borrower submitted multiple applications, ED will use the earliest submitted application date.

### ED's Review Process

ED will use a streamlined review process to make decisions on these applications. ED will review these applications using the 2016 Borrower Defense Regulation but will not require evidence outside of the written application, require proof of reliance, or apply any statute of limitations. Rather, ED will determine whether the application states a claim that, if presumed to be true, would assert a valid basis for borrower defense under the applicable regulation. Borrowers whose applications are approved under the procedures above will receive Full Settlement Relief.

### If Your Application Isn't Approved Under the Streamlined Review Process

ED won't deny an application without first providing instructions on what is required for a successful application and giving the borrower the opportunity to resubmit the application. If the borrower chooses to resubmit the application, it must be submitted within six months after receiving those instructions. The instructions will explain that if the application is not resubmitted within the six-month period, the application will be considered denied.

If the borrower chooses to resubmit their application within the six-month time period after receiving the instructions, ED will issue a final decision no later than six months after receiving the resubmitted application.

For any borrower who received a notice from ED in December 2019 or later informing them that their borrower defense application was denied, that denial has been voided and ED will review the application pursuant to the terms described above.

## What are the terms of the settlement for borrowers who applied for borrower defense relief after June 22, 2022, but before final approval of the settlement?

For post-class applicants (borrowers who submitted a borrower defense application in the period from June 23, 2022, to Nov. 15, 2022), ED will review these applications using the 2016 Borrower Defense Regulation and will issue a decision on the application no later than Jan. 28, 2026.

If ED doesn't issue a decision within this time period, the borrowers will receive Full Settlement Relief.

## What if the loan is in default?

If the loan for which a Class Member or Post-Class Applicant has submitted a borro~~~ ~~~~~~~ ~~~~~~~~~~ ~~ ~~ ~~~~~~~ ED will not take action to collect the debt—such as by garnishing wages or taking por    Hi there! I'm Aidan®, the financial is pending or while the borrower is waiting to receive any relief owed under the s    aid virtual assistant. How can I help you today?

## What happens next?

ED has already reopened the previously denied cases that require streamlined rev You'll receive a decision based on the schedule noted above.

Additionally, in accordance with the court's order issued on Feb. 24, 2023 (describe loans associated with Lincoln Technical Institute; American National University; a    f appeals rules on the stay motion.

## *Sweet v. Cardona* Settlement Quarterly Reports

The settlement requires that we submit quarterly reports documenting our progress toward fulfilling our obligations un' the settlement, and that we post them publicly.

- May 30, 2023, Quarterly Report*

- August 28, 2023, Quarterly Report*

- November 27, 2023, Quarterly Report*

- February 26, 2024, Quarterly Report*

- May 28, 2024, Quarterly Report*

- August 26, 2024, Quarterly Report*

*ED strives to make all content accessible to everyone. While this document does not currently meet the standards of Section 508 of the Rehabilitation Act of 1973, as amended, we are working to create accessible versions. For immediate assistance on receiving a 508-compliant document, please send us a written request, including title of document, date of request, and your email address, to:

Federal Student Aid Information Center
P.O. Box 84
Washington, D.C. 20044

## Can I get more information?

Check back here periodically for updated information about the settlement.

- Review the settlement.*

- Review the complaint.*

- Review the amended complaint.*

- Review the preliminary approval order.*

- Review the order granting final approval.*

- Review the order denying the motion to stay.*

Learn more about this lawsuit and the proposed settlement and find contact information for the lawyers who brought the lawsuit ↗.

*ED strives to make all content accessible to everyone. While this document does not currently meet the standards of Section 508 of the Rehabilitation Act of 1973, as amended, we are working to create accessible versions. For immediate assistance on receiving a 508-compliant document, please send us a written request, including title of document, date of request, and your email address, to:

Federal Student Aid Information Center
P.O. Box 84
Washington, D.C. 20044

## I am not a class member. Should I apply for borrower defense?

The *Sweet* settlement only impacts individuals who applied for borrower defense discharge on or before Nov. 15, 2022. If you didn't apply on or before Nov. 15, 2022, learn more about borrower defense and w

Hi there! I'm Aidan®, the financial aid virtual assistant. How can I help you today?

Was this page helpful?  



NO.19-

# In the

# Supreme Court of the United States

---

PETER R. RUMBIN

*Petitioner*

V.

ARNE DUNCAN SECRETARY OF EDUCATION; US DEPARMENT OF EDUCATION;
TIMOTHY GEITHNER, UNITED STATES DEPARTMENT OF TREASURY; BETH HARRIS;
DOUGLAS R. EDWARDS, WELLS FARGO BANK;

*Respondents*

---

On Petition for a Writ of Certiorari to the
United States Second Circuit Court of Appeals

---

# PETITION FOR A WRIT OF CERTIORARI

---

IRA B GRUDBERG
COUNSEL OF RECORD
114 LAUREL CREST ROAD
MADISON, CT  06443
(203)-234-1374
ATTORNEY FOR PETITIONER

January 28, 2020                                    *COUNSEL FOR PETITIONER*
SUPREME COURT PRESS                (888)958-5705        BOSTON, MASSACHUSETTS

i

# QUESTIONS PRESENTED

1. Whether the courts should overrule the decision of the District Court of Connecticut (11-cv-904 (CSH)), which granted the Respondents' motion to dismiss the action. This decision violates the black letter law in the decision *Plaut v. Spendthrift Farms*, 514 U.S. 211 (1995) and *U.S. Government v. Espinosa*, March 23, 2010.

2. Whether the court should question the constitutionality of the Government resorting to "Self-Help" in order to do an "end run" around a prior court ruling.

3. Whether the U.S. Government should be allowed to make an unlawful seizure of money and property without due process.

ii

# LIST OF PROCEEDINGS

United States Court of Appeals for the Second Circuit

No. 18-3488

*Peter R. Rumbin, v. Arne Duncan, Secretary of Education, U.S. Dept. of Education, Et Al.*

Date of Final Opinon: July 8, 2019

Date of Reconsideration Denial: September 3, 2019

---

United States District Court for the District of Connecticut

Civil Action No. 3:11-CV-904 (CSH)

*Peter R. Rumbin v. Arne Duncan, Et Al.*

Date of Order: November 1, 2018

iii

# TABLE OF CONTENTS

                                                                Page

QUESTIONS PRESENTED ............................................... i

LIST OF PROCEEDINGS ............................................... ii

TABLE OF AUTHORITIES ........................................... vi

PETITION FOR A WRIT OF CERTIORARI ............. 1

OPINIONS BELOW ...................................................... 1

JURISDICTION............................................................. 1

STATEMENT OF FACTS ........................................... 2

    A.  Preliminary Statement ................................. 2

    B.  Introduction................................................... 2

    C.  Statement of the Case.................................... 8

    D.  Relief Sought ................................................ 16

REASONS FOR GRANTING THE PETITION....... 16

    I.   THE JUDGEMENT SHOULD BE REVERSED
       BECAUSE APPELLANT HAS MERITORIOUS
       CLAIM THE RESPONDENTS' CLAIMS ARE
       BARRED BY EQUITABLE ESTOPPEL. ................. 16

    II.  LEGAL RATIONALE SUPPORTING PLAINTIFF'
       CASE AGAINST THE DEFENDANTS .................... 22

    III. THE JUDGEMENT SHOULD BE REVERSED ON
       PROCEDURAL GROUNDS.................................... 26

    IV. DUE PROCESS VIOLATION: VINDICTIVENESS.... 28

    V.  CONSTITUTIONAL AND STATUTORY PROVISIONS
       INVOLVED ...................................................... 29

    VI. THE COURT'S POWER TO GRANT RELIEF .......... 31

CONCLUSION........................................................ 31

iv

**TABLE OF CONTENTS — Continued**

Page

## APPENDIX TABLE OF CONTENTS

### OPINIONS AND ORDERS

Order of the United States Court of Appeals for
the Second Circuit (July 8, 2019) ....................... 1a

Omnibus Ruling on Plaintiff's Motion to Reopen
Case. Motion for Appointment of Counsel,
and Motion to Transfer Judge
(November 1, 2018) ............................................ 3a

Order of the United States Court of Appeals for
the Second Circuit (August 24, 2017) .............. 12a

Order of the United States Court of Appeals for
the Second Circuit (May 19, 2017) ................... 14a

### OTHER DOCUMENTS

Plaintiff's Memorandum in Opposition to USA
Memorandum to Dismiss (July 23, 2012) ........ 16a

Affidavit of Peter Rumbin
(July 24, 2012) ................................................... 22a

Motion to Dismiss
(September 26, 1990) ......................................... 25a

Notice of Service of Offer of Judgment
(August 21, 1990) .............................................. 27a

Motion for Leave to file Amended Answer
(July 20, 1990) ................................................... 29a

Amended Answer of Defendant Peter R. Rumbin
(July 20, 1990) ................................................... 31a

v

## TABLE OF CONTENTS — Continued

Page

Plaintiff's Initial Motion For Extension of Time
    to Answer or Object to Interrogatories and
    Respond to Request for Production and
    Admissions (December 22, 1989) ..................... 35a

Defendant's Response to Plaintiff's First Set of
    Interrogatories, First Request for Production
    of Documents and First Requests for
    Admissions (January 19, 1990)........................ 37a

National Direct Student Loan Note
    (March 29, 1977)............................................... 49a

Student Loan Interim Note
    (October 28, 1977) ........................................... 56a

Student Loan Interim Note
    (December 21, 1978) ........................................ 62a

Defendant's Original Answer
    (November 3, 1989) .......................................... 68a

Offset Statement
    (September 13, 2017)........................................ 71a

## TABLE OF AUTHORITIES

Page

### CASES

*Ashcroft v. Iqbal,*
   129 S.Ct. 1937 (2009) ............................................ 27

*Bell Ad. Corp. v. Twombly,*
   550 U.S. 544 (2007) ............................................ 27

*Buckley v. New York,*
   U.S. Dist. Lexis 190837 (2012) ......................... 27

*Coppola v. Coppola,*
   243 Conn. 657 (1998) ......................................... 26

*Dolan v. Connolly,*
   794 F.3d 290 (2nd Cir. 2015) ............................. 5

*Erickson v. Pardus,*
   55 U.S. 89 (2007) ................................................ 28

*Frank E. Hess v. Dumouchel Paper Company,*
   154 Conn. 343 (1966) ......................................... 20

*Glazer v. Dress Barn Inc.,*
   274 Conn. 33 (2005) ........................................... 18

*Godley v. United States,*
   5 F.3d 1473 (Fed. Cir. 1993) ............................. 21

*Hendrickson v. U.S.,*
   791 F.3d 354 (2nd Cir. 2015) ............................. 5

*J.E.T.S., Inc. v. United States,*
   838 F.2d 1196 (Fed. Cir. 1988) ......................... 21

*K&R Eng. Co. v. United States,*
   616 F.2d 469 (Ct. Cl. 1980) ............................... 21

## TABLE OF AUTHORITIES—Continued

Page

*Kosakow v. New Rochelle*
   *Radiology Associates, P.C.*,
   274 F.3d 706 (2 Cir. 2001) ................................... 17

*Little v. Streater*,
   452 U.S. 1 (1981) ................................................. 4

*Plaut v. Spendthrift Farms, Inc.*,
   514 U.S. 211 (1995) ............................. 3, 16, 23, 25

*Snow v. Calise*,
   174 Conn. 567 (1978) ........................................ 27

*Todd v. Exxon Corp.*,
   275 F.3d 191 (2nd Cir. 2001) ........................... 27

*Triestman v. Fed. Bureau of Prisons*,
   470 F.3d 472 (2d Cir. 2006) ....................... 21, 28

*United Student Aid Funds, Inc. v. Espinosa*,
   559 U.S. 260 (2010) ........................................ 6, 22

*Washington v. James*,
   782 F.2d 1134 (2d Cir. 1989) ........................... 28

*Zinermon v. Burch*,
   494 U.S. 113 (1990) ......................................... 27

## STATUTES

12 U.S.C. 5565 ................................................... 22, 31

15 U.S.C. § 1692 ...................................................... 7

28 U.S.C. § 1254(1) .................................................. 1

28 U.S.C. § 2201 .................................................... 22

Dodd-Frank Wall Street Reform and Consumer
   Protections Act 2010, Pub. L. 111–203 ............... 4

viii

## TABLE OF AUTHORITIES—Continued

Page

**JUDICIAL RULES**

D. Conn. L. Civ. R. 7(c) ............................................... 28

Fed. R. App. P. 32 ....................................... 5, 6, 11, 26

Fed. R. Civ. P. 12(b)(6) ................................................ 26

1



## PETITION FOR A WRIT OF CERTIORARI

Petitioner Peter R. Rumbin Respectfully Petitions this Court for Writ of Certiorari to review the Judgment issued in the United States Court of Appeals for the Second Circuit.



## OPINIONS BELOW

The Order of the United States Court of Appeals for the Second Circuit, dated July 8, 2019 is reprinted in the Appendix hereto at App.1a. The Second Circuit Order Denying a Motion for Reconsideration on September 3, 2019 is reprinted in the Appendix hereto at App.27a.



## JURISDICTION

The Second Circuit denied a timely filed motion for Reconsideration on September 3, 2019. This Court has Jurisdiction Pursuant to 28 U.S.C. § 1254(1).

2



# STATEMENT OF FACTS

## A. Preliminary Statement

The Appellant, Peter R. Rumbin, hereby appeals to the United States Supreme Court to overturn the dismissal of a civil student loan before the Second Circuit Court of Appeals. The present case involves a dispute over the Government's wrongful garnishment of the Appellant's monthly social security benefits to recover the alleged student loan debts dating back 40 years, that were settled by stipulated agreement with prejudice against the Departments of Education and Treasury in 1990.

## B. Introduction

This case originates from a dispute with the U Chicago over student loans from 1977-1978.

