COMMONWEALTH OF MASSACHUSETTS

ESSEX, ss.                                                            SUPERIOR COURT DEPARTMENT

| | |
|---|---|
| PETER RUMBIN,<br><br>    Plaintiff,<br><br>    v.<br><br>OFFICE OF THE GENERAL COUNSEL, U.S. DEPARTMENT OF EDUCATION; SHERI CANN *in her official capacity as CEO and President of F.H. Cann & Associates*; SCOTT BASSENT *in his official capacity as Secretary of the Department of the U.S. Treasury*; ELLEN PATTERSON *in her official capacity as Senior Executive Vice President and General Counsel of Wells Fargo & Co.*; and ELIZABETH SHANIN, *in her official capacity as Interim Vice President and General Counsel of the University of Chicago*,<br><br>    Defendants. | Civil Action No. 2577CV00816 |

**DEFENDANTS UNIVERSITY OF CHICAGO AND ELIZABETH SHANIN'S
MEMORANDUM OF LAW IN SUPPORT OF THEIR
<u>MOTION TO DISMISS THE COMPLAINT</u>**

    Pursuant to Superior Court Rule 9A, Defendants the University of Chicago and Elizabeth Shanin[1] (collectively, the "University") hereby submit this memorandum in support of their Motion to Dismiss Plaintiff Peter Rumbin's Complaint. As explained in greater detail below, the Complaint attempts to relitigate decades-old student loan and financial aid disputes that have been fully resolved through prior federal litigation, administrative proceedings, and, most

---

[1] The Complaint identifies Elizabeth Shanin as a defendant in her official capacity as Interim Vice President and General Counsel of the University of Chicago. Shanin is not a proper party to this litigation. In the unlikely event that the Court does not dismiss the Complaint in its entirety against both the University and Shanin, it should dismiss Shanin as a defendant in this case.

recently, the Department of Education's processing of Rumbin's claims in the *Sweet v. Cardona* borrower-defense settlement. *See* No. 3:19-cv-03674 (N.D. Cal. Jun. 22, 2022), Dkt. No. 246-2. Because the Complaint does not articulate any cognizable cause of action against the University, does not plausibly allege any injury caused by the University, and seeks relief that, by its own terms, can be granted only—if at all—by federal agencies or other non-University defendants, this Court should dismiss Rumbin's Complaint against the University with prejudice.

I.   **FACTUAL BACKGROUND**[2]

According to the Complaint and its accompanying documents, Rumbin attended the University for one year in 1977-1978 and received federal student aid in the form of a Basic Educational Opportunity Grant (BEOG, now "Pell" grant). *See* Compl. at 1. Rumbin alleges that the University failed to correctly credit his Pell grant and therefore required him to take out more student loans than necessary. *Id.*

   A.   **Rumbin's Original Student Loans**

In March 1977, the University provided a National Direct Student Loan (NDSL) to Rumbin in the amount of $1,650.[3] *See* Defendant's Response to Plaintiff's First Set of Interrogatories, First Request for Production of Documents, and First Requests for Admissions ("Int. Responses"), Request for Admissions Nos. 1-3 (Jan. 19, 1990) (attached to Complaint at pp. 31-39). The NDSL to Rumbin was administered by the University. Compl. at 1.

Rumbin also took out two Guaranteed Student Loans (GSLs) through the Connecticut Savings Bank—one in October 1977 and another in December 1978—each in the amount of

---

[2] The University disputes many of Rumbin's allegations and recites the allegations as pleaded in the Complaint for the limited purpose of this motion.

[3] The NDSL program was a federal student aid program that provided low-interest loans through college financial aid offices to students with financial need. *See* Pub. L. No. 92-318, 86 Stat. 235, 273.

$2,500. *See* Student Loan Interim Notes (attached to Complaint at pp. 40-43). Rumbin alleges that he was thereafter unable to secure additional loan funding and was forced to withdraw from the University. Compl. at 1-2.

### B. The 1989 Department of Education Action against Rumbin

After Rumbin failed to make any payments on his NDSL, *see* Int. Responses, Request for Admissions No. 4 (attached to Complaint at p. 39), the University assigned that loan to the United States Department of Education ("ED"). Thereafter, in 1989, ED sued Rumbin in the District of Connecticut to collect on the NDSL debt. *See* Compl. at 1-2; *see also United States v. Rumbin*, No. N–89–522 (D. Conn. Oct. 17, 1989) (the "1989 Action").[4] The 1989 Action settled in 1990, Rumbin's NDSL was discharged, and Rumbin agreed to hold the United States and ED harmless from "any and all lawsuits or claims of any character whatsoever, in connection with the subject matter or institution of this action." *See* Stipulation for Dismissal, 1989 Action (attached to Complaint at p. 19).

