

**COMMONWEALTH OF MASSACHUSETTS**
ESSEX COUNTY
Docket Report

---

## 2577CV00816 Rumbin, Peter R. vs. Scott Bassent In his/her capacity as Department of The US Treasury et al

| | | | |
|---|---|---|---|
| **CASE TYPE:** | Contract / Business Cases | **FILE DATE:** | 07/29/2025 |
| **ACTION CODE:** | BG1 | **CASE TRACK:** | A - Average |
| **DESCRIPTION:** | Financial Institutions / Funds | | |
| **CASE DISPOSITION DATE:** | 02/05/2026 | **CASE STATUS:** | Closed |
| **CASE DISPOSITION:** | Transferred to another Court | **STATUS DATE:** | 07/29/2025 |
| **CASE JUDGE:** | | **CASE SESSION:** | Civil D |

### DCM TRACK

| Tickler Description | Due Date | Completion Date |
|---|---|---|
| Service | 10/27/2025 | 02/05/2026 |
| Answer | 11/26/2025 | 02/05/2026 |
| Rule 12/19/20 Served By | 11/26/2025 | 02/05/2026 |
| Rule 12/19/20 Filed By | 12/26/2025 | 02/05/2026 |
| Rule 12/19/20 Heard By | 01/26/2026 | 02/05/2026 |
| Rule 15 Served By | 09/22/2026 | 02/05/2026 |
| Rule 15 Filed By | 10/22/2026 | 02/05/2026 |
| Rule 15 Heard By | 10/22/2026 | 02/05/2026 |
| Discovery | 07/19/2027 | 02/05/2026 |
| Rule 56 Served By | 08/18/2027 | 02/05/2026 |
| Rule 56 Filed By | 09/17/2027 | 02/05/2026 |
| Final Pre-Trial Conference | 01/17/2028 | 02/05/2026 |
| Judgment | 07/28/2028 | 02/05/2026 |

### PARTIES

| | |
|---|---|
| **Plaintiff**<br>Rumbin, Peter R.<br>87 Second Street<br>Hamden, CT 06514 | **Attorney**      PROPER<br>Pro Se<br>Massachusetts Bar<br>Added Date: 07/30/2025 |
| **Defendant**<br>Scott Bassent In his/her capacity as Department of The US Treasury | **Attorney**      697568<br>Michael Lee Fitzgerald<br>Massachusetts Bar<br>1 Courthouse Way<br>Suite 9200<br>Boston, MA 02210<br>Work Phone (617) 748-3266<br>Added Date: 02/05/2026 |

A TRUE COPY ATTEST

*[signature]*

DEPUTY ASS'T. CLERK

---

| **Defendant**<br>Sheri Cann As President/CEO Of F.H. Cann & Associates | **Attorney**<br>Antonio Calvagno<br>Massachusetts Bar<br>58 Bailey Ct<br>Haverhill, MA 01832<br>Work Phone (978) 973-8593<br>Added Date: 11/19/2025 | 708180 |
|---|---|---|
| **Defendant**<br>Office of the General Counsel, US Dept. of Education | **Attorney**<br>Michael Lee Fitzgerald<br>Massachusetts Bar<br>1 Courthouse Way<br>Suite 9200<br>Boston, MA 02210<br>Work Phone (617) 748-3266<br>Added Date: 02/05/2026 | 697568 |
| **Defendant**<br>Ellen R. Patterson In his/her capacity as Senior Ex. VP, General Counsel, Wells Fargo & Co. | **Attorney**<br>Judah Herzl Rome<br>Troutman Pepper Locke LLP<br>Troutman Pepper Locke LLP<br>2800 Financial Plaza<br>Providence, RI 02903<br>Work Phone (401) 276-6433<br>Added Date: 11/20/2025 | 695997 |
| **Defendant**<br>Elizabeth Shanin In his/her capacity as VP and General Counsel, University of Chicago | **Attorney**<br>Daniel Joseph Cloherty<br>Cloherty and Steinberg LLP<br>Cloherty and Steinberg LLP<br>One Financial Center<br>Suite 1120<br>Boston, MA 02111<br>Work Phone (617) 481-0160<br>Added Date: 11/21/2025 | 565772 |
| | **Attorney**<br>Alexandra Arnold<br>Cloherty and Steinberg LLP<br>Cloherty and Steinberg LLP<br>One Financial Center<br>Suite 1120<br>Boston, MA 02111<br>Work Phone (617) 481-0606<br>Added Date: 11/21/2025 | 706208 |

| EVENTS | | | | |
|---|---|---|---|---|
| **Date** | **Session** | **Event** | **Result** | **Resulting Judge** |
| 03/10/2026 | Civil D | Rule 12 Hearing | Canceled | Tabit |
| 03/10/2026 | Civil D | Rule 12 Hearing | Canceled | Tabit |

| FINANCIAL SUMMARY | | | | |
|---|---|---|---|---|
| Fees/Fines/Costs/Charge | Assessed | Paid | Dismissed | Balance |
| Total | 300.00 | 300.00 | 0.00 | 0.00 |

## COMMONWEALTH OF MASSACHUSETTS
### ESSEX COUNTY
### Docket Report

| | | INFORMATIONAL DOCKET ENTRIES | |
|---|---|---|---|
| Date | Ref | Description | Judge |
| 07/29/2025 | | Case assigned to:<br>DCM Track A - Average was added on 07/29/2025 | |
| 07/29/2025 | 1 | Original civil complaint filed. | |
| 07/29/2025 | 2 | Civil action cover sheet filed.<br><br>with Statement of Damages | |
| 07/29/2025 | | Demand for jury trial entered. | |
| 07/30/2025 | | EDocument sent:<br>A Tracking Order was generated and sent to:<br>Plaintiff: Peter R. Rumbin 87 Second Street, Hamden, CT 06514 | |
| 07/30/2025 | | Docket Note: 5 summons with the tracking order mailed to pro se plaintiff this date. Clerk's office also called 203-494-5229 and spoke with Katia Baltimore on behalf of the pro se plaintiff. Instructed Mr. Rumbin to submit a signed Complaint and Civil Action Cover Sheet/Statement of Damages. Also informed Mr. Rumbin documents cannot be submitted with the signature of Attorney Ira Grudberg as Attorney Grudberg has not been admitted pro hac vice and is also deceased. | |
| 07/31/2025 | | Docket Note: Spoke with Mr. Rumbin and instructed him to submit a signed Complaint and Civil Action Cover Sheet/Statement of Damages. Also informed Mr. Rumbin documents cannot be submitted with the signature of Attorney Ira Grudberg as Attorney Grudberg has not been admitted pro hac vice and is also deceased. Finally, Mr. Rumbin was informed that a tracking order and 5 summons were mailed out to him yesterday and he is to serve the defendants in accordance with MRCP Rule 4 | |
| 08/05/2025 | | Case file images<br><br>Court received signed Complaint, Cover Sheet and Statement of Damages from pro se plaintiff this date | |
| 11/19/2025 | 3 | Defendant Sheri Cann As President/CEO Of F.H. Cann & Associates's Motion to dismiss all counts pursuant to MRCP 12(b) | |
| 11/19/2025 | | Attorney appearance<br>On this date Antonio Calvagno, Esq. added for Defendant Sheri Cann As President/CEO Of F.H. Cann & Associates | |
| 11/20/2025 | | Attorney appearance electronically filed.<br>Applies To: Rome, Esq., Judah Herzl (Attorney) on behalf of Ellen R. Patterson In his/her capacity as Senior Ex. VP, General Counsel, Wells Fargo & Co. (Defendant) | |
| 11/20/2025 | | Attorney appearance electronically filed.<br>Applies To: Arnold, Esq., Alexandra (Attorney) on behalf of Elizabeth Shanin In his/her capacity as VP and General Counsel, University of Chicago (Defendant) | |

| 11/20/2025 | | Attorney appearance electronically filed.<br>Applies To: Cloherty, Esq., Daniel Joseph (Attorney) on behalf of Elizabeth Shanin In his/her capacity as VP and General Counsel, University of Chicago (Defendant) | |
|---|---|---|---|
| 11/21/2025 | 4 | Defendant's Notice of intent to file motion to Dismiss<br><br>Applies To: Cloherty, Esq., Daniel Joseph (Attorney) on behalf of Elizabeth Shanin In his/her capacity as VP and General Counsel, University of Chicago (Defendant); Arnold, Esq., Alexandra (Attorney) on behalf of Elizabeth Shanin In his/her capacity as VP and General Counsel, University of Chicago (Defendant) | |
| 11/24/2025 | | Endorsement on Motion to dismiss all counts (#3.0): DENIED without prejudice due to failure to comply with numerous provisions of Superior Court Rule 9A and Mass R. Civ. P. 11(a), and failing to cite any supporting legal authorities. (dated November 21, 2025) | Karp |
| 11/24/2025 | | EDocument sent:<br><br>Clerk's Notice (eDoc)<br>Sent On: 11/24/2025 08:50:50<br>Notice Sent To: Antonio Calvagno, Esq. antonio.calvagno@gmail.com<br>Notice Sent To: Judah Herzl Rome, Esq. judah.rome@troutman.com<br>Notice Sent To: Daniel Joseph Cloherty, Esq.<br>dcloherty@clohertysteinberg.com<br>Notice Sent To: Alexandra Arnold, Esq. aarnold@clohertysteinberg.com<br>Notice Sent To: Peter R. Rumbin 87 Second Street, Hamden, CT 06514 | |
| 11/24/2025 | 5 | Defendant's notice to dismiss plaintiff's complaint MRCP 12(b)<br>(e-filed)<br><br>Applies To: Ellen R. Patterson In his/her capacity as Senior Ex. VP, General Counsel, Wells Fargo & Co. (Defendant) | |
| 11/28/2025 | | Pleading titled, Answer to the defendants motion to dismiss, filed with the court on 11/28/2025, returned to Pro Se | |
| 11/28/2025 | 6 | Service Returned for<br>Defendant Scott Bassent In his/her capacity as Department of The US Treasury: Service via certified mail; (Tracking # 7008 1300 0000 4368 5344) on 10/27/2025 @ 9:00am to 1500 Pennsylvania Avenue NW Washington, DC 20220 | |
| 11/28/2025 | 7 | Service Returned for<br>Defendant Office of the General Counsel, US Dept. of Education: Service via certified mail; (Tracking # 7008 1300 0000 5337) on 10/17/2025 @ 9:00am to 400 Maryland Avenue SW Washington, DC 20202 | |
| 11/28/2025 | 8 | Service Returned for<br>Defendant Sheri Cann As President/CEO Of F.H. Cann & Associates: Service via certified mail; (Tracking # 7008 1300 0000 4368 2688) on 10/27/2025 @ 900am to 1600 Osgood Street Suite 3058 North Andover, MA 01845 | |

ESSEX COUNTY
Docket Report

| 11/28/2025 | 9 | Service Returned for<br>Defendant Ellen R. Patterson In his/her capacity as Senior Ex. VP, General Counsel, Wells Fargo & Co.: Service via certified mail; (Tracking # 7008 1300 0000 4368 5351) on 10/27/2025 @ 9:00am at 420 Montgomery Street San Francisco, CA 94104 | |
| 11/28/2025 | 10 | Service Returned for<br>Defendant Elizabeth Shanin In his/her capacity as VP and General Counsel, University of Chicago: Service via certified mail; (Tracking # 7008 1300 0000 4368 5320) on 10/27/2025 @ 9:00am to 5801 S Ellis Avenue Suite 619 Chicago, IL 60637 | |
| 12/10/2025 | 11 | Defendant Elizabeth Shanin In his/her capacity as VP and General Counsel, University of Chicago's Motion to dismiss<br>the complaint | |
| 12/10/2025 | 11.1 | Elizabeth Shanin In his/her capacity as VP and General Counsel, University of Chicago's Memorandum of Law in support of their motion to dismiss the complaint | |
| 12/10/2025 | 11.2 | Opposition to motion to dismiss filed by Peter R. Rumbin | |
| 12/10/2025 | 11.3 | Reply/Sur-reply<br><br>Defendants University of Chicago and Elizabeth Shanin's Reply in Support of Motion to Dismiss the Complaint | |
| 12/10/2025 | 11.4 | Rule 9A notice of filing<br><br>*Efiled | |
| 12/10/2025 | | Objection to the Defendant, Ellen R. Paterson's Motion to Dismiss, and Arguments for Levying Damages and Cessation of Further Litigation Against the Plaintiff, Peter R. Rumbin filed by Peter R. Rumbin | |
| 12/12/2025 | 12 | Self-Represented Plaintiff Peter R. Rumbin's Response to<br>Returned Pleading by the Court of November 28, 2025 with a Request for Assignment of Legal Counsel (filed December 3, 2025) | |
| 12/12/2025 | | Endorsement on Request for Appointment of Legal Counsel (#12.0): DENIED<br>The request for appointment of counsel must be DENIED because attorneys are not appointed to represent parties in civil actions in Superior Court. | Karp |
| 12/12/2025 | | EDocument sent:<br><br>Clerk's Notice (eDoc)<br>Sent On: 12/12/2025 13:48:52<br>Notice Sent To: Antonio Calvagno, Esq. antonio.calvagno@gmail.com<br>Notice Sent To: Judah Herzl Rome, Esq. judah.rome@troutman.com<br>Notice Sent To: Daniel Joseph Cloherty, Esq.<br>dcloherty@clohertysteinberg.com<br>Notice Sent To: Alexandra Arnold, Esq. aarnold@clohertysteinberg.com<br>Notice Sent To: Peter R. Rumbin 87 Second Street, Hamden, CT 06514 | |
| 12/12/2025 | 13 | Defendant Sheri Cann As President/CEO Of F.H. Cann & Associates's Motion to dismiss<br>pursuant to Rule 12(b)(6) for failure to state a claim upon relief can be granted | |

| 12/12/2025 | 13.1 | Sheri Cann As President/CEO Of F.H. Cann & Associates's Memorandum of Law in support of her motion to dismiss |
|---|---|---|
| 12/12/2025 | 13.2 | Rule 9A notice of filing <br><br> *Efiled |
| 12/12/2025 | 14 | Defendant Sheri Cann As President/CEO Of F.H. Cann & Associates's Notice of <br> Motion to Dismiss |
| 12/16/2025 | 15 | Defendant Ellen R. Patterson In his/her capacity as Senior Ex. VP, General Counsel, Wells Fargo & Co.'s Motion to dismiss the complaint |
| 12/16/2025 | 15.1 | Ellen R. Patterson In his/her capacity as Senior Ex. VP, General Counsel, Wells Fargo & Co.'s Memorandum of Law in support of her motion to dismiss the complaint |
| 12/16/2025 | 15.2 | Objection to the defendant, Ellen R. Paterson's Motion to dismiss and arguments for levying damages and cessation of further litigation against the plaintiff, Peter R. Rumbin filed by Peter R. Rumbin |
| 12/16/2025 | 15.3 | Ellen R. Patterson In his/her capacity as Senior Ex. VP, General Counsel, Wells Fargo & Co.'s Reply Memorandum in support of her motion to dismiss the complaint |
| 12/16/2025 | 15.4 | Defendant Ellen R. Patterson In his/her capacity as Senior Ex. VP, General Counsel, Wells Fargo & Co.'s Notice of <br> Filing and List of Documents Filed Pursuant to Rule 9A |
| 12/16/2025 | | Endorsement on Motion to Dismiss Pursuant to Rule 12(b)(6) (#13.0):　　　　Karp <br> DENIED <br> DENIED without prejudice for failing to comply with Superior Court Rule 9A(b). |
| 12/17/2025 | | EDocument sent: <br><br> Clerk's Notice (eDoc) <br> Sent On: 12/17/2025 09:30:05 <br> Notice Sent To: Antonio Calvagno, Esq. antonio.calvagno@gmail.com <br> Notice Sent To: Judah Herzl Rome, Esq. judah.rome@troutman.com <br> Notice Sent To: Daniel Joseph Cloherty, Esq. dcloherty@clohertysteinberg.com <br> Notice Sent To: Alexandra Arnold, Esq. aarnold@clohertysteinberg.com <br> Notice Sent To: Peter R. Rumbin 87 Second Street, Hamden, CT 06514 |
| 12/17/2025 | 16 | Objection to To The Motion To Dismiss From The U . Of Chicago And Elizabeth Shanin and F.H.Cann & Associates filed by Peter R. Rumbin <br> DUPLICATE/DOCKETED IN ERROR AS MOTION HAD NOT YET BEEN FILED AT THE TIME OF DOCKETING . <br> MOTION HAS SINCE BEEN FILED-SEE PAPER NO. 18.3 |
| 12/19/2025 | 18 | Defendant Sheri Cann As President/CEO Of F.H. Cann & Associates's Motion to dismiss all counts |
| 12/19/2025 | 18.1 | Sheri Cann As President/CEO Of F.H. Cann & Associates's Memorandum in support of Motion to Dismiss |
| 12/19/2025 | 18.2 | Opposition to Motion to Dismiss filed by Peter R. Rumbin |