In 1989, the U.S. Departments of Education (DoEd) and Justice (DOJ) through its U.S. Attorney (Atty), Christine Sciarrino, sued Peter R. Rumbin, (defendant at the time), for outstanding student loans borrowed in 1977-78, while a student at the University of Chicago (U. Chicago). In 1989-1990, the claim by stipulated agreement among the parties was settled in Federal Court (Bridgeport, CT) before Judge Warren Eginton, and was dismissed with prejudice against the Government (App.12a). Judge Eginton held a hearing with Rumbin; U.S. Atty Christine Sciarrino failed to appear until the second hearing, where she signed the stipulated agreement before Judge Eginton and Atty David Leff, who represented Peter R. Rumbin in that case. The late Atty Robert C. Ruggiero, Jr. also

3

represented Rumbin in that case initially. All the loans were in default and all loans were borrowed in the same time period. All loans were inventoried in the government's interrogatories and discoveries requested by U.S. Atty Sciarrino in 1989-90 (App.27a, 29a, 35a). The borrower won in Federal Court with a court order that dismissed all outstanding loans on consent of the parties, with prejudice against the Government. Hence, any claims of the DoEd or Treasury (USDT) were null. The Government did not attempt to modify or appeal Judge Eginton's ruling after it was rendered. In 2010, a new statute was passed that permitted the U.S. DoEd and USDT to take Peter R. Rumbin's money every month as an offset, including his income tax return and it is collecting aggressively, on the verge of foreclosing on the borrower's home in CT.

Because of the *Plaut v. Spendthrift Farms*, 514 U.S. 211, (1995) Supreme Court ruling: "No statute can retroactively vacate any adjudicated case that is final. The Supreme Court holds that Congress cannot circumvent a decision by changing the rules later." This is a matter of the "law of the case". The defendants have not only committed breach of contract but also violation of a court order which is even worse than breach of a settlement. The creditors resorted to "self-help" under the new statute.

Wells Fargo Bank (WFB) assumed the loans from the prior Connecticut Savings Bank and Connecticut Student Loan Foundation, where the borrower resides. The villain is the U. Chicago that did not credit the PELL Grants to pay the plaintiff's bill but pocketed the funds. This fraud was revealed when the Harvard Financial Aid Office obtained the U. Chicago's financial

aid transcript for Mr. Rumbin. (At that time, Mr. Rumbin was a student at Harvard.)

U. Chicago was engaged in predatory lending and targeted the most needy and vulnerable students as a means to enrich itself at the expense of the economically poor students. The Dodd-Frank Wall Street Reform and Consumer Protections Act 2010, (Citations: Pub. 1.111-203; Statutes at Large 124 Stat. 1376-2223 would apply for recovery of damages against these defendants.

In the Second Circuit Court second ruling, the judges provided a roadmap for the U.S. District Court in Connecticut to follow (App.D), but Judge Charles S. Haight, Jr defied that ruling. He never permitted a new complaint nor held a hearing. He did not assign an attorney to represent the plaintiff. He did not seek any discovery or interrogatory, and denied the motion to transfer the case to Judge Eginton, who had presided over the original case in 1989-1990, and who knew why he ruled as he did.

In the U.S. Supreme Court case, *Little v. Streater*, 452 U.S. 1 (1981), the court ruled that the State of Connecticut had to pay for a DNA test to prove a paternity claim. Similarly, a lawyer assigned to represent the plaintiff could have provided the U.S. District Court Judge Haight with a new complaint or, if required, the U.S. Second Circuit Court of Appeals could have received a new brief (App.3a). By refusing to appoint counsel to represent the plaintiff, he denied an avenue for the plaintiff to provide the court with a new brief. Then the court would have learned what relief the plaintiff sought, and the case would have been well articulated. Instead, the case must now be reviewed by the U.S. Supreme Court for

justice to be served, and for the plaintiff to avoid losing his house, Social Security and monies. Meanwhile, the defendants have been unjustly enriched.

The cases *Hendrickson v. USA*, 791 F.3d 354, 358-63 (2nd Cir. 2015) and *Dolan v. Connolly*, 794 F.3d 290, 295 (2nd Cir. 2015) address the breach of contract and permittance of a new complaint. The defendants have breached their contract from the 1989-1990 settlement before Judge Eginton. In the student loan case, the defendants signed and agreed to withdrawal of suit against the plaintiff (then defendant) by stipulated agreement of the parties, dismissal with prejudice against them. This ruling and court order signed by Judge Eginton precludes the defendants from resorting to "self-help".

The defendants are barred from circumventing this court order and trying to do an "end-run" around the court order that the defendants signed in 1990. Because of the dismissal with prejudice ruling and court order, the defendants cannot resort to any further litigation and this ruling prevents them from collecting any money or property under *res judicata*. Furthermore, the prior decision is grandfathered in under the laws enforced at that time.

The plaintiff's previous brief was authored by Attys Gunilla Faringer and Charles Darlington both of Appeals Press, White Plains, NY. Both attorneys violated Local Rule 32: they failed to file an appearance, acknowledge authorship of their brief, affix their names and address to their brief, sign their brief or, finally, to appear before the court to defend their brief. These two attys did this act without the prior knowledge or consent of the plaintiff. The New York Bar has cited them both for ignoring the

6

Federal Rules. The citation is part of their permanent record. If they violate any other rules, they will be disbarred. (App.14a).

The Second Circuit Court issued a second ruling after the plaintiff provided proof that he did not violate Local Rule 32, but rather the court's rules were violated by Faringer and Darlington. These two attorneys were paid to write the brief but never returned these funds to the plaintiff. This explains the reason for the second ruling by the Second Circuit Court of Appeals on August 24, 2017, after the May 29th 2017 ruling. The misconduct of Attys Faringer and Darlington was most harmful to the plaintiff.

Upon further research, a U.S. Supreme Court Ruling involving student loan debt. *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (March 23, 2010) states that a bankruptcy judge's ruling is final and cannot be revisited years later because the lender did not like the decision, and did not appeal it in timely manner, and may have omitted some loan by mistake. In the plaintiff's case, the U.S. DoEd, USDT, the U. Chicago, and Connecticut Savings Bank, now WFB, were dismissed with prejudice against them, breached their contract from the 1989-1990 settlement before Judge Eginton. They are guilty of misconduct because of their illegal collections of the plaintiff's money (*U.S. Aid Fund v. Espinosa; Plaut v. Spendthrift Farm*).

There were no further proceedings in this case from 1990. The defendants did not attempt to vacate, appeal, modify, or alter the court's order of 1990. They did not file a motion for reconsideration. Furthermore, all of the loans were inventoried and explained

in the interrogatories and discoveries sent to Rumbin by then U.S. Atty Christine Sciarrino, who represented the U.S. DoEd and USDT in the 1990 and the present case (35a). This is the same situation as in the *U.S. Aid Fund vs Espinosa* case, where someone later claims that they may not have included all of the loans in all of the court filing, but the presiding judge's ruling was upheld. The DoEd and USDT are barred by *res judicata*. This appeal is meritorious because of the previous dismissal with prejudice against them: U.S. DoEd and USDT, U. Chicago, the Connecticut Savings Bank (WFB). Hence, the defendants' monetary collection for the past ten years is illegal.

In the Federal Debt Collection Practice Act (1977) that governs debt collections, there is a provision that says you are barred from collecting on a debt that is based upon fraud. Fraud contains two sets of laws: one for the Federal Government and another for private lenders. The Federal Government does not have the right to sue because of private entities: U. Chicago, Connecticut Savings Bank (WFB) are private institutions and private banks.

The U.S. Government cannot collect the plaintiff's money without suing the plaintiff in court to recover these funds. Yet, the DoEd and USDT are currently collecting monies (currently $139 each month), earned income tax credit, and eventually real estate (the plaintiff's house) without having sued the plaintiff, without having won their case in court and being awarded money and/or property. The 1990 court order remains in force and binding on the parties and private lenders in this case.

Judge Haight's bias and favoritism towards U.S. Atty Sciarrino and the U.S. Gov. was obvious when

Date Filed 12/16/2025 6:05 PM
Superior Court - Essex
Docket Number 2577CV00814   Case 1:26-cv-10247-ADB   Document 7-1   Filed 01/24/26   Page 95 of 148

8

he dismissed the plaintiff's case, and upheld Atty Sciarrino's erroneous statements. He stated that transferring the case to Judge Eginton was then "moot". Because of Judge Haight's dismissal of the plaintiff's case, and subsequent refusal to transfer the case to Judge Eginton, the U.S. Government continues to offset the plaintiff's assets (App.3a). Since no hearing was ever held in the U.S. District Court of Connecticut or in the Second Circuit Court of Appeals in Manhattan, NY, the plaintiff would like the matter to be heard and settled in the Supreme Court of United States.

## C.  Statement of the Case

Mr. Rumbin attended the University of Chicago (U. Chicago) between 1977 and 1978. When he enrolled at the University he applied for federal Pell/BEOG/grants to finance his studies. He was informed that the grants would be credited to his tuition before any other available funds. However, the U. Chicago also requested that he apply for student loans, which he did. Therefore, he executed two notes in the amounts of $1,650.00 and $890.00. Later, he also took up two additional loans in the amount of $2,500 each, for a total of $5,000 ("the GSL loans") which is the subject matter of the within litigation.

When he attended Harvard University the next year, their financial aid office informed him that, unbeknownst to him, he had Pell grant funds available to him at U. Chicago that had never been used towards his tuition. It became clear to him that he had been deceived by the University to go into debt for his tuition that would have been unnecessary had the grants been applied to his tuition as was required

under federal law and as he had been promised by the University. He also learned that the University had returned the grant money to the Department of Education after it had been audited; however, it did not return Petitioner's borrowed money, and he was still responsible for paying back a debt that had been fraudulently incurred.

When he was unable to take out further loans, and as a direct result of the U.Chicago's unlawful withholding of his grant moneys, Mr. Rumbin was forced to withdraw from the U. Chicago, a situation that would clearly never have occurred had his grant money been used by U.Chicago as intended. While unlawfully withholding Rumbin's grant monies--possibly amounting to not just embezzlement but fraud, predatory lending and racketeering-the University suggested to his parents that they take out a second mortgage on their home to allow him to pursue his degree. However, his parents' application for a second mortgage was declined.

Mr. Rumbin's mother was dying of cancer at the time. As a result, Mr. Rumbin had no choice but to terminate his studies at U. Chicago and finish his degree at another institution. This was possible only after the University finally released his academic transcript (as a result of the U.S. Department of Education investigation of financial fraud aid irregularities), of the unlawfully incurred debt, and after lengthy and diligent work by Attorney Ira B. Grudberg. Mr. Rumbin was never provided with a proper accounting of his financial aid status with the University in spite of repeated requests, including a Motion for Disclosure.

University of Chicago was one of many colleges around the country that were revealed to have been engaging in misappropriation of federal grant monies and other irregularities in connection with student financing. A great number of schools, including Columbia University, U. Penn, Johns Hopkins University, U. Southern California and New York University were ordered to repay millions of dollars in federal grant money. When Mr. Rumbin's loans went into repayment status he was unable to make payments due to financial difficulties. The loans were eventually declared in default on September 1, 1987 and the loans were assigned to the Department of Education ("DoEd"). On October 17, 1989 the United States of America commenced a lawsuit against Mr. Rumbin for repayment of the debt. That action was dismissed with prejudice and the debt was written off on September 24,1990.

However, unbeknownst to the Petitioner, the two GSL loans in the total amount of $5,000 were not referred to the DoEd for collection until December 14, 1998. Not until March of 2011 did the DoEd began collecting this debt by garnishing his social security benefits by $76.00 (now $139) per month under the Higher Education Act, 20 U.S.C. § 1091(a)(1), thereby reducing his monthly social security payments to currently $750.00. It is unknown why the GSL loans were not referred to the DoEd until 8 years after the dismissal of the original action in 1990 and not enforced until 21 years after the dismissal.

According to loan documents submitted by the Respondents as exhibits to their motion to dismiss the total outstanding balance of those two loans on August 1, 2011 amounted to $16,023.00. (R 73) Thus

the DoEd allowed the debt to accumulate to three times it original amount before it began to enforcing it. Today it has grown to almost $36,000, nearly seven times the original loan amount.

Therefore, on May 20, 2011, the Petitioner commenced legal action to stop the garnishing of his social security payments and to reclaim funds collected unlawfully, including interest together with damages to compensate him for the harm caused to his credit worthiness and the time and effort spent on this matter over many years as well as the loss of opportunity caused by his forced withdrawal from his program of studies at the University.

The Respondents subsequently filed a Motion to Dismiss on August 4, 2011. Said motion was denied without prejudice on June 25, 2014 and the court requested the Respondents to submit evidence regarding the discussion of the GSL loans during the negotiations preceding the dismissal in 1989. The Respondents submitted a renewed motion to dismiss on July 18, 2014. Mr. Rumbin filed an Appeal and Objection on August 6, 2014, which the court construed as a motion for reconsideration. Petitioner's motion was denied on February 17, 2016 and Respondents' renewed motion to dismiss was granted on February 17, 2016. A judgment was entered on February 22, 2016 (App.1a,3a).An appeal was filed in the Second Circuit Court of Appeals (NYC) in 2017 by Appeal Press attorneys Gunilla Faringer, and Charles Darlington of White Plains, NY. The Court ordered a refiling of a new complaint dated August 24, 2017 (12a) as the two lawyers were caught violating Rule 32. They refused to apologize to the court. Final judgement of U.S. District Court Omnibus ruling on plaintiff's

motion to re-open the case, get appointed counsel, and transfered to Judge Eginton, who had heard the original case in 1989-90, was denied by Judge Haight, U.S. District Court, November 1, 2018 (App.3a) He issued a Mandate on September 10, 2019 (App.1a). Appeal to the U.S. Supreme Court on January 28, 2020 followed immediately thereafter.