### C. The 2011 Rumbin Action against the United States and the University of Chicago

In 2011, ED sought to recover the amounts due on Rumbin's GSLs through Treasury offsets, including Social Security garnishments. *See* Compl. at 2; *see also* First Demand Notice (Mar. 30, 2011) (attached to Complaint at p. 16); Notice of Unpaid Balance (Apr. 9, 2011) (attached to Complaint at p. 17). Rumbin believed that this effort violated the settlement in the 1989 Action relating to the NDSL and filed suit in the District of Connecticut against the United States through then-Secretary of Education Arne Duncan and then-Treasury Secretary Timothy Geithner, as well as against the University and Beth Harris, the University's then-General

---

[4] On a motion to dismiss, this Court may take judicial notice of the records of other courts. *See Jarosz v. Palmer*, 436 Mass. 526, 530 (2002); *see also* Massachusetts Guide to Evidence § 201 (2017) ("a court may take judicial notice at any stage of the proceeding, whether requested or not").

3

Counsel. *See Rumbin v. Duncan*, No. 3:11-cv-00904 (D. Conn. Jun. 3, 2011), Dkt. No. 1 (the "2011 Action").

Notably, in the 2011 Action, Rumbin made the very same allegations against the University that he makes here. *Rumbin v. Duncan*, 2014 WL 2881397, at *6 (D. Conn. June 25, 2014). Specifically, he "challenge[d] directly the Treasury Department's administrative enforcement of the GSL loans" and alleged that "the University fraudulently induced [him] to take out the student loans which remain unpaid and generate the Treasury's deductions from his benefits." *Id.* Moreover, as the District Court noted in the 2011 Action, he had previously raised these issues in the 1989 Action, where he had claimed:

> that the University of Chicago represented to Rumbin that "federal grant monies then available to the University of Chicago would be allocated first to meet [Rumbin's] financial assistance requirements before the University of Chicago would require [Rumbin] to take a student loan as part of his award of public assistance," and the University thereafter "failed to utilize the federal grant monies then available, and despite its failure to exhaust these funds, it required [Rumbin] to take a student loan." Rumbin's amended answer in the 1989 action alleged that "any obligation arising as a result of any sums loaned by or through the University of Chicago" are "unenforceable against [Rumbin]" because "[Rumbin] was fraudulently induced to incur such obligation by the University of Chicago."

*Rumbin v. Duncan*, 2014 WL 2881397, at *3 (D. Conn. June 25, 2014). The District Court granted summary judgment in favor of the University and its General Counsel in the 2011 Action, holding (1) that the University had assigned to ED the only loan to Rumbin that it held in 1989 and that it had no involvement in the subsequent federal collection activity, and (2) that Rumbin's various fraud-based claims against the University were time-barred. *Id* at *6. Later, the Second Circuit summarily dismissed Rumbin's appeal on the ground that it "lack[ed] an arguable basis either in law or in fact," *Rumbin v. Duncan*, 2019 WL 11689797, at *1 (2d Cir. July 8, 2019) (quoting *Neitzke v. Williams*, 490 U.S. 319, 325 (1989)), and the Supreme Court denied certiorari, *Rumbin v. DeVos*, 140 S. Ct. 2673, 206 L. Ed. 2d 825 (2020).

4

      **D.**      <u>The *Sweet v. Cardona* Class Action Against the Department of Education</u>

      In 2019, while he was still appealing the dismissal of the 2011 Action, Rumbin participated in the *Sweet v. Cardona* class action, in which a large group of borrowers alleged that ED had ignored or delayed processing their borrower-defense claims, which they had filed after allegedly being misled or defrauded by their schools. *See Sweet v. Cardona*, No. 3:19-cv-03674 (N.D. Cal. Jun. 25, 2019), Dkt. No. 1. That class action resulted in a settlement that provided full loan forgiveness, potential refunds, and credit repair for eligible borrowers who filed borrower defense claims related to certain institutions of higher education. *See id.* at Dkt. No. 246-2. On March 24, 2025, Rumbin received a letter notifying him that ED would discharge his federal student loans associated with his enrollment at the University and refund any payments made, per the settlement agreement. *See* Mar. 24, 2025 ED Letter (attached to Complaint at p. 18).