**ESSEX COUNTY**
**Docket Report**

| 12/19/2025 | 18.3 | Opposition to Motion to Dismiss from The U. Of Chicago and Elizabeth Shanin and F.H. Cann & Associates filed by Peter R. Rumbin |
|---|---|---|
| 12/19/2025 | 18.4 | Reply/Sur-reply |
| | | Reply in Support of her Motion to Dismiss the Complaint Pursuant to Rule 12(b)(6) |
| 12/19/2025 | 18.5 | Rule 9A notice of filing |
| | | Applies To: Calvagno, Esq., Antonio (Attorney) on behalf of Sheri Cann As President/CEO Of F.H. Cann & Associates (Defendant) |
| 12/19/2025 | | Pleading titled, Addendum to Objection to the Motion to Dismiss from the U. of Chicago and Elizabeth Shanin and F.H. Cann & Associates, filed with the court on 12/19/2025, returned to Peter R. Rumbin<br>Plaintiff must seek leave of court to file additional documents relative to a 9A motion package that has been submitted and filed with the court. |
| 12/19/2025 | | Docket Note: DUE TO A RETURNED PLEADING, NO. 17 WILL NOT APPEAR IN THE NUMERICAL ORDER OF THE DOCKET |
| 12/29/2025 | 19 | Self-Represented Plaintiff Peter R. Rumbin's Motion for 30 Day Stay |
| 12/29/2025 | | Pleading titled, Objection to Motion to Dismiss, filed with the court on 12/29/2025, returned to Peter R. Rumbin<br>Objection to Motion to Dismiss docketed on Pleading 18.3 dated 12/19/2025 |
| 12/30/2025 | | EDocument sent:<br><br>Notice to Appear was generated and sent to:<br>Defendant: Antonio Calvagno, Esq. antonio.calvagno@gmail.com<br>Defendant: Judah Herzl Rome, Esq. judah.rome@troutman.com<br>Defendant: Daniel Joseph Cloherty, Esq. dcloherty@clohertysteinberg.com<br>Defendant: Alexandra Arnold, Esq. aarnold@clohertysteinberg.com<br>Plaintiff: Peter R Rumbin 87 Second Street, Hamden, CT 06514<br>Sent On: 12/30/2025 14:32:40 |
| 01/05/2026 | 20 | Self-Represented Plaintiff Peter R. Rumbin's Request of Motion for Leave of the Court to File Additional Documents (Addendum) to Defendants' Motion to Dismiss from the U of Chicago and Elizabeth Shanin and F.H. Cann & Associates filed with the Court on12/19/2025 |
| 01/08/2026 | | Endorsement on Motion for 30 Day Stay (#19.0): DENIED<br>Motion DENIED without prejudice for failure to comply with MA Superior Court Rule 9A. (Dated 1/8/2026) | Dunigan |
| 01/08/2026 | | Endorsement on Motion to (#20.0): File Additional Documents to Defendants' Motion to Dismiss DENIED<br>After review motion DENIED substantly despite plaintiff's failure to comply with Rule 9A. A motion to dismiss is typically assessed on the four corners drawn therefrom. See Navarro v. Burgess, 99 Mass. App. Ct. 466, 467, n. 4 (2021) explaining that under certain circumstances not applicable here, the court may consider materials outside the four corners of the complaint. The court will not convert this motion into a motion for summary judgment by including and/or considering matters outside the pleadings. | Tabit |

| 01/09/2026 | | EDocument sent: |
| | | |
| | | Clerk's Notice (eDoc) |
| | | Sent On: 01/09/2026 10:16:31 |
| | | Notice Sent To: Antonio Calvagno, Esq. antonio.calvagno@gmail.com |
| | | Notice Sent To: Judah Herzl Rome, Esq. judah.rome@troutman.com |
| | | Notice Sent To: Daniel Joseph Cloherty, Esq. |
| | | dcloherty@clohertysteinberg.com |
| | | Notice Sent To: Alexandra Arnold, Esq. aarnold@clohertysteinberg.com |
| | | Notice Sent To: Peter R. Rumbin 87 Second Street, Hamden, CT 06514 |
| 01/09/2026 | | EDocument sent: |
| | | |
| | | Clerk's Notice (eDoc) |
| | | Sent On: 01/09/2026 10:56:27 |
| | | Notice Sent To: Antonio Calvagno, Esq. antonio.calvagno@gmail.com |
| | | Notice Sent To: Judah Herzl Rome, Esq. judah.rome@troutman.com |
| | | Notice Sent To: Daniel Joseph Cloherty, Esq. |
| | | dcloherty@clohertysteinberg.com |
| | | Notice Sent To: Alexandra Arnold, Esq. aarnold@clohertysteinberg.com |
| | | Notice Sent To: Peter R. Rumbin 87 Second Street, Hamden, CT 06514 |
| 01/23/2026 | 21 | Self-Represented Plaintiff Peter R. Rumbin's Submission of Letter to the Court |
| 01/23/2026 | | Docket Note: a copy of Superior Court Rule 9A was mailed to the pro se plaintiff this date |
| 01/28/2026 | 22 | Notice of Removal to the United States District Court filed by |
| | | |
| | | Applies To: Scott Bassent In his/her capacity as Department of The US Treasury (Defendant); Office of the General Counsel, US Dept. of Education (Defendant) |
| | | |
| | | United States District Court for the District of Massachusetts Case No. 1:26-cv-10247 |
| 02/05/2026 | | Event Result:: Rule 12 Hearing scheduled on:<br>    03/10/2026 02:00 PM<br>Has been: Canceled    For the following reason: By Court prior to date<br>Hon. Salim Tabit, Presiding<br>Staff:<br>    Anne Mitchell, Assistant Clerk Magistrate | Tabit |
| 02/05/2026 | | Event Result:: Rule 12 Hearing scheduled on:<br>    03/10/2026 02:00 PM<br>Has been: Canceled    For the following reason: By Court prior to date<br>Hon. Salim Tabit, Presiding<br>Staff:<br>    Anne Mitchell, Assistant Clerk Magistrate | Tabit |
| 02/05/2026 | | Case transferred to another court. |
| 02/05/2026 | | Docket Note: Certified copies of all pleadings and docket report mailed to Attorney Michael L. Fitzgerald |

2S77Q00086 D                                                      1

Superior Court                          State of Massachusetts **FILED**
                                                    IN THE ESSEX SUPERIOR COURT
Peter R. Rumbin, Plaintiff               Doc. No.:
                                                         JUL 2 9 2025
VS                                       July 25,2025
                                                    THOMAS. H. DRISCOLL
                                                      CLERK OF COURTS

Office of the General Counsel, US Dept of Education, Ms. Sheri Cann, CEO, President, F. H. Cann
& Associates (North Andover, Mass), Scott Bassent, Department of The US Treasury, Ellen R.
Patterson, Senior Ex. VP, General Counsel, Wells Fargo & Co., Elizabeth Shanin, VP & General
Counsel, University of Chicago, Defendants

**Complaint for the University of Chicago Student Loan case-US Borrower Defense Application
Predatory Lending Program Settlement**

### A BRIEF BACKGROUND

Attorney Ira B. Grudberg has been counsel of record since the plaintiff was sued in Federal Court
in 1989-1990 for student loans taken out during one year while Mr. Rumbin, defendant at that
time, borrowed by him when he was an University of Chicago student. The University of Chicago
engaged in what is now termed: "predatory lending" and treated "students of need as students
of means." The U. of Chicago received PELL/BEOG grant funds to pay for his education but
instead of crediting these funds towards his education bill, the U. of Chicago pocketed the funds
and then proceeded to borrow—which was unnecessary if the grant monies had been credited
towards his education bill. Thus the U. of Chicago unjustly enriched itself and others. The U. of
Chicago was caught embezzling and committing fraud when Harvard College financial aid office
requested a financial aid transcript from the U. of Chicago. Harvard discovered this financial aid
"irregularity" and then Harvard directed the plaintiff to inform the US Dept of Ed in Chicago,
Illinois of the problem. US Dept of Ed in Chicago investigated the U. Of Chicago for "predatory
lending" and embezzlement-fraud of plaintiff's BEOG/PELL grant funds. As a consequence of the
investigation, the U. of Chicago returned the BEOG/PELL grant funds that it had embezzled and
committed fraud for but not the loans. Plaintiff withdrew from the U. of Chicago and never
borrowed again. He attended Harvard on a full scholarship.

The Connecticut Savings Bank refused to lend any more money to the U. of Chicago because (1)
it did not like how U. of Chicago was conducing itself and (2) plaintiff's mother was dying from
cancer and the bank refused to extend any more loans under the circumstances as it thought it
would be imprudent. Furthermore, the U. of Chicago had requested that the plaintiff's parents
take out a "second mortgage" in order to obtain more money. The bank also denied this
requested and directed the plaintiff's parents to "have your son withdraw from the U. of
Chicago" and so he withdrew from U. of Chicago and never returned.

A TRUE COPY ATTEST

DEPUTY ASS'T. CLERK

1

Since 1979, Ira Grudberg has been counsel of record when he first struggled to obtain a transfer credit transcript for over three years from the former dean of students, Professor Lorna Strauss of the University of Chicago.

Then, in 1989-1990, Grudberg represented Mr. Rumbin (then defendants) when he was sued for the student loans by the US Depts of Treasury and Education in Chicago and then Connecticut, US District Courts. Grudberg, won the student loan case in Federal Court in 1990 by stipulated agreement of the parties dismissed with prejudice against them (US Dept of Ed and Treasury et al). Plaintiff only borrowed student loans for this one year while a student attending U. of Chicago, withdrew and never borrowed again. All the loans were included in the stipulated agreement dismissed with prejudice against the US Depts of Ed and Treasury (see attached court order UD District Judge Warren Eginton and discovery-interrogatories etc.).

In 2011 due process was revoked by an act of US Congress and offsets commenced thereupon against the plaintiff, Mr. Rumbin, until 2024. This act of Congress permitted the US Depts of Treasury and Education to seize money and assets without suing in court and obtaining a favorable judgement from the court. Hence revoking due process, the US Depts of Ed and Treasury "could do an end run around the stipulated agreement of the parties dismissal with prejudice against them" and thus it resorted to "self-help" by removing due process in the student loan case to avoid the previous court order signed by a Federal judge, Warren Eginton. Now the US Depts of Ed and Treasury did not have to sue in court and win a judgement before a judge to seize a student's monies and assets. The "claw back program" of 2024 imposed offsets of 100 percent by the US Dept of Treasury against plaintiff's income and total loss of health insurance except if you could pay for it and/or find a medical insurance company. This draconian policy caused significant hardships.

In 2011 a civil suit was filed against the defendants in US District Court, followed by a brief to the US Second Circuit Court of Appeals. Then Grudberg filed two writs of certiorari to SCOTUS (one with President Joe Biden) on behalf of the plaintiff, joined the class action suit Sweet vs DeVos (Sweet vs Cordola): borrower defense-predatory lending program of the US Dept of ED and three borrower defense program applications for predatory lending against the defendants with the US Dept. of ED. Recently, Grudberg won the borrower defense- predatory lending case before the General Counsel of the US Dept of Education (Washington, DC).  This is the second time Grudberg and the plaintiff have won his student loan case in court. In this student loan case against the U. of Chicago, litigation by the plaintiff commenced in 2011 and has continued until the present. But this case has been ongoing since 1979.

Compensation appropriate for this huge consumption of time and resources is justifiable and necessary to prevent its reoccurrence. Ira Grudberg, is counsel of record for the two writs of certiorari to SCOTUS, class action suit: Sweet vs Cordola (Sweet vs DeVos) with Harvard Law

School et al as part of the borrower defense program-predatory lending (submitted three applications). Ira B. Grudberg, instructed the plaintiff to keep his name upon all pleadings since he is counsel of record for them.

The plaintiff hereby notices the court of the affirmative judgement discharging all debts in favor of the plaintiff by the class action suit Sweet vs Cordola-borrower defense application program for predatory lending issued by the General Counsel, US Dept. of Education. The defendants must be compelled to comply with this ruling. This "foreign judgement" according to rule M. G. L. 218, sec 4A is attached herein. Plaintiff requests the assistance of the court in enforcing judgement upon the defendants. (see attached affidavit and documents)

Plaintiff enlists the assistance of the court for execution of judgment upon the defendants for all outstanding debts claimed by them.  F.H. Cann & Associates claims $10,000 owed. Other defendants have ignored solicitations for monies that they claim are owed to them and to pay for damages and legal costs etc. Plaintiff requests that all debts be settled immediately by the defendants and that the court absolve the plaintiff of any financial liability whatsoever now and in the future. (Please read writ of certiorari, addendum and preamble for a comprehensive history and legal case law).

**RELIEF SOUGHT**

1.To cease and desist the unlawful seizure of property and monies; ignoring a prior judge's ruling of dismissal with prejudice against the defendants by stipulated agreement of the parties; Plaut v. Spendthrift Farms, res judicata, United Student Aid Funds, Inc. v. Espinosa, No appeal or modification of 1990 ruling was ever sought by defendants for over 30 years.

2. Return of what monies have been seized; total sum, with interest, of all payments, tax returns, fees, penalties, interest etc.

3. A Court order stopping any further taking of any funds or property from the plaintiff, Peter R. Rumbin

4. Reimbursement of all legal counsel fees and expenses as a result of the defendants' actions.

5. Counter suit on predatory lending, Dodd-Frank Consumer Protection Act or other applicable laws or relief as the court or legal counsel deem appropriate.

## THE COURT'S POWER TO GRANT RELIEF

The FCPA empowers this court to grant any appropriate legal or equitable relief with respect to violations of federal consumer financial law, the refund of monies, paid restitution, disengagement, or compensation for unjust enrichment, and civil money penalties. 12U.S.C.455565(A)(1). (p.31 Writ of certiorari to SCOTUS, Ira B. Grudberg, ESQ, counsel of

record for plaintiff) The foregoing discussion is derived from Ira B. Grudberg's pleadings and instructions to the plaintiff.

Respectfully submitted to the court:

Peter R. Rumbin, plaintiff (pro se), & for Ira B Grudberg, Esq. counsel of record

87 Second Street, Hamden, Conn. 06514

Certification_____

It is hereby asserted that a copy of the above was sent to the defendants of record found on the cover sheet to the complaint and herein follows below this day July 25, 2025 by plaintiff, Peter R. Rumbin, (for Ira B. Grudberg, Esq) 87 Second Street, Hamden, CT 06514:

US Dept of ED, Office of General Counsel, 400 Maryland Ave. SW, Washington, DC 20202

Sheri Cann, CEO, President, F. H. Cann & Associates, 1600 Osgood St., Suite 3058, North Andover, Mass. TEL 877-750-9804;

Department of the Treasury, Scott Bassent, secretary, 1500 Pennsylvania Ave. NW., Washington, DC 20220, TEL. (202)-622-2000

Ellen R. Patterson, Senior EX VP, General Counsel, Wells Fargo & Co., Corporate Offices, 420 Montgomery St., San Francisco, CAL 94104

Elizabeth Shanin, Interim VP and General Counsel, U. of Chicago, (Professor Lorna Strauss, former dean of students), Edward H. Levi Hall, Suite 619, 5801 S. Ellis Ave., Chicago, Illinois 60637; Tel 773-702-8873

5

Affidavit For Foreign Judgement (M.G,L.218,Sce.4A)    State of Massachusetts

Doc. No.:    Superior Court---Civil

Case: Rumbin, Peter R.

VS

Office of the General Counsel, US Dept. of Ed, F.H. Cann & Associates, Department of the Treasury, Scott Bassent, Ellen R. Pattersson, VP, Wells Fargo & Co., Elizabeth Shanin, Gen Counsel, U. of Chicago

---

**AFFIDAVIT**

I certify that the following is true that the attached favorable judgement by the General Counsel of the US Dept. of Education is a true copy of the ruling.  Furthermore, to corroborate the court order stipulated agreement dismissal with prejudice against the defendants issued by Warren Eginton also discharges all loans and interrogatories, and discovery inventory all loans that were discharged in 1990 ruling that disclosed all loans and are therefore discharged today.  The court may corroborate these documents itself if it wishes. Documents are attached hereafter.

Peter R. Rumbin, plaintiff, pro se & for Ira B. Grudberg, Esq

87 Second Street, Hamden, Conn. 06514

Sworn to before me

Date signed

JAN 26 2025

MELISSA J. BENJAMIN
Notary Public, State of Connecticut
My Commission Expires MAY 31, 2030

| Superior Court | State of Massachusetts |
|---|---|
| Peter R. Rumbin, Plaintiff | Doc. No: |
| VS | July 25,2025 |

Office of the General Counsel, US Dept of Education, Ms. Sheri Cann, CEO, President, F. H. Cann & Associates (North Andover, Mass), Scott Bassent, Department of The US Treasury, Ellen R. Patterson, Senior Ex. VP, General Counsel, Wells Fargo & Co., Elizabeth Shanin, VP & General Counsel, University of Chicago, Defendants

**Counter Suit on Predatory Lending, Dodd-Frank Consumer Protection Act and other applicable laws or relief as the court or legal counsel deem appropriate.**

The plaintiff hereby files a counter suit on Predatory lending against the defendants for their malfeasances and malevolent behavior against the plaintiff that spans from 1979 to the present. The predatory lending has cause disruption of the plaintiff's education, career development, destroyed his credit worthiness and lifetime income. The defendants unjustly enriched themselves at the expense of the students of need by treating them as students of means. U. of Chicago has increased its endowment tremendously; Wells Fargo Bank has paid billions of dollars in fines for its unjust and unfair credit behavior but has made billions of dollars in the conduct of this student loan business, and likewise, for F.H. Cann & Associates, US Depts of Ed and Treasury. The colleges pursued a prescription of ever increasing fees, tuition and room and board costs by simply saddling students with ever increasing debts while the college administrators paid themselves multi-million-dollar salaries, expensive housing and pensions.

Meanwhile poor students, like me, were burdened with unmanageable debts. In the plaintiff's case, the U. of Chicago committed fraud and embezzlement to keep the PELL/BEOG grant funds for itself. Most students would have been unaware of this occurrence unless another college had requested a financial aid transcript as the plaintiff had when he attended Harvard. During this time, the college's financial aid office of the U. of Chicago did not have to provide any accounting of the fund's whereabouts to the student. Hence abuse was easily committed to enrich the college, while harming the student, me. For these reasons and others (see writ of certiorari etc.) the defendants should be required to pay the plaintiff compensation for this counter suit on their predatory lending and draconian conduct for 48 years!

Respectfully submitted:

Respectfully submitted to the court:

Peter R. Rumbin, plaintiff (pro se), & (Ira B Grudberg, Esq. counsel of record)

87 Second Street, Hamden, Conn. 06514

Certification_____

It is hereby asserted that a copy of the above was sent to the defendants of record found on the cover sheet to the complaint and herein follows below this day July 25, 2025 by plaintiff, Peter R. Rumbin, (& for Ira B. Grudberg, Esq) 87 Second Street, Hamden, CT 06514:

US Dept of ED, Office of General Counsel, 400 Maryland Ave. SW, Washington, DC 20202

Sheri Cann, CEO, President, F. H. Cann & Associates, 1600 Osgood St., Suite 3058, North Andover, Mass. TEL 877-750-9804;

Department of the Treasury, Scott Bassent, secretary, 1500 Pennsylvania Ave. NW., Washington, DC 20220, TEL. (202)-622-2000

Ellen R. Patterson, Senior EX VP, General Counsel, Wells Fargo & Co., Corporate Offices, 420 Montgomery St., San Francisco, CAL 94104

Elizabeth Shanin, Interim VP and General Counsel, U. of Chicago, (Professor Lorna Strauss, former dean of students), Edward H. Levi Hall, Suite 619, 5801 S. Ellis Ave., Chicago, Illinois 60637; Tel 773-702-8873



Peter R Rumbin
87 2Nd St
Hamden, CT 06514-4711

March 24, 2025

Borrower Defense Application #: 02094713
Borrower Defense Application School: University of Chicago (The)

Dear Peter R Rumbin:

You are receiving this letter because you are a member of the class of Federal student loan borrowers covered by the recent settlement of the *Sweet v. Cardona* ("*Sweet*") lawsuit. You submitted a Borrower Defense to Repayment discharge application relating to your Federal student loan(s) on or before June 22, 2022. **The Department of Education, applying a special review process agreed to in the Sweet settlement agreement, has approved your claim for settlement relief.** For more information on the terms of the settlement agreement please see the Department's website at https://Studentaid.gov/announcements-events/sweet-settlement.

The Department has determined that you are entitled to settlement relief for the loans taken out on or after 4/15/1977, associated with your enrollment at University of Chicago (The) ("Relevant Federal Student Loan(s)") based on your allegations regarding the school's misconduct. Pursuant to the *Sweet* settlement, the Department of Education will do the following:

- discharge your Relevant Federal Student Loan(s);
- provide a refund for any payments made to the Department of Education on your Relevant Federal Student Loans, including Relevant Federal Student Loan debt that you previously paid off; and
- delete the credit report tradeline associated with the discharged loan(s).

The benefits described in this communication apply to your Relevant *Federal* Student Loan(s). The benefits do not apply to private loans. Discharging your Relevant Federal Student Loan(s) means that you will no longer owe the debt. You also may receive a refund for prior payments made to the Department on your discharged Relevant Federal Student Loan(s) related to University of Chicago (The). Your loan servicer will let you know if you are eligible for a payment refund, which would be mailed to you. Please check your online account with your loan servicer to ensure your address is correct so you can receive any refund.

**Other than confirming your address, you do not have to take any further action to receive your discharge.** Your servicer will send you more details about the discharge, including which loans have been forgiven. Your Relevant Federal Student Loan debt will remain in forbearance and collections will be stopped until you receive relief. Your credit report will also be updated to reflect this discharge when it is complete.

If you have questions about this notice, please call our borrower defense hotline at 1-855-279-6207. You may visit https://studentaid.gov/Contact for our hours of operation.

Sincerely,
U.S. Department of Education
Federal Student Aid



Federal Student Aid
830 First Street NE, Washington, D.C 20202
StudentAid.gov/borrower-defense



Peter R Rumbin
87 2Nd St
Hamden, CT 06514-4711

March 24, 2025

Borrower Defense Application #: 02094713
Borrower Defense Application School: University of Chicago (The)

Dear Peter R Rumbin:

You are receiving this letter because you are a member of the class of Federal student loan borrowers covered by the recent settlement of the *Sweet v. Cardona* ("*Sweet*") lawsuit. You submitted a Borrower Defense to Repayment discharge application relating to your Federal student loan(s) on or before June 22, 2022. **The Department of Education, applying a special review process agreed to in the Sweet settlement agreement, has approved your claim for settlement relief.** For more information on the terms of the settlement agreement please see the Department's website at https://Studentaid.gov/announcements-events/sweet-settlement.