Final judgment of U.S. District Court (CT) Omnibus ruling on plaintiff's motions to re-open the case, have counsel appointed, and transferred to Judge Eginton, who had heard the original case in 1989-90, was denied by Judge Haight, U.S. District Court (CT), November 1, 2018. (App.3a). U.S. Second Circuit Court of Appeals Judges—Debra A. Livingston, Raymond J. Lohier, Jr., (absent: Judge Carney)—issued a Mandate on July 8, 2019. (App.1a). Appeal to U.S. Supreme Court on January 28, 2020 followed immediately thereafter.

Federal court has equitable jurisdiction over the question of the plaintiff's student loans. The plaintiff seeks equitable relief from the court because it is grossly unfair and unreasonable to ignore the dismissal with prejudice against the U.S. DoEd and USDT by Judge Eginton in 1990 regarding all the student loans. The plaintiff was sued in federal court for student loans by the USDT and DoEd in 1989. The case was dismissed in September of 1990, with prejudice against the U.S. Dept. of Treasury and Education by the Judge Eginton, U.S. District Judge (Bridgeport, CT).

In the discoveries and interrogatories sent by the U.S. Attorney's office to the plaintiff, Peter R. Rumbin, the U.S. Atty Sciarrino specifically asked the plaintiff to identify all of the loans, and the

Date Filed 12/16/2025 6:05 PM
Superior Court - Essex
Docket Number 2577CV00816   Case 1:26-cv-10247-ADB   Document 7-1   Filed 01/24/26   Page 100 of 148

13

plaintiff disclosed both the National Direct Student Loans and the Guaranteed Student Loans. Thus, the plaintiff raised as a defense to the 1989 collection brought against him by the U.S. that he was fraudulently induced to accept the various loans. All the loans were taken out in the same time period and no additional loans were ever taken out by the plaintiff. According to the Defendants, all the loans were "declared in default on September 1, 1987," (App.35a, 56a, 62a, 68a) and were therefore assigned to the United States.

The Government brought suit against the plaintiff in 1989 for defaulting on two National Direct Student Loans. The Guaranteed student loans were not simply discussed by the parties in the 1989 litigation—they were specifically pleaded in the plaintiff's special defenses, and the plaintiff asks that the Defendants now be equitably estopped from any further administrative collection actions.

For 30 years, it was understood by all parties that all the loans in question were included and settled in the 1990 dismissal with prejudice decision. At that time, the U.S. Government acted like all the loans were settled for the nearly three decades since the dismissal.

The U.S. DoEd and USDT received discovery and interrogatories, making all loans known to all parties involved during the previous litigation. They are barred by law from now ignoring Judge Eginton's ruling and should not be permitted to now take the plaintiff's Social Security, property and house because all the loans were included in the Judge Eginton's decision.

14

The defendants (U. Chicago, Wells Fargo Bank, USDT and DoEd) engaged in predatory lending to the plaintiff, Peter R. Rumbin. The U. Chicago received BEOG (Pell Grant) funds to pay for the plaintiff's education bill. However, these funds were not credited to his account. The U. Chicago induced the plaintiff to apply for unnecessary student loans. Had the BEOG (Pell Grant) funds been credited to his account, he would not have needed these loans. Thus, the defendants unjustly enriched themselves.

Chicago's improprieties were discovered upon receipt of the plaintiff's U. Chicago's financial aid transcript at Harvard, (where the plaintiff was a student at the time), which revealed that the Pell funds were unused and still available. The plaintiff was advised to notify the DoEd of this irregularity. The DoEd conducted an investigation, which resulted in the U. Chicago returning the unused BEOG (Pell Grant) funds. But the U. Chicago did not refund the student loan money.

The plaintiff never got to argue the case before the court because there were too many errors in procedure (App.1a). The plaintiff is now represented by legal counsel, Ira B. Grudberg, and is prepared to litigate the case in court.

The Defendants claim a statute of limitation. However, the plaintiff has no statute of limitation to use for a defense for the unjust collection occurring today. This is grossly unfair, as are some of the provisions that the Congress created in not requiring the DoEd and USDT to follow, among other legal provisions, due process.

15

Judge Haight defied the U.S. Second Circuit Court of Appeals in its second ruling and refused to permit a new complaint, hold a hearing, appoint counsel, or transfer the case the original Judge Eginton of Federal Court in Bridgeport CT. (App.3a) The late Judge Eginton was alive at the time of this request for the motion for transfer and could have heard the case that he ruled upon in 1989-1990.

In the Second Circuit Court second ruling, the judges provided a roadmap for the U.S. District Court in Connecticut to follow, but Judge Haight defied that ruling. Because of the dismissal with prejudice ruling and court order, the defendants cannot resort to any further litigation and this ruling prevents them from collecting any money or property under *res judicata.*

The defendants are guilty of misconduct because of their illegal collections of the plaintiff's money. There were no further proceedings in this case from 1990. The defendants did not attempt to appeal, modify or alter the court order of 1990 issued by Judge Eginton. Hence the defendants' collection for the past ten years is illegal.

The plaintiff cannot discover the pretext or "secret" statute that permits the defendants from collections without due process. The defendants' collections are unlawful. Judge Haight has ignored the 1990 court ruling and order against the defendants, even though this order remains in force today.

An Affirmative action claim should be filed and considered by the court for the decades of harm, hardship, and disruption to the plaintiff's life, education, creditworthiness, and career, as well as the

time and ongoing expense of decades of litigation. The plaintiff would like the matter to be heard and appealed in the Supreme Court.

## D. Relief Sought

**1.** To cease and desist the unlawful seizure of property and monies; ignoring a prior judge's ruling of dismissal with prejudice against the defendants by stipulated agreement of the parties; *Plaut v. Spendthrift Farms, res judicata, United Student Aid Funds, Inc. v. Espinosa,* No appeal or modification of 1990 ruling ever sought by defendants for over 30 years. **2.** Return of what monies have been seized; total sum, with interest, of all payments, tax returns, fees, penalties, interest etc. **3.** A Court order stopping any further taking of any funds or property from the plaintiff, Peter R. Rumbin. **4.** Reimbursements of all legal counsel fees and expenses as a result of the defendants' actions. **5.** Counter suit on predatory lending, Dodd-Frank Consumer Protection Act or other applicable laws or relief as the court or legal counsel deem appropriate in this case.



## REASONS FOR GRANTING THE PETITION

## I.   THE JUDGEMENT SHOULD BE REVERSED BECAUSE APPELLANT HAS MERITORIOUS CLAIM THE RESPONDENTS' CLAIMS ARE BARRED BY EQUITABLE ESTOPPEL.

In its order, the court below stated that under the limited application of equitable estoppel in federal law, a party can be estopped from pursuing a

claim or defense where "the party to be estopped makes a misrepresentation of fact to the other party with reason to believe that the other party will rely on it and the other party reasonably relies on it to [his] detriment". *Citing Kosakow v. New Rochelle Radiology Associates, P.C.,* 274 F.3d 706 (2 Cir. 2001).

The court then goes on to state that the doctrine is not applicable to the case at bar because the Government did not make any misrepresentations of fact when it requested Rumbin to list all student loans he had taken out in the interrogatories preceding the stipulation for dismissal. However, it is respectfully submitted that the doctrine of equitable estoppel was misapplied by the court below. Contrary to what the district court found, there can be no doubt that doctrine of equitable estoppel is in fact applicable to this case, to wit, to the underlying facts that form the basis for Appellant's case.

At the time Mr. Rumbin began his studies at the U. Chicago, he was informed by the that his grant money would be credited to his tuition. He was also informed that even though he had received Pell grants he was obligated to take out student loans. Appellant reasonably relied on said instructions by the U.Chicago to his detriment, as overwhelmingly evidenced by the record in this case.

Equitable estoppel is a doctrine that operates in many contexts to bar a party from asserting a right that it otherwise would have but for its own conduct. In its general application, we have recognized that there are two essential elements to an estoppel-the party must do or say something that is intended or calculated to induce another to believe in the existence of certain facts and to act upon that belief, and the

other party, influenced thereby, must actually change his position or do some act to his injury which he otherwise would not have done." *Glazer v. Dress Barn Inc.*, 274 Conn. 33, 60 (2005).

Because of his reasonable reliance on the implied conditions in the agreement, Appellant was led to believe that his entire educational debt was included in the stipulation of settlement and because Defendants' failure to enforce the allegedly outstanding debt until after 21 years, after the dismissal of the other loans contributed to this belief, Appellant abstained from taking timely action to resolve the $5,000 debt, which caused said debt to increase threefold before he was made aware of it. Under these circumstances it is clear that the doctrine of equitable tolling applies to this action and it was error by the court below to grant the Respondents' motion to dismiss.

The Appellant is entitled to a full accounting by the U. Chicago. The University is obligated to provide full disclosure of Mr. Rumbin's financial aid package, including all available grants and how they were applied. Pursuant to the Higher Education Act of 1965, the Higher Education Opportunity Act of 2008 and Section 128 and Section 140 of the Truth in Lending Act (1968), it is clear that the University is obligated to provide full disclosure of Mr. Rumbin's financial aid package, including all available grants and how they were applied. However, to this day, for unknown reasons, it continues to refuse to do so and does not comply with Appellant's repeated requests for a full accounting. It is respectfully submitted that by refusing to provide Appellant with full disclosure of the financing of Mr. Rumbin's studies at University,

the University is in violation of federal law. The judgment should be reversed and the Respondents be compelled to comply with Mr. Rumbin's request for a full accounting and clarification of the facts.

The Appellant relied on implied terms in the Stipulation for Dismissal. Rather than specifying exactly which loans were forgiven, the Stipulation for Dismissal simply stated that "[t]he parties do hereby agree to the dismissal of the above captioned action". The record reflects that Appellant assumed four loans, in the amounts of $1,650.00, $ 890.00 and two loans of $2,500.00 each. Even so, he was not able to meet his tuition bills, and when his parents' application for a second mortgage on their home was denied, he was compelled to withdraw from the University. Had the University not breached its duty by fraudulently withholding his grant monies, he would have been able to continue his studies and graduate from the University. Therefore, as a result of the University's fraud against Appellant his debt was written off after it had been litigated.

During the negotiations preceding the stipulation, Mr. Rumbin was asked to list all the loans he had taken out. Therefore, and because the settlement agreement stated that the parties "do hereby agree to the dismissal of the above captioned action", without specifying what loans it was referring to, and because of all circumstances and discussions held leading up to the stipulation, it is clear that the agreement contained implied terms, to wit, that all Mr. Rumbin's loans were dismissed by the agreement.

Mr. Rumbin reasonably relied on these terms and believed that his entire debt had been written off, until his social security benefit payments were suddenly

Date Filed 12/16/2025 6:05 PM
Superior Court - Essex
Docket Number 2577CV00816    Case 1:26-cv-10247-ADB    Document 7-1    Filed 01/24/26    Page 107 of 148

20

garnished in March of 2011, over two decades after his debt had been dismissed. The defendant, the U.S. DoEd waited twenty-one years after that stipulation to commence the enforcement, through Treasury offset with interest that has increased the debt sevenfold. This is a clear indication that Respondents acted in the belief that all loans were included in the agreement, for why else would they have waited 21 years to enforce the debt, now valued at $36,000.

Christine Sciarrino, an Assistant United States Attorney in the District of Connecticut, who was absent from the initial hearing where the loans were disclosed and discussed, preceding the stipulated agreement, has lied to the court about the loans. "With counsel in chambers with Judge Edington, a candid discussion of all of the facts and issues, arguments and defenses were laid out and discussed as to all four of the loans that generated the stipulation for judgement of dismissal with prejudice and entered by agreement of both parties on September 24, 1990." (the late Atty Robert C. Ruggiero, Jr.) (App.25a).

Separate dealings among the parties cannot affect another transaction so as to constitute a substituted contract between them unless it was their intention that such an agreement be consummated. This intention can be determined from the language used and the circumstances known to both parties under which the negotiations were had." *Frank E. Hess v. Dumouchel Paper Company*, 154 Conn. 343, 348 (1966). Therefore it is respectfully submitted that it was an error by the court below not to afford Mr. Rumbin the opportunity to have his case heard by a factfinder.

21

The debt was incurred as the result of fraud in the inducement and was void *ab initio*. It is clear from the record that the Appellant's debt was incurred as a result of the University's unlawful withholding of his Pell grants. By failing to apply the grant funds towards his tuition in spite of its assurances that it would do so and in violation of federal law, the University fraudulently misrepresented Appellant's financial aid status with the University, and, relying on said fraudulent misrepresentation Appellant was induced to apply for financial aid that he would have not needed had the grants been rightfully credited to his tuition.

The fact that the debt was incurred as a result of fraud in the inducement is admitted by the Defendants, which is clear from their interrogatories that request Appellant to "[d]escribe the fraudulent misrepresentation made to Peter R. Rumbin". Had the grant monies that were lawfully his been credited toward his tuition Appellant would not have been compelled to incur debt that he did not have the means to repay, and neither would he have been forced to withdraw from his studies at the University.

When a contract is tainted by fraud at the inception, the contract is rendered void *ab initio*. The relief for any contract void *ab initio* is cancellation of the contract and forfeiture of any monies paid under the contract. *See, e.g., Triestman v. Fed. Bureau of Prisons*, 470 F.3d 472, 474 (2d Cir. 2006); *K&R Eng. Co. v. United States*, 616 F.2d 469 (Ct. Cl. 1980); *J.E.T.S., Inc. v. United States*, 838 F.2d 1196 (Fed. Cir. 1988) and *Godley v. United States*, 5 F.3d 1473 (Fed. Cir. 1993). Therefore, the judgment should be reversed and the GSL loans be forgiven, on the grounds

that the debt was incurred as a result of the University's fraud in the inducement (Court's Power to Grant Relief 12 U.S.C. 5565 (2006)). 28 U.S.C. 2201 (2018).