      **E.**      <u>The Instant Essex Superior Court Action</u>

      Rumbin filed the Complaint in this action on or about July 31, 2025. *See* Dkt. No. 1. In his Complaint, Rumbin contends that ED's March 24, 2025 letter, along with the ED stipulation of dismissal in the 1989 Action, somehow operate together as a "foreign judgment" requiring the immediate and universal discharge of all his student loan debts. *See* Affidavit for Foreign Judgement (M.G.L. 218, Sec. 4A) (attached to Complaint at p. 8). He also appears to seek compensation for what he claims is nearly fifty years of alleged financial harm. *See* Compl. at 3-4; Counter Suit on Predatory Lending, Dodd-Frank Consumer Protection Act and Other Applicable Laws or Relief as the Court or Legal Counsel Deem Appropriate ("Counter Suit") at 6-7 (attached to Complaint at pp. 9-10). The Complaint purports to assert claims against the University, through Shanin, as well as against ED, the U.S. Treasury, and assorted private parties. Compl. at 1. The Complaint seeks, among other things, (a) "execution of judgment upon the

5

defendants for all outstanding debts claimed by them," (b) a declaration that he owes no student-loan debt now or in the future, (c) return of all funds ever offset or seized, and (d) a "counter suit on predatory lending, Dodd-Frank Consumer Protection Act or other applicable laws" spanning 48 years of alleged misconduct. *Id.* at 3-4.

## II.     ARGUMENT

### A.     The Complaint Fails to State a Claim for Relief Against the University

The Complaint should be dismissed with prejudice, as it fails to state a claim under Rule 12(b)(6). Generously construed, Rumbin's principal cause of action is for enforcement of a foreign judgment. *See* Compl. at 2-3. Under Massachusetts law, a "foreign judgment" is defined as "a judgment, decree or order of a court of the United States or of any other court that is entitled to full faith and credit in the commonwealth." Mass. Gen. Laws ch. 218, § 4A.

Here, though, the Complaint's repeated references to a "foreign judgment" and "execution of judgment upon the defendants" mischaracterize both governing law and the documents at issue. The stipulation of dismissal in the 1989 Action, in which the University was not a party, is not an adjudication on the merits, does not award any relief, and does not direct payment or enforcement. *See* Stipulation for Dismissal, 1989 Action (attached to Complaint at p. 19). Rather, it states that "the parties do hereby agree to the dismissal of the above captioned case with prejudice" and that "Rumbin agrees to discharge and hold and save harmless the United States of America and the Secretary of the United States Department of Education and their agents, officers and employees from any claims . . . in connection with the subject matter or institution of this action." *Id.* Such a stipulation is not a "judgment" subject to registration or enforcement under the Massachusetts Uniform Enforcement of Foreign Judgments Act as it does not create any enforceable right that can be executed upon in Massachusetts.

6

The March 24, 2025 letter from ED is, likewise, not a judgment, but rather an administrative communication documenting ED's decision to discharge certain federal student loans pursuant to the *Sweet v. Cardona* settlement, in which the University was not a party. *See* Mar. 24, 2025 Letter (attached to Complaint at p. 18). It provides no basis for execution or judicial enforcement against any defendant in this case—including the University—and cannot be transformed into a "judgment" by mere recharacterization in a civil complaint or self-serving "affidavit for foreign judgment." *See* Affidavit for Foreign Judgement (M.G.L. 218, Sec. 4A) (attached to Complaint at p. 8). Thus, even taking the Complaint's allegations as true, Rumbin's asserted cause of action for enforcement of a foreign judgment fails to state any claim upon which relief can be granted. *See* Mass. R. Civ. P. 12(b)(6).

In addition, to the extent that Rumbin attempts to hold the University liable for some other cause of action based on ED's implementation of the *Sweet v. Cardona* settlement, his claims fail as a matter of law. That settlement and the resulting borrower defense decision represent an agreement and administrative process *solely* between ED and individual borrowers. The settlement does not impose any duties on the University, nor does it award, create, or recognize any enforceable relief against the University, particularly where the University has not held any of Rumbin's debt since 1989. *See* No. 3:19-cv-03674 (N.D. Cal. Jun. 22, 2022), Dkt. No. 246-2. Rumbin identifies no contractual provision, statute, or regulation that would transform ED's borrower-defense determination into a money judgment, obligation, or liability running to him from the University.