The Department has determined that you are entitled to settlement relief for the loans taken out on or after 4/15/1977 associated with your enrollment at University of Chicago (The) ("Relevant Federal Student Loan(s)") based on your allegations regarding the school's misconduct. Pursuant to the *Sweet* settlement, the Department of Education will do the following:
- discharge your Relevant Federal Student Loan(s);
- provide a refund for any payments made to the Department of Education on your Relevant Federal Student Loans, including Relevant Federal Student Loan debt that you previously paid off; and
- delete the credit report tradeline associated with the discharged loan(s).

The benefits described in this communication apply to your Relevant Federal Student Loan(s). The benefits do not apply to private loans. Discharging your Relevant Federal Student Loan(s) means that you will no longer owe the debt. You also may receive a refund for prior payments made to the Department on your discharged Relevant Federal Student Loan(s) related to University of Chicago (The). Your loan servicer will let you know if you are eligible for a payment refund, which would be mailed to you. Please check your online account with your loan servicer to ensure your address is correct so you can receive any refund.

**Other than confirming your address, you do not have to take any further action to receive your discharge.** Your servicer will send you more details about the discharge, including which loans have been forgiven. Your Relevant Federal Student Loan debt will remain in forbearance and collections will be stopped until you receive relief. Your credit report will also be updated to reflect this discharge when it is complete.

If you have questions about this notice, please call our borrower defense hotline at 1-855-279-6207. You may visit https://studentaid.gov/Contact for our hours of operation.

Sincerely,
U.S. Department of Education
Federal Student Aid



UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | Civil No. N 89-523 (WWE) |
| VS. | : | |
| PETER R. RUMBIN, | : | |
| Defendant. | : | September 26, 1990 |

MOTION TO DISMISS

Pursuant to Rule 41 of the Federal Rules of Civil Procedure, the federal plaintiff hereby moves the Court to dismiss this action with prejudice, in accordance with the attached Stipulation.

RESPECTFULLY SUBMITTED,

THE PLAINTIFF

BY: STANLEY A. TWARDY, JR.
UNITED STATES ATTORNEY

CHRISTINE SCIARRINO
SPECIAL ASST. U.S. ATTORNEY
915 LAFAYETTE BLVD.
BRIDGEPORT, CT  06604
(203) 579-5596

MICROFILM

SEP 27 1990

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA,            :

     Plaintiff,            :            Civil No. N 89-522 (WWE)

VS.            :

PETER R. RUMBIN,            :

     Defendant.            :            September 24, 1990

STIPULATION FOR DISMISSAL

It is hereby stipulated by and between the federal plaintiff, United States of America, on the one hand, and the defendant, Peter R. Rumbin, on the other hand, by and through their respective attorneys as follows:

1.    That the parties do hereby agree to the dismissal of the above captioned action with prejudice, each party to bear his own costs and attorney's fees.

2.    That the defendant, Peter R. Rumbin agrees to discharge and hold and save harmless the United States of America and the Secretary of the United States Department of Education and their agents, officers and employees from any claims, including costs or expenses for or on account of any and all lawsuits or claims of any character whatsoever, in connection with the subject matter or institution of this action.



PLAINTIFF,

UNITED STATES OF AMERICA

STANLEY A. TWARDY, JR.
UNITED STATES ATTORNEY

DATED SEPTEMBER 24, 1990

CHRISTINE SCIARRINO
SPECIAL ASST. U.S. ATTORNEY
915 LAFAYETTE BLVD.
BRIDGEPORT, CT  06604
(203) 579-5596

DEFENDANT,

PETER R. RUMBIN

DATED SEPTEMBER 25, 1990

BY:_____
DAVID A. LEFF, ESQ.
JACOBS, GRUDBERG, BELT & DOW
350 ORANGE STREET
NEW HAVEN, CT  06503
HIS ATTORNEY

DEFENDANT,

PETER R. RUMBIN

DATED SEPTEMBER 25, 1990

BY:_____
PETER R. RUMBIN
87 SECOND STREET
HAMDEN, CT  06514

2



October 2, 2024

Mr. Peter Rumbin
87 2nd Street
Hamden, CT  06514-4711

Debt No.:  1847071
1847081
1847089  .
1847095
Account No.:  1000373071

Dear Mr. Rumbin:

Thank you for your correspondence concerning your student loan account with the
U.S. Department of Education, Federal Student Aid.

You believe that you should not be held responsible for repaying this debt. We regret you are
dissatisfied with our previous responses, but our position has not changed. Because the
Department holds records supporting the existence of this debt, you have the burden to prove that
the debt is not owed. We do not consider the evidence that has been presented sufficient to show
that the debt is not owed.

You state that you will file suit against the Department. The legal documents should be sent to:

U.S. Department of Education
Office of the General Counsel
400 Maryland Avenue S.W.
Washington, DC  20202

Service on the Department at another address may not be legally sufficient service and the
government will not consider the suit properly served unless the party complies with federal
service rules.



Page 2 – Mr. Peter Rumbin

On April 6, 2022, the Department announced plans to give all federal student loan borrowers in default a "fresh start" on repayment by eliminating the impact of delinquency and default. This program includes an opportunity to get your loans out of default and into repayment as well as several other benefits. Here are the benefits of this initiative that require no action from you:

- If you have loans eligible for the Fresh Start program, your eligibility for additional Title IV aid, including federal grants and loans, has been reinstated.

- Your defaulted debt is no longer being reported to the Credit Alert Verification Reporting System (CAIVRS), which means you may be entitled to other forms of federally backed loans, including mortgages based by the Federal Housing Administration (FHA) and financial assistance from the Small Business Administration (SBA).

- If your eligible federal student loans were considered delinquent for more than seven years as of October 1, 2022, the Department stopped reporting your debt to the consumer credit agencies. Otherwise, your eligible student loans are reported as in good standing. This credit reporting benefit also applies to grant overpayment debts held by the Department.

There are several additional benefits you may qualify for but you must contact the Department's Default Resolution Group to enroll. These additional benefits include:

- The transfer of your eligible loans to a non-default loan servicer.

- The option to choose an income-driven repayment (IDR) plan. On an IDR plan, your monthly payments are based on your income and may be as low as $0 per month.

- Regaining eligibility to apply for Public Service Loan Forgiveness, as long as all other qualifications are met.

- Regaining eligibility to apply for deferments and forbearances.

The Fresh Start period ends on October 2, 2024, at 3:00 AM eastern time. You must notify the Department's Default Resolution Group by that date if you wish to enroll in the Fresh Start program.

Page 3 – Mr. Peter Rumbin

In order to access the additional benefits being offered, you should contact us at:

       U.S. Department of Education
       Default Resolution Group
       P.O. Box 5609
       Greenville, TX  75403-5609
       1-800-621-3115
       TTY: 1-877-825-9923

For further information and the latest updates regarding this initiative, you should visit studentaid.gov/announcements-events/default-fresh-start.

For more information, visit our Web site at myeddebt.ed.gov.

We hope this information will be helpful to you.

                          Sincerely,

                          Default Resolution Group
                          Servicing Center



Peter Rumbin
87 Second St
Hamden, CT 06514


February 15, 2023

Borrower Defense Application #: 02094713
Borrower Defense Application School: University of Chicago (The)

Rescission of Your Previous Borrower Defense Denial and Reopening of Your Case

Dear Peter Rumbin:

You are receiving this letter because you applied for a Borrower Defense to Repayment discharge of your federal student loan(s). A borrower defense discharge is available for borrowers whose schools committed misconduct as specified in the U.S. Department of Education's Borrower Defense Regulations.

You filed your application on or prior to June 22, 2022. Filing your application during this period means that you are a member of the class of federal student loan borrowers covered by the recent settlement of the *Sweet v. Cardona* ("*Sweet*") lawsuit.

Before the settlement agreement was finalized, the Department denied your application. **However, under the *Sweet* settlement agreement, the Department is now rescinding its previous denial of your application.** The Department has reopened your application and it is currently pending review.

Your federal loans will stay in forbearance or stopped collection status until your application is granted or denied and any relief is provided. For this period of forbearance or stopped collection status, the Department will not make you pay any interest that accrues on your federal loans.

If you have questions about this notice, please call our borrower defense hotline at 1-855-279-6207 from 8:00-8:00 ET on Monday-Friday or from 11:00-5:00 ET on Saturday or Sunday.

Sincerely,

*Richard Cordray*

Richard Cordray
Chief Operating Officer
Federal Student Aid

Federal Student

LAW OFFICES OF

# Jacobs, Grudberg, Belt & Dow, P.C.

350 ORANGE STREET
POST OFFICE BOX 606
NEW HAVEN, CONNECTICUT 06503-0606

TELEPHONE (203) 772-3100
FAX (203) 772-1691

OUR FILE NUMBER

HOWARD A. JACOBS
IRA B. GRUDBERG
DAVID L. BELT
WILLIAM F. DOW, III
JONATHAN KATZ
DAVID T. GRUDBERG
BERNARD CHRISTIANSON
ROSEMARIE PAINE
JOSEPH J. PACKTOR
ALINOR C. STERLING
ANDREW I. SCHAFFER
TRISHA MORRIS PORTO
EDWARD J. McMANUS
JOSHUA D. LANNING

ISRAEL J. JACOBS (1918-1963)

B04-1282                            August 2, 2004

Ms. Diane Spadoni
Federal Student Aid
8 31st Street, NE
Washington, D.C. 20202-5464

RE:  Debt No. G199909004165601
     G199909004165702
     Account No. 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

Dear Ms. Spadoni:

    I am writing on behalf of Peter Rumbin. Your July 20th letter says it is his position that he "believes" he should not be he held responsible for repaying the student loan. The fact is he was sued on the loan in the United States District in Connecticut at least a decade ago and our position was upheld in that motion. The case was dismissed. It is not a question of what anybody "believes", but what the court held some time ago. I am following up on his letter of July 30th in which he sets that forth. Our office represented him in the suit, and I can inform you that what he tells you is true concerning the suit and the court.

        Very truly yours,

        JACOBS, GRUDBERG, BELT & DOW, P.C.


        By_____
          Ira B. Grudberg

IBG/ad

cc:  Peter Rumbin



2103 RAYBURN HOUSE OFFICE BUILDING
WASHINGTON, DC 20515-0703
(202) 225-3661

59 ELM STREET
SECOND FLOOR
NEW HAVEN, CT 06510
(203) 562-3718

DURHAM MIDDLEFIELD MIDDLETOWN
(860) 344-1159

ASSISTANT DEMOCRATIC WHIP

CHAIR, COMMITTEE ON APPROPRIATIONS

SUBCOMMITTEES
CHAIR
LABOR, HEALTH AND HUMAN SERVICES
EDUCATION, AND RELATED AGENCIES

# UNITED STATES
# HOUSE OF REPRESENTATIVES

## ROSA L. DeLAURO
3RD DISTRICT, CONNECTICUT

July 6, 2022

Mr. Peter R. Rumbin
87 2nd Street
Hamden, Connecticut 06514-4711

Dear Mr. Rumbin:

Thank you for contacting me regarding your continued difficulties with your student loans.

Unfortunately, there is no Administrative remedy and as a Member of the United States Congress, the legal part of this matter is not within my jurisdiction. I would recommend that you continue working with your attorney.

With respect to your $600 EIP from the IRS, it must be claimed on your 2020 Tax Return or an amended 2020 Tax Return if it was already filed.

I am sorry that I am not able to be of direct assistance with this matter though I hope the information I provided is useful. Please feel free to contact me if I can be of assistance in the future.

Sincerely,

ROSA L. DeLAURO
Member of Congress

RLD/lm

I encourage you to visit my website (www.house.gov/delauro).

PRINTED ON RECYCLED PAPER

F. H. Cann & Associates, Inc.
1600 Osgood St. Suite 20-2/120 • North Andover, MA 01845
Telephone (877) 677-9126

Mon - Thurs 8 A.M. - 8 P.M.
Fri 8 A.M. - 5 P.M.

April 29, 2019

PETER RUMBIN
87 2nd St
Hamden CT 06514-4711

Re    Account#: 1000373071
Student loan account held by:
U.S. Department of Education
Total Due:    $9,276.64
*See Page 2 for Account Details*

Dear PETER RUMBIN,

This notice regarding your defaulted student loan or grant overpayment debt held by the U.S. Department of Education is from F.H. Cann & Associates, Inc. and has been placed with our office for collection. The balance listed above is owed to U.S. Department of Education and the principal continues to accrue interest daily. This balance is effective as of today, April 29, 2019, and may not be an accurate pay-off figure; this balance may increase due to the accrual of interest or assessment of collection costs.

You may not have to repay your loan(s) to the U.S. Department of Education at this time if you are disabled, incarcerated, have declared bankruptcy or if the person to whom this letter is addressed is deceased. If any of these apply, please contact our office and we will assist you in completing the appropriate required paperwork.

Unless you notify this office within 30 days of receiving this notice that you dispute the validity of this debt or any portion thereof, we will assume the debt is valid. If you notify us in writing within 30 days of receiving this notice that you dispute the validity of the debt, or any portion thereof, we will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such verification or judgment. If you request of this office in writing within 30 days after receipt of this notice, we will provide you with the name and address of the original creditor, if different from the current creditor.

Please contact our office at the phone number above to resolve this matter. You may also visit our website at http://edinfo.fhcann.com for more information about your repayment options.

Sincerely,

David Krevitz, Collection Manager

This communication is from a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose.

---

**Make your check or money order payable to U.S. Department of Education and send to the address below using the enclosed envelope**

**DO NOT SEND CHECKS OR CORRESPONDENCE TO: PO Box 505, Linden MI 48451-0505**
*** Please detach the lower portion and return with your payment ***

Y23139A8F4

PO Box 505
Linden MI 48451-0505
ADDRESS SERVICE REQUESTED

Account #: 1000373071
Total Balance owed: $9,276.64
Amount Paid: _____

April 29, 2019

00091200240113962695006514471187—Y23139A8F4 912

PETER RUMBIN
87 2nd St
Hamden CT 06514-4711



National Payment Center
U.S. Department of Education
PO Box 790336
St Louis MO 63179-0336

4  410003730716  0000000660  00000607      4  410003730716  0004292019  09276644

| FHC # | Client Reference # | Principal | Interest | Costs | Total Balance* |
|---|---|---|---|---|---|
| 2358263 | 1847089 | 2586.30 | 1590.03 | 748.40 | 4924.73 |
| 2358264 | 1847071 | 0.00 | 0.00 | 0.00 | 0.00 |
| 2358265 | 1847095 | 2586.30 | 1104.26 | 661.35 | 4351.91 |
| 2358266 | 1847081 | 0.00 | 0.00 | 0.00 | 0.00 |

* Total Balance as of today's date, may increase due to continuing accrual of interest and fees.

Y2 3139A8F4

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | X<br>:<br>: |
| Plaintiff, | : |
| V. | : |
| PETER R. RUMBIN | : |
| Defendant. | : |
| | X |

CIVIL NO. N-89-522 (WWE)

JULY 20, 1990

## MOTION FOR LEAVE TO FILE AMENDED ANSWER

Defendant Peter R. Rumbin moves the Court for leave to file an amended answer, a copy of which is attached hereto as Exhibit A, on the ground that the defendant's original answer, filed on November 3, 1989, was completed by the defendant before he was represented by counsel. As the defendant has no legal training, he was unaware of the defenses available to him, and his answer fails to fully address the legal issues between the parties. For the foregoing reasons, justice requires that the defendant be given an opportunity to file an amended answer.

ORAL ARGUMENT NOT REQUESTED

2

Counsel for plaintiff has been contacted and states that she has no objection to the granting of this motion.

THE DEFENDANT,
PETER R. RUMBIN

By David Leff

David A. Leff
JACOBS, GRUDBERG, BELT & DOW, P.C.
350 Orange Street
New Haven, Connecticut  06503
(203) 772-3100
His Attorneys

2

FILED

UNITED STATES DISTRICT COURT    AUG 13    2 31 PM '90

DISTRICT OF CONNECTICUT
CLERK
U.S. DISTRICT COURT
BRIDGEPORT, CONN.

```
-------------------------------------X
                                     :
UNITED STATES OF AMERICA,            :
                Plaintiff            :
        v.                           :
                                     :      CIVIL NO. N-89-522  (WWE)
PETER R. RUMBIN,                     :
                Defendant.           :
                                     :      JULY 20, 1990
-------------------------------------X
```

## AMENDED ANSWER

Now comes the defendant Peter R. Rumbin, for Amended Answer to the Complaint as follows:

## FIRST DEFENSE

The Complaint fails to state a claim against the defendant upon which relief can be granted.

## SECOND DEFENSE

The right of action set forth in the Complaint did not accrue within six years next before the commencement of this action.

## THIRD DEFENSE

1.  The defendant admits the allegations contained in Paragraph 1 of the Complaint.

2.  The defendant admits the allegations contained in Paragraph 2 of the Complaint.

3.  The defendant is without sufficient information to

either admit or deny the allegations contained in Paragraph 3 of
the Complaint and leaves the plaintiff to her proof.

4.  The defendant admits that demand has been made upon him
for the sum of $2,107.58, by letter of the plaintiff, dated
October 5, 1989 (a copy of which is attached hereto as Exhibit
A).  The defendant is without information to either admit or deny
all other allegations contained in Paragraph 4 of the Complaint
and leaves the plaintiff to her proof.

<u>FOURTH DEFENSE</u>

1.  If any money was loaned to the defendant, such money was
loaned to the defendant as part of an underlying agreement to
provide financial assistance to the defendant.

2.  The University of Chicago required the defendant to
apply for loans as a condition precedent to an award of financial
assistance.

3.  The University of Chicago, through its agents, servants,
and employees, represented to the defendant that federal grant
monies then available to the University of Chicago would be
allocated first to meet the defendant's financial assistance
requirements before the University of Chicago would require the
defendant to take a student loan as part of his award of
financial assistance.

4.  Acting in reliance upon the above-recited
representation, the defendant was induced to apply for financial
assistance from the University of Chicago.

2

5. Following its review of the defendant's application for financial assistance, the University of Chicago directed the defendant to take a student loan as part of an award of financial assistance.

6. The University of Chicago intentionally and deliberately failed to utilize the federal grant monies then available, and despite its failure to exhaust these funds, it required the defendant to take a student loan.

7. Acting in reliance upon the representation of the University of Chicago that it would exhaust the available federal grant monies first before requiring the defendant to take a student loan, the defendant was caused to incur the onerous and unnecessary burden of a student loan.

WHEREFORE, any obligations arising as a result of any sums loaned by or through the University of Chicago, evidenced by any note or otherwise, are unenforceable against the defendant for the following reasons:

    a. The defendant was fraudulently induced to incur such obligation by the University of Chicago;

    b. There was a want or failure of consideration to the underlying agreement to provide financial aid; and

c.  There was a failure to perform a condition precedent

to the underlying agreement to provide financial

aid.