## II. LEGAL RATIONALE SUPPORTING PLAINTIFF' CASE AGAINST THE DEFENDANTS

In 1990, the Federal Court in Bridgeport, CT, issued a court order that dismissed the creditors' case on consent of the parties and with prejudice was never vacated or modified. That is <u>law of the case</u> or *res judicata*, because the creditors never appealed or moved to vacate. The U.S. Supreme Court decision *United Student Aid Fund, Inc. vs Espinosa* (559 U S 260 (2010) stated that "once an order goes down, as long as there is adequate notice of the order, it is final. If you do not appeal the order, then the order stands." The creditors' case on consent of the parties and <u>with prejudice</u> was never vacated or modified. All of the student loans were covered by that order; the creditors were not allowed to collect after that dismissal under the unmodified court order that remains valid to date. No other new student loans were ever incurred after that court order. If there was later enacted federal statute allowing "self-help" collection—no statute has been cited. The plaintiff was grandfathered in and that statute cannot be applied retroactively under *ex post facto* doctrine.

The question of "self-help" raises a <u>Constitutional question</u> that only the Supreme Court can address because of its contradictions. The statue did not include any kind of collection without due process. The case of the U.S. DoEd and Treasury was settled 30 years ago. They violated the privacy of the

Date Filed 12/16/2025 6:05 PM
Superior Court - Essex
Docket Number 2577CV00816    Case 1:26-cv-10247-ADB    Document 7-1    Filed 01/24/26    Page 110 of 148

23

plaintiff by obtaining the plaintiff's Social Security number and have used it to avail themselves to his Social Security income and tax return as an offset. If the Plaintiff fails to prevail in the Supreme Court, then the U.S. DoEd and Treasury will seize the plaintiff's house, rendering him homeless. No statue can be construed to later vacate finality of court order. *See Plaut v. Spendthrift Farm* (514 U.S. 211 (1995)) case by SCOTUS, courtesy of the late Justice Scalia. <u>The rational of this one decision is compelling even more so that all others.</u>

The plaintiff's motion is to recover unlawful collections under FRCP 56 for summary judgment and under FRCP 57 for declaratory relief under 28 U.S.C. § 2201. U.S. Treasury has already collected in excess of $16,000 dollars from the plaintiff and wants more than another $16,000 dollars plus interest, penalties and expenses on a $5,000 loan that was settled in 1990. Summary judgment should also include damages under FRCP 56. The attached interrogatories and discoveries substantiate the claim for damages. The interrogatories and discovery clearly inventory <u>all</u> of the loans that were included in this stipulated agreement and show that the loans were taken out in the same time period when the PELL-BEOG grants were awarded to the U. Chicago. They were not applied to pay the plaintiff's educational bill. Unnecessary loans were solicited by U. Chicago to unjustly enrich itself through these financial aid programs *i.e.* predatory lending. The late Attorney Ann Detiere discovered that the Illinois Attorney General has closed colleges in Illinois for similar abuses, and the U.S. DoEd has posted advertisements urging students who suspect

financial aid exploitation to contact them through a toll-free telephone number.

By negative inference, the U. of Chicago was permitted to continue to participate in the loan programs only because it returned the PELL Grant funds. None of the plaintiff's PELL funds were spent to pay for his education at U. Chicago. The impropriety of the U. Chicago was discovered by accident when Harvard College requested a financial aid transcript for the plaintiff (student at Harvard at the time).

Harvard financial aid directed the plaintiff to report the problem to the U.S. Dept. of Education in Chicago, IL. As a result of the DoEd investigation of U. Chicago, the U. Chicago refunded all of the PELL funds but not the loan funds. They received the PELL-BOEG grants with consent of the U.S. Treasury. The plaintiff believes that other students were similarly taken advantage of by U. Chicago but are unaware of the abuses. Because of the high attrition rate of the U. Chicago at the time, many needy students assumed unnecessary debt that precluded their completion of their college education. The plaintiff learned about this problem while working in the alumni fund of the U. Chicago while soliciting for funds. The U. Chicago has a 6.5 billion dollar endowment.

There also may be statutory provisions for fees and punitive damages for illegal collections by creditors. The Wells-Fargo Bank has been found lacking in integrity in its financial conduct and has been required to pay substantial fines and penalties. Its business practices remain inadequate.

The plaintiff also would like the court to consider an "order dismissal" against the U.S. DoEd and

Treasury and Wells Fargo Bank. Defendants cannot circumvent a previous ruling of the court by changing the laws and applying them retroactively to a judge's ruling.

In *Plaut v. Spendthrift Farm* the late Justice Scalia stated that the defendants cannot circumvent a previous ruling of the court by changing the laws in applying them retroactively to a judges' ruling. The U.S. DoEd and Treasury are ignoring the previous dismissal with prejudice in order to unjustly enrich themselves with disregard for the U.S. Supreme Court rulings of *Plaut v. Spendthrift Farm* and a breach of contract. In the U.S. Second Circuit Court of Appeals, second ruling it states "on a liberal reading of the plaintiff's case, it appears to be a breach of contract by the U.S. DoEd and Treasury. Furthermore, the statue did not include any kind of offset."

Since the 1989-1990 case and the present case, there has been much negative news and information about college financial aid polices that exploit needy students in their financial aid and lending practices. The defendants cannot protect themselves from immunity and impunity of their fraud. The loans were <u>unnecessary</u> and the plaintiff was induced by fraud to take out loans that were not needed. The Consumer Protection Laws, Dodd-Frank Wall Street Reform and Consumer Protection Act in 2010, (Pub. L. 111-203) are applicable.

Due process was eliminated by Congress to enable the U.S. DoEd and U.S.D.T. to seize students' money and property without going to court and obtaining a judgment. Furthermore, the U.S. DoEd and Treasury take more than the Face Value of the debt.

Date Filed 12/16/2025 6:05 PM
Superior Court - Essex
Docket Number 2577CV00816    Case 1:26-cv-10247-ADB    Document 7-1    Filed 01/24/26    Page 113 of 148

26

The University of Chicago is the villain. The stipulated agreement of 1990 did not allow for any other kind of collection without due process. The present collections of the U.S. Depts. of Education and Treasury are unreasonable and unfair given the 1990 court ruling that settled the case 30 years ago. This is <u>Black Letter Law</u> and should be free of any doubt or dispute.

The plaintiff tried to have a lawyer file a new brief to the U.S. Second Circuit Court of Appeals, but no lawyer did this in a timely manner. The attorneys Gunilla Faringer and Charles Darlington violated rule 32 and did not file an appearance or sign the brief that they wrote. Neither attorney would apologize to the court. The New York Bar Grievance Committee found against both of them. Their violation is part of their permanent record and if they break any rules again, they will be barred from the practice of law.

## III. THE JUDGEMENT SHOULD BE REVERSED ON PROCEDURAL GROUNDS.

This appeal is from the judgment that granted Respondents' motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). It is respectfully submitted that it was error by the court below to grant said motion.

It is a well-settled tenet of law that cases should be determined on their merits. "Our practice does not favor the termination of proceedings without a determination of the merits of the controversy." *Coppola v. Coppola*, 243 Conn. 657, 665 (1998). "It is the policy of the law to bring about a trial on the merits of a dispute whenever possible and to secure for the litigant his

27

day in court." *Snow v. Calise*, 174 Conn. 567, 574 (1978). Therefore, courts are generally reluctant to grant motions to dismiss. "Under the now well-established Twombly standard, a complaint should be dismissed only if it does not contain enough allegations of fact to state a claim for relief that is 'plausible on its face.'" *Buckley v. New York*, 2012 U.S. Dist. Lexis 190837 (citing *Bell Ad. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[D]etermining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009). The within record demonstrates that there are clearly enough allegations of fact that should have prevented the case from being dismissed.

In considering a motion to dismiss, this Court accepts as true the factual allegations set forth in the complaint and draws all reasonable inferences in the Plaintiffs' favor." *Zinermon v. Burch*, 494 U.S. 113, 118 (1990). "The issue on a motion to dismiss is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Todd v. Exxon Corp.*, 275 F.3d 191, 198 (2nd Cir. 2001).

It is respectfully submitted that Appellant has stated a plausible claim for relief in his challenge of the Respondents' garnishing of his social security benefit only after allowing it to increase sixfold, and their claim that the forgiveness of his debt did not include the $5,000 GSL loans, which is false.

Furthermore, the Court is respectfully reminded that throughout these proceedings, Appellant has been appearing *pro se,* as he was without the means

of retaining counsel, *Pro se* pleadings, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 55 U.S. 89, 94 (2007). A complaint is not to be dismissed unless it is "frivolous on its face or wholly unsubstantiated." *Washington v. James*, 782 F.2d 1134 (2d Cir. 1989). Submissions by *pro se* litigants "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Triestman v. Fed.Bureau of Prisons*, 470 F.3d 472, 474 (2d Cir. 2006) (internal citations omitted).

Moreover, it is clear that Appellant, proceeding without counsel, was not aware of the D. Conn. L. Civ. R. 7(c) that requires that a motion for reconsideration be filed within fourteen days, and that his tardiness in filing the motion was caused by his preoccupation with a full-time schedule of classes and studies at the Yale Medical School. Therefore, the district court's denial of the motion on the ground of untimeliness should be reversed.

## IV. DUE PROCESS VIOLATION: VINDICTIVENESS

The Due Process Clause prohibits the prosecutors, U.S. Attorney Sciarrino and Judge Haight from using illegal collections and seizure of real property in retaliation for the plaintiff's successful winning of his case for fraud and predatory lending against the U.Chicago, Wells Fargo Bank and the U.S. DoEd and U.S. Depts. in 1989-1990 before the recently deceased Judge Warren Eginton (Federal Court, Bridgeport, CT).

## V. CONSTITUTIONAL AND STATUTORY PROVISIONS INVOLVED

Judge Haight defied the U.S. Second Circuit Court of second ruling, and refused to permit a new complaint, hold a hearing, appoint counsel, or transfer the case to the original Judge Eginton at the Federal Court in Bridgeport, Connecticut.

U.S. Atty Sciarrino has lied to the Court saying that she was present at the first hearing before Judge Eginton. She was not there for the first, lengthy morning hearing, where all the loans were disclosed and then included in the settlement.

Furthermore, all the NDA loans were in default in 1987 and in collection with the other loans. She signed the 1990 contract. (App.27a) Most significant, there was a full judicial pre-trial with counsel in chambers with Judge Eginton, including candid discussion of all of the facts, and issues, arguments, and defenses were laid out and discussed as to all four of the loans, that generated the stipulation for judgement of dismissal with prejudice and entered by agreement of both parties on September 24th 1990 Affdvt. of Ruggiero, para. 8-9 (App.25a).

Furthermore, all the NDA loans were in default in 1987 and in collection with the other loans. She signed the 1990 contract (App.25a). Thus she is in breach of that contract, and is also in violation of a court order, which is worse than breach of settlement. All of the loans are clearly inventoried in the discovery and interrogatories that she sent to the defendant, Rumbin, that were completed by the late Attorney Robert C. Ruggiero, Jr. in a sworn affidavit.

No attempt was undertaken to collect on this $5000 loan until 2011—21 years after the stipulated agreement was signed, the agreement, which remains in force today. Attorney David Leff, who represented Mr. Rumbin (defendant at the time) recalls agreeing to the stipulation agreement only if all loans were included. (App.25a).

In the Amended answer of July 20, 1990, second defense states: "The right of Action set forth in the complaint did accrue within six years next before the commencement of this action." Since all four loans were in default, having been borrowed at the same time, they are all barred by the statute of limitation.

The DoEd and USDT, in violation of the plaintiff's privacy, obtained the plaintiff's Social Security number and other personal information and have used it to take plaintiff's Social Security, Earned Income Tax Credit and eventually real estate.

The U. Chicago pursued a policy of predatory lending targeting poor needy students and exploited the PELL/BEOG grant programs and loan programs to unjustly enrich itself to the detriment of the under-privileged students in the college. These students were fraudulently induced to assume unnecessary loan debt. The plaintiff did not need to take out loans had grant funds been utilized to pay for his education. At no time were any of the programs of forgiveness of loan debt, such as the Borrower Defense to Loan Repayment Forgiveness, ever made known or sought.

The villains in this case are the U. Chicago, U.S. DoEd, USDT, and Wells Fargo Bank that have all profited from these loan and grant programs. These

entities should be required to return the monies that they dishonestly acquired by fraud.

The plaintiff seeks a full return of all monies taken from him, legal costs and damages as well as restoration of his credit and an immediate halt to the offsets, taking tax returns, and real estate.

## VI. The Court's Power to Grant Relief

The FCPA empowers this court to grant any appropriate legal or equitable relief with respect to violations of federal consumer financial law, the refund of monies, paid restitution, disengagement, or compensation for unjust enrichment, and civil money penalties. 12 U.S.C. § 5565(A)(1).

## CONCLUSION

For all of the arguments explicated in the brief and writ of certiorari, the plaintiff asks the U.S. Supreme Court to correct the wrongs committed by the U.S. District Court Judge Charles Haight, Jr., U.S. Attorney Christine Sciarrino, University of Chicago, and Wells Fargo Bank.

The U.S. Court of Appeals for the Second Circuit Court recognized the unfair and unreasonableness that the plaintiff was experiencing with the U.S. District Court in Connecticut. Attorney Anne Detiere, (admitted to the Federal Bar (NY), U. S. Second Circuit Court of Appeals, and the U.S. Supreme Court, who had successfully argued cases before Justice Sonia Sotomayor) had hoped to represent the plaintiff, but

her untimely death on Sept. 21, 2019, left Mr. Rumbin without benefit of legal counsel.