Where Rumbin has failed to articulate any redressable injury traceable to the University, the Complaint must be dismissed in its entirety against the University for failure to state a claim.

7

> B. **The Complaint Is Barred by Claim Preclusion, Issue Preclusion, and the Statute of Limitations**

Rumbin's claims against the University are also barred by the doctrines of claim preclusion and issue preclusion in light of the prior federal litigation in the District of Connecticut, in which summary judgment entered in the University's favor on Rumbin's claims arising out of the same student loans that he now seeks to revisit. *See Rumbin*, 2014 WL 2881397, at *6. Moreover, as the District of Connecticut already ruled, his claims are also time barred. *Id.*

"Claim preclusion makes a valid, final judgment conclusive on the parties and their privies, and prevents relitigation of all matters that were or could have been adjudicated in the [prior] action." *Kobrin v. Bd. of Registration in Med.*, 444 Mass. 837, 843-44 (2005) (quoting *O'Neill v. City Manager of Cambridge*, 428 Mass. 257, 259 (1998)). "Similarly, issue preclusion 'prevents relitigation of an issue determined in an earlier action where the same issue arises in a later action, based on a different claim, between the same parties or their privies.'" *Id.* (quoting *Heacock v. Heacock*, 402 Mass. 21, 23 n.2 (1988)).

As described above, Rumbin has already litigated his University-related student-loan and financial-aid allegations in the District of Connecticut, and judgment has entered in the University's favor. Specifically, in *Rumbin v. Duncan*, Rumbin sued the University and its then-General Counsel, alongside various federal defendants, asserting that offsets against his Social Security benefits were improper because, among other things, the University had mishandled his Pell grant and had fraudulently induced him to take loans in the late 1970s. *See* 2014 WL 2881397, at *3. The District Court granted the University summary judgment, finding:

> The University of Chicago and its student loan administrator, Beth Harris, are clearly entitled to summary judgment dismissing Plaintiff's complaint against them. To the extent that Plaintiff challenges directly the Treasury Department's administrative enforcement of the GSL loans, the University did not originate those loans, and played no

> part in declaring them in default. In any event, the University cannot be called upon to answer for the actions of the Government in exercising administrative enforcement.
>
> The broader charge Mr. Rumbin makes against the University and Ms. Harris is that the University fraudulently induced Rumbin to take out the student loans which remain unpaid and generate the Treasury's deductions from his benefits.
>
> It is apparent from the pleadings in the Government's 1989 Action against him that at that time, Mr. Rumbin was aware of the facts and circumstances which underlie his claims of fraud and related misconduct on the part of the University defendants. He did not assert those claims against those defendants until he filed the present action in 2011.
>
> In these circumstances, Plaintiff's claims against the University and Harris are barred by any applicable statute of limitations.

*Id.* at *6.

Rumbin's current allegations regarding the University's alleged "predatory lending," its alleged mishandling of Pell grant funds, and its role in his student loans necessarily arise from the same nucleus of operative facts as the claims he asserted in the 2011 Action and in which the District Court granted the University summary judgment. *Id.* The three elements essential for invocation of claim preclusion—"(1) the identity or privity of the parties to the present and prior actions, (2) identity of the cause of action, and (3) prior final judgment on the merits"— are all satisfied here, and Rumbin may not now repackage those same grievances in a different venue. *See DaLuz v. Dep't of Correction*, 434 Mass. 40, 45 (2001).

Issue preclusion likewise bars Rumbin from relitigating his decades-old complaints. For issue preclusion to apply, "a court must determine that (1) there was a final judgment on the merits in the prior adjudication; (2) the party against whom preclusion is asserted was a party (or in privity with a party) to the prior adjudication; and (3) the issue in the prior adjudication was identical to the issue in the current adjudication." *Kobrin*, 444 Mass. at 843-44. As the summary judgment decision in the 2011 Action makes clear, the District Court's determinations that the University no longer holds any student-loan debt owed by Rumbin and has no responsibility for

9

the federal offsets or collection activity of which he complains were essential to the judgment. *See generally Rumbin*, 2014 WL 2881397. Because Rumbin had a full and fair opportunity to litigate those issues in the 2011 Action, he cannot now proceed on a theory that the University is liable for ongoing debt-collection actions or must now pay damages or refunds on loans no longer in its possession. *See Kobrin*, 444 Mass. at 843-44 (2005).