THE DEFENDANT,
PETER R. RUMBIN

By David Leff

David A. Leff
JACOBS, GRUDBERG, BELT & DOW, P.C.
350 Orange Street
New Haven, Connecticut  06503
(203) 772-3100
His Attorneys

4

<u>CERTIFICATION</u>

This is to certify that a copy of the foregoing has been mailed, United States mail, first class postage prepaid, on this 20th day of July, 1990 to:

Carmen Espinoza Van Kirk
Assistant United States Attorney
450 Main Street, Room 328
Hartford, Connecticut 06103

David A. Leff

5

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA,    :
             Plaintiff,    :

      v.             : CIVIL NO. N-89-522

PETER R. RUMBIN,        : ~~DECEMBER 4, 1989~~
        Defendant.   : JANUARY 19, 1990

DEFENDANT'S RESPONSE TO
PLAINTIFF'S FIRST SET OF INTERROGATORIES, FIRST
REQUEST FOR PRODUCTION OF DOCUMENTS AND FIRST
REQUESTS FOR ADMISSIONS

Pursuant to Federal Rules of Civil Procedure 33, 34, and 36, plaintiff, United States of America, requests that defendant, Peter R. Rumbin respond to the interrogatories in Part II, and produce the documents in Part III, and respond to the requests for admission in Part IV, in accordance with the instructions and definitions set forth in Part I, within thirty (30) days at the Office of the United States Attorney, 915 Lafayette Blvd., Room 309, Bridgeport, Connecticut 06604, and permit the plaintiff, its attorneys and agents, to inspect and copy any documents produced.

## I.  Instructions and Definitions

The following instructions and definitions apply to each discovery request contained herein:

1. The term "document" includes, but is not limited to, originals and copies of all correspondence, literature, papers, memoranda, reports, notes, rough drafts, notebooks, work pads, messages, telegrams, mailgrams, tape recordings, transcripts,

5

records, pamphlets, manuals, books, letters, releases, contracts, agreements, receipts, checks, and other recorded data.

2. This request is intended to cover all documents in the possession, custody or control of Peter R. Rumbin, including:

(a) documents in the physical custody of Peter R. Rumbin, his agents, employees, representatives, investigators, affiliates or its attorneys' agents, employees, representatives or investigators; and

(b) documents which are in the physical custody of any person or entity other than Peter R. Rumbin and which Peter R. Rumbin (I) owns such documents in whole or in part, (II) has a right by contract or otherwise to retrieve, use, inspect, examine or copy such documents, (III) has an understanding, express or implied, that Peter R. Rumbin may retrieve, use, inspect examine or copy such documents on any terms or (IV) has, as a practical matter, been able to use, inspect, examine or copy such documents when Peter R. Rumbin has sought to do so.

3. If any document or category of documents can not be produced in full, Peter R. Rumbin shall produce to the extent possible and shall specify the reason for its inability to produce that portion of the document or category of documents not produced.

6

4. "Identify" shall mean the following:

    (a)  when used in reference to a natural person, it means to state the person's:

        (1)  full name;

        (2)  present home address, or, it unavailable, last known home address;

        (3)  present business address, or, if unavailable, last known business address; and

        (4)  business affiliation and job title, or, if unavailable, last known business affiliation job title;

    (b)  when used in reference to a document, it means to state the type of document (e.g., letter, memorandum, telegram, chart) or other means of identifying it, its author and originator, its date or dates, all addresses or recipients and its present location or custodian.

5.  The applicable time period for responses to these requests, unless otherwise stated in a particular request, is January 1, 1977, to date, and is ongoing.

## II.  Interrogatories

1.  Identify all loans or grants received by Peter R. Rumbin or the University of Chicago for the education of Peter R. Rumbin including:

    (A)  The source of each loan or grant;

    <u>Response</u>:  1) University of Chicago, National Direct Student Loan.

                2) Connecticut Savings Bank, Connecticut Student Loan Foundation

7

(B)   The amount of each loan or grant;

Response: 1) $890.00 plus interest.
          2) $5,000.00


(C)   The terms of repayment of each loan or grant;

Response: 1) The payment of principal and interest to be made
commencing 9 months after I ceased 1/2 normal full-time academic workload at an
institution of higher education and ending ten years and 9 months thereafter at
3% per year from the beginning of repayment period; see loan note in plaintiff's
possession.  2) Unknown; low interest with payment deferred until education ended.

(D)   Present balance due and owing by Peter R. Rumbin
      on each loan or grant;

Response: 1) Undetermined.
          2) $5,739.89 as of 3-28-89.


(E)   The source and date of each payment made as
      repayment of the loan or grant;

Response: 1) None.
          2) Paid off by National Account Service on or about
             3-28-89.


2.   Identify the agents, servants, or employees of the
University of Chicago who communicated with Peter R. Rumbin
regarding repayment of the National Direct Student Loan Note
executed on or about March 29, 1977.

Response:
a) Tim Curtis, P.O. Box 92250, Los Angles, CA 90009, Account Rep. Academic Financial
   Services Assoc.
b) Department of Health Education and Welfare , Office of Education, Bureau of
   Student Financial Assistance, P.O. Box 8422 Chicago, Ill. 60680
c) Mrs. Lorna P. Straus, The University of Chicago; 1116 E. 59th St.,Chicago, Ill.
   60637; Dean of Students in the College.
d) E.W. Osborn, Jr.; University of Chicago, 5801 Ellis Ave., Chicago, Ill. 60637;
   Director of Student Loan Center.
e) Fred R. Brook, Jr., The University of Chicago, Office of Colleg Aid,
   Chicago, Ill. 60637, Director.

8

3. Describe the substance of these communications and any
internal decisions, agreements, or documents, which were the result
of communications between Peter R. Rumbin and agents, servants, or
employees of the University of Chicago regarding repayment of the
National Direct Student Loan Note executed on or about March 29,
1977. Response: a) Statement of principal due of $890 and discussion of rights of
deferment due to full-time student status.
    Response: b) Notice of delinquency-amounts $942.73 or 942.67.
c) Application for additional loans; tuition for '78, college aid office.
d) Obligations under NDSL and FISL; sale of loan to student loan marketing
   assoc.; loan balance stated as $1,650 and $180 past due.
e) College aid granted of $2010 gift and loan of $1,650.

4. Identify the date, location, and substance of any
communication between Peter R. Rumbin and agents, servants or
employees of the University of Chicago, regarding repayment of the
National Direct Student Loan Note executed on or about March 29,
1977. a) Sept. 7, Aug. 31, July 31, Aug. 22, 1978 and Sept. 30, 1979.
b) Jan. 31 and Mar. 1, 1981.
    Response: c) Jan. 10, 1978.
d) Oct. 17, 1950.
e) Apr. 11, 1977.
All by mail to Hamden, Conn. address. (See Ans. to interrogatory No. 3 above
                                        for substance )

5. Describe and identify the terms of repayment of the
National Directed Student Loan Note, executed on or about March 29,
1977 by Peter R. Rumbin, including:

        (A)  The document or oral statement specifying
             repayment;

        Response:  See Answer to interrogatory No. 1(B) (1) above, and
                   loan note dated March 29, 1977 in plaintiff's possession.

(B)   The date of the oral statement.

Response: None.


(C)   All persons who have knowledge of the terms
of repayment.

Response:  Peter R. Rumbin; Tim Curtis; Lorna P. Straus;
E.W. Osborn Jr.; Fred R. Brooks Jr.

(See Ans. to interrogatory No. 2 above for addresses
and titles)

6.  Describe the manner in which the University of

Chicago failed and neglected to utilize federal BEOG (Now PELL)

funds.  Response: BEOG funds were available for educational expenses of the
defendant at the time of the loans involved but were not utilized first
~~Response:~~
resulting in the unnecessary utilization of loan monies and additional
monies paid by the defendant's parents.  On information and belief,
the University of Chicago was made to return unused BEOG funds to the
U.S. Dept. HEW after investigation on or about Oct., 1980.

7.  Describe the fraudulent misrepresentations made to

Peter R. Rubmin by servants, agents or employees of the University

of Chicago, including:

(A)   The substance of the fraudulent misrepresenta-
tions;

Response: The defendant had to apply for student loans and grants
as a condition to receipt of financial aid and that the university would
utilize all available grant monies first in payment for defendant's educational
expenses before resorting to use of loan money.
That the defendant could obtain sufficient financial aid to complete
his education at that university.

10

(B)  The date of each fraudulent misrepresentation;

Response:  On divers times prior to and on or about March 29
and April 15, 1977.


(C)  The name of the individual knowledgeable of the
fraudulent misrepresentation;

Response: Fred R. Brooks, Jr.; William Borchert, Asst. Dir. of College
Aid; Lorna P. Straus, Dean of Students; all of University of Chicago, 1116
E. 59th St., CHicago, Ill. 60637; Nancy Eakin, Dir. of Claims, U.S. Dept. of
Education, Division of Institutional Review,    401 So. State St., Chicago, Ill.
60605; and *

(D)  The name of the individual who made each
fraudulent misrepresentation;

Response: Fred R. Brooks, Jr.; Lorna P. Straus, Enid Rieser, Asst.
Dean of Students/Advisor and others, (See Ans. to
Interrogatory No. 2 for addresses and titles)


III.  Request To Produce

Pursuant to Federal Rule of Civil Procedure 34, the United

States requests that Peter R. Rumbin produce the following

documents:

1.  All documents constituting the contents of any file

pertaining to Peter R. Rumbin and the National Direct Student Loan

Note executed on or about March 29, 1977. Response: Produced.

2.  All notes, memorandum or other documents of conversations

held between Peter R. Rumbin and agents, servants or employees of

the University of Chicago, pertaining to the National Direct

Student Loan, executed on or about March 29, 1977.

Response: Produced.


* Inter. No. 7 (C) Cont.  Virginia Safran, Student Loan Officer, Univ. of Chicago,
1116 E. 59th St., Chicago, Ill. , Last Known Residence
New Haven, Conn. as of 1980.

11

3.  All written correspondence or documents received from or sent to Peter R. Rumbin by the University of Chicago or the United States of America, pertaining to the National Direct Student Loan executed by Peter R. Rumbin on or about March 29, 1977. Response: Produced.

4.  All documents pertaining to the decisions set forth in Interrogatory No.1   Response: None.

5.  All documents pertaining to the decisions set forth in Interrogatory No.3   Response: None.

6.  All documents pertaining to the decisions set forth in Interrogatory No.4   Response: Produced.

7.  All documents pertaining to the decisions set forth in Interrogatory No.5   Response:Loan Document in plaintiff's possesion speaks for itself.

8.  All documents pertaining to the decisions set forth in Interrogatory No.7. Response: Produced Notes of Telephone conversation with U.S. Dept. of Ed., Region 5 Director of Claims, Nancy Eakin, dated Oct. 23-24, 198

IV.  Requests For Admission

Pursuant to Federal Rule of Civil Procedure 36, Peter R. Rumbin is instructed to admit the truth of the following within thirty (30) days of service.

1.  On or about March 29, 1977, Peter R. Rumbin signed a National Direct Student Loan Note.

Answer: Admitted.

2.  Attached hereto, as Exhibit "A" is a true and correct copy of a National Direct Student Loan Note, executed by Peter R. Rumbin.

Answer:  Admitted.


3.  Pursuant to a National Direct Student Loan, Peter R. Rumbin was loaned $1,650.00, for attendance at the University of Chicago.

Answer:  Upon reasonable inquiry and investigation, there are conflicting figures in communications, such that I do not have sufficient information or knowledge to admit or deny the statement.  It is admitted that I signed a note to that effect, it is not known whether that amount was actually applied or spent on my education.

4.  Peter R. Rumbin has made no payments toward the National Direct Student Loan Note, executed on or about March 29, 1977.

Answer:  Admitted.


5.  The defendant has no information to refute the mathematical calculation of the National Direct Student Loan, as referenced in the Complaint.

Answer:  Denied.  See conflicting figures in correspondence re: loans produced herewith.

339-01070

STUDENT LOAN
INTERIM NOTE

$ 2500.00

Amount of Loan                                              Date of Disbursement

FOR VALUE RECEIVED, the undersigned Borrower promises to pay to the order of

CONNECTICUT SAVINGS BANK

(Name of Lender)

at    47 Church Street, New Haven, Connecticut

(Address of Lender)

Connecticut the sum of    TWENTY FIVE HUNDRED DOLLARS AND NO CENTS

Dollars ($ 2500.00    ) together with interest at the rate of seven (7) percent per annum on the outstanding principal balance, which interest shall be charged and shall accrue from the date hereof, or, if the loan proceeds are disbursed at a later date, from the date of actual disbursement by the Lender of the loan proceeds. If there is such a delay in the disbursement of loan proceeds, the obligation of the Borrower is conditioned upon the disbursement of loan proceeds in the amount stated above. This Note becomes payable and shall mature upon the earlier of the following dates: (1) the first day of the thirteenth calendar month after the month in which the Borrower completes the academic program for which the loan was made, or (2) the first day of the tenth calendar month after the month in which the borrower otherwise ceases to carry at an eligible institution at least one-half the normal academic workload (as determined by the institution).

This loan may be eligible for interest subsidy payments of seven (7) percent per annum by the U. S. Government. If eligible, these subsidized interest payments shall be paid on behalf of the Borrower by the U. S. Government and shall reduce Borrower's interest obligation as provided above. The Lender or holder hereof will not collect or attempt to collect interest from the Borrower eligible for and receiving a federal interest subsidy. The federal interest subsidy shall terminate upon the Maturity Date of this Note or upon the date of default as described in Paragraph 3 below. Default caused by making a false loan application or financial statement may result in retroactive termination of the interest subsidy. Upon the termination of subsidized interest payments, the Borrower shall thereafter be liable for payment of interest on the unpaid principal balance at the annual interest rate of seven (7) percent, which shall accrue from the date the subsidized payments terminate.

The Borrower further understands and agrees:

1. Governing Law. Connecticut Student Loan Foundation. This Note is subject to the provisions of Subchapter IV, Part B, of the Higher Education Act of 1965, as amended, and any regulations issued thereunder, and Connecticut General Statutes Chapter 160, §10-355 et seq., as amended. This Note shall otherwise be governed and construed in accordance with the laws of the State of Connecticut.

2. Installment Note. In lieu of paying this Interim Note in cash (or the equivalent acceptable to the holder) upon the Maturity Date, the Borrower may execute and deliver to the holder an Installment Note, on a form containing such terms and conditions as may then be prescribed by the holder and the Connecticut Student Loan Foundation, for the payment of the principal balance owing plus all accrued and unpaid interest. The Installment Note will require completion of repayment within fifteen (15) years from the date of execution of the Borrowers' initial guaranteed student loan except in the event of an extension pursuant to Paragraph 4 below. The Installment Note will require the Borrower to pay a minimum of $360 per year, including interest on the balance of all such loans (whichever is less), except that in the case of a husband and wife, both of whom have guaranteed student loans outstanding, the total of the combined payments for such a couple during any year shall not be less than $360 or the balance of all such loans, whichever is less.

3. Default. The Borrower shall be considered in default if any of the following conditions should exist:
(a) if there has been a failure to pay principal and unpaid interest hereunder when due or, in the alternative, to execute and deliver an Installment Note in lieu of such payment on or before the Maturity date. The Borrower will be given 120 days from the Maturity Date to cure the failure to pay this Note or to execute and deliver an Installment Note; or
(b) if bankruptcy proceedings are commenced by or against the Borrower; or
(c) if the Borrower has submitted to the Lender, holder hereof, or Connecticut Student Loan Foundation, or shall hereafter submit, for student loan purposes, a loan application or financial statement that is false, fraudulent, or contains a material misrepresentation.

In the event of default by reason of bankruptcy or the submission of a false statement, the Lender or holder hereof may, at its option, declare the entire balance of principal and unpaid interest immediately due and payable. In the event of default for any reason, interest shall be charged to the Borrower and shall accrue on the unpaid balance (consisting of principal and accrued and unpaid interest as of the date of default) at the annual rate of seven (7) percent from the date of default.

4. Extension. In the event that the Borrower has ceased to carry at an eligible institution in which the Borrower has been accepted for enrollment or was enrolled at least one-half the normal full-time academic workload, or in the event the Borrower has completed the academic program for which the loan was made, the Maturity Date hereunder may be extended during the period that the Borrower is pursuing a full-time course of study at an eligible institution, or is pursuing a course of study pursuant to a graduate fellowship program approved by the U. S. Commissioner of Education and the Connecticut Student Loan Foundation, or during a period not in excess of three (3) years during which the Borrower is a member of the Armed Forces of the United States, serves as a volunteer under the Peace Corps Act, serves as a full-time volunteer under the Domestic Volunteer Service Act of 1973, or during a single period, not in excess of twelve (12) months, at the request of the Borrower, during which the Borrower is seeking and unable to find full-time employment. During any such extension period pursuant to this paragraph, the Borrower agrees to notify, and to provide satisfactory proof, to the holder hereof of such affiliation or status, and to execute an Extension Note on a form containing such terms and conditions as may then be prescribed by the holder and the Connecticut Student Loan Foundation. Any period of extension pursuant to this paragraph shall not be counted in determining the fifteen (15) year maximum period required by Paragraph 2 hereof.

5. Prepayment. This Note may be prepaid at any time, either in whole or in part, at the option of the Borrower, without penalty and without liability for unearned interest. Such prepayment shall be first applied to interest accrued and unpaid (and not paid by the Federal interest subsidy) to the date of prepayment; the balance of the prepayment shall be applied to principal.

6. No Waiver. No extension of time for payment of all or part of the amount owing hereunder shall affect the Borrower's liability hereunder, nor shall acceptance by the holder hereof of any late payment constitute a waiver of any other rights of the holder.

7. Demand. Demand, presentment for payment, and notice of dishonor are expressly waived by the Borrower.

8. Collection Costs. In the event of default, the Borrower shall pay all costs of collection, including court costs and reasonable attorneys' fees incurred, in the collection of this Note.

9. Notification of Change of Address. The Borrower hereby agrees to notify the holder hereof of any change of address promptly after the change.

Borrower acknowledges that prior to signing below, he or she has received and read a legible and completely filled-in copy of this Note and the accompanying Truth-in-Lending Disclosure for this Note.

Oct 28, '77
Date of Execution

Signature of Borrower

Peter R. Dunkin
Typed or Printed Name of Borrower

8 Almond St.
Address — Number and Street

Hamden, Conn.

Lender—White
Student — Pink

CF 103 Rev. 7/77

BEST COPY AVAILABLE
AT TIME OF IMAGING

BEST COPY AVAILABLE
AT TIME OF IMAGING



Date: September 9, 1987

Title: "Consumer Loan Collection Officer

Typed Name/Title: Dolores A. Petralis

Signature:

CONNECTICUT STUDENT LOAN FOUNDATION
CONNECTICUT SAVINGS BANK

SUBSIDIZED LOAN

339-01071

STUDENT LOAN
INTERIM NOTE

$ 2,500.00
Amount of Loan

December 21, 1978
Date of Disbursement

FOR VALUE RECEIVED, the undersigned Borrower promises to pay to the order of

Connecticut Savings Bank
(Name of Lender)

at   47 Church Street  New Haven, Connecticut
(Address of Lender)

Connecticut the sum of   Two thousand five hundred dollars and no cents

Dollars ($ 2,500.00   ) together with interest at the rate of seven (7) percent per annum on the outstanding principal balance, which interest shall be charged and shall accrue from the date hereof, or, if the loan proceeds are disbursed at a later date, from the date of actual disbursement by the Lender of the loan proceeds. If there is such a delay in the disbursement of loan proceeds, the obligation of the Borrower to commence repayment of the disbursement of loan proceeds in the amount stated above. This Note becomes payable and shall mature upon the earlier of the following dates: (1) the first day of the thirteenth calendar month after the month in which the Borrower completes the academic program for which the loan was made, or (2) the first day of the tenth calendar month after the month in which the borrower otherwise ceases to carry on an eligible institution at least one-half the normal academic workload (as determined by the institution).