In fact, by his ruling, Judge Haight is allowing U.S. Attorney Sciarrino to continue illegal collection from the plaintiff for the past ten years, accompanied by all its costs, disruption and interference in the plaintiff's life. Unless the U.S. Supreme Court steps forward on behalf of the plaintiff, he shall become homeless and indigent. Meanwhile, the defendants—University of Chicago, Wells Fargo Bank, and the U.S. Department of Education and Treasury—are being unjustly enriched through their fraud and predatory lending practices.

For all the reasons stated herein, the judgment should be reversed, and the case should be heard and settled.

Respectfully submitted to the Court this 28th day of January, 2020.

Respectfully submitted,

IRA GRUDBERG
    COUNSEL OF RECORD
ATTORNEY AT LAW
114 LAUREL CREST ROAD
MADISON, CT 06443
(203) 234-1374
KATIB52612@GMAIL.COM

COUNSEL FOR PETITIONER

JANUARY 28, 2020

33

<u>ADDENDUM</u>                October 5, 2024

1. F.H.Cann & Associates,Inc. appeared after the writ of

certiorari was filed to SCOTUS.  F,H.Cann & Associates claims

that the plaintiff, Peter R.Rumbin owes them approximately

$10,000 dollars.(see attached).Location: F.H. Cann &

Associates,Inc. 1600 Osgood Street, Suite 3058, North Andover, Mass.
Tel 877-750-9804.
F.H. Cann & Assoc. has not responded to requests for information.

2.Plaintiff is a member of the class action case:  Sweet v. Cardona,

No. 3:19-cv-3674(N.D.Cal.)Settlement became effective on Jan.28,2023.

Ira B. Grudberg,Esq is counsel of record for the class action.

3.  Borrower defense application was denied July 26th, 2024,and

September 5,2024(see attached)
4. US Congresswoman Rosa DeLauro in a recent interview stated

that student loans must be ADJUDICATED in court.

5. President Joe Biden's Executive order for student loans was

recently struck down by the US Supreme Court and his writ of

certiorari to SCOTUS for the student loans was denied. (Plaintiff

also joined this writ). Borrowed defense applications are being

denied.
6. Wells Fargo Bank has been fined millions and billions of

dollars for its misconduct over student loans and other loans

(see attached). It is one of the defendants in this case.

7.The plaintiff is at risk of loss of his real property besides

the continued financial offsets.  US Congresswoman Rosa DeLauro

recently stated that only legislation can stop the seizure of

money and property in student loan-predatory lending cases.

8. No court has held a hearing on this student loan case since

the 1989-1990 stipulated agreement dismissed with prejudice

against the US Depts. of Ed and Treasury. US Depts of Ed and Treasury

et al have never appeared before a fair judge and won any award

page 2.                   ___ADDENDUM___                October 5,2024

from the plaintiff, Mr. Rumbin, nor have the defendants appealed

or attempted to modify the 1990 agreement. Rather they are

ignoring a judge's court order and seizing plaintiff's money

because the Affordable Care Act revoked due process and require

the plaintiff to file suit.  However in this case, there is

already a court order stemming from a suit and hearings,

discovery etc. so the defendants should be barred from their

"offsets--claw backs" according to the US Supreme Court case

ruling Plaut vs Spendthrift Farm.(see writ).

Ira. B. Grudberg,Esq

EOS CCA
PO BOX 5369
NORWELL MA 02061-5369
FORWARD SERVICE REQUESTED

| | |
|---|---|
| Account # : 21-2547049 | Client Reference # : N198905001250601 |

**Total Due :** $ 16953.43

Do not send cash

Make checks payable to:
U.S. Department of Education

NOTE NAME / ADDRESS / PHONE NO. CHANGES ON BACK OF COUPON

Show your social security number on your check

**Return this portion with your payment**

SEND PAYMENT TO :
00-28A

S-ONCCOA21 L-28A (ED001) A-21-2547049-12
P1GKF70020410A I05037
PETER RUMBIN
87 2ND ST
HAMDEN CT 06514-4711

NATIONAL PAYMENT CENTER
PO BOX 105028
ATLANTA GA 30348-5028

4 320443873290 0000004950 00000538    4 320443873290 0003302011 16953430

✂ Detach Upper Portion And Return With Payment ✂    March 30, 2011

EOS CCA
700 LONGWATER DRIVE
PO BOX 5369
NORWELL MA 02061-5369
Toll Free : 1-877-863-9438



**Office Hours :**
Monday - Thursday  7:00AM -  8:00 PM PT
Friday                      7:00AM -  5:00 PM PT
Saturday                 7:00AM - 12:00 PM PT

### *** FIRST DEMAND NOTICE ***

RE : Your Account with our client : U.S. DEPARTMENT OF EDUCATION
Client Reference # : N198905001250601
EOS CCA Account # : 21-2547049                                           Total Due:  $16953.43

Your account(s) has been placed with us for collection. Please see below for details of your outstanding obligation. This is a demand for payment of your debt.

We urge you to remit payment to the National Payment Center, using the top portion of this coupon. If you dispute this debt please see the reverse side of this notice for important rights.

| DEBT ID # | PRINCIPAL | INTEREST | CHARGES | BALANCE |
|---|---|---|---|---|
| N198905001250601 | $0.00 | $0.00 | $0.00 | $0.00 |
| F198105000054801 | $0.00 | $0.00 | $0.00 | $0.00 |
| G199909004165601 | $2586.30 | $4230.98 | $1659.38 | $8476.66 |
| G199909004165702 | $2586.30 | $4231.07 | $1659.40 | $8476.77 |
| | | | Total Due: | $16953.43 |

NOTE: Your account is accruing interest on a daily basis; please contact our office for an exact payoff amount.

All payments should be mailed to: National Payment Center P.O. Box 105028 Atlanta, GA  30348-5028.

| |
|---|
| Please direct disputes or other correspondence regarding your account to:
**EOS CCA ED Administrative Unit, PO Box 5369, Norwell, MA 02061-5369** |

This communication is from a debt collector. This is an attempt to collect a debt. Any information obtained will be used for that purpose.

| ACCOUNT NO. | PRINCIPAL BAL. | INTEREST |
|---|---|---|
| SXXX-XX-7329 | $5,172.60 | $8,470.81 |
| PENALTY CHARGES | FEES & COSTS | TOTAL BALANCE |
| $0.00 | $0.00 | $13,643.41 |

**DO NOT SEND CASH
MAKE CHECKS PAYABLE TO:
U.S. DEPARTMENT OF EDUCATION
SHOW YOUR SOCIAL SECURITY NUMBER
ON YOUR CHECK**

| AMOUNT PAID: | | |
|---|---|---|

## RETURN THIS PORTION WITH YOUR PAYMENT

NOTE NAME/ADDRESS/PHONE NO. CHANGES ON BACK

D019086896

017931  1482  047519
PETER R RUMBIN
87 2ND ST
HAMDEN CT  06514-4711

SEND PAYMENT TO:

NATIONAL PAYMENT CENTER
US DEPARTMENT OF EDUCATION
PO BOX 105028
ATLANTA GA 30348-5028

5 340190868964 0000001158 00000709    5 340190868964 0004092011 13643412

---

KEEP THIS PORTION FOR YOUR RECORDS

## U.S. DEPARTMENT OF EDUCATION

DATE: APRIL 9, 2011

---NOTICE OF UNPAID BALANCE---

OUR RECORDS INDICATE THAT THE DEPARTMENT OF EDUCATION RECENTLY CREDITED
TO YOUR ACCOUNT FUNDS TAKEN BY OFFSET OF FEDERAL PAYMENTS OWED TO YOU,
AND THAT, AS OF THE DATE OF THIS NOTICE, YOU STILL OWE THE DEPARTMENT
THE BALANCE SHOWN ABOVE.

PLEASE SEND THAT AMOUNT, ALONG WITH THE DETACHABLE COUPON AT THE TOP OF
THIS NOTICE, TO THE ADDRESS SHOWN ON THAT COUPON.  PLEASE BE SURE TO
WRITE YOUR NAME, ADDRESS AND SOCIAL SECURITY NUMBER ON YOUR CHECK OR
MONEY ORDER.  PLEASE DO NOT SEND CASH.

AVOID OFFSET NEXT YEAR!

YOU MAY BE ABLE TO AVOID OFFSET NEXT YEAR WITHOUT PAYING THE FULL AMOUNT
OF YOUR DEBT.  BY MAKING MONTHLY PAYMENTS YOU MIGHT BECOME ELIGIBLE FOR
THE CONSOLIDATION OR REHABILITATION PROGRAMS, OR YOU MAY BE ABLE TO
NEGOTIATE A LOWER PAYOFF BALANCE.

IF YOU WISH TO MAKE PAYMENT BY CREDIT CARD, IF YOU HAVE ANY QUESTIONS,
OR IF YOU WISH TO ESTABLISH A MONTHLY PAYMENT PLAN, PLEASE CONTACT THE
DEPARTMENT'S CUSTOMER SERVICE CENTER AT 1-800-621-3115.

THIS NOTICE PERTAINS ONLY TO DEBTS OWED TO THE U.S. DEPARTMENT OF EDUCA-
TION FOR WHICH WE HAVE PREVIOUSLY WRITTEN TO YOU AND THAT ARE PAYABLE TO
THE NATIONAL PAYMENT CENTER.  THIS PAYOFF AMOUNT DOES NOT INCLUDE ANY
LOAN OBLIGATION FOR WHICH YOU ARE NOW RECEIVING PAYMENT NOTICES FROM ANY
OTHER PARTY, INCLUDING A SCHOOL, A GUARANTY AGENCY, A COMMERCIAL LENDING
INSTITUTION, OR THE DEPARTMENT'S DIRECT LOAN PROGRAM OFFICES.

1600 Osgood St. Suite 20-2/120 · North Andover, MA 01845
Telephone (877) 677-9126

Mon - Thurs 8 A.M. - 8 P.M.
Fri 8 A.M. - 5 P.M.

April 29, 2019

PETER RUMBIN
87 2nd St
Hamden CT 06514-4711

Re      Account#: 1000373071
Student loan account held by:
U.S. Department of Education
**Total Due:**      **$9,276.64**
*See Page 2 for Account Details*

Dear PETER RUMBIN,

This notice regarding your defaulted student loan or grant overpayment debt held by the U.S. Department of Education is from F.H. Cann & Associates, Inc. and has been placed with our office for collection. The balance listed above is owed to U.S. Department of Education and the principal continues to accrue interest daily. This balance is effective as of today, April 29, 2019, and may not be an accurate pay-off figure; this balance may increase due to the accrual of interest or assessment of collection costs.

You may not have to repay your loan(s) to the U.S. Department of Education at this time if you are <u>disabled, incarcerated, have declared bankruptcy or if the person to whom this letter is addressed is deceased.</u> If any of these apply, please contact our office and we will assist you in completing the appropriate required paperwork.

Unless you notify this office within 30 days of receiving this notice that you dispute the validity of this debt or any portion thereof, we will assume the debt is valid. If you notify us in writing within 30 days of receiving this notice that you dispute the validity of the debt, or any portion thereof, we will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such verification or judgment. If you request of this office in writing within 30 days after receipt of this notice, we will provide you with the name and address of the original creditor, if different from the current creditor.

Please contact our office at the phone number above to resolve this matter. You may also visit our website at ttp://edinfo.fhcann.com for more information about your repayment options.

Sincerely,

David Krevitz, Collection Manager

This communication is from a debt collector.  This is an attempt to collect a debt and any information obtained will be used for that purpose.

---

### Make your check or money order payable to U.S. Department of Education
### and send to the address below using the enclosed envelope

**DO NOT SEND CHECKS OR CORRESPONDENCE TO: PO Box 505, Linden MI 48451-0505**
*** Please detach the lower portion and return with your payment ***

23139A8F4

O Box 505
inden MI 48451-0505
DDRESS SERVICE REQUESTED

Account #: 1000373071
Total Balance owed: $9,276.64
Amount Paid: _____

April 29, 2019

120024013398269806514471187—Y23139A8F4 912
TER RUMBIN
2nd St
mden CT 06514-4711



National Payment Center
U.S. Department of Education
PO Box 790336
St Louis MO 63179-0336

410003730716  0000000660  00000607     4 410003730716 0004292019 09276644

912-ONCANN10-66A-05/07/18

| FHC # | Client Reference # | Principal | Interest | Costs | Total Balance* |
|-------|--------------------|-----------|----------|-------|----------------|
| 2358263 | 1847089 | 2586.30 | 1590.03 | 748.40 | 4924.73 |
| 2358264 | 1847071 | 0.00 | 0.00 | 0.00 | 0.00 |
| 2358265 | 1847095 | 2586.30 | 1104.26 | 661.35 | 4351.91 |
| 2358266 | 1847081 | 0.00 | 0.00 | 0.00 | 0.00 |

* Total Balance as of today's date, may increase due to continuing
  accrual of interest and fees.

Home > Announcements & Events > Sweet v. Cardona Settlement

# *Sweet v. Cardona* Settlement

Under the settlement in *Sweet v. Cardona*, class members are not required to make payments on their student loans while they have a pending borrower defense application or while their loans are in the process of being discharged.

***Sweet class members who have pending borrower defense applications or have applications that have been approved but have loans that have not been fully discharged are not obligated to repay their loans.***

If you have been notified by the U.S. Department of Education (ED) that you are a member of the *Sweet* class and you receive a payment notice from your servicer, you are not obligated to make payments while your application or loan discharge is pending. The Department is working with servicers to ensure class members with pending applications do not receive payment notices in error.

On June 22, 2022, ED and the plaintiffs reached a settlement in the case titled *Sweet v. Cardona* (formerly *Sweet v DeVos*). The court granted final approval to the settlement as fair, adequate, and reasonable on Nov. 16, 2022. The agreement affects the processing of borrower defense applications filed on or before Nov. 15, 2022. Borrowers whose applications for borrower defense discharges were pending as of June 22, 2022, are "Class Members," while those whose applications were submitted in the period from June 23 to Nov. 15, 2022, are "Post-Class Applicants."