Finally, as the District Court concluded in the 2011 Action, any conceivable claim against the University based on events in the 1970s and 1980s is time-barred. *See Rumbin*, 2014 WL 2881397, at *6.

### C. The University Cannot Grant Rumbin Relief

The Complaint should also be dismissed on the ground that the University cannot grant Rumbin any of the relief he seeks—and indeed, it appears that he has *already received* all the relief to which he may be entitled.

The principal forms of relief requested in the Complaint—namely, discharge of student loan obligations, refund of amounts paid on federal student loans, and updates to negative credit reporting—are actions over which the University has no control. As discussed above, the University has not held any of Rumbin's debt for decades: it assigned Rumbin's NDSL to ED in 1989 and made no further collection efforts following that assignment. *Id.* Moreover, Rumbin's NDSL was discharged in 1990. *See* Stipulation for Dismissal, 1989 Action (attached to Complaint at p. 19). The University has no ability to discharge or modify any obligations relating to the NDSL where (1) it does not hold the debt, and (2) the debt has in fact been discharged for over 35 years.

Turning to the GSLs, which were the subject of ED's 2011 collection efforts, those were originated by private lenders and guaranteed by third-party agencies; the University neither issued nor serviced them and never held them as a creditor. *See* Student Loan Interim Notes

10

(attached to Complaint at pp. 40-43); 2014 WL 2881397, at *6. The University has no authority to affect the status or enforcement of those loans.

Having said that, Rumbin appears to have already obtained the relief he seeks related to the GSLs through the *Sweet v. Cardona* settlement. According to the documents submitted by Rumbin with his Complaint, on March 24, 2025, he received written notice that ED would discharge his GSLs, provide a refund for any payments made to ED on those loans, and delete the credit report tradeline associated with the discharged loans. *See* Mar. 24, 2025 ED Letter (attached to Complaint at p. 18). There is therefore no further relief that Rumbin can obtain in this case, and his Complaint should be dismissed for that additional reason.

### D.     **The Complaint Fails to Comply with Rules 8(e) and 9(b)**

Finally, this Court should dismiss the Complaint based on Rumbin's failure to comply with Rules 8(e) and 9(b) of the Massachusetts Rules of Civil Procedure.

Rule 8(e) requires that "[e]ach averment of a pleading shall be simple, concise, and direct." Mass. R. Civ. P. 8(e). Rule 9(b) requires that "in all averments of fraud, mistake, duress or undue influence, the circumstances constituting fraud, mistake, duress or undue influence shall be stated with particularity." Mass. R. Civ. P. 9(b).

Rumbin's Complaint fails to satisfy these minimal requirements in multiple ways. To start, the Complaint does not identify any recognized cause of action against the University, nor does it tie any of the scattered factual allegations to a specific legal theory. It also fails to differentiate between the various named defendants and makes no effort to identify which defendant allegedly violated which obligation and how. Moreover, Rumbin's vague references to "predatory lending," "embezzlement," and "fraud" are conclusory and are not accompanied by the who-what-when-where-how details necessary to plead *any* cause of action, much less to satisfy the heightened pleading requirement of fraud claims.

11

## III.    CONCLUSION

For all the foregoing reasons, the University's Motion to Dismiss should be granted, and this Court should issue an Order dismissing all of Rumbin's claims against the University and Shanin with prejudice. In the unlikely event that the Court does not dismiss the Complaint in its entirety against both the University and Shanin, it should dismiss Shanin as a defendant in this case.

Respectfully submitted,

UNIVERSITY OF CHICAGO and
ELIZABETH SHANIN

By their attorneys,

/s/ *Daniel J. Cloherty*
Daniel J. Cloherty (BBO #565772)
dcloherty@clohertysteinberg.com
Alexandra Arnold (BBO #706208)
aarnold@clohertysteinberg.com
Cloherty & Steinberg LLP
One Financial Center, Suite 1120
Boston, MA 02111
617-481-0160

## CERTIFICATE OF SERVICE

      I, Daniel J. Cloherty, hereby certify that on November 20, 2025, a copy of the foregoing pleading was served via first class mail upon:

Peter Rumbin  
87 Second Street  
Hamden, CT 06514

Katia Baltimore  
188 Crocket Court  
Orange, CT 06472

      The foregoing was additionally served by email on all counsel of record.

                                              /s/ *Daniel J. Cloherty*  
                                              Daniel J. Cloherty

Case 1:26-cv-10247-ADB    Document 8-1    Filed 01/26/26    Page 13 of 13