This loan may be eligible for interest subsidy payments of seven (7) percent per annum by the U. S. Government. If eligible, these subsidized interest payments shall be paid on behalf of the Borrower by the U. S. Government and shall reduce Borrower's interest obligation as provided above. The Lender or holder hereof will not collect interest subsidy shall terminate upon the Maturity Date of this Note or upon the date of default as described in Paragraph 3 below. Default caused by making a false loan application or financial statement may result in retroactive termination of the interest subsidy. Upon the termination of subsidized interest payments, the Borrower shall thereafter be liable for payment of interest on this unpaid principal balance at the annual interest rate of seven (7) percent, which shall accrue from the date the subsidized payments terminate.

The Borrower further understands and agrees:

1. Governing Law; Connecticut Student Loan Foundation. This Note is subject to the provisions of Subchapter IV, Part C, of the Higher Education Act of 1965, as amended, and any regulations issued thereunder, and Connecticut General Statutes Chapter 189, §10-358 et seq., as amended. This Note shall otherwise be governed and construed in accordance with the laws of the State of Connecticut.

2. Installment Note. In lieu of paying this Interim Note in cash (or, the equivalent acceptable to the holder) taking such terms and conditions as may then be prescribed by the holder an Installment Note, on a form consistent for the payment of the principal balance owing plus all accrued and unpaid interest. The Installment Note will require completion of repayment within fifteen (15) years from the date of execution of the Borrower's initial guaranteed student loan except in the event of an extension pursuant to Paragraph 4 below. The Installment Note will require the Borrower to pay a minimum of $360 per year, including interest on the balance of all such loans (whichever is less), except that in the case of a husband and wife, both of whom have guaranteed student loans outstanding, the total of the combined payments for such a couple during any year shall not be less than $360 on the balance of all such loans, whichever is less.

3. Default. The Borrower shall be considered in default if any of the following conditions should exist:
(a) If there has been a failure to pay principal and unpaid interest hereunder when due or, in the alternative, to execute and deliver an Installment Note in lieu of such payment on or before the Maturity date. The Borrower will be given 180 days from the Maturity Date to cure the failure to pay this Note or to execute and deliver an Installment Note; or
(b) If bankruptcy proceedings are commenced by or against the Borrower; or
(c) If the Borrower has submitted to the Lender, holder hereof, or Connecticut Student Loan Foundation, or shall hereafter submit, for student loan purposes, a loan application or financial statement that is false, fraudulent, or contains a material misrepresentation.

In the event of default by reason of bankruptcy or the submission of a false statement, the Lender or holder hereof may, at its option, declare the entire balance of principal and unpaid interest immediately due and payable. In the event of default for any reason, interest shall be charged to the Borrower and shall accrue on the unpaid balance (consisting of principal and accrued and unpaid interest as of the date of default) at the annual rate of seven (7) percent from the date of default.

4. Extension. In the event that the Borrower has ceased to carry on an eligible institution in which the Borrower has been accepted for enrollment or was enrolled at least one-half the normal full-time academic workload, or in the event the Borrower has completed the academic program for which the loan was made, the Maturity Date hereunder may be extended during the period that the Borrower is pursuing a full-time course of study at an eligible institution, or is pursuing a course of study pursuant to a graduate fellowship program approved by the U. S. Commissioner of Education and the Connecticut Student Loan Foundation, or during a period not in excess of three (3) years during which the Borrower is a member of the Armed Forces of the United States, serves as a volunteer under the Peace Corps Act, serves as a full-time volunteer under the Domestic Volunteer Service Act of 1973, or during a single period, not in excess of twelve (12) months, at the request of the Borrower, during which the Borrower is seeking and obtaining full-time employment. During any such extension period, pursuant to this paragraph, the Borrower agrees to notify, and to provide satisfactory proof, to the holder hereof of such affiliation or status, and to execute an Extension Note on a form containing such terms and conditions as may then be prescribed by the holder and the Connecticut Student Loan Foundation. Any period of extension pursuant to this paragraph shall not be counted in determining the fifteen (15) year maximum period required by Paragraph 2 hereof.

5. Prepayment. This Note may be prepaid at any time, either in whole or in part, at the option of the Borrower, without penalty and without liability for unaccrued interest. Such prepayment of all that applied to interest accrued and unpaid (and not paid by the federal interest subsidy) in the date of prepayment, the balance of the prepayment shall be applied to principal.

6. No Waiver. No extension of time for payment of all or part of the amount owing hereunder shall affect the Borrower's liability hereunder, nor shall acceptance by the holder hereof of any late payment constitute a waiver of any other rights of the holder.

7. Demand. Demand, presentment for payment, and notice of dishonor are expressly waived by the Borrower.

8. Collection Costs. In the event of default, the Borrower shall pay all costs of collection, including court costs and reasonable attorneys' fees incurred in the collection of this Note.

9. Notification of Change of Address. The Borrower hereby agrees to notify the holder hereof of any change of address promptly after the change.

Borrower acknowledges that prior to signing below, he or she has received and read a legible and completely filled-in copy of this Note and the accompanying Truth-in-Lending Disclosure for this Note.

21 Dec
Date of Execution

Signature of Borrower

Peter R. Rumkin
Typed or Printed Name of Borrower

87 Second Street
Address—Number and Street

Hamden, Connecticut 06514
City, State and Zip Code

Lender — White
Student — Pink

CF 355 Rev. 7/77

BEST COPY AVAILABLE
AT TIME OF IMAGING

CONNECTICUT STUDENT LOAN FOUNDATION
WITHOUT RECOURSE TO . . .
CONNECTICUT S . . .

Signature _____

Typed Name/Officer___Delores A. DeLucia___

Title___Consumer Loan Collection Officer___

Date___September 9, 1987___

BEST COPY AVAILABLE
AT TIME OF IMAGING

PETER RUMBIN,

    Plaintiff

V.

ARNE DUNCAN, ET AL

Docket No. 3:11 CV904 (CSH)

July 24, 2012

### AFFIDAVIT OF PETER RUMBN

I, Peter Rumbin, am over eighteen years of age and believe in the obligations or an oath and make these statements on the bases of my own observations and experience;

1. In 1977 and 1978 I applied for Federal PELL Grant money to attend the University of Chicago.

2. I also dealt with the University of Chicago Financial Aid office who advised me apply for federal guaranteed college loans, which I did.

3. The next summer I went to take courses a Harvard University and the financial aid advisor there check my loan status and advised me that I did indeed have PELL grant money available while at the Univ. of Chicago, but that it had not been used.

4. Over ten years later in 1989 I was sued by the USA for unpaid an unpaid college loan with an initial principle of $1,650.

5. During the course of that litigation, I sought to have the University of Chicago account for how the grant money and loan money was applied and if in fact they had credited my account with any Pell grant monies.

6. At that time I also learned the U.S. Department of Education had investigated the University of Chicago and found irregularities with the way the handled the grant and loan money for students.

7. Also during the prior 1989 Conn. District Court Proceedings I answered disclosure requests and revealed information on what I thought was three loans for $1,650, $890 and $5,000 respectively, and later learned that the later was really two loans of $2,500 principle.

8. In the 1989 case proceeding there were pre-trial conferences and at one point before the Hon. Judge Eginton a full candid conference with the U.S. Attorney, Attorney Leff and myself where each of the four loans and all of the defenses of limitations periods, fraudulent

inducement, lack of consideration, the irregularities with the student loan and grant on the part of the University of Chicago and the U.S. Department of Education investigation of them, and their being made to return grant money, and specifically all four of the loans disclosed.

9. It was after all of the facts and issues, arguments and defenses and issue were laid out and discussed as all four of the loans, the stipulation for judgment of dismissal with prejudice was entered by agreement of both parties on September 24, 1990.

10. When I was applying for the financial aid and loans I was told by the University of Chicago financial aid advisers that they would first allocate all available grant moneys toward my tuition costs and then utilize loan money, which they did not do and refuse to account as to what and how the allocation was.

11. I was induced to borrow moneys in reliance upon that representation, which the University did not keep and breached.

12 . The defendant USA waited some 21 years until March 2011 with the interest piling up to institute the enforcement by Treasury offset.

Peter Rumbin, Affiant

Subscribed and sworn to before me on
7/24/2012  at Hamden CT

Robert C, Ruggiero, Jr.
Comm. of the Superior Ct of Conn.

2

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

PETER RUMBIN,

    Plaintiff

V.

    Docket No. 3:11 CV902 (CSH)

ARNE DUNCAN, ET AL

    Defendants

          JULY 23, 2012

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO USA MEMORANDUM TO DISMISS

    The plaintiff in the above entitle action hereby submits the following argument and authority in opposition the defendant United States of America's (USA) Memorandum to Dismiss, dated August 4, 2011, Doc. 12.

    On page 4 of the USA's memorandum it understates the plaintiff's position on his first claim as simply that the U.S. is enforcing a claim that was dismissed. More accurately the plaintiff's claim is the U.S. present enforcement and collection is improper as barred by the doctrines of *Res Judicata,*, claim and issue preclusion, and collateral estopple. That is, that the precise same issues, claims, defenses , transactions, arguments, among the same parties pertained to all four loans.

    The classic formulation of the res judicata and claim preclusion doctrine is as follows:

    [T]he judgment, if rendered on the merits, constitutes an absolute bar to a subsequent action. Its is finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose. Cromwell v. County of Sac, 94 U.S. 351-2, 24 L. Ed. 195 (1876).

    More recently, the bar aspect has been articulated as: If the plaintiff loses the litigation, the resultant judgment acts a bar to any further by the plaintiff on the "same claim" Kaspar Wire

<u>Works v. Leco Eng'g & Mach. Inc.</u> 575 F.2nd 530, 535(5th Cir. 1978); Restatement 2nd of Judgments, § 19(1982).  Claim preclusion prevents a party from suing on the same claim which was previously litigated to final judgment by that party and precludes the assertion by such party of any legal theory, cause of action, or defense that could  have been  asserted in that action. While issue preclusion prevents relitigation of issues actually litigated and necessary for the outcome of the prior suit, even it if the current action involves different claims. <u>Parklane Hoisery Co. v. Shore.</u> 439 U.S. 332, 326 n. 5, 99 S. Ct. 645;  <u>Lawlor v. Nat. Screen Serv. Corp.</u> 349 U.S. 332, 326, 75 S. Ct. 865(1955); Restatement 2nd of Judgments, §17 cmt. a-c.

A claim in regard to the doctrines includes not only those matters actually addressed by the prior judgment but also those matters which could have been raised in the action. "Res judicata prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." <u>Brown v. Felsen.</u> 442 U.S. 127, 131, 99 S. Ct. 2205(1979).  Thus, matters that arise from the same facts, occurrences or transaction that were the basis of a prior action may be within the scope of claim preclusion.

In this case, the defendant during the prior 1989 action specifically sought disclosure of all of the defendant there and plaintiff's  herein existing college loans. See Document 1 attached to plaintiff's complaint. In plaintiff's responses of January 19, 1990 to the Interrogatories 1-3 the amounts and existence of all 4 loans was provided $890, $1650 and the two $2,500 subject loans in total form of $5,000, numbers G601 and F801 as referred to in defendant's memorandum at p. 3.(Complt. pp. 16-18).  Thus, all four loans where involved in that prior litigation. Furthermore the chronology is undisputed. The plaintiff took out these loans while attending the University of Chicago during 1977 and 1978.  Both loans were declared in default on September 1, 1987, two full years prior to the United State's commencing the prior action on October 17,

1989. (Defd's Memorandum p. 3, Doc.12). Thus, the existence and fact of default on the two $2,500 loans were made known to the defendant during the course of the prior litigation. . On page 5 of defendant's memorandum it criticizes the plaintiff's mere conclusions that the debts being enforced are the same debt. However, as the above cited authority makes clear and as plaintiff's res judicata argument is that subject latter two loans are the same claim and same issue that was litigated in the prior action and that they are barred by the doctrine because the loans and default on them were extant and known and raised and discussed during the prior litigation and part of the deliberation and settlement reached.

Most significant, there was a full judicial pre-trial with counsel in chambers with Judge Eginton including candid discussion of all of the facts and issues, arguments and defenses were laid out and discussed as to all four of the loans, that generated the stipulation for judgment of dismissal with prejudice and entered by agreement of both parties on September 24, 1990. Afdvt. of Rumbin, para. 8 & 9, Attached.  The defendant USA waited some 21 years since that stipulation to commence the enforcement through Treasury offset with interest that increased the debt more than three fold. Afdvt Rumbin, para. 10.

The doctrine of res judicata serves a vital public interest of fundamental substantive justice and private peace and finality that there be an end to litigation. Federated Dept. Stores. Inc. v. Moitie, 452 U.S. 394, 401(1981); Hart Steele Co. v. RR Supply Co.,244 U.S. 294, 299 (1917) Reed v. Allen, 286 U.S. 191, 198-9(1932).

Given the circumstances in this case where the two latter loans were know, disclosed and already in default and discussed in the pre-trial proceedings leading up to the stipulated dismissal with prejudice, it cannot be fairly said that those two loans are entirely unrelated to the loans involved in the prior 1989 action. Rather they were involved as they presented the same claim and issues and were subject, then, to the same defenses and arguments, and they could have

been raised in that action, just as the $890 loan was.   Thus, further assertion of the loan debt as to those two loan debts is barred by the claim and issue preclusion doctrines.

The defendant in their memorandum (p. 5) argue that the plaintiff's  claim that the present enforcement is improper because it is barred by the statute of limitation must fail because of the enactment of 20 USC § 1091(a)(a)(1).  However, that section was enacted in 1991 as Pub. L No. 102-26. Thus, at the time of the stipulated dismissal, when the defendants were engaged in litigation with the plaintiff over student loan debt and could have raised the latter two debts, those two debts were as a matter of law time barred by the 6 year period under the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA), Pub.L. No. 99-272 (1986).  It does not comport with the spirit and policy of the doctrine of res judicata, to allow the defendants a second bite of the apple by not asserting their claims as to the latter two loans when they had the opportunity in then present pending litigation and then asserting it now when the law changed.  To allow such a result appears to offend Constitutional principals of fundamental fairness.

As to the defendants claims that their was a failure of proper service upon the U.S. Attorney's Office, Attorney General and the agencies being sue, it asserted that the plaintiff has filed on or about May 18 and 19, 2012 returns of service which show that both the U.S. Attorney's and Attorney General and the U.S. Departments of Education and  Treasury were in fact served.

For all of the above reasons, the defendant USA motion to dismiss should be denied.

Respectfully Submitted,

Peter Rumbin, Pro Se
87 Second St.
Hamden, CT 06514

Certification:  A copy of the foregoing was mailed postage paid to all counsel of record on July 24, 2012, the same being:
 Christine Sciarrio, Esq., U.S. Attorney's Office, 157 Church St.,23rd FL, New Haven, CT 06510
Patrick M.Noonan, Esq., Donahue,Durham & Noonan, Concept Parkn Ste, 306, 741 Boston Post Rd., Guildford, CT 06437

Peter Rumbin

4

# *Sweet v. Cardona* Settlement

- Under the settlement in *Sweet v. Cardona*, class members are not required to make payments on their student loans while they have a pending borrower defense application or while their loans are in the process of being discharged.

*Sweet class members who have pending borrower defense applications or have applications that have been approved but have loans that have not been fully discharged are not obligated to repay their loans.*

If you have been notified by the U.S. Department of Education (ED) that you are a member of the *Sweet* class and you receive a payment notice from your servicer, you are not obligated to make payments while your application or loan discharge is pending. The Department is working with servicers to ensure class members with pending applications do not receive payment notices in error.

On June 22, 2022, ED and the plaintiffs reached a settlement in the case titled *Sweet v. Cardona* (formerly *Sweet v DeVos*). The court granted final approval to the settlement as fair, adequate, and reasonable on Nov. 16, 2022. The agreement affects the processing of borrower defense applications filed on or before Nov. 15, 2022. Borrowers whose applications for borrower defense discharges were pending as of June 22, 2022, are "Class Members," while those whose applications were submitted in the period from June 23 to Nov. 15, 2022, are "Post-Class Applicants."

The settlement became effective on Jan. 28, 2023, and ED is starting to implement it, as described below. The settlement is final, though the court granted a temporary stay (delay) of discharges related to three schools until the court of appeals rules on their motion to stay.

## What is this case about?

A lawsuit was filed in a federal district court in California by seven borrower defense applicants who represent, with certain exceptions, all borrowers with pending borrower defense applications filed on or before June 22, 2022. The lawsuit challenges the way ED has dealt with borrower defense applications in the past, including ED's delays in issuing final decisions and ED's denial of certain applications starting in December 2019. The case is now called *Sweet v. Cardona*, No. 3:19-cv-3674 (N.D. Cal.).

On Nov. 16, 2022, after a hearing, the court granted final approval of the settlement reached by ED and the plaintiffs. On Jan. 13, 2023, three schools appealed the district court's approval of the settlement and asked the district court to stay (delay) the settlement while an appeals court considers the appeal. On Feb. 15, 2023, the court held a hearing on the three schools' motion to stay the settlement, and on Feb. 24, the district court denied the schools' request to stay the settlement overall but granted a temporary stay of discharges and discharge requests related to the three schools that filed the motion (Lincoln Technical Institute; American National University; and Everglades College, Inc.) to allow these schools to present a stay motion to the court of appeals. The schools then filed a motion for a stay with the court of appeals on Feb. 27 and, consequently, the temporary stay for the three schools will remain in effect until the court of appeals rules on the motion before it.

## What are the terms of the settlement for borrowers who applied for borrower defense relief on or before June 22, 2022?

In the settlement, ED agrees to resolve the borrower defense applications that were following terms:

- If the borrower defense application related to federal student loans taken ou list of schools attached to the settlement agreement as Exhibit C, the borrowe Settlement Relief means that the federal student loan(s) associated with the b discharged, ED will refund any amounts paid to ED on those loans, and the cr deleted from the borrower's credit report.

- Within 90 days of the court's final approval of the settlement agreement, ED will receive Full Settlement Relief as stated above and that relief will be prov date of the settlement agreement. Until this relief is provided, ED won't take

- If the borrower's loans aren't associated with a school on the list, the borrowe application according to the following schedule:

*Sweet v. Cardona* Loan Discharge Application Decision Schedule

Hi there! I'm Aidan®, the financial aid virtual assistant. How can I help you today?

Help with the FAFSA® form

Login (FSA ID) issues

I want my loan and grant info

I have a different question

| Application Submitted | ED Decision |
|---|---|
| Between Jan. 1, 2015, and Dec. 31, 2017 | No later than July 28, 2023 |
| Between Jan. 1, 2018, and Dec. 31, 2018 | No later than Jan. 28, 2024 |
| Between Jan. 1, 2019, and Dec. 31, 2019 | No later than July 28, 2024 |
| Between Jan. 1, 2020, and Dec. 31, 2020 | No later than Jan. 28, 2025 |
| Between Jan. 1, 2021, and June 22, 2022 | No later than July 28, 2025 |

- If ED doesn't make a decision on an application within the timelines outlined above, the borrower will receive Full Settlement Relief. If a borrower submitted multiple applications, ED will use the earliest submitted application date.

  **ED's Review Process**
  ED will use a streamlined review process to make decisions on these applications. ED will review these applications using the 2016 Borrower Defense Regulation but will not require evidence outside of the written application, require proof of reliance, or apply any statute of limitations. Rather, ED will determine whether the application states a claim that, if presumed to be true, would assert a valid basis for borrower defense under the applicable regulation. Borrowers whose applications are approved under the procedures above will receive Full Settlement Relief.

  **If Your Application Isn't Approved Under the Streamlined Review Process**
  ED won't deny an application without first providing instructions on what is required for a successful application and giving the borrower the opportunity to resubmit the application. If the borrower chooses to resubmit the application, it must be submitted within six months after receiving those instructions. The instructions will explain that if the application is not resubmitted within the six-month period, the application will be considered denied.