The settlement became effective on Jan. 28, 2023, and ED is starting to implement it, as described below. The settlement is final, though the court granted a temporary stay (delay) of discharges related to three schools until the court of appeals rules on their motion to stay.

## What is this case about?

A lawsuit was filed in a federal district court in California by seven borrower defense applicants who represent, with certain exceptions, all borrowers with pending borrower defense applications filed on or before June 22, 2022. The lawsuit challenges the way ED has dealt with borrower defense applications in the past, including ED's delays in issuing final decisions and ED's denial of certain applications starting in December 2019. The case is now called *Sweet v. Cardona*, No. 3:19-cv-3674 (N.D. Cal).

On Nov. 16, 2022, after a hearing, the court granted final approval of the settlement reached by ED and the plaintiffs. On Jan. 13, 2023, three schools appealed the district court's approval of the settlement and asked the district court to stay (delay) the settlement while an appeals court considers the appeal. On Feb. 15, 2023, the court held a hearing on the three schools' motion to stay the settlement, and on Feb. 24, the district court denied the schools' request to stay the settlement overall but granted a temporary stay of discharges and discharge requests related to the three schools that filed the motion (Lincoln Technical Institute; American National University; and Everglades College, Inc.) to allow these schools to present a stay motion to the court of appeals. The schools then filed a motion for a stay with the court of appeals on Feb. 27 and, consequently, the temporary stay for the three schools will remain in effect until the court of appeals rules on the motion before it.

## What are the terms of the settlement for borrowers who applied for borrower defense relief on or before June 22, 2022?

In the settlement, ED agrees to resolve the borrower defense applications that wer̶ ̶ ̶ ̶ ̶ ̶ ̶ ̶ ̶ following terms:

- If the borrower defense application related to federal student loans taken ou͏ list of schools attached to the settlement agreement as Exhibit C, the borrowe Settlement Relief means that the federal student loan(s) associated with the b discharged, ED will refund any amounts paid to ED on those loans, and the c͏ deleted from the borrower's credit report.

- Within 90 days of the court's final approval of the settlement agreement, ED will receive Full Settlement Relief as stated above and that relief will be prov date of the settlement agreement. Until this relief is provided, ED won't take

- If the borrower's loans aren't associated with a school on the list, the borrowe͏ application according to the following schedule:

Hi there! I'm Aidan®, the financial aid virtual assistant. How can I help you today?

Help with the FAFSA® form

Login (FSA ID) issues

I want my loan and grant info

I have a different question

*Sweet v. Cardona* Loan Discharge Application Decision Schedule



| Application Submitted | ED Decision |
|---|---|
| Between Jan. 1, 2015, and Dec. 31, 2017 | No later than July 28, 2023 |
| Between Jan. 1, 2018, and Dec. 31, 2018 | No later than Jan. 28, 2024 |
| Between Jan. 1, 2019, and Dec. 31, 2019 | No later than July 28, 2024 |
| Between Jan. 1, 2020, and Dec. 31, 2020 | No later than Jan. 28, 2025 |
| Between Jan. 1, 2021, and June 22, 2022 | No later than July 28, 2025 |

- If ED doesn't make a decision on an application within the timelines outlined above, the borrower will receive Full Settlement Relief. If a borrower submitted multiple applications, ED will use the earliest submitted application date.

**ED's Review Process**

ED will use a streamlined review process to make decisions on these applications. ED will review these applications using the 2016 Borrower Defense Regulation but will not require evidence outside of the written application, require proof of reliance, or apply any statute of limitations. Rather, ED will determine whether the application states a claim that, if presumed to be true, would assert a valid basis for borrower defense under the applicable regulation. Borrowers whose applications are approved under the procedures above will receive Full Settlement Relief.

**If Your Application Isn't Approved Under the Streamlined Review Process**

ED won't deny an application without first providing instructions on what is required for a successful application and giving the borrower the opportunity to resubmit the application. If the borrower chooses to resubmit the application, it must be submitted within six months after receiving those instructions. The instructions will explain that if the application is not resubmitted within the six-month period, the application will be considered denied.

If the borrower chooses to resubmit their application within the six-month time period after receiving the instructions, ED will issue a final decision no later than six months after receiving the resubmitted application.

For any borrower who received a notice from ED in December 2019 or later informing them that their borrower defense application was denied, that denial has been voided and ED will review the application pursuant to the terms described above.

## What are the terms of the settlement for borrowers who applied for borrower defense relief after June 22, 2022, but before final approval of the settlement?

For post-class applicants (borrowers who submitted a borrower defense application in the period from June 23, 2022, to Nov. 15, 2022), ED will review these applications using the 2016 Borrower Defense Regulation and will issue a decision on the application no later than Jan. 28, 2026.

If ED doesn't issue a decision within this time period, the borrowers will receive Full Settlement Relief.

## What if the loan is in default?

If the loan for which a Class Member or Post-Class Applicant has submitted a borro~~wer defense application is in default, ED~~ will not take action to collect the debt—such as by garnishing wages or taking por~~ Hi there! I'm Aidan®, the financial
is pending or while the borrower is waiting to receive any relief owed under the s~~ aid virtual assistant. How can I
help you today?

## What happens next?

ED has already reopened the previously denied cases that require streamlined rev~~
You'll receive a decision based on the schedule noted above.

Additionally, in accordance with the court's order issued on Feb. 24, 2023 (describ~~
loans associated with Lincoln Technical Institute; American National University; a~~
appeals rules on the stay motion.

## *Sweet v. Cardona* Settlement Quarterly Reports

The settlement requires that we submit quarterly reports documenting our progress toward fulfilling our obligations un~~
the settlement, and that we post them publicly.

- May 30, 2023, Quarterly Report*

- August 28, 2023, Quarterly Report*

- November 27, 2023, Quarterly Report*

- February 26, 2024, Quarterly Report*

- May 28, 2024, Quarterly Report*

- August 26, 2024, Quarterly Report*

*ED strives to make all content accessible to everyone. While this document does not currently meet the standards of Section 508 of the Rehabilitation Act of 1973, as amended, we are working to create accessible versions. For immediate assistance on receiving a 508-compliant document, please send us a written request, including title of document, date of request, and your email address, to:*

*Federal Student Aid Information Center*
*P.O. Box 84*
*Washington, D.C. 20044*

## Can I get more information?

Check back here periodically for updated information about the settlement.

- Review the settlement.*

- Review the complaint.*

- Review the amended complaint.*

- Review the preliminary approval order.*

- Review the order granting final approval.*

- Review the order denying the motion to stay.*

Learn more about this lawsuit and the proposed settlement and find contact information for the lawyers who brought the lawsuit ☐.

*ED strives to make all content accessible to everyone. While this document does not currently meet the standards of Section 508 of the Rehabilitation Act of 1973, as amended, we are working to create accessible versions. For immediate assistance on receiving a 508-compliant document, please send us a written request, including title of document, date of request, and your email address, to:*

*Federal Student Aid Information Center*
*P.O. Box 84*
*Washington, D.C. 20044*

## I am not a class member. Should I apply for borrower defense?

The *Sweet* settlement only impacts individuals who applied for borrower defense discharge on or before Nov. 15, 2022. If you didn't apply on or before Nov. 15, 2022, learn more about borrower defense and w

Hi there! I'm Aidan®, the financial aid virtual assistant. How can I help you today?

Was this page helpful?* 👍 👎





MONEY

**Wells Fargo**   Add Topic

# Wells Fargo fined $3.6M over student loan practices

**Charisse Jones** USA TODAY

Published 5:15 p.m. ET Aug. 22, 2016 | Updated 6:18 p.m. ET Aug. 22, 2016

Wells Fargo must reform its practices and pay a $3.6 million fine for actions that federal consumer protection officials say misled student loan borrowers and resulted in some paying unnecessary fees.

In the order filed Monday leveling the penalty, the Consumer Financial Protection Bureau said the bank acted illegally, charging on-time payers with late fees, failed to inform borrowers of steps they could take to minimize fees and left credit report errors uncorrected.

"Wells Fargo hit borrowers with illegal fees and deprived others of critical information needed to effectively manage their student loan accounts," bureau Director Richard Cordray said in a statement. "Consumers should be able to rely on their servicer to process and credit payments correctly and to provide accurate and timely information."

College debt, no degree means world of financial hurt

According to the bureau, Wells Fargo left borrowers in the dark about how it divided single payments between their multiple loans, and did not make borrowers aware that they could decide how payments were to be allocated, which led to the possibility of unnecessary late fees. Billing statements did not make it clear that partial payment could be counted toward paying down student debt. The bank illegally tagged some borrowers with late fees though payments had been made as scheduled, and when it gave wrong information to credit reporting entities, it did not correct them.

**Pursue your education:** See the best student loans

But Wells Fargo said in a statement that it has already overhauled the problematic processes cited in the order and, while disagreeing with the charges, that it will address the bureau's

concerns to put the matter behind it.

"Today's consent order with the CFPB resolves three areas of concern cited by the bureau related to legacy payment procedures that were retired or improved many years ago, and addresses the impact to a small number of customers," the statement says.

According to the order, Wells Fargo must pay at least $410,000 to reimburse borrowers for wrongfully charged late fees. The bank must also correct credit report errors, do a better job of explaining how consumers can allocate their payments, and use partial payments to pay what is due on as many loans as possible.

The actions taken against Wells Fargo are designed to put a dent in the more than $110 billion in student loans that are in default, the bureau says. Private loans, like those provided by Wells Fargo, are roughly $100 billion of all outstanding student loan debt, and the bureau says that many of those consumers have also borrowed from the federal government to pay for schooling.



**PRESS RELEASE**

# Wells Fargo Agrees to Pay $3 Billion to Resolve Criminal and Civil Investigations into Sales Practices Involving the Opening of Millions of Accounts without Customer Authorization

Friday, February 21, 2020

**For Immediate Release**

Office of Public Affairs

### $3 Billion Payment Result of Deferred Prosecution Agreement in Criminal Matter, Settlement of Civil Claims under FIRREA and Resolution of SEC Proceedings

Wells Fargo & Company and its subsidiary, Wells Fargo Bank, N.A., have agreed to pay $3 billion to resolve their potential criminal and civil liability stemming from a practice between 2002 and 2016 of pressuring employees to meet unrealistic sales goals that led thousands of employees to provide millions of accounts or products to customers under false pretenses or without consent, often by creating false records or misusing customers' identities, the Department of Justice announced today.

As part of the agreements with the United States Attorney's Offices for the Central District of California and the Western District of North Carolina, the Commercial Litigation Branch of the Civil Division, and the Securities and Exchange Commission, Wells Fargo admitted that it collected millions of dollars in fees and interest to which the Company was not entitled, harmed the credit ratings of certain customers, and unlawfully misused customers' sensitive personal information, including customers' means of identification.

"When companies cheat to compete, they harm customers and other competitors," said Deputy Assistant Attorney General Michael D. Granston of the Department of Justice's Civil Division. "This settlement holds Wells Fargo accountable for tolerating fraudulent conduct that is remarkable both for its duration and scope, and for its blatant disregard of customer's private information.  The Civil Division will continue to use all available tools to protect the American public from fraud and abuse, including misconduct by or against their financial institutions."

"Our settlement with Wells Fargo, and the $3 billion monetary penalty imposed on the bank, go far beyond 'the cost of doing business.' They are appropriate given the staggering size, scope and duration of Wells Fargo's illicit conduct, which spanned well over a decade," said U.S. Attorney Andrew Murray for the Western District of North Carolina. "When a reputable institution like Wells Fargo caves to the pernicious forces of greed, and puts its own interests ahead of those of the customers it claims to serve, my office will not sit idle.  Today's announcement should serve as a stark reminder that no institution is too big, too powerful, or too well-known to be held accountable and face enforcement action for its wrongdoings."

"This case illustrates a complete failure of leadership at multiple levels within the Bank. Simply put, Wells Fargo traded its hard-earned reputation for short-term profits, and harmed untold numbers of customers along the way," said U.S. Attorney Nick Hanna for the Central District of California.  "We are hopeful that this $3 billion penalty, along with the personnel and structural changes at the Bank, will ensure that such conduct will not reoccur."

"Our office is committed to bringing to justice those who deliberately falsify and fabricate bank records in order to deceive regulators and the public," said Inspector General Mark Bialek of the Board of Governors of the Federal Reserve System and Bureau of Consumer Financial Protection.  "I commend our agent and our law enforcement partners for their hard work and persistence that led to today's announcement."

"Today's multi-billion-dollar penalty holds Wells Fargo accountable for its unlawful sales practices and pressure tactics in which it deceived millions of clients, thus causing substantial hardship for the very individuals who placed their trust in the institution," said Inspector General Jay N. Lerner Federal Deposit Insurance Corporation.  "The FDIC Office of Inspector General is committed to working with our law enforcement partners in order to investigate such financial crimes that harm customers and investors, and undermine the integrity of the banking sector."

The criminal investigation into false bank records and identity theft is being resolved with a deferred prosecution agreement in which Wells Fargo will not be prosecuted during the three-year term of the agreement if it abides by certain conditions, including continuing to cooperate with further government investigations. Wells Fargo also entered a civil settlement agreement under the Financial Institutions Reform, Recovery and Enforcement Act of 1989 (FIRREA) based on Wells Fargo's creation of false bank records. FIRREA authorizes the federal government to seek civil penalties against financial institutions that violate various predicate criminal offenses, including false bank records. Wells Fargo also agreed to the SEC instituting a cease-and-desist proceeding finding violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder. The $3 billion payment resolves all three matters, and includes a $500 million civil penalty to be distributed by the SEC to investors.