  If the borrower chooses to resubmit their application within the six-month time period after receiving the instructions, ED will issue a final decision no later than six months after receiving the resubmitted application.

For any borrower who received a notice from ED in December 2019 or later informing them that their borrower defense application was denied, that denial has been voided and ED will review the application pursuant to the terms described above.

## What are the terms of the settlement for borrowers who applied for borrower defense relief after June 22, 2022, but before final approval of the settlement?

For post-class applicants (borrowers who submitted a borrower defense application in the period from June 23, 2022, to Nov. 15, 2022), ED will review these applications using the 2016 Borrower Defense Regulation and will issue a decision on the application no later than Jan. 28, 2026.

If ED doesn't issue a decision within this time period, the borrowers will receive Full Settlement Relief.

## What if the loan is in default?

If the loan for which a Class Member or Post-Class Applicant has submitted a borrower defense application is in default, ED will not take action to collect the debt—such as by garnishing wages or taking por[tion]... Hi there! I'm Aidan®, the financial is pending or while the borrower is waiting to receive any relief owed under the s... aid virtual assistant. How can I help you today?

## What happens next?

ED has already reopened the previously denied cases that require streamlined rev... You'll receive a decision based on the schedule noted above.

Additionally, in accordance with the court's order issued on Feb. 24, 2023 (describ... loans associated with Lincoln Technical Institute; American National University; a... appeals rules on the stay motion.

## *Sweet v. Cardona* Settlement Quarterly Reports

The settlement requires that we submit quarterly reports documenting our progress toward fulfilling our obligations un... the settlement, and that we post them publicly.

- May 30, 2023, Quarterly Report*
- August 28, 2023, Quarterly Report*
- November 27, 2023, Quarterly Report*
- February 26, 2024, Quarterly Report*
- May 28, 2024, Quarterly Report*
- August 26, 2024, Quarterly Report*

*ED strives to make all content accessible to everyone. While this document does not currently meet the standards of Section 508 of the Rehabilitation Act of 1973, as amended, we are working to create accessible versions. For immediate assistance on receiving a 508-compliant document, please send us a written request, including title of document, date of request, and your email address, to:*

*Federal Student Aid Information Center*
*P.O. Box 84*
*Washington, D.C. 20044*

## Can I get more information?

Check back here periodically for updated information about the settlement.

- Review the settlement.*
- Review the complaint.*
- Review the amended complaint.*
- Review the preliminary approval order.*
- Review the order granting final approval.*
- Review the order denying the motion to stay.*

Learn more about this lawsuit and the proposed settlement and find contact information for the lawyers who brought the lawsuit 🗗.

*ED strives to make all content accessible to everyone. While this document does not currently meet the standards of Section 508 of the Rehabilitation Act of 1973, as amended, we are working to create accessible versions. For immediate assistance on receiving a 508-compliant document, please send us a written request, including title of document, date of request, and your email address, to:*

*Federal Student Aid Information Center*
*P.O. Box 84*
*Washington, D.C. 20044*

## I am not a class member. Should I apply for borrower defense?

The *Sweet* settlement only impacts individuals who applied for borrower defense discharge on or before Nov. 15, 2022. If you didn't apply on or before Nov. 15, 2022, learn more about borrower defense and w

Hi there! I'm Aidan®, the financial aid virtual assistant. How can I help you today?

Was this page helpful?*   



Reset Form

| CIVIL ACTION COVER SHEET | DOCKET NUMBER | Massachusetts Trial Court Superior Court |
|---|---|---|
| Help-Party Information | | COUNTY |

| Plaintiff Peter R. Rumbin | Defendant: US Dept of Ed |
|---|---|
| ADDRESS 87 Second St. | ADDRESS Office of the General Counsel |
| Hamden,Conn. 06514 | 400 Maryland Ave.SW |
| | Washington,DC 20202 see attached |
| Plaintiff Attorney: Ira B. Grudberg | Defendant Attorney additional Defendants |
| ADDRESS 114 Laurel Crest Rd. | ADDRESS. |
| Medison, CT 06443 | |
| BBO | BBO |

Add Parties    Remove Parties

## TYPE OF ACTION AND TRACK DESIGNATION (see instructions section on next page)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| BG1 | Fin. Institutions | A | YES X NO |

"If "Other" please describe: Student loan predatory lending

Is there a claim under G.L. c. 93A? Yes    Is there a class action under Mass. R. Civ. P. 23? Yes

Won case by stipulated NO Sweet vs Cordona,2024 YES NoUS Dist.No.Cal
ageement of def.dismissed STATEMENT OF DAMAGES REQUIRED BY G.L. c. 212, § 3A Harvard L.Sch et al
with prejudice against them(1990,I.B.Grudberg esq)

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money damages
(Note to plaintiff. for this form, do not state double or treble damages; indicate single damages only)

### TORT CLAIMS

A. Documented medical expenses to date

| | |
|---|---|
| 1. Total hospital expenses | |
| 2 Total doctor expenses | |
| 3 Total chiropractic expenses | |
| 4. Total physical therapy expenses | |
| 5. Total other expenses (describe below) | |
| Subtotal (1-5): | $0 00 |

B. Documented lost wages and compensation to date

C. Documented property damages to date

D Reasonably anticipated future medical and hospital expenses

E. Reasonably anticipated lost wages

F Other documented items of damages (describe below)

Offsets,debts, legal costs, punitive,&Tort
SEE Complaint

| TOTAL (A-F) | $0.00 |
|---|---|

G. Briefly describe plaintiff's injury, including the nature and extent of the injury:

### CONTRACT CLAIMS

This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement Mass. R. Civ P. 8 1(a)

| Item # | Detailed Description of Each Claim | Amount |
|---|---|---|
| 1. | $5,000 student loan c.$890 (Wells Fargo Bank)? | C.$6,000 |
| | $16,000 F.H.Cann & Associates, No. Andover, Mass. | Total C.$16,000 |
| | Offsets C. $12,000-14,000+ (US Treasury & ED.) | |

Add Claim    Delete Claim

Signature of Attorney/Self-Represented Plaintiff. X /s/    Date: Feb 5, 2025

RELATED ACTIONS: Please provide the case number, case name, and county of any related actions pending in the Superior Court

CERTIFICATION UNDER S.J.C. RULE 1:18(5)

I hereby certify that I have complied with requirements of Rule 5 of Supreme Judicial Court Rule 1:18: Uniform Rules on Dispute Resolution, requiring that I inform my clients about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

| Signature of Attorney: X   /S/ | Date: October 5,2024 |
|---|---|
| SC0001: 02/24 | www.mass.gov/courts | Date/Time Printed:08-22-2024 13:36:5 |

SHERI CANN , CEo, president

Defendants: F.H.Cann & Associates, 1600 Osgood Street,Suite 3058,
North Andover, Mass.TEL 877-750-9804

Department of The Treasury, scott BASSENT
1500 Pennsylvania Ave.NW
Washington,DC 20220,Tel (202)-622-2000

Ellen R. Patterson, Senior Executive Vice President,General
Counsel
Wells Fargo & Company, Corporate Offices
420 Montgomery Street, San Francisco, CAL.94104

Elizabeth Shanin, Interim Vice President and General
Counsel
The University of Chicago
Edward H,Levi Hall, Suite 619
5801 S. Ellis Ave.
Chicago,Illinois 60637
Tel 773-7028873

------------------------------------------------------------

COMPLAINT:   Please see attached writ of certiorari and
addendum and documents.
COMPLAINT

NO. 19-

In the

# Supreme Court of the United States

---

PETER R. RUMBIN

*Petitioner*

v.

ARNE DUNCAN SECRETARY OF EDUCATION; US DEPARMENT OF EDUCATION;
TIMOTHY GEITHNER; UNITED STATES DEPARTMENT OF TREASURY; BETH HARRIS;
DOUGLAS R. EDWARDS, WELLS FARGO BANK;

*Respondents*

---

On Petition for a Writ of Certiorari to the
United States Second Circuit Court of Appeals

---

# PETITION FOR A WRIT OF CERTIORARI

---

IRA B. GRUDBERG
COUNSEL OF RECORD
114 LAUREL CREST ROAD
MADISON, CT 06443
(203)-234-1374
ATTORNEY FOR PETITIONER

January 28, 2020                                   *COUNSEL FOR PETITIONER*

SUPREME COURT PRESS               (888)958-5705               BOSTON, MASSACHUSETTS

i

## QUESTIONS PRESENTED

1. Whether the courts should overrule the decision of the District Court of Connecticut (11-cv-904 (CSH)) which granted the Respondents' motion to dismiss the action. This decision violates the black letter law in the decision *Plaut v. Spendthrift Farms*, 514 U.S. 211 (1995) and *U.S. Government v. Espinosa*, March 23, 2010.

2. Whether the court should question the constitutionality of the Government resorting to "Self-Help" in order to do an "end run" around a prior court ruling.

3. Whether the U.S. Government should be allowed to make an unlawful seizure of money and property without due process.

11

# LIST OF PROCEEDINGS

United States Court of Appeals for the Second Circuit
No. 18-3488
*Peter R. Rumbin, v. Arne Duncan, Secretary of Education, U.S. Dept. of Education, Et Al.*
Date of Final Opinon: July 8, 2019
Date of Reconsideration Denial: September 3, 2019

---

United States District Court for the District of Connecticut
Civil Action No. 3:11-CV-904 (CSH)
*Peter R. Rumbin v. Arne Duncan, Et Al.*
Date of Order: November 1, 2018

iii

# TABLE OF CONTENTS

Page

QUESTIONS PRESENTED ............................................... i

LIST OF PROCEEDINGS ................................................ ii

TABLE OF AUTHORITIES ............................................. vi

PETITION FOR A WRIT OF CERTIORARI .................. 1

OPINIONS BELOW ........................................................ 1

JURISDICTION ............................................................... 1

STATEMENT OF FACTS ............................................... 2

    A.  Preliminary Statement ......................................... 2

    B.  Introduction ......................................................... 2

    C.  Statement of the Case ......................................... 8

    D.  Relief Sought ...................................................... 16

REASONS FOR GRANTING THE PETITION ....... 16

    I.  THE JUDGEMENT SHOULD BE REVERSED
       BECAUSE APPELLANT HAS MERITORIOUS
       CLAIM THE RESPONDENTS' CLAIMS ARE
       BARRED BY EQUITABLE ESTOPPEL. ................... 16

    II.  LEGAL RATIONALE SUPPORTING PLAINTIFF'
       CASE AGAINST THE DEFENDANTS .................... 22

    III.  THE JUDGEMENT SHOULD BE REVERSED ON
        PROCEDURAL GROUNDS. ................................... 26

    IV.  DUE PROCESS VIOLATION: VINDICTIVENESS .... 28

    V.  CONSTITUTIONAL AND STATUTORY PROVISIONS
       INVOLVED ........................................................... 29

    VI.  THE COURT'S POWER TO GRANT RELIEF .......... 31

CONCLUSION .............................................................. 31

iv

## TABLE OF CONTENTS – Continued

Page

### APPENDIX TABLE OF CONTENTS

#### OPINIONS AND ORDERS

Order of the United States Court of Appeals for the Second Circuit (July 8, 2019) ............... 1a

Omnibus Ruling on Plaintiff's Motion to Reopen Case, Motion for Appointment of Counsel, and Motion to Transfer Judge (November 1, 2018) ............................... 3a

Order of the United States Court of Appeals for the Second Circuit (August 24, 2017) .......... 12a

Order of the United States Court of Appeals for the Second Circuit (May 19, 2017) ............ 14a

#### OTHER DOCUMENTS

Plaintiff's Memorandum in Opposition to USA Memorandum to Dismiss (July 23, 2012) ....... 16a

Affidavit of Peter Rumbin (July 24, 2012) ................................. 22a

Motion to Dismiss (September 26, 1990) .............................. 25a

Notice of Service of Offer of Judgment (August 21, 1990) ............................... 27a

Motion for Leave to file Amended Answer (July 20, 1990) ................................. 29a

Amended Answer of Defendant Peter R. Rumbin (July 20, 1990) ................................. 31a

v

# TABLE OF CONTENTS – Continued

Page

Plaintiff's Initial Motion For Extension of Time
to Answer or Object to Interrogatories and
Respond to Request for Production and
Admissions (December 22, 1989) ...................... 35a

Defendant's Response to Plaintiff's First Set of
Interrogatories, First Request for Production
of Documents and First Requests for
Admissions (January 19, 1990) ....................... 37a

National Direct Student Loan Note
(March 29, 1977) .................................... 49a

Student Loan Interim Note
(October 28, 1977) .................................. 56a

Student Loan Interim Note
(December 21, 1978) ................................. 62a

Defendant's Original Answer
(November 3, 1989) .................................. 68a

Offset Statement
(September 13, 2017) ................................ 71a

vi

# TABLE OF AUTHORITIES

Page

## CASES

*Ashcroft v. Iqbal,*
    129 S.Ct. 1937 (2009) ........................................... 27

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ........................................... 27

*Buckley v. New York,*
    U.S. Dist. Lexis 190837 (2012) ........................................... 27

*Coppola v. Coppola,*
    243 Conn. 657 (1998) ........................................... 26

*Dolan v. Connolly,*
    794 F.3d 290 (2nd Cir. 2015) ........................................... 5

*Erickson v. Pardus,*
    55 U.S. 89 (2007) ........................................... 28

*Frank E. Hess v. Dumouchel Paper Company,*
    154 Conn. 343 (1966) ........................................... 20

*Glazer v. Dress Barn Inc.,*
    274 Conn. 33 (2005) ........................................... 18

*Godley v. United States,*
    5 F.3d 1473 (Fed. Cir. 1993) ........................................... 21

*Hendrickson v. U.S.,*
    791 F.3d 354 (2nd Cir. 2015) ........................................... 5

*J.E.T.S., Inc. v. United States,*
    838 F.2d 1196 (Fed. Cir. 1988) ........................................... 21

*K&R Eng. Co. v. United States,*
    616 F.2d 469 (Ct. Cl. 1980) ........................................... 21

vii

## TABLE OF AUTHORITIES—Continued

Page

Kosakow v. New Rochelle
    Radiology Associates, P.C.,
    274 F.3d 706 (2 Cir. 2001) ............................... 17

Little v. Streater,
    452 U.S. 1 (1981) ............................................ 4

Plaut v. Spendthrift Farms, Inc.,
    514 U.S. 211 (1995) ........................ 3, 16, 23, 25

Snow v. Calise,
    174 Conn. 567 (1978) .................................... 27

Todd v. Exxon Corp.,
    275 F.3d 191 (2nd Cir. 2001) ........................ 27

Triestman v. Fed. Bureau of Prisons,
    470 F.3d 472 (2d Cir. 2006) ..................... 21, 28

United Student Aid Funds, Inc. v. Espinosa,
    559 U.S. 260 (2010) ................................... 6, 22

Washington v. James,
    782 F.2d 1134 (2d Cir. 1989) ........................ 28

Zinermon v. Burch,
    494 U.S. 113 (1990) ...................................... 27

**STATUTES**

12 U.S.C. 5565 ............................................. 22, 31

15 U.S.C. § 1692 ................................................ 7

28 U.S.C. § 1254(1) ............................................. 1

28 U.S.C. § 2201 ............................................... 22

Dodd-Frank Wall Street Reform and Consumer
    Protections Act 2010, Pub. L. 111–203 .......... 4

viii

## TABLE OF AUTHORITIES—Continued

Page

**JUDICIAL RULES**

D. Conn. L. Civ. R. 7(c) ....................................... 28

Fed. R. App. P. 32 ........................................... 5, 6, 11, 26

Fed. R. Civ. P. 12(b)(6) ....................................... 26

1



## PETITION FOR A WRIT OF CERTIORARI

Petitioner Peter R. Rumbin Respectfully Petitions this Court for Writ of Certiorari to review the Judgment issued in the United States Court of Appeals for the Second Circuit.

## OPINIONS BELOW

The Order of the United States Court of Appeals for the Second Circuit, dated July 8, 2019 is reprinted in the Appendix hereto at App.1a. The Second Circuit Order Denying a Motion for Reconsideration on September 3, 2019 is reprinted in the Appendix hereto at App.27a.

## JURISDICTION

The Second Circuit denied a timely filed motion for Reconsideration on September 3, 2019. This Court has Jurisdiction Pursuant to 28 U.S.C. § 1254(1).

2



# STATEMENT OF FACTS

## A.  Preliminary Statement

The Appellant, Peter R. Rumbin, hereby appeals to the United States Supreme Court to overturn the dismissal of a civil student loan before the Second Circuit Court of Appeals. The present case involves a dispute over the Government's wrongful garnishment of the Appellant's monthly social security benefits to recover the alleged student loan debts dating back 40 years, that were settled by stipulated agreement with prejudice against the Departments of Education and Treasury in 1990.

## B.  Introduction

This case originates from a dispute with the U Chicago over student loans from 1977-1978.

In 1989, the U.S. Departments of Education (DoEd) and Justice (DOJ) through its U.S. Attorney (Atty), Christine Sciarrino, sued Peter R. Rumbin, (defendant at the time), for outstanding student loans borrowed in 1977-78, while a student at the University of Chicago (U. Chicago). In 1989-1990, the claim by stipulated agreement among the parties was settled in Federal Court (Bridgeport, CT) before Judge Warren Eginton, and was dismissed with prejudice against the Government (App.12a). Judge Eginton held a hearing with Rumbin; U.S. Atty Christine Sciarrino failed to appear until the second hearing, where she signed the stipulated agreement before Judge Eginton and Atty David Leff, who represented Peter R. Rumbin in that case. The late Atty Robert C. Ruggiero, Jr. also

3

represented Rumbin in that case initially. All the loans were in default and all loans were borrowed in the same time period. All loans were inventoried in the government's interrogatories and discoveries requested by U.S. Atty Sciarrino in 1989-90 (App.27a, 29a, 35a). The borrower won in Federal Court with a court order that dismissed all outstanding loans on consent of the parties, with prejudice against the Government. Hence, any claims of the DoEd or Treasury (USDT) were null. The Government did not attempt to modify or appeal Judge Eginton's ruling after it was rendered. In 2010, a new statute was passed that permitted the U.S. DoEd and USDT to take Peter R. Rumbin's money every month as an offset, including his income tax return and it is collecting aggressively, on the verge of foreclosing on the borrower's home in CT.

Because of the *Plaut v. Spendthrift Farms*, 514 U.S. 211, (1995) Supreme Court ruling: "No statute can retroactively vacate any adjudicated case that is final. The Supreme Court holds that Congress cannot circumvent a decision by changing the rules later." This is a matter of the "law of the case". The defendants have not only committed breach of contract but also violation of a court order which is even worse than breach of a settlement. The creditors resorted to "self-help" under the new statute.

Wells Fargo Bank (WFB) assumed the loans from the prior Connecticut Savings Bank and Connecticut Student Loan Foundation, where the borrower resides. The villain is the U. Chicago that did not credit the PELL Grants to pay the plaintiff's bill but pocketed the funds. This fraud was revealed when the Harvard Financial Aid Office obtained the U. Chicago's financial

4

aid transcript for Mr. Rumbin. (At that time, Mr. Rumbin was a student at Harvard.)

U. Chicago was engaged in predatory lending and targeted the most needy and vulnerable students as a means to enrich itself at the expense of the economically poor students. The Dodd-Frank Wall Street Reform and Consumer Protections Act 2010, (Citations: Pub. 1:111-203; Statutes at Large 124 Stat..1376-2223 would apply for recovery of damages against these defendants.