The 16-page statement of facts accompanying the deferred prosecution agreement and civil settlement agreement outlines a course of conduct over 15 years at Well Fargo's Community Bank, which was then the largest operating segment of Wells Fargo, consistently generating more than half of the company's revenue. The statement of facts outlines top Community Bank leaders' knowledge of the conduct. As part of the statement of facts, Wells Fargo admitted the following:

Beginning in 1998, Wells Fargo increased its focus on sales volume and reliance on annual sales growth. A core part of this sales model was the "cross-sell strategy" to sell existing customers additional financial products. It was "the foundation of our business model," according to Wells Fargo. In its 2012 Vision and Values statement, Wells Fargo stated: "We start with what the customer needs – not with what we want to sell them."

But, in contrast to Wells Fargo's public statements and disclosures about needs-based selling, the Community Bank implemented a volume-based sales model in which employees were directed and pressured to sell large volumes of products to existing customers, often with little regard to actual customer need or expected use. The Community Bank's onerous sales goals and accompanying management pressure led thousands of its employees to engage in unlawful conduct – including fraud, identity theft and the falsification of bank records – and unethical practices to sell product of no or little value to the customer.

Many of these practices were referred to within Wells Fargo as "gaming." Gaming strategies varied widely, but included using existing customers' identities – without their consent – to open checking and savings, debit card, credit card, bill pay and global remittance accounts. From 2002 to 2016, gaming practices included forging customer signatures to open accounts without authorization, creating PINs to activate unauthorized debit cards, moving money from millions of customer accounts to unauthorized accounts in a practice known internally as "simulated funding," opening credit cards and bill pay products without authorization, altering customers' true contact information to prevent customers from learning of unauthorized accounts and

prevent Wells Fargo employees from reaching customers to conduct customer satisfaction surveys, and encouraging customers to open accounts they neither wanted or needed.

The top managers of the Community Bank were aware of the unlawful and unethical gaming practices as early as 2002, and they knew that the conduct was increasing due to onerous sales goals and pressure from management to meet these goals. One internal investigator in 2004 called the problem a "growing plague." The following year, another internal investigator said the problem was "spiraling out of control." Even after senior managers in the Community Bank directly called into question the implementation of the cross-sell strategy, Community Bank senior leadership refused to alter the sales model, which contained unrealistic sales goals and a focus on low-quality secondary accounts.

Despite knowledge of the illegal sales practices, Community Bank senior leadership failed to take sufficient action to prevent and reduce the incidence of such practices. Senior leadership of the Community Bank minimized the problems to Wells Fargo management and its board of directors, by casting the problem as driven by individual misconduct instead of the sales model itself. Community Bank senior leadership viewed negative sales quality and integrity as a necessary byproduct of the increased sales and as merely the cost of doing business.

* * *

The government's decision to enter into the deferred prosecution agreement and civil settlement took into account a number of factors, including Wells Fargo's extensive cooperation and substantial assistance with the government's investigations; Wells Fargo's admission of wrongdoing; its continued cooperation in the investigations; its prior settlements in a series of regulatory and civil actions; and remedial actions, including significant changes in Wells Fargo's management and its board of directors, an enhanced compliance program, and significant work to identify and compensate customers who may have been victims. The deferred prosecution agreement will be in effect for three years.

The global settlement also reflects coordination between the Department of Justice and the SEC to ensure a resolution that appropriately addresses the severity of the defendants' conduct while avoiding the imposition of fines and penalties that are unnecessarily duplicative.

The deferred prosecution agreement was handled by the United States Attorney's Offices in Los Angeles and Charlotte, with investigative support from the Federal Bureau of Investigation, the Federal Deposit Insurance Corporation - Office of Inspector General, the Federal Housing Finance Agency - Office of Inspector General, the Office of Inspector General for the Board of Governors of the Federal Reserve System and Consumer Financial Protection Bureau, and the United States Postal Inspection Service.

The civil settlement agreement was the result of a coordinated effort between the Civil Division's Commercial Litigation Branch and the U.S. Attorney's Office in Los Angeles.

# CFPB Orders Wells Fargo to Pay $3.7 Billion for Widespread Mismanagement of Auto Loans, Mortgages, and Deposit Accounts

© consumerfinance.gov/about-us/newsroom/cfpb-orders-wells-fargo-to-pay-37-billion-for-widespread-mismanagement-of-auto-loans-mortgages-and-deposit-accounts

**WASHINGTON, D.C.** – The Consumer Financial Protection Bureau (CFPB) is ordering Wells Fargo Bank to pay more than $2 billion in redress to consumers and a $1.7 billion civil penalty for legal violations across several of its largest product lines. The bank's illegal conduct led to billions of dollars in financial harm to its customers and, for thousands of customers, the loss of their vehicles and homes. Consumers were illegally assessed fees and interest charges on auto and mortgage loans, had their cars wrongly repossessed, and had payments to auto and mortgage loans misapplied by the bank. Wells Fargo also charged consumers unlawful surprise overdraft fees and applied other incorrect charges to checking and savings accounts. Under the terms of the order, Wells Fargo will pay redress to the over 16 million affected consumer accounts, and pay a $1.7 billion fine, which will go to the CFPB's Civil Penalty Fund, where it will be used to provide relief to victims of consumer financial law violations.

"Wells Fargo's rinse-repeat cycle of violating the law has harmed millions of American families," said CFPB Director Rohit Chopra. "The CFPB is ordering Wells Fargo to refund billions of dollars to consumers across the country. This is an important initial step for accountability and long-term reform of this repeat offender."

Wells Fargo (NYSE: WFC) is one of the nation's largest banks serving households across the country. It offers a variety of consumer financial services, including mortgages, auto loans, savings and checking accounts, and online banking services.

According to today's enforcement action, Wells Fargo harmed millions of consumers over a period of several years, with violations across many of the bank's largest product lines. The CFPB's specific findings include that Wells Fargo:

- **Unlawfully repossessed vehicles and bungled borrower accounts:** Wells Fargo had systematic failures in its servicing of automobile loans that resulted in $1.3 billion in harm across more than 11 million accounts. The bank incorrectly applied borrowers' payments, improperly charged fees and interest, and wrongfully repossessed borrowers' vehicles. In addition, the bank failed to ensure that borrowers received a refund for certain fees on add-on products when a loan ended early.

- **Improperly denied mortgage modifications:** During at least a seven-year period, the bank improperly denied thousands of mortgage loan modifications, which in some cases led to Wells Fargo customers losing their homes to wrongful foreclosures. The bank was aware of the problem for years before it ultimately addressed the issue.
- **Illegally charged surprise overdraft fees:** For years, Wells Fargo unfairly charged surprise overdraft fees - fees charged even though consumers had enough money in their account to cover the transaction at the time the bank authorized it - on debit card transactions and ATM withdrawals. As early as 2015, the CFPB, as well as other federal regulators, including the Federal Reserve, began cautioning financial institutions against this practice, known as authorized positive fees.
- **Unlawfully froze consumer accounts and mispresented fee waivers:** The bank froze more than 1 million consumer accounts based on a faulty automated filter's determination that there may have been a fraudulent deposit, even when it could have taken other actions that would have not harmed customers. Customers affected by these account freezes were unable to access any of their money in accounts at the bank for an average of at least two weeks. The bank also made deceptive claims as to the availability of waivers for a monthly service fee.

Wells Fargo is a repeat offender that has been the subject of multiple enforcement actions by the CFPB and other regulators for violations across its lines of business, including faulty student loan servicing, mortgage kickbacks, fake accounts, and harmful auto loan practices.

## Enforcement action

Under the Consumer Financial Protection Act, the CFPB has the authority to take action against institutions violating federal consumer financial laws, including by engaging in unfair, deceptive, or abusive acts or practices. The CFPB's investigation found that Wells Fargo violated the Act's prohibition on unfair and deceptive acts and practices.

The CFPB order requires Wells Fargo to:

- **Provide more than $2 billion in redress to consumers:** Wells Fargo will be required to pay redress totaling more than $2 billion to harmed customers. These payments represent refunds of wrongful fees and other charges and compensation for a variety of harms such as frozen bank accounts, illegally repossessed vehicles, and wrongfully foreclosed homes. Specifically, Wells Fargo will have to pay:
  - More than $1.3 billion in consumer redress for affected auto lending accounts.
  - More than $500 million in consumer redress for affected deposit accounts, including $205 million for illegal surprise overdraft fees.
  - Nearly $200 million in consumer redress for affected mortgage servicing accounts.

- **Stop charging surprise overdraft fees:** Wells Fargo may not charge overdraft fees for deposit accounts when the consumer had available funds at the time of a purchase or other debit transaction, but then subsequently had a negative balance once the transaction settled. Surprise overdraft fees have been a recurring issue for consumers who can neither reasonably anticipate nor take steps to avoid them.
- **Ensure auto loan borrowers receive refunds for certain add-on fees:** Wells Fargo must ensure that the unused portion of GAP contracts, a type of debt cancellation contract that covers the remaining amount of the borrower's auto loan in the case of a major accident or theft, is refunded to the borrower when a loan is paid off or otherwise terminates early.
- **Pay $1.7 billion in penalties:** Wells Fargo will pay a $1.7 billion penalty to the CFPB, which will be deposited into the CFPB's victims relief fund.

Read today's order. 🗎

Read CFPB Director Chopra's remarks on a press call announcing the action.

The CFPB wishes to thank members of the public who submitted complaints through the CFPB's complaint system across Wells Fargo product lines. These complaints aided in the detection of some of the illegal activity uncovered in the CFPB's investigation.

The CFPB is also grateful for the cooperation and the substantial work performed by the Office of the Comptroller of the Currency, whose efforts have contributed to the significant remediation received by consumers harmed by the bank's illegal activity, and the Federal Reserve Board of Governors.

Consumers who are experiencing ongoing problems with Wells Fargo, or other financial providers, can submit complaints by visiting the CFPB's website or by calling (855) 411-CFPB (2372). The Bureau also has resources for consumers about mortgage servicing, auto loans, and deposit accounts:

Mortgage servicing: https://www.consumerfinance.gov/consumer-tools/mortgages/

Auto loans: https://www.consumerfinance.gov/consumer-tools/auto-loans/

Deposit Accounts: https://www.consumerfinance.gov/consumer-tools/bank-accounts/

Wells Fargo employees who are aware of other illegal activity are encouraged to send information about what they know to whistleblower@cfpb.gov.

*The Consumer Financial Protection Bureau is a 21st century agency that implements and enforces Federal consumer financial law and ensures that markets for consumer financial products are fair, transparent, and competitive. For more information, visit*


**USA TODAY**

---

MONEY                                                    Wells Fargo    Add Topic

# Wells Fargo fined $3.6M over student loan practices

**Charisse Jones** USA TODAY
Published 5:15 p.m. ET Aug. 22, 2016 | Updated 6:18 p.m. ET Aug. 22, 2016

Wells Fargo must reform its practices and pay a $3.6 million fine for actions that federal consumer protection officials say misled student loan borrowers and resulted in some paying unnecessary fees.

In the order filed Monday leveling the penalty, the Consumer Financial Protection Bureau said the bank acted illegally, charging on-time payers with late fees, failed to inform borrowers of steps they could take to minimize fees and left credit report errors uncorrected.

"Wells Fargo hit borrowers with illegal fees and deprived others of critical information needed to effectively manage their student loan accounts," bureau Director Richard Cordray said in a statement. "Consumers should be able to rely on their servicer to process and credit payments correctly and to provide accurate and timely information."

College debt, no degree means world of financial hurt

According to the bureau, Wells Fargo left borrowers in the dark about how it divided single payments between their multiple loans, and did not make borrowers aware that they could decide how payments were to be allocated, which led to the possibility of unnecessary late fees. Billing statements did not make it clear that partial payment could be counted toward paying down student debt. The bank illegally tagged some borrowers with late fees though payments had been made as scheduled, and when it gave wrong information to credit reporting entities, it did not correct them.

**Pursue your education:** See the best student loans

But Wells Fargo said in a statement that it has already overhauled the problematic processes cited in the order and, while disagreeing with the charges, that it will address the bureau's

concerns to put the matter behind it.

"Today's consent order with the CFPB resolves three areas of concern cited by the bureau related to legacy payment procedures that were retired or improved many years ago, and addresses the impact to a small number of customers," the statement says.

According to the order, Wells Fargo must pay at least $410,000 to reimburse borrowers for wrongfully charged late fees. The bank must also correct credit report errors, do a better job of explaining how consumers can allocate their payments, and use partial payments to pay what is due on as many loans as possible.

The actions taken against Wells Fargo are designed to put a dent in the more than $110 billion in student loans that are in default, the bureau says. Private loans, like those provided by Wells Fargo, are roughly $100 billion of all outstanding student loan debt, and the bureau says that many of those consumers have also borrowed from the federal government to pay for schooling.



**PRESS RELEASE**

# Wells Fargo Agrees to Pay $3 Billion to Resolve Criminal and Civil Investigations into Sales Practices Involving the Opening of Millions of Accounts without Customer Authorization

Friday, February 21, 2020

**For Immediate Release**

Office of Public Affairs

## $3 Billion Payment Result of Deferred Prosecution Agreement in Criminal Matter, Settlement of Civil Claims under FIRREA and Resolution of SEC Proceedings

Wells Fargo & Company and its subsidiary, Wells Fargo Bank, N.A., have agreed to pay $3 billion to resolve their potential criminal and civil liability stemming from a practice between 2002 and 2016 of pressuring employees to meet unrealistic sales goals that led thousands of employees to provide millions of accounts or products to customers under false pretenses or without consent, often by creating false records or misusing customers' identities, the Department of Justice announced today.

As part of the agreements with the United States Attorney's Offices for the Central District of California and the Western District of North Carolina, the Commercial Litigation Branch of the Civil Division, and the Securities and Exchange Commission, Wells Fargo admitted that it collected millions of dollars in fees and interest to which the Company was not entitled, harmed the credit ratings of certain customers, and unlawfully misused customers' sensitive personal information, including customers' means of identification.