In the Second Circuit Court second ruling, the judges provided a roadmap for the U.S. District Court in Connecticut to follow. (App.D), but Judge Charles S. Haight, Jr defied that ruling. He never permitted a new complaint nor held a hearing. He did not assign an attorney to represent the plaintiff. He did not seek any discovery or interrogatory, and denied the motion to transfer the case to Judge Eginton, who had presided over the original case in 1989-1990, and who knew why he ruled as he did.

In the U.S. Supreme Court case, *Little v. Streater*, 452 U.S. 1 (1981), the court ruled that the State of Connecticut had to pay for a DNA test to prove a paternity claim. Similarly, a lawyer assigned to represent the plaintiff could have provided the U.S. District Court Judge Haight with a new complaint or, if required, the U.S. Second Circuit Court of Appeals could have received a new brief (App.3a). By refusing to appoint counsel to represent the plaintiff, he denied an avenue for the plaintiff to provide the court with a new brief. Then the court would have learned what relief the plaintiff sought, and the case would have been well articulated. Instead, the case must now be reviewed by the U.S. Supreme Court for

5

justice to be served, and for the plaintiff to avoid losing his house, Social Security and monies. Meanwhile, the defendants have been unjustly enriched.

The cases *Hendrickson v. USA*, 791 F.3d 354, 358-63 (2nd Cir. 2015) and *Dolan v. Connolly*, 794 F.3d 290, 295 (2nd Cir. 2015) address the breach of contract and permittance of a new complaint. The defendants have breached their contract from the 1989-1990 settlement before Judge Eginton. In the student loan case, the defendants signed and agreed to withdrawal of suit against the plaintiff (then defendant) by stipulated agreement of the parties, dismissal with prejudice against them. This ruling and court order signed by Judge Eginton precludes the defendants from resorting to "self-help".

The defendants are barred from circumventing this court order and trying to do an "end-run" around the court order that the defendants signed in 1990. Because of the dismissal with prejudice ruling and court order, the defendants cannot resort to any further litigation and this ruling prevents them from collecting any money or property under *res judicata*. Furthermore, the prior decision is grandfathered in under the laws enforced at that time.

The plaintiff's previous brief was authored by Attys Gunilla Faringer and Charles Darlington both of Appeals Press, White Plains, NY. Both attorneys violated Local Rule 32: they failed to file an appearance, acknowledge authorship of their brief, affix their names and address to their brief, sign their brief or, finally, to appear before the court to defend their brief. These two attys did this act without the prior knowledge or consent of the plaintiff. The New York Bar has cited them both for ignoring the

Federal Rules. The citation is part of their permanent record. If they violate any other rules, they will be disbarred. (App.14a)

The Second Circuit Court issued a second ruling after the plaintiff provided proof that he did not violate Local Rule 32, but rather the court's rules were violated by Faringer and Darlington. These two attorneys were paid to write the brief but never returned these funds to the plaintiff. This explains the reason for the second ruling by the Second Circuit Court of Appeals on August 24, 2017, after the May 29th 2017 ruling. The misconduct of Attys Faringer and Darlington was most harmful to the plaintiff.

Upon further research, a U.S. Supreme Court Ruling involving student loan debt, *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (March 23, 2010) states that a bankruptcy judge's ruling is final and cannot be revisited years later because the lender did not like the decision, and did not appeal it in timely manner, and may have omitted some loan by mistake. In the plaintiff's case, the U.S. DoEd, USDT, the U. Chicago, and Connecticut Savings Bank, now WFB, were dismissed with prejudice against them, breached their contract from the 1989-1990 settlement before Judge Eginton. They are guilty of misconduct because of their illegal collections of the plaintiff's money (*U.S. Aid Fund v. Espinosa; Plaut v. Spendthrift Farm*).

There were no further proceedings in this case from 1990. The defendants did not attempt to vacate, appeal, modify, or alter the court's order of 1990. They did not file a motion for reconsideration. Furthermore, all of the loans were inventoried and explained

7

in the interrogatories and discoveries sent to Rumbin by then U.S. Atty. Christine Sciarrino, who represented the U.S. DoEd and USDT in the 1990 and the present case. (35a). This is the same situation as in the *U.S. Aid Fund vs Espinosa* case, where someone later claims that they may not have included all of the loans in all of the court filing, but the presiding judge's ruling was upheld. The DoEd and USDT are barred by *res judicata*. This appeal is meritorious because of the previous dismissal with prejudice against them: U.S. DoEd and USDT, U. Chicago, the Connecticut Savings Bank (WFB). Hence, the defendants' monetary collection for the past ten years is illegal.

In the Federal Debt Collection Practice Act (1977) that governs debt collections, there is a provision that says you are barred from collecting on a debt that is based upon fraud. Fraud contains two sets of laws: one for the Federal Government and another for private lenders. The Federal Government does not have the right to sue because of private entities: U. Chicago, Connecticut Savings Bank (WFB) are private institutions and private banks.

The U.S. Government cannot collect the plaintiff's money without suing the plaintiff in court to recover these funds. Yet, the DoEd and USDT are currently collecting monies (currently $139 each month), earned income tax credit, and eventually real estate (the plaintiff's house) without having sued the plaintiff, without having won their case in court and being awarded money and/or property. The 1990 court order remains in force and binding on the parties and private lenders in this case.

Judge Haight's bias and favoritism towards U.S. Atty. Sciarrino and the U.S. Gov. was obvious when

8

he dismissed the plaintiff's case, and upheld Atty Sciarrino's erroneous statements. He stated that transferring the case to Judge Eginton was then "moot". Because of Judge Haight's dismissal of the plaintiff's case, and subsequent refusal to transfer the case to Judge Eginton, the U.S. Government continues to offset the plaintiff's assets (App.3a). Since no hearing was ever held in the U.S. District Court of Connecticut or in the Second Circuit Court of Appeals in Manhattan, NY, the plaintiff would like the matter to be heard and settled in the Supreme Court of United States.

## C.    Statement of the Case

Mr. Rumbin attended the University of Chicago (U. Chicago) between 1977 and 1978. When he enrolled at the University he applied for federal Pell/ BEOG grants to finance his studies. He was informed that the grants would be credited to his tuition before any other available funds. However, the U. Chicago also requested that he apply for student loans, which he did. Therefore, he executed two notes in the amounts of $1,650.00 and $890.00. Later, he also took up two additional loans in the amount of $2,500 each, for a total of $5,000 ("the GSL loans") which is the subject matter of the within litigation.

When he attended Harvard University the next year, their financial aid office informed him that, unbeknownst to him, he had Pell grant funds available to him at U. Chicago that had never been used towards his tuition. It became clear to him that he had been deceived by the University to go into debt for his tuition that would have been unnecessary had the grants been applied to his tuition as was required

9

under federal law and as he had been promised by the University. He also learned that the University had returned the grant money to the Department of Education after it had been audited; however, it did not return Petitioner's borrowed money, and he was still responsible for paying back a debt that had been fraudulently incurred.

When he was unable to take out further loans, and as a direct result of the U.Chicago's unlawful withholding of his grant moneys, Mr. Rumbin was forced to withdraw from the U. Chicago, a situation that would clearly never have occurred had his grant money been used by U.Chicago as intended. While unlawfully withholding Rumbin's grant monies-- possibly amounting to not just embezzlement, but fraud, predatory lending and racketeering-the University suggested to his parents that they take out a second mortgage on their home to allow him to pursue his degree. However, his parents' application for a second mortgage was declined.

Mr. Rumbin's mother was dying of cancer at the time. As a result, Mr. Rumbin had no choice but to terminate his studies at U. Chicago and finish his degree at another institution. This was possible only after the University finally released his academic transcript (as a result of the U.S. Department of Education investigation of financial fraud and irregularities), of the unlawfully incurred debt, and after lengthy and diligent work by Attorney Ira B. Grudberg. Mr. Rumbin was never provided with a proper accounting of his financial aid status with the University in spite of repeated requests, including a Motion for Disclosure.

10

University of Chicago was one of many colleges around the country that were revealed to have been engaging in misappropriation of federal grant monies and other irregularities in connection with student financing. A great number of schools, including Columbia University, U. Penn, Johns Hopkins University, U. Southern California and New York University were ordered to repay millions of dollars in federal grant money. When Mr. Rumbin's loans went into repayment status he was unable to make payments due to financial difficulties. The loans were eventually declared in default on September 1, 1987 and the loans were assigned to the Department of Education ("DoEd"). On October 17, 1989 the United States of America commenced a lawsuit against Mr. Rumbin for repayment of the debt. That action was dismissed with prejudice and the debt was written off on September 24, 1990.

However, unbeknownst to the Petitioner, the two GSL loans in the total amount of $5,000 were not referred to the DoEd for collection until December 14, 1998. Not until March of 2011 did the DoEd began collecting this debt by garnishing his social security benefits by $76.00 (now $139) per month under the Higher Education Act, 20 U.S.C. § 1091(a)(1), thereby reducing his monthly social security payments to currently $750.00. It is unknown why the GSL loans were not referred to the DoEd until 8 years after the dismissal of the original action in 1990 and not enforced until 21 years after the dismissal.

According to loan documents submitted by the Respondents as exhibits to their motion to dismiss the total outstanding balance of those two loans on August 1, 2011 amounted to $16,023.00. (R 75) Thus

11

the DoEd allowed the debt to accumulate to three times it original amount before it began to enforcing it. Today it has grown to almost $36,000, nearly seven times the original loan amount.

Therefore, on May 20, 2011, the Petitioner commenced legal action to stop the garnishing of his social security payments and to reclaim funds collected unlawfully, including interest together with damages to compensate him for the harm caused to his credit worthiness and the time and effort spent on this matter over many years as well as the loss of opportunity caused by his forced withdrawal from his program of studies at the University.

The Respondents subsequently filed a Motion to Dismiss on August 4, 2011. Said motion was denied without prejudice on June 25, 2014 and the court requested the Respondents to submit evidence regarding the discussion of the GSL loans during the negotiations preceding the dismissal in 1989. The Respondents submitted a renewed motion to dismiss on July 18, 2014. Mr. Rumbin filed an Appeal and Objection on August 6, 2014, which the court construed as a motion for reconsideration. Petitioner's motion was denied on February 17, 2016 and Respondents' renewed motion to dismiss was granted on February 17, 2016. A judgment was entered on February 22, 2016 (App.1a,3a).An appeal was filed in the Second Circuit Court of Appeals (NYC) in 2017 by Appeal Press attorneys Gunilla Faringer and Charles Darlington of White Plains, NY. The Court ordered a refiling of a new complaint dated August 24, 2017 (12a) as the two lawyers were caught violating Rule 32. They refused to apologize to the court. Final judgement of U.S. District Court Omnibus ruling on plaintiff's

12

motion to re-open the case, get appointed counsel, and transferred to Judge Eginton, who had heard the original case in 1989-90, was denied by Judge Haight, U.S. District Court, November 1, 2018 (App.3a) He issued a Mandate on September 10, 2019 (App.1a). Appeal to the U.S. Supreme Court on January 28, 2020 followed immediately thereafter.

Final judgment of U.S. District Court (CT) Omnibus ruling on plaintiff's motions to re-open the case, have counsel appointed, and transferred to Judge Eginton, who had heard the original case in 1989-90, was denied by Judge Haight, U.S. District Court (CT), November 1, 2018 (App.3a). U.S. Second Circuit Court of Appeals Judges:- Debra A. Livingston, Raymond J. Lohier, Jr., (absent: Judge Carney) issued a Mandate on July 8, 2019. (App.1a) Appeal to U.S. Supreme Court on January 28, 2020 followed immediately thereafter.

Federal court has equitable jurisdiction over the question of the plaintiff's student loans. The plaintiff seeks equitable relief from the court because it is grossly unfair and unreasonable to ignore the dismissal with prejudice against the U.S. DoEd and USDT by Judge Eginton in 1990 regarding all the student loans. The plaintiff was sued in federal court for student loans by the USDT and DoEd in 1989. The case was dismissed in September of 1990, with prejudice against the U.S. Dept. of Treasury and Education by the Judge Eginton, U.S. District Judge (Bridgeport, CT).

In the discoveries and interrogatories sent by the U.S. Attorney's office to the plaintiff, Peter R. Rumbin, the U.S. Atty Sciarrino specifically asked the plaintiff to identify all of the loans, and the

13

plaintiff disclosed both the National Direct Student Loans and the Guaranteed Student Loans. Thus, the plaintiff raised as a defense to the 1989 collection brought against him by the U.S. that he was fraudulently induced to accept the various loans. All the loans were taken out in the same time period and no additional loans were ever taken out by the plaintiff. According to the Defendants, all the loans were "declared in default on September 1, 1987," (App.35a, 56a, 62a, 68a) and were therefore assigned to the United States.

The Government brought suit against the plaintiff in 1989 for defaulting on two National Direct Student Loans. The Guaranteed student loans were not simply discussed by the parties in the 1989 litigation—they were specifically pleaded in the plaintiff's special defenses, and the plaintiff asks that the Defendants now be equitably estopped from any further administrative collection actions.

For 30 years, it was understood by all parties that all the loans in question were included and settled in the 1990 dismissal with prejudice decision. At that time, the U.S. Government acted like all the loans were settled for the nearly three decades since the dismissal.

The U.S. DoEd and USDT received discovery and interrogatories, making all loans known to all parties involved during the previous litigation. They are barred by law from now ignoring Judge Eginton's ruling and should not be permitted to now take the plaintiff's Social Security, property and house because all the loans were included in the Judge Eginton's decision.

14

The defendants (U. Chicago, Wells Fargo Bank, USDT and DoEd) engaged in predatory lending to the plaintiff, Peter R. Rumbin. The U. Chicago received BEOG (Pell Grant) funds to pay for the plaintiff's education bill. However, these funds were not credited to his account. The U. Chicago induced the plaintiff to apply for unnecessary student loans. Had the BEOG (Pell Grant) funds been credited to his account, he would not have needed these loans. Thus, the defendants unjustly enriched themselves.

Chicago's improprieties were discovered upon receipt of the plaintiff's U. Chicago's financial aid transcript at Harvard, (where the plaintiff was a student at the time), which revealed that the Pell funds were unused and still available. The plaintiff was advised to notify the DoEd of this irregularity. The DoEd conducted an investigation, which resulted in the U. Chicago returning the unused BEOG (Pell Grant) funds. But the U. Chicago did not refund the student loan money.

The plaintiff never got to argue the case before the court because there were too many errors in procedure (App.1a). The plaintiff is now represented by legal counsel, Ira B. Grudberg, and is prepared to litigate the case in court.

The Defendants claim a statute of limitation. However, the plaintiff has no statute of limitation to use for a defense for the unjust collection occurring today. This is grossly unfair, as are some of the provisions that the Congress created in not requiring the DoEd and USDT to follow, among other legal provisions, due process.

15

Judge Haight defied the U.S. Second Circuit Court of Appeals in its second ruling and refused to permit a new complaint, hold a hearing, appoint counsel, or transfer the case the original Judge Eginton of Federal Court in Bridgeport CT. (App.3a) The late Judge Eginton was alive at the time of this request for the motion for transfer and could have heard the case that he ruled upon in 1989-1990.

In the Second Circuit Court second ruling, the judges provided a roadmap for the U.S. District Court in Connecticut to follow, but Judge Haight defied that ruling. Because of the dismissal with prejudice ruling and court order, the defendants cannot resort to any further litigation and this ruling prevents them from collecting any money or property under *res judicata.*

The defendants are guilty of misconduct because of their illegal collections of the plaintiff's money. There were no further proceedings in this case from 1990. The defendants did not attempt to appeal, modify or alter the court order of 1990 issued by Judge Eginton. Hence the defendants' collection for the past ten years is illegal.

The plaintiff cannot discover the pretext or "secret" statute that permits the defendants from collections without due process. The defendants' collections are unlawful. Judge Haight has ignored the 1990 court ruling and order against the defendants, even though this order remains in force today.

An Affirmative action claim should be filed and considered by the court for the decades of harm, hardship, and disruption to the plaintiff's life, education, creditworthiness, and career, as well as the

16

time and ongoing expense of decades of litigation. The plaintiff would like the matter to be heard and appealed in the Supreme Court.

## D.   Relief Sought

**1.** To cease and desist the unlawful seizure of property and monies, ignoring a prior judge's ruling of dismissal with prejudice against the defendants by stipulated agreement of the parties, *Plaut v. Spendthrift Farms, res judicata, United Student Aid Funds, Inc. v. Espinosa.* No appeal or modification of 1990 ruling ever sought by defendants for over 30 years. **2.** Return of what monies have been seized, total sum, with interest, of all payments, tax returns, fees, penalties, interest etc. **3.** A Court order stopping any further taking of any funds or property from the plaintiff, Peter R. Rumbin. **4.** Reimbursements of all legal counsel fees and expenses as a result of the defendants' actions. **5.** Counter suit on predatory lending, Dodd-Frank Consumer Protection Act or other applicable laws or relief as the court or legal counsel deem appropriate in this case.



# REASONS FOR GRANTING THE PETITION

## I.   THE   JUDGEMENT   SHOULD   BE   REVERSED BECAUSE APPELLANT HAS MERITORIOUS CLAIM THE   RESPONDENTS'   CLAIMS   ARE   BARRED   BY EQUITABLE ESTOPPEL.

In its order, the court below stated that under the limited application of equitable estoppel in federal law, a party can be estopped from pursuing a

18

other party, influenced thereby, must actually change his position or do some act to his injury which he otherwise would not have done." *Glazer v. Dress Barn Inc.*, 274 Conn. 33, 60 (2005).

Because of his reasonable reliance on the implied conditions in the agreement, Appellant was led to believe that his entire educational debt was included in the stipulation of settlement and because Defendants failure to enforce the allegedly outstanding debt until after 21 years, after the dismissal of the other loans contributed to this belief, Appellant abstained from taking timely action to resolve the $5,000 debt, which caused said debt to increase threefold before he was made aware of it. Under these circumstances it is clear that the doctrine of equitable tolling applies to this action and it was error by the court below to grant the Respondents' motion to dismiss.

The Appellant is entitled to a full accounting by the U. Chicago. The University is obligated to provide full disclosure of Mr. Rumbin's financial aid package, including all available grants and how they were applied. Pursuant to the Higher Education Act of 1965, the Higher Education Opportunity Act of 2008 and Section 128 and Section 140 of the Truth in Lending Act (1968), it is clear that the University is obligated to provide full disclosure of Mr. Rumbin's financial aid package, including all available grants and how they were applied. However, to this day, for unknown reasons, it continues to refuse to do so and does not comply with Appellant's repeated requests for a full accounting. It is respectfully submitted that by refusing to provide Appellant with full disclosure of the financing of Mr. Rumbin's studies at University,

the University is in violation of federal law. The judgment should be reversed and the Respondents be compelled to comply with Mr. Rumbin's request for a full accounting and clarification of the facts.

The Appellant relied on implied terms in the Stipulation for Dismissal. Rather than specifying exactly which loans were forgiven, the Stipulation for Dismissal simply stated that "[t]he parties do hereby agree to the dismissal of the above captioned action." The record reflects that Appellant assumed four loans, in the amounts of $1,650.00, $890.00 and two loans of $2,500.00 each. Even so, he was not able to meet his tuition bills, and when his parents' application for a second mortgage on their home was denied, he was compelled to withdraw from the University. Had the University not breached its duty by fraudulently withholding his grant monies, he would have been able to continue his studies and graduate from the University. Therefore, as a result of the University's fraud against Appellant his debt was written off after it had been litigated.

During the negotiations preceding the stipulation, Mr. Rumbin was asked to list all the loans he had taken out. Therefore, and because the settlement agreement stated that the parties "do hereby agree to the dismissal of the above captioned action", without specifying what loans it was referring to, and because of all circumstances and discussions held leading up to the stipulation, it is clear that the agreement contained implied terms, to wit, that all Mr. Rumbin's loans were dismissed by the agreement.