"When companies cheat to compete, they harm customers and other competitors," said Deputy Assistant Attorney General Michael D. Granston of the Department of Justice's Civil Division. "This settlement holds Wells Fargo accountable for tolerating fraudulent conduct that is remarkable both for its duration and scope, and for its blatant disregard of customer's private information. The Civil Division will continue to use all available tools to protect the American public from fraud and abuse, including misconduct by or against their financial institutions."

"Our settlement with Wells Fargo, and the $3 billion monetary penalty imposed on the bank, go far beyond 'the cost of doing business.' They are appropriate given the staggering size, scope and duration of Wells Fargo's illicit conduct, which spanned well over a decade," said U.S. Attorney Andrew Murray for the Western District of North Carolina. "When a reputable institution like Wells Fargo caves to the pernicious forces of greed, and puts its own interests ahead of those of the customers it claims to serve, my office will not sit idle. Today's announcement should serve as a stark reminder that no institution is too big, too powerful, or too well-known to be held accountable and face enforcement action for its wrongdoings."

"This case illustrates a complete failure of leadership at multiple levels within the Bank. Simply put, Wells Fargo traded its hard-earned reputation for short-term profits, and harmed untold numbers of customers along the way," said U.S. Attorney Nick Hanna for the Central District of California. "We are hopeful that this $3 billion penalty, along with the personnel and structural changes at the Bank, will ensure that such conduct will not reoccur."

"Our office is committed to bringing to justice those who deliberately falsify and fabricate bank records in order to deceive regulators and the public," said Inspector General Mark Bialek of the Board of Governors of the Federal Reserve System and Bureau of Consumer Financial Protection. "I commend our agent and our law enforcement partners for their hard work and persistence that led to today's announcement."

"Today's multi-billion-dollar penalty holds Wells Fargo accountable for its unlawful sales practices and pressure tactics in which it deceived millions of clients, thus causing substantial hardship for the very individuals who placed their trust in the institution," said Inspector General Jay N. Lerner Federal Deposit Insurance Corporation. "The FDIC Office of Inspector General is committed to working with our law enforcement partners in order to investigate such financial crimes that harm customers and investors, and undermine the integrity of the banking sector."

The criminal investigation into false bank records and identity theft is being resolved with a deferred prosecution agreement in which Wells Fargo will not be prosecuted during the three-year term of the agreement if it abides by certain conditions, including continuing to cooperate with further government investigations. Wells Fargo also entered a civil settlement agreement under the Financial Institutions Reform, Recovery and Enforcement Act of 1989 (FIRREA) based on Wells Fargo's creation of false bank records. FIRREA authorizes the federal government to seek civil penalties against financial institutions that violate various predicate criminal offenses, including false bank records. Wells Fargo also agreed to the SEC instituting a cease-and-desist proceeding finding violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder. The $3 billion payment resolves all three matters, and includes a $500 million civil penalty to be distributed by the SEC to investors.

The 16-page statement of facts accompanying the deferred prosecution agreement and civil settlement agreement outlines a course of conduct over 15 years at Well Fargo's Community Bank, which was then the largest operating segment of Wells Fargo, consistently generating more than half of the company's revenue. The statement of facts outlines top Community Bank leaders' knowledge of the conduct. As part of the statement of facts, Wells Fargo admitted the following:

Beginning in 1998, Wells Fargo increased its focus on sales volume and reliance on annual sales growth. A core part of this sales model was the "cross-sell strategy" to sell existing customers additional financial products. It was "the foundation of our business model," according to Wells Fargo. In its 2012 Vision and Values statement, Wells Fargo stated: "We start with what the customer needs – not with what we want to sell them."

But, in contrast to Wells Fargo's public statements and disclosures about needs-based selling, the Community Bank implemented a volume-based sales model in which employees were directed and pressured to sell large volumes of products to existing customers, often with little regard to actual customer need or expected use. The Community Bank's onerous sales goals and accompanying management pressure led thousands of its employees to engage in unlawful conduct – including fraud, identity theft and the falsification of bank records – and unethical practices to sell product of no or little value to the customer.

Many of these practices were referred to within Wells Fargo as "gaming." Gaming strategies varied widely, but included using existing customers' identities – without their consent – to open checking and savings, debit card, credit card, bill pay and global remittance accounts. From 2002 to 2016, gaming practices included forging customer signatures to open accounts without authorization, creating PINs to activate unauthorized debit cards, moving money from millions of customer accounts to unauthorized accounts in a practice known internally as "simulated funding," opening credit cards and bill pay products without authorization, altering customers' true contact information to prevent customers from learning of unauthorized accounts and

prevent Wells Fargo employees from reaching customers to conduct customer satisfaction surveys, and encouraging customers to open accounts they neither wanted or needed.

The top managers of the Community Bank were aware of the unlawful and unethical gaming practices as early as 2002, and they knew that the conduct was increasing due to onerous sales goals and pressure from management to meet these goals. One internal investigator in 2004 called the problem a "growing plague." The following year, another internal investigator said the problem was "spiraling out of control." Even after senior managers in the Community Bank directly called into question the implementation of the cross-sell strategy, Community Bank senior leadership refused to alter the sales model, which contained unrealistic sales goals and a focus on low-quality secondary accounts.

Despite knowledge of the illegal sales practices, Community Bank senior leadership failed to take sufficient action to prevent and reduce the incidence of such practices. Senior leadership of the Community Bank minimized the problems to Wells Fargo management and its board of directors, by casting the problem as driven by individual misconduct instead of the sales model itself. Community Bank senior leadership viewed negative sales quality and integrity as a necessary byproduct of the increased sales and as merely the cost of doing business.

* * *

The government's decision to enter into the deferred prosecution agreement and civil settlement took into account a number of factors, including Wells Fargo's extensive cooperation and substantial assistance with the government's investigations; Wells Fargo's admission of wrongdoing; its continued cooperation in the investigations; its prior settlements in a series of regulatory and civil actions; and remedial actions, including significant changes in Wells Fargo's management and its board of directors, an enhanced compliance program, and significant work to identify and compensate customers who may have been victims. The deferred prosecution agreement will be in effect for three years.

The global settlement also reflects coordination between the Department of Justice and the SEC to ensure a resolution that appropriately addresses the severity of the defendants' conduct while avoiding the imposition of fines and penalties that are unnecessarily duplicative.

The deferred prosecution agreement was handled by the United States Attorney's Offices in Los Angeles and Charlotte, with investigative support from the Federal Bureau of Investigation, the Federal Deposit Insurance Corporation - Office of Inspector General, the Federal Housing Finance Agency - Office of Inspector General, the Office of Inspector General for the Board of Governors of the Federal Reserve System and Consumer Financial Protection Bureau, and the United States Postal Inspection Service.

The civil settlement agreement was the result of a coordinated effort between the Civil Division's Commercial Litigation Branch and the U.S. Attorney's Office in Los Angeles.

# CFPB Orders Wells Fargo to Pay $3.7 Billion for Widespread Mismanagement of Auto Loans, Mortgages, and Deposit Accounts

**c** consumerfinance.gov/about-us/newsroom/cfpb-orders-wells-fargo-to-pay-37-billion-for-widespread-mismanagement-of-auto-loans-mortgages-and-deposit-accounts

**WASHINGTON, D.C.** – The Consumer Financial Protection Bureau (CFPB) is ordering Wells Fargo Bank to pay more than $2 billion in redress to consumers and a $1.7 billion civil penalty for legal violations across several of its largest product lines. The bank's illegal conduct led to billions of dollars in financial harm to its customers and, for thousands of customers, the loss of their vehicles and homes. Consumers were illegally assessed fees and interest charges on auto and mortgage loans, had their cars wrongly repossessed, and had payments to auto and mortgage loans misapplied by the bank. Wells Fargo also charged consumers unlawful surprise overdraft fees and applied other incorrect charges to checking and savings accounts. Under the terms of the order, Wells Fargo will pay redress to the over 16 million affected consumer accounts, and pay a $1.7 billion fine, which will go to the CFPB's Civil Penalty Fund, where it will be used to provide relief to victims of consumer financial law violations.

"Wells Fargo's rinse-repeat cycle of violating the law has harmed millions of American families," said CFPB Director Rohit Chopra. "The CFPB is ordering Wells Fargo to refund billions of dollars to consumers across the country. This is an important initial step for accountability and long-term reform of this repeat offender."

Wells Fargo (NYSE: WFC) is one of the nation's largest banks serving households across the country. It offers a variety of consumer financial services, including mortgages, auto loans, savings and checking accounts, and online banking services.

According to today's enforcement action, Wells Fargo harmed millions of consumers over a period of several years, with violations across many of the bank's largest product lines. The CFPB's specific findings include that Wells Fargo:

- **Unlawfully repossessed vehicles and bungled borrower accounts:** Wells Fargo had systematic failures in its servicing of automobile loans that resulted in $1.3 billion in harm across more than 11 million accounts. The bank incorrectly applied borrowers' payments, improperly charged fees and interest, and wrongfully repossessed borrowers' vehicles. In addition, the bank failed to ensure that borrowers received a refund for certain fees on add-on products when a loan ended early.

- **Improperly denied mortgage modifications:** During at least a seven-year period, the bank improperly denied thousands of mortgage loan modifications, which in some cases led to Wells Fargo customers losing their homes to wrongful foreclosures. The bank was aware of the problem for years before it ultimately addressed the issue.
- **Illegally charged surprise overdraft fees:** For years, Wells Fargo unfairly charged surprise overdraft fees - fees charged even though consumers had enough money in their account to cover the transaction at the time the bank authorized it - on debit card transactions and ATM withdrawals. As early as 2015, the CFPB, as well as other federal regulators, including the Federal Reserve, began cautioning financial institutions against this practice, known as authorized positive fees.
- **Unlawfully froze consumer accounts and mispresented fee waivers:** The bank froze more than 1 million consumer accounts based on a faulty automated filter's determination that there may have been a fraudulent deposit, even when it could have taken other actions that would have not harmed customers. Customers affected by these account freezes were unable to access any of their money in accounts at the bank for an average of at least two weeks. The bank also made deceptive claims as to the availability of waivers for a monthly service fee.

Wells Fargo is a repeat offender that has been the subject of multiple enforcement actions by the CFPB and other regulators for violations across its lines of business, including faulty student loan servicing, mortgage kickbacks, fake accounts, and harmful auto loan practices.

## Enforcement action

Under the Consumer Financial Protection Act, the CFPB has the authority to take action against institutions violating federal consumer financial laws, including by engaging in unfair, deceptive, or abusive acts or practices. The CFPB's investigation found that Wells Fargo violated the Act's prohibition on unfair and deceptive acts and practices.

The CFPB order requires Wells Fargo to:

- **Provide more than $2 billion in redress to consumers:** Wells Fargo will be required to pay redress totaling more than $2 billion to harmed customers. These payments represent refunds of wrongful fees and other charges and compensation for a variety of harms such as frozen bank accounts, illegally repossessed vehicles, and wrongfully foreclosed homes. Specifically, Wells Fargo will have to pay:
  - More than $1.3 billion in consumer redress for affected auto lending accounts.
  - More than $500 million in consumer redress for affected deposit accounts, including $205 million for illegal surprise overdraft fees.
  - Nearly $200 million in consumer redress for affected mortgage servicing accounts.

- **Stop charging surprise overdraft fees:** Wells Fargo may not charge overdraft fees for deposit accounts when the consumer had available funds at the time of a purchase or other debit transaction, but then subsequently had a negative balance once the transaction settled. Surprise overdraft fees have been a recurring issue for consumers who can neither reasonably anticipate nor take steps to avoid them.
- **Ensure auto loan borrowers receive refunds for certain add-on fees:** Wells Fargo must ensure that the unused portion of GAP contracts, a type of debt cancellation contract that covers the remaining amount of the borrower's auto loan in the case of a major accident or theft, is refunded to the borrower when a loan is paid off or otherwise terminates early.
- **Pay $1.7 billion in penalties:** Wells Fargo will pay a $1.7 billion penalty to the CFPB, which will be deposited into the CFPB's victims relief fund.

Read today's order. ⮋

Read CFPB Director Chopra's remarks on a press call announcing the action.

The CFPB wishes to thank members of the public who submitted complaints through the CFPB's complaint system across Wells Fargo product lines. These complaints aided in the detection of some of the illegal activity uncovered in the CFPB's investigation.

The CFPB is also grateful for the cooperation and the substantial work performed by the Office of the Comptroller of the Currency, whose efforts have contributed to the significant remediation received by consumers harmed by the bank's illegal activity, and the Federal Reserve Board of Governors.

Consumers who are experiencing ongoing problems with Wells Fargo, or other financial providers, can submit complaints by visiting the CFPB's website or by calling (855) 411-CFPB (2372). The Bureau also has resources for consumers about mortgage servicing, auto loans, and deposit accounts:

Mortgage servicing: https://www.consumerfinance.gov/consumer-tools/mortgages/

Auto loans: https://www.consumerfinance.gov/consumer-tools/auto-loans/

Deposit Accounts: https://www.consumerfinance.gov/consumer-tools/bank-accounts/

Wells Fargo employees who are aware of other illegal activity are encouraged to send information about what they know to whistleblower@cfpb.gov.

*The Consumer Financial Protection Bureau is a 21st century agency that implements and enforces Federal consumer financial law and ensures that markets for consumer financial products are fair, transparent, and competitive. For more information, visit*

Essex C..... ...... D...... .......
C.......... ...... .......
55 Co........ ...... .... 2100A
.....m, MA 019..



CERTIFIED MAIL

7008 1300 0000 4368 5351

US POSTAGE

$ 021.60⁰

Ellen R.'Patterson, Senior EX. VP & Gen Counse
420 Montgomery Street
San Francisco CA 94104

25013056