Mr. Rumbin reasonably relied on these terms and believed that his entire debt had been written off, until his social security benefit payments were suddenly

20

garnished in March of 2011, over two decades after his debt had been dismissed. The defendant, the U.S. DoEd waited twenty-one years after that stipulation to commence the enforcement, through Treasury offset with interest that has increased the debt sevenfold. This is a clear indication that Respondents acted in the belief that all loans were included in the agreement, for why else would they have waited 21 years to enforce the debt, now valued at $36,000.

Christine Sciarrino, an Assistant United States Attorney in the District of Connecticut, who was absent from the initial hearing where the loans were disclosed and discussed, preceding the stipulated agreement, has lied to the court about the loans. With counsel in chambers with Judge Edington, a candid discussion of all of the facts and issues, arguments and defenses were laid out and discussed as to all four of the loans that generated the stipulation for judgement of dismissal with prejudice and entered by agreement of both parties on September 24, 1990." (the late Atty Robert C. Ruggiero, Jr.) (App.25a).

Separate dealings among the parties cannot affect another transaction so as to constitute a substituted contract between them unless it was their intention that such an agreement be consummated. This intention can be determined from the language used and the circumstances known to both parties under which the negotiations were had." *Frank E. Hess v. Dumouchel Paper Company*, 154 Conn. 343, 348 (1966). Therefore it is respectfully submitted that it was an error by the court below not to afford Mr. Rumbin the opportunity to have his case heard by a factfinder.

21

The debt was incurred as the result of fraud in the inducement and was void *ab initio*. It is clear from the record that the Appellant's debt was incurred as a result of the University's unlawful withholding of his Pell grants. By failing to apply the grant funds towards his tuition in spite of its assurances that it would do so and in violation of federal law, the University fraudulently misrepresented Appellant's financial aid status with the University, and relying on said fraudulent misrepresentation Appellant was induced to apply for financial aid that he would have not needed had the grants been rightfully credited to his tuition.

The fact that the debt was incurred as a result of fraud in the inducement is admitted by the Defendants, which is clear from their interrogatories that request Appellant to "[d]escribe the fraudulent misrepresentation made to Peter R. Rumbin". Had the grant monies that were lawfully his been credited toward his tuition Appellant would not have been compelled to incur debt that he did not have the means to repay, and neither would he have been forced to withdraw from his studies at the University.

When a contract is tainted by fraud at the inception, the contract is rendered void *ab initio*. The relief for any contract void *ab initio* is cancellation of the contract and forfeiture of any monies paid under the contract. *See, e.g., Triestman v. Fed. Bureau of Prisons*, 470 F.3d 472, 474 (2d Cir. 2006); *K&R Eng. Co. v. United States*, 616 F.2d 469 (Ct. Cl. 1980); *J.E.T.S., Inc. v. United States*, 838 F.2d 1196 (Fed. Cir. 1988) and *Godley v. United States*, 5 F.3d 1473 (Fed. Cir. 1993). Therefore, the judgment should be reversed and the GSL loans be forgiven on the grounds

22

that the debt was incurred as a result of the University's fraud in the inducement (Court's Power to Grant Relief 12 U.S.C. 5565 (2006); 28 U.S.C. 2201 (2018).

## II. LEGAL RATIONALE SUPPORTING PLAINTIFF' CASE AGAINST THE DEFENDANTS

In 1990, the Federal Court in Bridgeport, CT; issued a court order that dismissed the creditors' case on consent of the parties and with prejudice was never vacated or modified. That is law of the case or *res judicata* because the creditors never appealed or moved to vacate. The U.S. Supreme Court decision *United Student Aid Fund, Inc. vs Espinosa* (559 U.S 260 (2010) stated that "once an order goes down, as long as there is adequate notice of the order, it is final. If you do not appeal the order, then the order stands." The creditors' case on consent of the parties and with prejudice was never vacated or modified. All of the student loans were covered by that order; the creditors were not allowed to collect after that dismissal under the unmodified court order that remains valid to date. No other new student loans were ever incurred after that court order. If there was later enacted federal statute allowing "self-help" collection—no statute has been cited. The plaintiff was grandfathered in and that statute cannot be applied retroactively under *ex post facto* doctrine.

The question of "self-help" raises a Constitutional question that only the Supreme Court can address because of its contradictions. The statue did not include any kind of collection without due process. The case of the U.S. DoEd and Treasury was settled 30 years ago. They violated the privacy of the

plaintiff by obtaining the plaintiff's Social Security number and have used it to avail themselves to his Social Security income and tax return as an offset. If the Plaintiff fails to prevail in the Supreme Court, then the U.S. DoEd and Treasury will seize the plaintiff's house, rendering him homeless. No statue can be construed to later vacate finality of court order. *See Plaut v. Spendthrift Farm* (514 U.S. 211 (1995)) case by SCOTUS, courtesy of the late Justice Scalia. The rational of this one decision is compelling even more so that all others.

The plaintiff's motion is to recover unlawful collections under FRCP 56 for summary judgment and under FRCP 57 for declaratory relief under 28 U.S.C. § 2201. U.S. Treasury has already collected in excess of $16,000 dollars from the plaintiff and wants more than another $16,000 dollars plus interest, penalties and expenses on a $5,000 loan that was settled in 1990. Summary judgment should also include damages under FRCP 56. The attached interrogatories and discoveries substantiate the claim for damages. The interrogatories and discovery clearly inventory all of the loans that were included in this stipulated agreement and show that the loans were taken out in the same time period when the PELL-BEOG grants were awarded to the U. Chicago. They were not applied to pay the plaintiff's educational bill. Unnecessary loans were solicited by U. Chicago to unjustly enrich itself through these financial aid programs *i.e.* predatory lending. The late Attorney Ann Detiere discovered that the Illinois Attorney General has closed colleges in Illinois for similar abuses, and the U.S. DoEd has posted advertisements urging students who suspect

24

financial aid exploitation to contact them through a toll-free telephone number.

By negative inference, the U. of Chicago was permitted to continue to participate in the loan programs only because it returned the PELL Grant funds. None of the plaintiff's PELL funds were spent to pay for his education at U. Chicago. The impropriety of the U. Chicago was discovered by accident when Harvard College requested a financial aid transcript for the plaintiff (student at Harvard at the time).

Harvard financial aid directed the plaintiff to report the problem to the U.S. Dept. of Education in Chicago, Il. As a result of the DoEd investigation of U. Chicago, the U. Chicago refunded all of the PELL funds but not the loan funds. They received the PELL-BOEG grants with consent of the U.S. Treasury. The plaintiff believes that other students were similarly taken advantage of by U. Chicago but are unaware of the abuses. Because of the high attrition rate of the U. Chicago at the time, many needy students assumed unnecessary debt that precluded their completion of their college education. The plaintiff learned about this problem while working in the alumni fund of the U. Chicago while soliciting for funds. The U. Chicago has a 6.5 billion dollar endowment.

There also may be statutory provisions for fees and punitive damages for illegal collections by creditors. The Wells-Fargo Bank has been found lacking in integrity in its financial conduct and has been required to pay substantial fines and penalties. Its business practices remain inadequate.

The plaintiff also would like the court to consider an "order dismissal" against the U.S. DoEd, and

25

Treasury and Wells Fargo Bank. Defendants cannot circumvent a previous ruling of the court by changing the laws and applying them retroactively to a judge's ruling.

In *Plaut v. Spendthrift Farm*, the late Justice Scalia stated that the defendants cannot circumvent a previous ruling of the court by changing the laws in applying them retroactively to a judges' ruling. The U.S. DoED and Treasury are ignoring the previous dismissal with prejudice in order to unjustly enrich themselves with disregard for the U.S. Supreme Court rulings of *Plaut v. Spendthrift Farm* and a breach of contract. In the U.S. Second Circuit Court of Appeals, second ruling it states "on a liberal reading of the plaintiff's case, it appears to be a breach of contract by the U.S. DoEd and Treasury. Furthermore, the statue did not include any kind of offset."

Since the 1989-1990 case and the present case, there has been much negative news and information about college financial aid polices that exploit needy students in their financial aid and lending practices. The defendants cannot protect themselves from immunity and impunity of their fraud. The loans were unnecessary and the plaintiff was induced by fraud to take out loans that were not needed. The Consumer Protection Laws, Dodd-Frank Wall Street Reform and Consumer Protection Act in 2010, (Pub. L. 111-203) are applicable.

Due process was eliminated by Congress to enable the U.S. DoEd and U.S.D.T. to seize students' money and property without going to court and obtaining a judgment. Furthermore, the U.S. DoEd and Treasury take more than the Face Value of the debt.

26

The University of Chicago is the villain. The stip-
ulated agreement of 1990 did not allow for any other
kind of collection without due process. The present
collections of the U.S. Depts. of Education and Treas-
ury are unreasonable and unfair given the 1990 court
ruling that settled the case 30 years ago. This is
Black Letter Law and should be free of any doubt or
dispute.

The plaintiff tried to have a lawyer file a new
brief to the U.S. Second Circuit Court of Appeals, but
no lawyer did this in a timely manner. The attorneys
Gunilla Taringer and Charles Darlington violated rule
32 and did not file an appearance or sign the brief that
they wrote. Neither attorney would apologize to the
court. The New York Bar Grievance Committee found
against both of them. Their violation is part of their
permanent record and if they break any rules again,
they will be barred from the practice of law.

## III. THE JUDGEMENT SHOULD BE REVERSED ON PROCEDURAL GROUNDS.

This appeal is from the judgment that granted
Respondents' motion to dismiss for failure to state a
claim upon which relief can be granted pursuant to
Federal Rule of Civil Procedure 12(b)(6). It is respect-
fully submitted that it was error by the court below
to grant said motion.

It is a well-settled tenet of law that cases should
be determined on their merits. "Our practice does not
favor the termination of proceedings without a deter-
mination of the merits of the controversy." *Coppola v.
Coppola*, 243 Conn. 657, 665 (1998). "It is the policy of
the law to bring about a trial on the merits of a dispute
whenever possible and to secure for the litigant his

27

day in court." *Snow v. Calise*, 174 Conn. 567, 574 (1978). Therefore, courts are generally reluctant to grant motions to dismiss. "Under the now well-established Twombly standard, a complaint should be dismissed only if it does not contain enough allegations of fact to state a claim for relief that is plausible on its face." *Buckley v. New York*, 2012 U.S. Dist. Lexis 190837 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[D]etermining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009). The within record demonstrates that there are clearly enough allegations of fact that should have prevented the case from being dismissed.

In considering a motion to dismiss, this Court accepts as true the factual allegations set forth in the complaint and draws all reasonable inferences in the Plaintiffs' favor." *Zinermon v. Burch*, 494 U.S. 113, 118 (1990). "The issue on a motion to dismiss is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Todd v. Exxon Corp.*, 275 F.3d 191, 198 (2nd Cir. 2001).

It is respectfully submitted that Appellant has stated a plausible claim for relief in his challenge of the Respondents' garnishing of his social security benefit only after allowing it to increase sixfold, and their claim that the forgiveness of his debt did not include the $5,000 GSL loans, which is false.

Furthermore, the Court is respectfully reminded that throughout these proceedings, Appellant has been appearing *pro se*, as he was without the means

28

of retaining counsel, *Pro se* pleadings, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 55 U.S. 89, 94 (2007). A complaint is not to be dismissed unless it is "frivolous on its face or wholly unsubstantiated." *Washington v. James*, 782 F.2d 1134 (2d Cir. 1989). Submissions by *pro se* litigants "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Triestman v. Fed.Bureau of Prisons*, 470 F.3d 472, 474 (2d Cir. 2006) (internal citations omitted).

Moreover, it is clear that Appellant, proceeding without counsel, was not aware of the D. Conn. L. Civ. R. 7(c) that requires that a motion for reconsideration be filed within fourteen days, and that his tardiness in filing the motion was caused by his preoccupation with a full-time schedule of classes and studies at the Yale Medical School. Therefore, the district court's denial of the motion on the ground of untimeliness should be reversed.

## IV.  DUE PROCESS VIOLATION: VINDICTIVENESS

The Due Process Clause prohibits the prosecutors, U.S. Attorney Sciarrino and Judge Haight from using illegal collections and seizure of real property in retaliation for the plaintiff's successful winning of his case for fraud and predatory lending against the U.Chicago, Wells Fargo Bank and the U.S. DoEd and U.S. Depts. in 1989-1990 before the recently deceased Judge Warren Eginton (Federal Court, Bridgeport, CT).

## V. Constitutional and Statutory Provisions Involved

Judge Haight defied the U.S. Second Circuit Court of second ruling, and refused to permit a new complaint, hold a hearing, appoint counsel, or transfer the case to the original Judge Eginton at the Federal Court in Bridgeport, Connecticut.

U.S. Atty Sciarrino has lied to the Court saying that she was present at the first hearing before Judge Eginton. She was not there for the first, lengthy morning hearing, where all the loans were disclosed and then included in the settlement.

Furthermore, all the NDA loans were in default in 1987 and in collection with the other loans. She signed the 1990 contract. (App.27a) Most significant, there was a full judicial pre-trial with counsel in chambers with Judge Eginton, including candid discussion of all of the facts, and issues, arguments, and defenses were laid out and discussed as to all four of the loans, that generated the stipulation for judgement of dismissal with prejudice and entered by agreement of both parties on September 24th 1990 Affdvt. of Ruggiero, para. 8-9 (App.25a).

Furthermore, all the NDA loans were in default in 1987 and in collection with the other loans. She signed the 1990 contract (App.25a). Thus she is in breach of that contract, and is also in violation of a court order, which is worse than breach of settlement. All of the loans are clearly inventoried in the discovery and interrogatories that she sent to the defendant, Rumbin, that were completed by the late Attorney Robert C. Ruggiero, Jr. in a sworn affidavit.

30

No attempt was undertaken to collect on this $5000 loan until 2011—21 years after the stipulated agreement was signed; the agreement which remains in force today. Attorney David Leff, who represented Mr. Rumbin (defendant at the time) recalls agreeing to the stipulation agreement <u>only if all loans were included.</u> (App.25a)

In the Amended answer of July 20, 1990, second defense states: "The right of Action set forth in the complaint did accrue within six years next before the commencement of this action." Since all four loans were in default, having been borrowed at the same time, they are all barred by the statute of limitation.

The DoEd and USDT, in violation of the plaintiff's privacy, obtained the plaintiff's Social Security number and other personal information and have used it to take plaintiff's Social Security, Earned Income Tax Credit and eventually real estate.

The U. Chicago pursued a policy of predatory lending targeting poor needy students and exploited the PELL/BEOG grant programs and loan programs to unjustly enrich itself to the detriment of the under-privileged students in the college. These students were fraudulently induced to assume unnecessary loan debt. The plaintiff did not need to take out loans had grant funds been utilized to pay for his education. At no time were any of the programs of forgiveness of loan debt, such as the Borrower Defense to Loan Repayment Forgiveness, ever made known or sought.

The villains in this case are the U. Chicago, U.S. DoEd, USDT, and Wells Fargo Bank that have all profited from these loan and grant programs. These

31

entities should be required to return the monies that they dishonestly acquired by fraud.

The plaintiff seeks a full return of all monies taken from him, legal costs and damages as well as restoration of his credit and an immediate halt to the offsets, taking tax returns, and real estate.

## VI. The Court's Power to Grant Relief

The FCPA empowers this court to grant any appropriate legal or equitable relief with respect to violations of federal consumer financial law, the refund of monies, paid restitution, disengagement, or compensation for unjust enrichment, and civil money penalties. 12 U.S.C. § 5565(A)(1).

---

# CONCLUSION

For all of the arguments explicated in the brief and writ of certiorari, the plaintiff asks the U.S. Supreme Court to correct the wrongs committed by the U.S. District Court Judge Charles Haight, Jr., U.S. Attorney Christine Sciarrino, University of Chicago, and Wells Fargo Bank.

The U.S. Court of Appeals for the Second Circuit Court recognized the unfair and unreasonableness that the plaintiff was experiencing with the U.S. District Court in Connecticut. Attorney Anne Detiere, (admitted to the Federal Bar (NY), U. S. Second Circuit Court of Appeals, and the U.S. Supreme Court, who had successfully argued cases before Justice Sonia Sotomayor) had hoped to represent the plaintiff, but

32

her untimely death on Sept. 21, 2019, left Mr. Rumbin without benefit of legal counsel.

In fact, by his ruling, Judge Haight is allowing U.S. Attorney Sciarrino to continue illegal collection from the plaintiff for the past ten years, accompanied by all its costs, disruption and interference in the plaintiff's life. Unless the U.S. Supreme Court steps forward on behalf of the plaintiff, he shall become homeless and indigent. Meanwhile, the defendants—University of Chicago, Wells Fargo Bank, and the U.S. Department of Education and Treasury—are being unjustly enriched through their fraud and predatory lending practices.

For all the reasons stated herein, the judgment should be reversed, and the case should be heard and settled.

Respectfully submitted to the Court this 28th day of January, 2020.

Respectfully submitted,

IRA GRUDBERG
COUNSEL OF RECORD
ATTORNEY AT LAW
114 LAUREL CREST ROAD
MADISON, CT 06443
(203) 234-1374
KATIB52612@GMAIL.COM

COUNSEL FOR PETITIONER

JANUARY 28, 2020

33

<u>ADDENDUM</u>                October 5, 2024

1. F.H.Cann & Associates,Inc. appeared after the writ of

certiorari was filed to SCOTUS.  F,H.Cann & Associates claims

that the plaintiff, Peter R.Rumbin owes them approximately

$10,000 dollars.(see attached statements).Location: F.H. Cann &

Associates,Inc. 1600 Osgood Street, Suite 3058, North Andover, Mass.
Tel 877-750-9804.
F.H. Cann & Assoc. has not responded to requests for information.

2.Plaintiff is a member of the class action case: Sweet v. Cardona,

No. 3:19-cv-3674(N.D.Cal.)Settlement became effective on Jan.28,2023.

Ira B. Grudberg,Esq is counsel of record for the class action.

3.  Borrower defense application was denied July 26th, 2024,and
September 5,2024(see attached)

4. US Congresswoman Rosa DeLauro in a recent interview stated

that student loans must be ADJUDICATED in court.

5. President Joe Biden's Executive order for student loans was

recently struck down by the US Supreme Court and his writ of

certiorari to SCOTUS for the student loans was denied. (Plaintiff

also joined this writ). Borrowed defense applications are being

denied.

6. Wells Fargo Bank has been fined millions and billions of

dollars for its misconduct over student loans and other loans

(see attached). It is one of the defendants in this case.

7.The plaintiff is at risk of loss of his real property besides

the continued financial offsets.  US Congresswoman Rosa DeLauro

recently stated that only legislation can stop the seizure of

money and property in student loan-predatory lending cases.

8. No court has held a hearing on this student loan case since

the 1989-1990 stipulated agreement dismissed with prejudice

against the US Depts. of Ed and Treasury. US Depts of Ed and Treasury

et al have never appeared before a fair judge and won any award

34

page 2.              __ADDENDUM__              October 5,2024

from the plaintiff, Mr. Rumbin, nor have the defendants appealed

or attempted to modify the 1990 agreement. Rather they are

ignoring a judge's court order and seizing plaintiff's money

because the Affordable Care Act revoked due process and require

the plaintiff to file suit.  However in this case, there is

already a court order stemming from a suit and hearings,

discovery etc. so the defendants should be barred from their

"offsets--claw backs" according to the US Supreme Court case

ruling Plaut vs Spendthrift Farm.(see writ).

Ira. B. Grudberg,Esq